IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT COURT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| CHICAGO HEADLINE CLUB, BLOCK CLUB CHICAGO, CHICAGO NEWSPAPER GUILD LOCAL 34071, NABET-CWA LOCAL 54041, ILLINOIS PRESS ASSOCIATION, RAVEN GEARY, CHARLES THRUSH, STEPHEN HELD, DAVID BLACK, WILLIAM PAULSON, AUTUMN REIDY-HAMER, and LEIGH KUNKEL,<br><br>*Plaintiffs,*<br><br>v.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS); TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement (ICE); MARCOS CHARLES, Acting Executive Associate Director, Enforcement and Removal Operations, ICE; RUSSELL HOTT, Chicago Field Office Director, ICE; RODNEY S. SCOTT, Commissioner, U.S. Customs and Border Protection (CBP); GREGORY BOVINO, Chief Border Patrol Agent, CBP; DANIEL DRISCOLL, Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF); WILLIAM K. MARSHALL III, Director of the Federal Bureau of Prisons (BOP); PAMELA BONDI, Attorney General of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. DEPARTMENT OF JUSTICE; UNIDENTIFIED FEDERAL OFFICER DEFENDANTS; UNIDENTIFIED FEDERAL AGENCY DEFENDANTS; and DONALD J. TRUMP, President of the United States,<br><br>*Defendants.* | No. 25-cv-12173 |

**[Proposed] Temporary Restraining Order**

1. It is hereby ORDERED that Defendants, their officers, agents, assigns, and all persons acting in concert with them (hereafter referred to as "Federal Agents"), are temporarily ENJOINED in this judicial district from:

    a. Dispersing, arresting, threatening to arrest, threatening or using physical force against any person whom they know or reasonably should know is a Journalist, unless Defendants have probable cause to believe that the individual has committed a crime unrelated to failing to obey a dispersal order. Defendants may ask a Journalist to change location to avoid disrupting law enforcement, as long as the instructions are clear and the press have time to comply and sufficient opportunity to report and observe;

    b. Issuing a dispersal order requiring any person to leave a public place that they lawfully have a right to be, unless dispersal is justified by a commanding officer's finding of a serious threat to public safety;

    c. Using riot control weapons—including but not limited to kinetic impact projectiles (KIPs), Pepper ball or paintball guns, pepper or OC spray, tear gas or other chemical irritants, soft nose rounds, 40 or 37mm launchers, less-lethal shotguns, and flashbang, Stinger, or rubber-ball grenades—on members of the press, protesters, or religious practitioners who are not themselves posing a threat of imminent physical harm to a law enforcement officer or another person;

    d. Using riot control weapons (including those described above) at identified targets, if doing so could foreseeably result in injury to the press, protesters, or religious practitioners who are not posing a threat of imminent physical harm to a law enforcement officer or another person, unless such force is necessary to stop an immediate and serious threat of physical harm to a person;

e. Firing large riot control weapons—including but not limited to tear gas canisters, flashbang, Stinger grenades, or rubber-ball grenades—so as to strike any person, including by deploying these weapons above the head of the crowd, unless the person poses an imminent threat of causing serious bodily injury or death to a person in equivalent circumstances to those where the officer is authorized to use deadly force;

f. Firing projectile riot control weapons—including but not limited to KIPs, pepper balls, paintballs, and soft nose rounds—at the head, neck, groin, torso, or other sensitive areas of any person, or striking any person with a vehicle, unless that person poses an immediate threat of serious bodily injury to a law enforcement officer or another person;

g. Using force, such as pulling or shoving a person to the ground, tackling, body slamming, or kettling on individual(s) who pose no immediate threat of physical harm to others, unless necessary and proportional to effectuate an apprehension and arrest;

h. Using any riot control weapon without giving at least two separate warnings in a manner and at a sound level where it can be heard by the targeted individual(s), unless the threat of physical harm is so serious and imminent that a warning is infeasible. Such warnings shall explain that Defendants may employ riot control weapons, give the targeted individual(s) sufficient time to avoid the use of force, and leave room and opportunity for safe egress. If it appears that the intended audience was unable to hear the warnings, the warning must be repeated prior to the use of riot control weapons;

i. Seizing or arresting any non-violent protester who is not resisting a lawful dispersal order, unless there is specific probable cause to believe that the individual has committed a crime for which a custodial arrest is warranted and for which the federal agent has lawful authority to make an arrest; and

  j. To facilitate the Defendants' identification of Journalists protected under this Order, the following shall be considered indicia of being a Journalist: visual identification as a member of the press, such as by carrying a professional press pass, badge or credentials; wearing distinctive clothing or patches that identifies the wearer as a member of the press; or carrying professional gear such as professional photographic or videography equipment. It also shall be indicia of being a Journalist under this Order that the person is standing off to the side of a protest, not engaging in protest activities, and documenting protest activities, although these are not requirements. These indicia are not exclusive, and a person need not exhibit every indicium to be considered a Journalist under this Order.

2. It is further ORDERED that all Federal Agents must have visible identification (name and/or badge number) affixed to their uniforms and prominently displayed, including when wearing riot gear.

3. It is further ORDERED that Federal Agents widely disseminate notice of this Order. Specifically, Federal Agents are ORDERED to provide copies of this Order, in either electronic or paper form, within 24 hours, to

  a. all employees, officers, and agents of the Federal Agents currently or subsequently deployed in the Northern District of Illinois, including but not limited to all personnel in the Chicago region who are part of Operation Midway Blitz or any equivalent operation by a different name; and

  b. all employees, officers, and agents of Federal Agents with any supervisory or command authority over any person in group (a) above.

4. It is further ORDERED that Defendants shall issue guidance to officers and agents to implement this order and immediately also file with this Court any instructions implementing the guidance, with a continuing obligation to immediately file with this Court any subsequent changes or revisions to that guidance or implementing instruction through the period of this Order.

5. It is further ORDERED that in the event that Plaintiffs seek relief for an alleged violation of this Order, Defendants must respond to the motion for relief within 24 hours.

6. It is further ORDERED that in the interest of justice, the Court orders Plaintiffs provide $0 in security, and the Court rules that any other requirements under Rule 65(c) of the Federal Rules of Civil Procedure are satisfied.

7. The parties shall meet and confer and provide a joint status report within 7 days setting forth proposals for ensuring that Federal Agents present in the Northern District of Illinois while this action is pending remain informed of the limitations imposed by this Order.

_____  
Date

_____  
U.S. District Judge