IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT COURT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO HEADLINE CLUB, *et al.*, | ) |
| | ) No. 25-cv-12173 |
| *Plaintiffs,* | ) |
| | ) Hon. Sara L. Ellis, |
| v. | ) District Judge |
| | ) |
| KRISTI NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity, *et al.*, | ) |
| | ) |
| *Defendants.* | ) |

**Temporary Restraining Order**

Plaintiffs filed an Emergency Motion for a Temporary Restraining Order [21] against Defendants. Having held hearings on October 6, 8, and 9, 2025, the Court finds that Plaintiffs have met their burden to support the issuance of a Temporary Restraining Order. Accordingly, the Court grants the motion and orders as follows:

1. It is hereby ORDERED that Defendants,[1] their officers, agents, assigns, and all persons acting in concert with them (hereafter referred to as "Federal Agents"), are temporarily ENJOINED in this judicial district from:

   a. Dispersing, arresting, threatening to arrest, threatening or using physical force against any person whom they know or reasonably should know is a Journalist, unless Defendants have probable cause to believe that the individual has committed a crime. Defendants may order a Journalist to change location to avoid disrupting law enforcement,

---

[1] President Trump, one of the named Defendants, is not included in this Order.

as long as the Journalist has an objectively reasonable time to comply and an objectively reasonable opportunity to report and observe;

  b. Issuing a crowd dispersal order requiring any person to leave a public place that they lawfully have a right to be, unless dispersal is justified by exigent circumstances as defined by Department of Homeland Security Use of Force Policy (updated Feb. 6, 2023), Sections III.F and XII.E;

  c. For purposes of this Order, a crowd dispersal order is a lawful command given by a Federal Agent for all persons to leave a designated area when three or more persons are committing acts of disorderly conduct that are likely to cause substantial harm in the immediate vicinity;

  d. Using riot control weapons—including kinetic impact projectiles (KIPs), Compressed Air Launchers (e.g., PLS and FN303), Oleoresin Capsicum (OC) Spray, CS gas, CN gas, or other chemical irritants, 40 mm Munitions Launchers, less-lethal shotguns, Less-Lethal Specialty Impact-Chemical Munitions (LLSI-CM), Controlled Noise and Light Distraction Devices (CNLDDs), Electronic Control Weapons (ECWs)—on members of the press, protesters, or religious practitioners who are not posing an immediate threat to the safety of a law enforcement officer or others;

  e. Using riot control weapons (including those described above) at identified targets, if it is reasonably foreseeable that doing so could result in injury to the press, protesters, or religious practitioners who are not posing an immediate threat to the safety of a law enforcement officer or others, unless such force is necessary to stop an immediate and serious threat of physical harm to a person;

  f. Firing CS or CN gas canisters, Controlled Noise and Light Distraction Devices (CNLDD), or Less-Lethal Specialty Impact and Chemical Munitions (LLSI-CM) so as to strike any person, including by deploying these weapons above the head of the crowd, unless the person poses an immediate threat of causing serious bodily injury or death to a person in equivalent circumstances to those where the officer is authorized to use deadly force;

  g. Firing Compressed Air Launchers (e.g., PLS and FN303), or Munitions Launchers (e.g., 40mm), or KIPs so as to strike the head, neck, groin, spine, or female breast, or striking any person with a vehicle, unless the person poses an immediate threat of causing serious bodily injury or death to a person in equivalent circumstances to those where the officer is authorized to use deadly force;

  h. Using force, such as pulling or shoving a person to the ground, tackling, or body slamming an individual who poses no immediate threat of physical harm to others, unless necessary and proportional to effectuate an apprehension and arrest;

  i. Using any riot control weapon, including those listed in this Order, without giving at least two separate warnings when feasible at a sound level where the targeted individual(s) can reasonably hear it. Law enforcement officers determine feasibility by considering whether the resulting delay of issuing the warning and allowing reasonable time and opportunity for individuals to voluntarily comply is likely to create an immediate threat of causing physical harm to the officer or others. Such warnings shall explain that Defendants may employ riot control weapons, give the targeted individual(s) reasonable time to avoid the use of force, and provide a reasonable opportunity to comply;

  j. Seizing or arresting any non-violent protester who is not resisting a lawful crowd dispersal order, unless there is specific probable cause to believe that the individual has committed a crime for which a custodial arrest is warranted and for which the law enforcement officer has lawful authority to make an arrest; and

  k. To facilitate the Defendants' identification of Journalists protected under this Order, the following are examples of indicia of being a Journalist: visual identification as a member of the press, such as by carrying a professional press pass, badge or credentials; wearing distinctive clothing or patches that identify the wearer as a member of the press; or carrying professional gear such as professional photographic or videography equipment. Other indicia of being a Journalist under this Order include that the person is standing off to the side of a protest, not engaging in chanting, sign holding, shouting slogans, or otherwise protesting, and documenting protest activities, although these are not requirements. These indicia are illustrative, and a person need not exhibit every indicium to be considered a Journalist under this Order. Defendants shall not be liable for unintentional violations of this Order in the case of an individual who does not wear a press pass, badge, or other official press credential, professional gear, or distinctive clothing that identifies the person as a member of the press.

  l. Defendants shall not be liable for violating this injunction if a protester, journalist, or religious practitioner is incidentally exposed to crowd control devices, chemical dispersal agents, or physical force if such device or force was used in a manner that complies with this injunction.

2. It is further ORDERED that all Federal Agents, excepting those who do not wear a uniform or other distinguishing clothing or equipment in the regular performance of their official

duties or are engaged in undercover operations in the regular performance of their official duties, must have visible identification (for which a unique recognizable alphanumeric identifier sequence will suffice) affixed to their uniforms or helmets and prominently displayed, including when wearing riot gear.

3. It is further ORDERED that Federal Agents widely disseminate notice of this Order. Specifically, Federal Agents are ORDERED to provide copies of this Order, in either electronic or paper form, no later than 5 p.m. on October 9, 2025 to any individuals scheduled to work at the Broadview ICE Facility on October 10, 2025 and no later than 11:59 p.m. on October 10, 2025 to all others described below:

    a. all law enforcement personnel, officers, and agents of the Federal Agents currently or subsequently deployed in the Northern District of Illinois, including but not limited to all personnel in the Chicago region who are part of Operation Midway Blitz or any equivalent operation by a different name; and

    b. all employees, officers, and agents of Federal Agents with supervisory or management authority over any law enforcement officers or agents currently or subsequently deployed in the Northern District of Illinois, up the chain of command to and including the Secretary of Homeland Security and other named Defendants.

4. It is further ORDERED that Defendants shall issue guidance to officers and agents to implement this order. Defendants shall file with this Court any directives, policies, or regulations implementing the guidance within 5 business days, with a continuing obligation to immediately file with this Court any subsequent changes or revisions to that guidance through the period of this Order.

5.     It is further ORDERED that in the event that Plaintiffs seek relief for an alleged violation of this Order, Plaintiffs should make good faith attempts to meet and confer with Defendants at least 24 hours before filing a request for relief and Defendants must respond to the motion for relief as ordered by the Court.

6.     It is further ORDERED that in the interest of justice, the Court orders Plaintiffs provide $0 in security, and the Court rules that any other requirements under Rule 65(c) of the Federal Rules of Civil Procedure are satisfied.

7.     The parties shall meet and confer and provide a joint status report within 7 days setting forth proposals for ensuring that Federal Agents present in the Northern District of Illinois while this action is pending remain informed of the limitations imposed by this Order.

8.     This Temporary Restraining Order is entered at 11:30 A.M. on this 9th day of October 2025 and shall remain in effect for fourteen (14) calendar days.

_____
Sara L. Ellis
U.S. District Judge