1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHICAGO HEADLINE CLUB, BLOCK ) Case No. 25 C 12173
CLUB CHICAGO, CHICAGO NEWSPAPER )
GUILD LOCAL 34071, NABET-CWA )
LOCAL 54041, ILLINOIS PRESS )
ASSOCIATION, RAVEN GEARY, )
CHARLES THRUSH, STEPHEN HELD, )
DAVID BLACK, WILLIAM PAULSON, )
AUTUMN REIDY-HAMER, and LEIGH )
KUNKEL, )
                                )
                Plaintiffs, )
                                )
        v. )
                                )
KRISTI NOEM, Secretary, U.S. )
Department of Homeland Security )
(DHS); TODD LYONS, Acting )
Director, U.S. Immigration and )
Customs Enforcement (ICE); )
MARCOS CHARLES, Acting Executive )
Associate Director, Enforcement )
and Removal Operations, ICE; )
RUSSELL HOTT, Chicago Field )
Office Director, ICE; RODNEY S. )
SCOTT, Commissioner, U.S. )
Customs and Border Protection )
(CBP); GREGORY BOVINO, Chief )
Border Patrol Agent, CBP; DANIEL )
DRISCOLL, Director of the Bureau )
of Alcohol, Tobacco, Firearms )
and Explosives (ATF); WILLIAM K. )
MARSHALL III, Director of the )
Federal Bureau of Prisons (BOP); )
PAMELA BONDI, Attorney General )
of the United States; U.S. )
DEPARTMENT OF HOMELAND SECURITY; )
U.S. DEPARTMENT OF JUSTICE; )
UNIDENTIFIED FEDERAL OFFICER )
DEFENDANTS; UNIDENTIFIED FEDERAL )
AGENCY DEFENDANTS; and DONALD J. )
TRUMP, President of the )
United States, ) Chicago, Illinois
                                ) October 9, 2025
                Defendants. ) 10:56 a.m.

TRANSCRIPT OF PROCEEDINGS -
EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
BEFORE THE HONORABLE SARA L. ELLIS

APPEARANCES:

For the Plaintiffs:    LOEVY & LOEVY
                       BY:  MR. JONATHAN I. LOEVY
                            MR. STEVE ART
                       311 N. Aberdeen Street, Third Floor
                       Chicago, Illinois 60607

                       MANDEL LEGAL AID CLINIC
                       BY:  MR. CRAIG B. FUTTERMAN
                       6020 S. University Avenue
                       Chicago, Illinois 60637

For the Defendants:    U.S. DEPARTMENT OF JUSTICE
                       BY:  MR. SEAN SKEDZIELEWSKI (via video)
                       950 Pennsylvania Avenue NW
                       Washington, D.C. 20530

Court Reporter:        KELLY M. FITZGERALD, RPR, RMR, CRR
                       Official Court Reporter
                       United States District Court
                       219 S. Dearborn Street, Room 1412
                       Chicago, Illinois 60604
                       312-818-6626
                       kmftranscripts@gmail.com

                       *   *   *   *   *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court:)

THE COURT: This is 25 C 12173, Chicago Headline Club, et al. v. Noem, et al.

And if counsel can state your name and who you represent for the record, please.

MR. LOEVY: Good morning, Your Honor. Jon Loevy for the plaintiffs.

MR. ART: Good morning, Your Honor. Steve Art for the plaintiffs.

MR. FUTTERMAN: Good morning, Judge. Craig Futterman, also for the plaintiffs.

THE COURT: And, Mr. Skedziewlewski, it looks like -- oh, yeah, you're unmuted. There you go.

MR. SKEDZIEWLEWSKI: Good morning, Your Honor. Sean Skedziewlewski for defendants.

THE COURT: All right. Good morning.

Okay. Thank you, and thank you for your patience. We were just finalizing the order.

So everybody should have then a copy of the TRO order.

Did you get that by e-mail --

MR. ART: Yes, Judge.

THE COURT: -- Mr. Skedziewlewski?

MR. SKEDZIEWLEWSKI: I don't have that yet, Your Honor, but perhaps it'll come through momentarily.

THE COURT: Okay. Yeah, it just was sent.

MR. SKEDZIEWLEWSKI: Oh, I see. It was not -- not through an ECF. Just an e-mail?

THE COURT: No. No, no, no, just an e-mail.

Do -- do you have it now?

MR. SKEDZIEWLEWSKI: Okay. I have it.

THE COURT: Okay. Great.

MR. SKEDZIEWLEWSKI: Yes.

THE COURT: All right. So as we get going -- okay. So I'm going to read the order into the record. And, you know, if there are any red flags or I've missed anything, then folks can pipe up and we can make the changes as we go, but this is where I have landed.

Plaintiffs filed an emergency motion for a temporary restraining order against defendants. Having held hearings on October 6th, 8th, and 9th, 2025, the Court finds that plaintiffs have met their burden to support the issuance of a temporary restraining order. Accordingly, the Court grants the motion and orders as follows:

1. It's hereby ordered that defendants -- and I note in a footnote that President Trump, one of the named defendants, is not included in this order -- their officers, agents, assigns, and all persons acting in concert with them, hereafter referred to as the federal agents, are temporarily enjoined in this judicial district from:

A. Dispersing, arresting, threatening to arrest,

threatening or using physical force against any person whom they know or reasonably should know is a journalist, unless defendants have probable cause to believe that the individual has committed a crime.  Defendants may order a journalist to change location to avoid disrupting law enforcement, as long as the journalist has an objectively reasonable time to comply and an objectively reasonable opportunity to report and observe;

B.   Issuing a crowd dispersal order requiring any person to leave a public place that they lawfully have a right to be, unless dispersal is justified by exigent circumstances as defined by Department of Homeland Security use of force policy updated February 6, 2023, Section III.F and XII.E;

C.   For purposes of this order, a crowd dispersal order is a lawful command given by a federal agent for all persons to leave a designated area when three or more persons are committing acts of disorderly conduct that are likely to cause substantial harm in the immediate vicinity;

D.   Using riot control weapons, including kinetic impact projectiles, compressed air launchers, oleoresin capsicum spray, CS gas, CN gas, or other chemical irritants, 40 millimeter munition launchers, less-lethal shotguns, less-lethal specialty impact chemical munitions, controlled noise and light distraction devices, electronic control weapons, on members of the press, protesters, or religious practitioners who are not posing an immediate threat to the

safety of a law enforcement officer or others;

E.   Using riot control weapons, including those described above, at identified targets, if it is reasonably foreseeable that doing so could result in injury to the press, protesters, or religious practitioners who are not posing an immediate threat to the safety of a law enforcement officer or others, unless such force is necessary to stop an immediate and serious threat of physical harm to a person;

F.   Firing CS or CN gas canisters, controlled noise and light distraction devices, or less-lethal specialty impact and chemical munitions so as to strike any person, including by deploying those weapons above the head of the crowd, unless the person poses an immediate threat of causing serious bodily injury or death to a person in equivalent circumstances to those where the officer is authorized to use deadly force;

G.   Firing compressed air launchers or munition launchers or KIPs so as to strike the head, neck, groin, spine, or female breast, or striking any person with a vehicle, unless the person poses an immediate threat of causing serious bodily injury or death to a person in equivalent circumstances to those where the officer is authorized to use deadly force;

H.   Using force such as pulling or shoving a person to the ground, tackling or body slamming an individual who poses no immediate threat of physical harm to others, unless necessary and proportional to effectuate the apprehension -- an

apprehension and arrest;

I. Using any riot control weapon, including those listed in this order, without giving at least two separate warnings when feasible at a sound level where the targeted individual or individuals can reasonably hear it. Law enforcement officers determine feasibility by determining whether the resulting delay of issuing the warning and allowing reasonable time and opportunity for individuals to voluntarily comply is likely to create an immediate threat of causing physical harm to the officers or -- to the officer or others. Such warnings shall explain that defendants may employ riot control weapons, give the targeted individual or individuals reasonable time to avoid the use of force, and provide a reasonable opportunity to comply.

J. Seizing or arresting any nonviolent protester who is not resisting a lawful crowd dispersal order, unless there is specific probable cause to believe that the individual has committed a crime for which a custodial arrest is warranted and for which the law enforcement officer has the lawful authority to make an arrest;

K. To facilitate the defendants' identification of journalists protected under this order, the following are examples of indicia of being a journalist: Visual identification as a member of the press, such as by carrying a professional press pass, badge, or credentials; wearing

distinctive clothing or patches that identify the wearer as a member of the press; or carrying professional gear, such as a professional photographic or videography equipment. Other indicia of being a journalist under this order include that the person is standing off to the side of a protest, not engaging in chanting, sign holding, shouting slogans, or otherwise protesting, and documenting protest activities, although these are not requirements. These indicia are illustrative, and a person need not exhibit every indicium -- indicium -- no, indicium, sorry -- indicium to be considered a journalist under this order. Defendants shall not be liable for unintentional violations of this order in the case of an individual who does not wear a press pass, badge, or other official press credential, professional gear, or distinctive clothing that identifies the person as a member of the press.

L. Defendants shall not be liable for violating this injunction if a protester, journalist, or religious practitioner is incidentally exposed to crowd control devices, chemical dispersal agents, or physical force if such device or force was used in a manner that complies with this injunction.

2. It is further ordered that all federal agents, excepting those who do not wear a uniform or other distinguishing clothing or equipment in the regular performance of their official duties or are engaged in undercover operations in the regular performance of their official duties

must have visible identification, for which a unique recognizable alphanumeric identifier sequence will suffice, affixed to their uniforms or helmets and prominently displayed, including when wearing riot gear.

3. It is further ordered that federal agents widely disseminate notice of this order. Specifically, federal agents are ordered to provide copies of this order, in either electronic or paper form, no later than 5:00 p.m. on October 9, 2025, to any individuals scheduled to work at the Broadview ICE facility on October 10, 2025, and no later than 11:59 p.m. on October 10, 2025, to all others described below:

A. All law enforcement personnel, officers, and agents of the federal agents currently or subsequently deployed in the Northern District of Illinois, including, but not limited to, all personnel in the Chicago region who are part of Operation Midway Blitz or any equivalent operation by a different name; and

B. All employees, officers, and agents of federal agents with supervisory or management authority over any law enforcement officers or agents currently or subsequently deployed in the Northern District of Illinois, up the chain of command to and including the Secretary of Homeland Security and other named defendants.

4. It is ordered that defendant shall issue guidance to officers and agents to implement this order. Defendants

shall file with this Court any directives, policies, or regulations implementing the guidance within five business days, with a continuing obligation to immediately file with this Court any subsequent changes or revisions to that guidance through the period of this order.

It's further ordered that in the event that plaintiffs seek relief for an alleged violation of this order, plaintiffs should make good faith attempts to meet and confer with defendants at least 24 hours before filing a request for relief, and defendants must respond to the motion for relief as ordered by the Court.

6. It's further ordered that in the interest of justice, the Court orders plaintiffs to provide $0 in security, and the Court rules that any other requirement under Rule 65(c) of the Federal Rules of Civil Procedure are satisfied.

7. The parties shall meet and confer and provide a joint status report within seven days setting forth proposals for ensuring that federal agents present in the Northern District of Illinois while this action is pending remain informed of the limitations imposed by this order.

Anything that I missed with regard to our discussions over the last few days? I know it may not read exactly as either side wanted, but this I think takes into account and balances the concerns raised by both sides.

MR. LOEVY: We acknowledge that and agree from the

plaintiffs' side, Your Honor.

THE COURT: Mr. Skedziewlewski?

MR. SKEDZIEWLEWSKI: Your Honor, defendants object to the TRO, obviously, and -- and would request -- though we understand that the Court has already ruled, that the proposal that we submitted -- the redline that we submitted would be entered instead, but the Court has made its decision, so we -- we understand that.

THE COURT: Okay. And so there's nothing that jumps out where, at least based on the experience thus far, that it's going to be absolutely unworkable or cause a lot of problems?

MR. SKEDZIEWLEWSKI: Well, Your Honor, we think the entire TRO will be unworkable and cause a lot of problems for the reasons that we've stated, but we've done -- you know, I think we've -- we've gone through all the details to the extent that we can to -- to try to get it to be more workable, so we do appreciate the Court's efforts to -- you know, to that extent.

THE COURT: Okay. All right. So then just conclusion then.

This order -- oh, we need to put in that the order was dated as of today's date and the time that it's entered. The order will be in effect, we can say for 14 days, and then we can pick up where we need to and change it if we need to.

Mr. Skedziewlewski, it's -- that timing works?

MR. SKEDZIEWLEWSKI: I'm sorry, Your Honor. Was the timing for the 14 days and then the preliminary injunction hearing?

THE COURT: Yes.

MR. SKEDZIEWLEWSKI: I suspect that we'll ask the Court for more time, though I have not confirmed with the client yet exactly what that would look like, or if they are indeed able to work with the current timeline that's been proposed.

THE COURT: Okay. So we'll just for now say that it's 14 days. You know, I can certainly extend that, and we'll do what we need to do, but at least that will put it in place.

So a couple of observations. I know that it is the government's position that the actions taken thus far since the beginning of September are that the actions taken were necessary to quell violent protests across the City of Chicago.

I just want to highlight a few exhibits that plaintiffs filed where I find that that just simply isn't the case as to what is happening in Chicago currently.

Exhibit 8. Ms. Leigh Kunkel submitted a declaration detailing the violence she experienced as a peaceful protester at the Broadview ICE facility. Ms. Kunkel and her fiancé were both shot in the head with PepperBalls fired by federal agents. Her fiancé was hit in his eye and she was hit on the back of her head and in her nose. After cleaning the blood from her

face, she returned to the protest and witnessed federal agents continuing to shoot PepperBalls and deploy tear gas at peaceful protesters. Some federal agents deliberately targeted a group that was off to the side drinking water and resting. Ms. Kunkel further describes how her fiancé was arrested while peacefully protesting. During this arrest, he was thrown to the ground and has experienced pain when breathing ever since.

Exhibit 34. Mr. Brian Orozco is a civil rights attorney who submitted a declaration describing his experiences in the Brighton Park neighborhood in Chicago. He explained that he traveled to Brighton Park to observe the federal agents' activity and protests against ICE -- ICE's militarized operations in Chicago communities.

After Mr. Orozco arrived, he witnessed federal agents using tear gas and flash-bang grenades against peaceful protesters and journalists. He personally experienced pain and difficulty breathing as a result of the tear gas, and he's concerned he will continue to be physically injured and gassed if he protests against ICE in Chicago in the future.

Exhibit 34 -- or I'm sorry -- Exhibit 39. Mr. Paul Goyette submitted a supplemental declaration in which he described going to the Brighton Park community of Chicago to photograph the protests. Mr. Goyette stated, among other things, that he witnessed federal agents launching multiple canisters of tear gas at civilians and Chicago Police

Department officers, none of whom had gear to withstand tear gas. Mr. Goyette further described how a federal agent dropped a flash-bang grenade 18 inches from his leg while he was simply walking. Federal agents told him and others that they would be arrested if they stayed in the area.

And finally, Exhibit 41. An immigration attorney, Mr. Enrique Espinoza, submitted a declaration describing his experience going to a protest near Kedzie and 40th Street in Chicago. He traveled to the protest with the goal of protecting people's rights. He described how federal agents threw tear gas canisters at the crowd of peaceful protesters, which included senior individuals and minors. He later saw federal officers shooting at the crowd of peaceful protesters and was afraid that he was going to be shot. He has concerns for his safety but wishes to continue protesting against federal agents in Chicago.

These are but some examples of what is occurring in Chicago which make clear that whatever lawlessness is occurring is not occurring by peaceful protesters, that the actions taken by some of these federal agents at this point and on this record clearly violate the Constitution.

Individuals are allowed to protest. They are allowed to speak. That is guaranteed by the First Amendment to our Constitution, and it is a bedrock right that upholds our democracy. We're here today to ensure that federal agents and

the defendants receive the guidance they need to conform their actions with the law and the Constitution.

I think that everyone wants to do what is right. The agents want to do their job and enforce the law. However, citizens, people in the Northern District of Illinois, also want to do what is right and express themselves, whether it's their religious beliefs and they're guided by their faith, whether it's their own personal beliefs that how the government is executing the laws is not fair or just or right, whether it's journalists simply wanting to be professional in documenting what is happening in society, they all want to do what is right too.

So my hope is that in entering this TRO, in providing this guidance, that we will no longer have the issues that we have been experiencing in the Northern District of Illinois over the last month.

I will also say that I am aware that the National Guard is in Illinois, that whether they are Illinois National Guard members or they are coming up from Texas, that they are here, that one of the justifications for sending them here is that they are needed to protect federal buildings, including the Broadview facility.

What I do not want to see happen and what I will have a really hard time dealing with and understanding is that while this TRO is directed to the defendants named in this lawsuit, I

would strongly suggest that this be disseminated to any law enforcement officer that is deployed to any DHS facility within the Northern District of Illinois.

I do not want to see a workaround that National Guard troops are behaving in a way that is prevented by this TRO, because I do not find -- and that this is not the case before me. I'm not dealing with the National Guard -- but I do not find that the agents that so far are -- have the responsibility of protecting the Broadview detention facility aren't able to do so.

They certainly have been able to protect that facility and do what needs to be done. And perhaps, you know, the issue is that they not have been doing what they needed to be doing, but bringing in additional law enforcement officers is not going to correct any problems. I think following the law and doing what they are supposed to do under the law will go a long way from -- go a long way towards reducing any potential for violence or disruption at that facility.

So that's all I have to say on that.

You know, I certainly hope that we don't have to be back here dealing with any violations. I think the order is clear. I tried to make it as workable as possible while being consistent with law enforcement's obligations under both the First Amendment, the Fourth Amendment, the constitutional -- Constitution generally, as well as the applicable statutes and

regulations, and the policies and directives of DHS itself and Border Patrol.

Okay. Did I miss anything?

MR. LOEVY: Not from the plaintiffs.

THE COURT: How about from the government?

MR. SKEDZIEWLEWSKI: The government doesn't think the Court missed anything, no.

THE COURT: Okay. I know. You might think I got it wrong, but that's okay. We -- we're free to disagree on -- on that.

All right. So we'll get this then entered today. We'll see everybody back here in 14 days, on the 23rd. Why don't we say, if it's going to go as a PI hearing, even -- we can even set it as a status hearing just to kind of check in and see how things are going.

How about 9:00 on the 23rd Central time?

MR. LOEVY: We'll be here.

THE COURT: And --

MR. SKEDZIEWLEWSKI: The government will -- will -- oh, I'm sorry.

THE COURT: Oh, I was going to say, and, Mr. Skedziewlewski, if it's -- if it's you, you know, you are free to appear remotely, and if someone else is stepping in, if they -- if it's easier for them to appear remotely if it's simply a status hearing, I've got no problem with that.

MR. SKEDZIEWLEWSKI: Understood. Thank you, Your Honor.

THE COURT: You're welcome.

MR. LOEVY: Your Honor, if -- I'm sorry.

THE COURT: Oh. And good luck with everything, Mr. Skedziewlewski, with the new baby.

MR. SKEDZIEWLEWSKI: Thank you. Appreciate it, Your Honor.

THE COURT: Hope everything goes well, smoothly, and both your spouse and the baby are happy and healthy at the end of the road.

All right.

MR. SKEDZIEWLEWSKI: Very kind of you, Your Honor. Thank you.

THE COURT: You're welcome.

MR. LOEVY: Your Honor, I know you're not looking for a thank you and you're just applying the law dispassionately and without favor, but there are a lot of protesters and journalists and clergy member who appreciate the time and the attention you put into this. And I want to express appreciation for the fact that you've changed their lives for the better and they appreciate it. And thank you.

THE COURT: You're welcome.

All right. Thanks, everybody.

MR. ART: Thank you, Judge.

(Concluded at 11:25 a.m.)

\* \* \* \* \*

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Kelly M. Fitzgerald*          *October 12, 2025*

Kelly M. Fitzgerald
Official Court Reporter