IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO HEADLINE CLUB *et al.* ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> KRISTI NOEM, Secretary of U.S. ) <br> Department of Homeland Security, in her ) <br> official capacity, *et al.*, ) <br> ) <br> Defendants. ) | Case No. 25-cv-12173 |

**Plaintiffs' Motion for Limited and Expedited Discovery
<u>In Advance of Preliminary Injunction Hearing</u>**

Now Come Plaintiffs, Chicago Headline Club, et al, by and through their counsel, and respectfully seek an order permitting limited and expedited discovery in advance of the preliminary injunction hearing, and state:

**INTRODUCTION**

This suit concerns the fundamental rights of people in our democracy to express discontent with their government, and to do so without being subject to violence, tear gas, being shot by pepper balls, or being subject to apprehension on the street in retaliation for expressing their rights or even just gathering the news. Dkt. 1. This suit also concerns the right of the press and journalists to report on what the government is doing, even critically to the administration. In shocking fashion, the federal government has waged a "war" on the State of Illinois, throughout this District, in the streets of Chicago, and near a detention facility in Broadview, Illinois. Plaintiffs sought a Temporary Restraining Order and preliminary injunction. In three days of extensive hearings, the government advanced a number of contentions, based upon Defendants'

own information and government practices, that Defendants contend justify these unprecedented (and unconstitutional) acts. Plaintiffs dispute these assertions. On the record before it, the Court issued a TRO. Dkt. 42. The parties are now preparing for a hearing on Plaintiffs' request for a preliminary injunction. To allow the Court to have an appropriate view of the facts on the ground, and to enable Plaintiffs to test (and contest) the government's contentions, limited but expedited discovery is necessary and appropriate, and "[a] pending request for a preliminary injunction is a typical ground that satisfies a good cause standard." *Roche Diagnostics Corp. v. Med. Automation Sys., Inc.*, 2011 WL 130098, at *3 (S.D. Ind. Jan. 14, 2011).

Indeed, Plaintiffs must be permitted to discover the purported rationale and basis for the government's actions as part of "Operation Midway Blitz" that is the precise focus of the preliminary injunction, and to avoid being ambushed by a deluge of contentions from the government that are, Plaintiffs contend and another Court has already found, simply incredible. This Court should have the benefit of deciding Plaintiffs' motion for a preliminary injunction on a factual record subjected to proper adversarial testing. Respectfully, the motion should be granted.[1]

## RELEVANT BACKGROUND

As this Court is aware, Plaintiffs allege that Defendants have committed, and are continuing to commit systematic and widespread constitutional and statutory violations of the law in the Northern District of Illinois. *See generally* Dkt. 1. Some of that misconduct has occurred at the Broadview Detention Facility, where federal officers deployed tear gas, flash bang grenades, pepper balls, and other projectiles against protesters, religious practitioners, and

---

[1] The parties met and conferred about this motion over email and on a phone call on October 15, 2025. The government opposes any and all expedited discovery in advance of the preliminary injunction, necessitating this motion.

2

journalists. Dkt. 1 ¶¶ 83-102; Dkt. 21 at 16-20. Other instances of similar misconduct have occurred in neighborhoods across Chicago. Dkt. 1 ¶¶ 103-06; Dkt. 21 at 20-21. All instances of misconduct bear a consistent pattern: use of force is directed against peaceful individuals, in violation of the First Amendment, Fourth Amendment, and the Religious Freedom Restoration Act. *See generally* Dkt. 1 (Complaint).

After Plaintiffs filed a Motion for Temporary Restraining Order (TRO) to stop this unconstitutional behavior, this Court held a TRO hearing over three days. Dkts. 33, 39, 41. Defendants, for their part, disputed the evidentiary record submitted by Plaintiffs, and argued that any use of force was in response to violent agitators. *E.g.* Transcript of 10/6/2025 Hearing at 11-12. Defendants contended that the Broadview Detention Facility in particular had been "under siege" the past few weeks, and that officers were using force against individuals who were "attack[ing] law enforcement officers," "engaging in riot[s]," or who were otherwise caught up in the incidental effects of using force to quell this alleged conduct. *Id.* at 10-18. Though they did not have evidence to support these assertions at the hearings, Defendants claimed that they would be submitting supporting evidence in preliminary injunction briefing. *Id.* Plaintiff's view, of course, is the opposite: that it is federal agents and defendants who have—as they said they would—waged a war on civilians in the Northern District of Illinois, and that they have done so because of the political views of local protestors and politicians, and as an act of punishment and retaliation.

This Court found in Plaintiffs' favor and granted a TRO against Defendants. Dkts. 42, 43. This Court found that Plaintiffs were likely to succeed on the merits of their First Amendment, Religious Freedom Restoration Act, and Fourth Amendment claims, in part because Defendants

3

were using excessive force against peaceful individuals. *See* Transcript of 10/8/2025 Hearing at 9-13.

This Court enjoined Defendants from continuing their unconstitutional behavior. *See* Dkt. 42. Among other things, it enjoined Defendants from using riot control weapons against individuals unless necessary to prevent harm to a law enforcement officer or other individual. *Id.* Defendants were ordered to provide notice of this Court's order to all agents within the Northern District of Illinois. *Id.*

On October 15, 2025, the parties conferred over what Plaintiffs believe are violations of the TRO, discussing in particular several instances in which federal officers appear to be using violence, tear gas, and other munitions against protestors and journalists. Young children and even babies appear to have been subjected to the indiscriminate use of tear gas by Defendants' officers. And it does not appear that Defendants' agents are consistently wearing prominently displayed visible identification. The government believes the TRO has not been violated at all. In other words, as might be expected from the hearings, the parties have widely divergent views about the facts of these instances, underscoring the need for limited discovery to establish a factual record fairly testable by both sides.

## DISCUSSION

### A. This Court Has Broad Authority to Order Expedited Discovery Before the Preliminary Injunction Hearing

This Court generally has "wide discretion in managing the discovery process." *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011) (citing *Merrill Lynch v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000)). This Court also has explicit authority to order discovery, including before the parties have conducted a conference under Rule 26(f), under the Federal

4

Rules of Civil Procedure. *See* FED. R. CIV. P. 26(d)(1) (permitting early discovery where authorized "by court order").

In considering a request for expedited discovery, this Court considers whether good cause has been shown in light of the circumstances, including but not limited to: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Ibarra*, 816 F. Supp. 2d at 554 (internal quotes and citation omitted). Considering these factors, and the circumstances of this case, expedited and limited discovery is appropriate.

B. **Good Cause Exists to Permit Expedited Discovery**

The circumstances here overwhelmingly support permitting limited expedited discovery to prepare for the preliminary injunction hearing.

First, a pending preliminary injunction hearing often establishes good cause for expedited discovery, and the need is more obvious in a case where, as here, a court has already granted a TRO. *See Admin Inc. v. Kohan*, No. 23-CV-04430, 2023 WL 4625897, at *13 (N.D. Ill. July 19, 2023) (citing *Nobel Biocare USA, Inc. v. Lynch*, 1999 WL 958501, at *4 (N.D. Ill. Sept. 15, 1999)) ("[E]xpedited discovery is appropriate in light of the scheduling preliminary injunction hearing, so the Court and the parties will have a fuller evidentiary record for that hearing."); *see also, e.g.*, *Penske Truck Leasing Co., L.P. v. Cent. States, Se. & Sw. Areas Pension Plan*, No. 21-CV-05518, 2022 WL 1028927, at *3 (N.D. Ill. Apr. 6, 2022) (noting that expedited discovery was allowed in "conjunction with [the plaintiff's] motion for a preliminary injunction" and that focused on the "circumstances surrounding" the underlying dispute, and considering the "fruits of the expedited discovery" in assessing a motion for preliminary injunction); *EASi, LLC v. Gaffar*, No. 20-CV-1235-MMM-JEH, 2020 WL 3868394, at *3 (C.D. Ill. July 9, 2020) (noting

the Court granted expedited discovery *during the pendency* of consideration of a TRO where the court "provided the parties with a discovery schedule specific to Plaintiff's request for a preliminary injunction"); *Am. Fam. Mut. Ins. Co. v. Roth*, No. 05 C 3839, 2005 WL 3700232, at *1 (N.D. Ill. Aug. 5, 2005) (noting the grant of expedited discovery following issuance of TRO); *Nobel Biocare USA, Inc. v. Lynch*, No. 99 C 5774, 1999 WL 958501, at *4 (N.D. Ill. Sept. 15, 1999) (granting a TRO and then also granting "plaintiff's motion for expedited discovery as it provides a fuller record for the court when deciding whether to issue a preliminary injunction.").

Second, the breadth and burden of the requests also weigh in favor of permitting expedited discovery in this case. *See Ibarra*, 816 F. Supp. 2d at 554. The discovery Plaintiffs seek is narrowly tailored and temporally limited, and the purpose is to provide the Court with the evidence needed to appropriately balance the vital interests present on both sides of this case.

As to breadth and burden, Plaintiffs seek to depose just five witnesses: (1) Field Director Russell Hott, (2) Secretary Kristi Noem, (2) Deputy Chief of Staff Stephen Miller, (4) Chief Patrol Agent Gregory Bovino, and (5) Deputy Chief Patrol Agent Daniel Parra. Defendant Hott, as described in his declaration, *see* Dkt. 35-1, has overseen operations at Broadview in the last month. Secretary Noem has ordered and observed the operations in this District, as has Chief of Staff Miller. Chief Patrol Agent Para is someone who the government has relied upon in opposing the TR. *See* Dkt. 35-9. In that capacity, Agent Parra has overseen border patrol agents deployed in this District as described in his declaration. *See* Dkt. 35-9.

Last, Defendant Bovino has not only overseen the federal agents in this District but has personally participated in using force against demonstrators in the Northern District of Illinois. *See* Dkt. 22-32 ¶ 88 (describing Defendant Bovino "charging demonstrators who had retreated to a greenspace and…grabbing them indiscriminately, throwing them on the ground, and detaining

6

them"). Defendant Bovino has also directed federal agents committing near identical violations in Los Angeles.[2] These depositions will be limited in time and scope; they will pertain only to ICE actions in this district since the inception of Operation Midway Blitz and the issuance of this Court's TRO. Plaintiffs seek limited depositions, of up to three hours each for Noem and Miller and up to four hours each for Hott, Bovino, and Parra. Plaintiffs are not seeking to have the government try to answer interrogatories or requests for admission.

As for the document requests, Plaintiffs will seek information limited to the arguments at issue in the preliminary injunction hearing, like "Operation Midway Blitz," use of riot weapons like gas and pepper balls throughout the district, operations at the facility in Broadview, information about the Defendants' practices (if any) governing their actions in the last month and a half, and specific incidents for which Plaintiff intends to introduce evidence at the hearing.

Third, the purpose of the expedited and limited discovery is for preparation for the preliminary injunction hearing. Conducting discovery in advance of this particular preliminary injunction hearing is especially crucial because—as another court in this district recently observed in granting the separate temporary restraining order in *State of Illinois & Chicago of Chicago v. Trump et al*—the government's declarations justifying its uses of force in the immigration context cannot be accepted at face value. *See* No. 25-CV-12174, 2025 WL 2886645, at *5 (N.D. Ill. Oct. 10, 2025) ("While the Court does not doubt that there have been acts of vandalism, civil disobedience, and even assaults on federal agents, the Court cannot conclude that Defendants' declarations are reliable."). The government's many assertions in this case that its agents use force only when necessary, that no retaliation for the exercise of First

---

[2] Defendant Bovino has been extensively involved in overseeing and participating in uses of force at Broadview, in Chicago, and elsewhere, including last weekend on the southeast side. At Broadview, Defendant Noem and Bovino were recorded specifically briefing federal agents, encouraging force, and declaring a "free arrest zone."

Amendment rights is intended, and that State and local law enforcement are unwilling or unable to control crowds, simply must be tested by the adversarial process. To do so, Plaintiffs need to engage the tools of discovery.

Finally, the burden on the Defendants is minimal, particularly given the limited nature of the discovery sought and the fact that Plaintiffs are not seeking discovery into Defendants (like the President or the Attorney General) that would implicate other issues that go beyond the scope of the hearing. In addition, again, the timing is appropriate: after this Court has issued a TRO.

In short, good cause exists for this limited, tailored discovery to be conducted on an expedited basis.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request this Court grant the motion for expedited discovery described above and permit Plaintiffs to: (1) conduct the depositions of Field Director Russell Hott, Secretary Kristi Noem, Deputy Chief of Staff Stephen Miller, Chief Patrol Agent Gregory Bovino, and Deputy Chief Patrol Agent Daniel Parra; and (2) issue up to 25 document requests answerable within 10 days.

    Respectfully Submitted,

    /s/ David B. Owens
    *One of Plaintiffs' Attorneys*

    **LOEVY + LOEVY**
    Office: (312) 243-5900 / Cell: (312) 590-5449

    SEATTLE
    Civil Rights and Justice Clinic
    University of Washington Law School
    William H. Gates Hall, Suite 265
    P.O. Box 85110, Seattle, WA 98145-1110

    LOS ANGELES

333 S Grand Ave Suite 3310
Los Angeles, CA 90071

CHICAGO
311 N. Aberdeen St. 3FL
Chicago, IL 60607
**www.loevy.com**