IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO HEADLINE CLUB *et al.* ) | |
| ) | |
| Plaintiffs, ) | Case No. 25-cv-12173 |
| ) | |
| v. ) | |
| ) | |
| KRISTI NOEM, Secretary of U.S. ) | |
| Department of Homeland Security, in her ) | |
| official capacity, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**Plaintiffs' Renewed Motion for Limited and Expedited Discovery**
**<u>In Advance of Preliminary Injunction Hearing</u>**

Now come Plaintiffs, Chicago Headline Club, et al, by and through their counsel, and respectfully renew their motion seeking an order permitting limited and expedited discovery in advance of the preliminary injunction hearing, and state:

**INTRODUCTION**

At the Court's direction, Plaintiffs bring this renewed motion for expedited, and limited discovery. The motion, as requested, sets forth the specific discovery sought, and why Plaintiff's seek it. Based upon the Court's ruling at the October 16, 2025 hearing, this motion explains why the Court should order the expedited depositions of (1) Chief Patrol Agent Gregory Bovino, who Defendants do not dispute is in practice directing Operation Midway Blitz including specific protest policing activities; (2) ICE Field Director Russell Hott, Defendants' declarant in this matter; and (3) CBP Deputy Chief Patrol Agent Daniel Parra, also Defendants' declarant.[1] This

---

[1] At the hearing on October 16, the Court denied, without prejudice, Plaintiffs' motion to take the depositions of Defendant Secretary Noem and Deputy Chief of Staff Stephen Miller at this time. Plaintiffs

motion also sets forth the basis for ten expedited requests for production at this stage, which is attached as Exhibit 1.

Good cause exists for this limited and expedited discovery, which is relevant and necessary to inform Plaintiffs and the Court of the details, practices, and motivations behind what Plaintiffs contend are Defendants' unconstitutional actions toward activity protected by the First Amendment throughout this District. Having some limited discovery will aid the Court in adjudging the credibility and validity of Defendants' assertions about the (alarming) episodes Plaintiffs and their witnesses recount, which Defendants claim are "proper and appropriate and reasonable use of crowd control devices." Transcript of 10/6/2025 Hearing at 17:6-7. Indeed, ordering the requested limited and expedited discovery will assist Plaintiffs and the Court to

---

respectfully submit that these depositions are appropriate because these Trump Administration officials have actively engaged and directed a practice of viewpoint discrimination and retaliation exacted against Plaintiffs, which is relevant to Plaintiffs' First Amendment claims, on which the Court has already granted temporary relief. Specifically, Plaintiffs take the position that they are being subjected to unlawful tactics of excessive and retaliatory dispersals, arrests, and violence, precisely because of the content of their speech, and that Defendants and their agents are using those tactics at the direction of Defendant Noem and others in the Trump Administration, including Deputy Chief of Staff Miller. Consider that Defendant Noem has visited multiple locations in this District, including demonstrations in Broadview, has directed federal agents in how to conduct arrests and use force, and has expressly encouraged violence in response to the protest activity *See* Benny Johnson (@bennyjohnson), "Left-wing extremists surrounded this ICE facility in Chicago. Federal agents crushed the threat immediately. This is the pep talk from [Secretary Noem] that stopped the threat dead in its tracks. Listen...", X.com, (Timestamp 1:02-1:25, 2:38-2:42 min), (Oct. 3, 2025, 1:05 PM), available at https://x.com/bennyjohnson/status/1974174065985470970 (last visited Oct. 5, 2025). Or consider that Stephen Miller has defended the "war" that the Trump Administration is waging on Chicago as being justified because politicians and civilians in this District support the human dignity of immigrants. [*See* Stephen Miller (@StephenM), repost: "Stephen Miller calls out failed Illinois Governor JB Pritzker: . . .", X.com, (Oct. 15, 2025, 10:55pm), available online at https://x.com/ProudElephantUS/status/1978671177624076497 (last visited Oct. 16, 2025). Obtaining the testimony of these witnesses is relevant and proportional to further illuminating Defendants' practice of viewpoint discrimination and unlawful retaliation, and it would rebut the government's defense that the reason for federal officers' use of force against Plaintiffs is because of a danger presented by Plaintiffs' activities. For those reasons, Plaintiffs respectfully request that this Court reconsider its denial of Plaintiff's motion concerning the depositions Noem and Miller, or allow Plaintiffs to renew that motion at an appropriate time in the future.

streamline the preliminary injunction hearing. Respectfully, the Court should grant Plaintiffs' motion and order the discovery be fulfilled on Plaintiffs' proposed schedule.

## RELEVANT BACKGROUND

Plaintiffs allege that Defendants have committed, and are continuing to commit, systematic and widespread constitutional and statutory violations of the law in the Northern District of Illinois. *See generally* Dkt. 1. Some of that misconduct has occurred at the Broadview Detention Facility, where federal officers deployed tear gas, flash bang grenades, pepper balls, and other projectiles against protesters, religious practitioners, and journalists. Dkt. 1 ¶¶ 83-102; Dkt. 21 at 16-20. Other instances of similar misconduct have occurred in neighborhoods across Chicago. Dkt. 1 ¶¶ 103-06; Dkt. 21 at 20-21. These instances of misconduct bear a consistent pattern: agents have abused dispersal orders against individuals who have a right to exercise their First Amendment rights in a public place and then, without meaningful warning, inflicted excessive and retaliatory force and arrests on protestors, journalists, and clergy who pose no imminent threat of violence. These consistent actions—suggestive of a unified practice—supports Plaintiffs claims under the First Amendment, Fourth Amendment, and the Religious Freedom Restoration Act. *See generally* Dkt. 1 (Complaint).

Defendants contend that the Broadview Detention Facility in particular has been "under siege" the past few weeks, and that officers were using force only against individuals who were "attack[ing] law enforcement officers," "engaging in riot[s]," or who were otherwise caught up in the incidental effects of using force to quell this alleged conduct. *E.g.* Transcript of 10/6/2025 Hearing at 10-18. Plaintiffs strenuously disagree with that characterization (which has often been based on the government's assertions), given the wealth of declarations and recordings that capture federal officers attacking peaceful civilians. *E.g.*, Dkt. 21 at 28-30 (describing this evidence).

3

This Court issued a TRO enjoining federal agents from, among other requirements, engaging in unlawful dispersals and using excessive and retaliatory force against peaceful protestors, journalists, clergy, and requiring agents wear identification. Dkt. 42. The parties are now preparing for a preliminary injunction hearing set for November 5, 2025.

Plaintiffs seek to conduct limited depositions and serve narrow requests for production to ensure that the presentation at the hearing is streamlined and informed by details of the events from Defendants' knowledgeable actors and policymakers, rather than evaluating Defendants' claims in the abstract (from declarations) or completely on the fly (from live witnesses).

### A. Plaintiffs Seek Depositions that Are Limited and Relevant to the Issues At the Preliminary Injunction Hearing and Necessary to Ensure a Fulsome Record is Presented At that Hearing

Given this Court's ruling, *see supra* n.1, Plaintiffs address their request to depose (1) Chief Patrol Agent Gregory Bovino, (2) Field Director Russell Hott, and (3) Deputy Chief Patrol Agent Daniel Parra. They are personally and at a policymaking level involved in the actions challenged by this lawsuit, enjoined by the TRO, and that will be the focus of the preliminary injunction hearing.

First, Defendant Bovino has not only overseen the federal agents in this District but has personally participated in using force against demonstrators in the Northern District of Illinois. *See* Dkt. 22-32 ¶ 88 (describing Defendant Bovino "charging demonstrators who had retreated to a greenspace and…grabbing them indiscriminately, throwing them on the ground, and detaining them"). Bovino's involvement has been widely reported and recorded.[2] Video footage shows

---

[2] *See* Jermont Terry, Officials set up designated protest zone outside ICE facility in Broadview, Illinois, CBS News Chicago (October 2, 2025), available at https://www.cbsnews.com/chicago/news/broadview-ice-facility-designated-protest-zone-concrete-barriers/; ABC7 Chicago (@ABC7Chicago), "Homeland Security Secretary Kristi Noem and Border Patrol Commander Greg Bovino were seen on the roof of the ICE facility in Broadview on Friday morning." X.com (Oct. 3, 2025, 8:30 AM), available at https://x.com/ABC7Chicago/status/1974104795074994221.

Defendant Bovino directing agents to use force as well as himself specifically participating in the use of force against journalists and other peaceful individuals. *See, e.g.*, 22-45 (10/3/25 Video of Bovino); Dkt. 22-32, (Kerlikowske Decl. ¶¶, 32, 88); Dkt. 22-16 (Thrush Decl.)[3] Significantly, on October 2, Defendant Bovino (alongside Defendant Noem) instructed federal officers to continue "going hard" at protesters for the way they were "talking" and "speaking."[4] Defendant Bovino declared that the people assembled outside the Broadview Detention Facility were "an unsafe crowd" and he proclaimed that the newly-erected "Free Speech Zone" would become a "Free *Arrest* Zone."[5]

Second, Defendant Hott, as described in his declaration prepared for a different lawsuit but submitted in this matter, *see* Dkt. 35-1, has overseen operations at Broadview over the last month.

Third, Deputy Chief Patrol Agent Parra was the other local declarant who the government has relied upon in opposing the TRO. *See* Dkt. 35-9. In his capacity as the Deputy Chief Patrol Agent of the El Centro Sector for CBP, Agent Parra has overseen border patrol agents deployed in this District as described in his declaration. *See* Dkt. 35-9. He is responsible for ensuring that CBP officers have "the requisite training" for engaging with protesters and other individuals. *Id.* ¶ 4. In his declaration, Agent Parra asserted (incorrectly) that there rioters outside of Broadview Detention Facility who are "masked as protesters," though he did not explain the basis for that contention. *Id.* ¶10.

---

[3] *See also* FREEDOMNEWS TV, *Greg Bovino vs Anti-ICE Protesters – BROADVIEW CHICAGO*, YouTube (Oct. 3, 2025), available online at https://www.youtube.com/watch?v=h1fn-oF3ZBE (last visited Oct. 16, 2025).
[4] Benny Johnson (@bennyjohnson), "Left-wing extremists surrounded this ICE facility in Chicago. Federal agents crushed the threat immediately. This is the pep talk from [Secretary Noem] that stopped the threat dead in its tracks. Listen...", X.com (Oct. 3, 2025, 1:05 PM), available online at https://x.com/bennyjohnson/status/1974174065985470970 (last visited Oct. 16, 2025).
[5] *Id.*

5

> **B.    Plaintiffs Document Requests Are Limited and Relevant to the Issues At the Preliminary Injunction Hearing and Necessary to Ensure a Fulsome Record is Presented At that Hearing**

Plaintiffs' requests for production are limited in nature and focused, necessarily, by timeframe: they focus on Operation Midway Blitz, which (as far as Plaintiffs know) began just last month. Exhibit 1 at 2. The requests concern documents and communications about the subjects of the TRO and thus the preliminary injunction hearing: "any Federal Agent's use of force, including use of crowd control weapons, against demonstrators, journalists, clergy, or other civilians" and whether the government has assessed those actions as "justified under the circumstances." *Id.* at Request No. 2. The Requests for Production seek information about what was communicated to federal agents were and how, if at all, they were trained on these same topics. *Id.* at Requests No. 3-4. Plaintiffs seek documents about what, if any, documents Defendants have that would track uses of force during Operation Midway Blitz, and specifically uses of force against three or more people in this District since September 2, 2025. *Id.* at Request No. 5.

Plaintiffs further seek to identify the people who "used force against any plaintiff or any declarant disclosed in this case." *Id.* at No. 6. Certainly, this discovery is warranted so that Plaintiffs can be prepared to rebut any allegation by unknown federal agents about what took place with the Plaintiffs, and the declarants, themselves. In the same vein, Plaintiffs seek documents about the declarations the *government* has filed in this case, including that of Daniel Parra and Russell Hott (who Plaintiffs also seek to depose), *Id.* at Requests No. 8 & 10. Relatedly, Plaintiffs seek documents pertaining to coordination, if any, with local law enforcement agencies (like Broadview Police Department, the Chicago Police Department, and the Illinois State Police) during Operation Midway Blitz. These issues pertain not only to the basis for the TRO entered in this case but also show what Plaintiffs contend is a departure from

accepted policing standards that provides evidence of Defendants' intent and what Plaintiffs contend is an unusual, viewpoint-based attack on civilians in Chicago due to their political believes and the party affiliations of many elected officials. *Jimenez v. City of Chicago*, 732 F.3d 710, 719–22 (7th Cir. 2013) (holding that departures from accepted law enforcement practices can be circumstantial evidence of intent or to support an inference of deliberated, as opposed to negligent, conduct).

## DISCUSSION

### I. This Court Has Broad Authority to Order Expedited Discovery Before the Preliminary Injunction Hearing

This Court generally has "wide discretion in managing the discovery process." *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011) (citing *Merrill Lynch v. O'Connor,* 194 F.R.D. 618, 623 (N.D. Ill. 2000)). This Court also has explicit authority to order discovery, including before the parties have conducted a conference under Rule 26(f), under the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 26(d)(1) (permitting early discovery where authorized "by court order").

In considering a request for expedited discovery, this Court considers whether good cause has been shown in light of the circumstances, including but not limited to: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Ibarra*, 816 F. Supp. 2d at 554 (internal quotes and citation omitted). Considering these factors, and the circumstances of this case, expedited and limited discovery is appropriate.

## II. Good Cause Exists to Permit The Requested Discovery on an Expedited Basis

The circumstances here overwhelmingly support permitting limited expedited discovery to prepare for the preliminary injunction hearing.

First, in this District, a pending preliminary injunction hearing often establishes good cause for expedited discovery. *See Admin Inc. v. Kohan*, No. 23-CV-04430, 2023 WL 4625897, at *13 (N.D. Ill. July 19, 2023) (citing *Nobel Biocare USA, Inc. v. Lynch*, 1999 WL 958501, at *4 (N.D. Ill. Sept. 15, 1999)) ("[E]xpedited discovery is appropriate in light of the scheduling preliminary injunction hearing, so the Court and the parties will have a fuller evidentiary record for that hearing."). The good cause for expedited discovery for a preliminary injunction is more obvious in a case where, as here, the court has already granted a TRO. *See Penske Truck Leasing Co., L.P. v. Cent. States, Se. & Sw. Areas Pension Plan*, No. 21-CV-05518, 2022 WL 1028927, at *3 (N.D. Ill. Apr. 6, 2022) (noting that expedited discovery was allowed in "conjunction with [the plaintiff's] motion for a preliminary injunction" and that focused on the "circumstances surrounding" the underlying dispute, and considering the "fruits of the expedited discovery" in assessing a motion for preliminary injunction); *EASi, LLC v. Gaffar*, No. 20-CV-1235-MMM-JEH, 2020 WL 3868394, at *3 (C.D. Ill. July 9, 2020) (noting the Court granted expedited discovery *during the pendency* of consideration of a TRO where the court "provided the parties with a discovery schedule specific to Plaintiff's request for a preliminary injunction"); *Am. Fam. Mut. Ins. Co. v. Roth*, No. 05 C 3839, 2005 WL 3700232, at *1 (N.D. Ill. Aug. 5, 2005) (noting the grant of expedited discovery following issuance of TRO); *Nobel Biocare USA, Inc. v. Lynch*, No. 99 C 5774, 1999 WL 958501, at *4 (N.D. Ill. Sept. 15, 1999) (granting a TRO and then also granting "plaintiff's motion for expedited discovery as it provides a fuller record for the court when deciding whether to issue a preliminary injunction.").

Second, the breadth and burden of the requests also weigh in favor of permitting expedited discovery in this case. *See Ibarra*, 816 F. Supp. 2d at 554. The discovery Plaintiffs seek is targeted to the violations and the core of the facts at issue here. For example, Plaintiffs seek discovery about the internal government assessment and incidents at specific times and specific locations. The requested discovery is also significantly temporally limited to lessen the volume of responsive materials and burdens on Defendants. For example, much of the requests are tied to Operation Midway Blitz, which according to Defendants they began to execute early September. The purpose is to provide the Court with the evidence needed to appropriately balance the vital interests present in this case.

As to breadth, Hott, Bovino, and Parra were each personally involved in and directing the actions of the federal agents on the ground, including during the violations of the TRO Plaintiffs have already identified.

These depositions will be limited in time and scope; they will pertain chiefly to ICE actions in this District since the inception of Operation Midway Blitz, and this Court's issuance of the TRO.[6] As mentioned on the record, Plaintiffs anticipate relatively short depositions. In that vein, Plaintiffs are willing to reduce their request from four to three hours for each witness if that would assuage any concerns about the appropriate length.

To narrow the discovery breadth and lessen burdens on Defendants, Plaintiffs are not at this time seeking to have the government or any defendant answer interrogatories or requests for admission.

As for the document requests, Plaintiffs seek a targeted set of ten requests for production. Together, these categories seek information limited to the arguments at issue in the preliminary

---

[6] The one exception, for Bovino, would be limited questioning about the practices he implemented in Los Angeles and then replicated—albeit on steroids—in this District and throughout the Chicagoland area.

9

injunction hearing, like the presence or absence of coordination with local law enforcement that is accustomed to protest policing, the scope and mission of "Operation Midway Blitz" and its relation to protest policing, and specific incidents for which Plaintiff intends to introduce evidence at the hearing.

Third, the purpose of the expedited and limited discovery is for preparation for the preliminary injunction hearing. Conducting discovery in advance of this particular preliminary injunction hearing is especially crucial because—as another court in this district recently observed in granting the separate temporary restraining order in *State of Illinois & Chicago of Chicago v. Trump et al*—the government's declarations justifying its tactics, practices, and uses of force in this District cannot be accepted at face value. *See* No. 25-CV-12174, 2025 WL 2886645, at *5 (N.D. Ill. Oct. 10, 2025) ("While the Court does not doubt that there have been acts of vandalism, civil disobedience, and even assaults on federal agents, the Court cannot conclude that Defendants' declarations are reliable."). The government's many assertions in this case that its agents use force only when necessary, that no retaliation for the exercise of First Amendment rights is occuring, and that State and local law enforcement are unwilling or unable to control crowds, simply must be tested by the adversarial process. To do so, Plaintiffs need to engage the tools of discovery. And doing so will assist Plaintiffs and the Court to focus and streamline the preliminary injunction hearing, with the goal to further equip the Court to issue a fully informed and timely preliminary injunction ruling.

Finally, the burden on the Defendants is minimal, particularly given the limited nature of the discovery sought. Indeed, the discovery is principally aimed at surfacing the information and evidence—to the extent it exists—that purports to underlie the assertions Defendants have already made and the representations Defendants' Counsel has made in Court. To the extent

Defendants are relying upon internal information or documentary evidence supporting their perception and recitation of the facts, it will be minimally burdensome to produce that discoverable information rather than relying on assertions made in summary form. Plaintiffs are also not seeking discovery at this stage into named Defendants (like the President or the Attorney General), lessening the overall burdens on the government (and the Court) for purposes of this preliminary injunction hearing. In short, good cause exists for this limited, tailored discovery to be conducted on an expedited basis.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request this Court grant the motion for expedited discovery described above and permit Plaintiffs to: (1) conduct the depositions of Secretary Kristi Noem, Deputy Chief of Staff Stephen Miller, Chief Patrol Agent Gregory Bovino, Field Director Russell Hott, and Deputy Chief Patrol Agent Daniel Parra by no later than October 31; and (2) issue ten requests for production answerable no later than one week after issue.

Respectfully Submitted,

/s/ David B. Owens
*One of Plaintiffs' Attorneys*

Jon Loevy
Locke Bowman
Steve Art
Heather Lewis Donnell
Theresa Kleinhaus
Matt Topic
Lindsay Hagy
Jordan Poole
Dominique Gilbert
Justin Hill
Aaron Tucek
Alexandra Wolfson
Scott Rauscher
**LOEVY + LOEVY**
311 N. Aberdeen Street
Chicago, Illinois 60647
(312) 243-5900
steve@loevy.com

Elizabeth Wang
Isaac Green
**LOEVY + LOEVY**
2060 Broadway, Ste. 460
Boulder, CO 80302

David B. Owens
**LOEVY + LOEVY**
℅ Civil Rights and Justice Clinic
University of Washington Law School
William H. Gates Hall, Suite 265
Seattle, WA 98145-1110

Wallace Hilke
**COMMUNITY JUSTICE AND CIVIL RIGHTS CLINIC**
Bluhm Legal Clinic, Northwestern Pritzker School of Law
375 E. Chicago Ave.
Chicago, IL 60611
(312) 503-2224
wally.hilke@law.northwestern.edu

Craig B. Futterman
**MANDEL LEGAL AID CLINIC**
University of Chicago Law School
6020 S. University
Chicago, IL 60637
(773) 702-9611
futterman@uchicago.edu

Hayden Johnson*
Katie Schwartzmann*
Conor Gaffney*
**PROTECT DEMOCRACY PROJECT**
2020 Pennsylvania Ave NW, Ste 601
Washington DC 20006
(202) 579-4582
hayden.johnson@protectdemocracy.org
katie.schwartzmann@protectdemocracy.org
conor.gaffney@protectdemocracy.org
* *Application for pro hac vice forthcoming*

Daniel Massoglia
Hannah C. Marion
**FIRST DEFENSE LEGAL AID**
601 S. California Ave.
Chicago, IL 60612
(336) 575-6968
daniel@first-defense.org
hannah@first-defense.org

Kevin M. Fee, Jr.
Rebecca Glenberg
**ROGER BALDWIN FOUNDATION OF ACLU, INC.**
150 N. Michigan, Suite 600
Chicago, IL 60601
(312) 201-9740
kfee@aclu-il.org
rglenberg@aclu-il.org