## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO HEADLINE CLUB *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 25-cv-12173 |
| | ) | |
| v. | ) | |
| | ) | |
| KRISTI NOEM, Secretary of U.S. Department of Homeland Security, in her official capacity, *et al.*, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### Plaintiffs' Motion to Enforce the Court's Temporary Restraining Order

Plaintiffs Chicago Headline Club et al., through their attorneys, respectfully request that the Court take notice of the below violations of the Court's temporary restraining order [Dkt. 42] and order appropriate relief.

### INTRODUCTION

Last week, the Court entered a temporary restraining order to prevent the indiscriminate use of force and crowd-control tactics by federal immigration agents against protesters, journalists, and religious practitioners in the Northern District of Illinois. The Court concluded that the Plaintiffs—journalists, protesters, and clergy—had submitted evidence that Defendants and their agents unlawfully retaliated against them for their first amendment activity, and had "assaulted and deployed tear gas, pepper balls, rubber bullets, flashbang grenades, and other munitions against peaceful protesters who are engaged in the lawful expression of their First Amendment rights." Dkt. 43 at 6-7.

The Court's order required Defendants to significantly circumscribe their uses of force and to prominently identify themselves in public so that they could be held accountable for their

actions. Dkt. 42. Defendants have failed to comply with the letter and spirit of that order. Instead, as demonstrated by photographic and video evidence, and as attested by people harmed by Defendants' use of force, those First and Fourth Amendment violations have continued. Plaintiffs bring this motion to notify the Court that its order is not being complied with, and to seek relief for violations of the order.

Pursuant to the Court's order that Plaintiffs should confer at least 24 hours before filing a request for relief, Plaintiffs conferred by phone with counsel for Defendants on October 15 and October 16, 2025. Plaintiffs discussed the October 12 Albany Park and the October 14 East Side incidents described below during the conferral on October 15, 2025.

## LEGAL STANDARD

A court has inherent power to take the necessary actions to ensure compliance with its orders, including by modifying those orders if necessary. "[A] district court ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case." *Dietz v. Bouldin*, 579 U.S. 40, 46, 136 S. Ct. 1885, 1892, 195 L. Ed. 2d 161 (2016). This includes the power to modify temporary or preliminary injunctive relief that has been entered. *See Chicago Hous. Tenants Org., Inc. v. Chicago Hous. Auth.*, 512 F.2d 19, 22 (7th Cir. 1975) (noting that district court retained "the power to modify the terms of the order" of preliminary injunctive relief). Indeed, "[a] court that invokes equity's power to remedy a constitutional violation by an injunction mandating systemic changes to an institution has the continuing duty and responsibility to assess the efficacy and consequences of its order." *Brown v. Plata*, 563 U.S. 493, 542, 131 S. Ct. 1910, 1946, 179 L. Ed. 2d 969 (2011).

### VIOLATIONS OF THE TEMPORARY RESTRAINING ORDER

I.  **Excessive Force and First Amendment Retaliation in Albany Park, Chicago, on October 12, 2025**

On October 12, 2025, federal immigration agents wearing no identification made an immigration arrest in Chicago's Albany Park neighborhood near the intersection of N. Sawyer and W. Wilson Avenue in the early afternoon. Neighbors, seeing the arrest, began to gather to observe, record, and protest ICE.[1,2]

A federal agent in a Black Nissan Rogue began to drive, and accelerated, as protesters stood in the street. There was no violence or threat to the officers that preceded this use of force, and the Court has prohibited striking any person with a vehicle unless that person poses such a risk of causing serious bodily injury or death that the officer would be authorized to use deadly force (Dkt. 42 ¶ 1(g)).[3] After the agent drove at the protesters, a woman could be heard screaming and yelling, "you ran me over!" A short time later, another video showed agents again driving at and striking a woman with their vehicle.[4]

A publicly posted video shows protesters standing on the sidewalk and in the street.[5] The protesters expressed their beliefs that the agents' activities were inappropriate and excessive, saying things like "get out of here." Then, an agent emerged from a white vehicle with a canister in his hand, several cars behind the protesters. Less than 30 seconds later, the protesters started to disperse because the agent has thrown tear gas into the crowd.[6] As the Chicago Sun Times

---

[1] Available online at https://blockclubchicago.org/2025/10/13/federal-agents-deploy-tear-gas-in-albany-park-as-neighbors-block-immigration-arrest/ (last visited on Oct. 16, 2025).

[2] Available online at https://chicago.suntimes.com/immigration/2025/10/12/ice-chicago-albany-park-tear-gas. (last visited on Oct. 16, 2025).

[3] Available online at https://vimeo.com/1126897112?share=copy at 1:50-2:05 (last visited on Oct. 16, 2025).

[4] Available online at https://vimeo.com/1126897694?share=copy (last visited on Oct. 16, 2025).

[5] Available online at https://www.facebook.com/reel/665080789983900 (last visited on Oct. 16, 2025).

[6] *Id.* at 0:18 – 0:48

reported: "witnesses said they heard no warnings, and none can be heard on videos of the incident showing the scene leading up to the gas being thrown in the middle of a residential street".[7]

In this and other videos, no warning that the agents will deploy tear gas can be heard; nor was there any sign of violence or physical threat that would provoke the use of chemical weapons in a densely residential neighborhood.[8] [9]

Despite these uses of force being prohibited by the Court's order, Block Club Chicago quoted Tricia McLaughlin, the Department of Homeland Security Assistant Secretary, as describing the agents' use of force as "minimal force."[10]

Defendants' agents violated several provisions of the Court's Temporary Restraining Order during these interactions:

- Violation of TRO Clause 1(d) – agents used tear gas on protesters who did not pose an immediate safety threat;
- Violation of TRO Clause 1(e) – agents used tear gas when it was reasonably foreseeable doing so would injure protesters, and doing so was not necessary to stop an immediate and serious threat of physical harm to a person;
- Violation of TRO Clause 1(g) – agents struck people with vehicles when they did not pose an immediate threat of bodily injury or death to a person;
- Violation of TRO Clause 1(i) – agents used CS gas without giving two separate and audible warnings;
- Violation of TRO Clause 2 – agents failed to wear visible identification affixed to their uniforms or helmets and prominently displayed.

## II. Excessive Force and First Amendment Retaliation in East Chicago on October 14, 2025

On October 14, 2025, similarly unidentified federal immigration agents engaged in high-speed car chases throughout the residential East Chicago neighborhood. Eventually, agents

---

[7] *Supra* n. 2
[8] Available online at https://www.facebook.com/reel/665080789983900 (lats visited on Oct. 16, 2025).
[9] Available online at https://bsky.app/profile/thesidewalkschool.bsky.social/post/3m2zcizy5g22l (last visited on Oct. 16, 2025).
[10] *Supra* n. 1

rammed into the vehicle they were chasing using what officials described as a "precision immobilization stop" maneuver, which many police departments have banned or restricted because it is too dangerous to use, especially in residential areas.[11], [12] The stop immobilized both vehicles at the intersection of South 105th Street and Avenue N.

Manuel Garcia, a resident who lives nearby, saw the crash and approached it to observe the agents. Ex. 1 (Garcia Decl.) ¶ 6. He recorded them with his phone, taking videos and photographs. Publicly available photographs show agents massed at the intersection without any prominently displayed visible identification:



[13]

Mr. Garcia saw agents don gas masks. They carried weapons that looked like guns, and canisters. He saw agents arrest a girl on the street, and it looked like the agents were choking her.

---

[11] Available online at https://chicago.suntimes.com/news/2025/10/15/pit-maneuver-feds-car-chase (last visited on Oct. 16, 2025).

[12] Available online at https://www.nbcnews.com/news/crime-courts/2016-least-30-fleeing-drivers-have-died-after-police-performed-n1237723 (last visited on Oct. 16, 2025).

[13] Available at https://chicago.suntimes.com/immigration/2025/10/14/crash-involving-immigration-agents-in-east-side-leads-to-tear-gas-detentions (last visited Oct. 17, 2025)

Mr. Garcia told the agents to leave the girl alone. Suddenly, he noticed tear gas in the air. He never heard any warning about tear gas or instructions from agents to leave before he started to inhale the tear gas. Mr. Garcia was also shot by the agents with what felt like rubber bullets. Mr. Garcia helped his four-year-old daughter, who was nearby, escape to safety. Ex. 1, (Garcia. Decl.) ¶¶ 9-10.

Later, Mr. Garcia continued to observe the protest, but from a greater distance. He again saw tear gas in the street—again, without any audible warning—and he saw a woman calling for help with her baby. Mr. Garcia helped the woman carry her baby away from the scene. *Id.* ¶¶ 13-14. An agent lobbed a tear gas canister that landed feet away from Mr. Garcia, the woman, and her baby as they escaped:



---

[14] Available at https://bsky.app/profile/pritzkerposting.bsky.social/post/3m375skills25 *See* 1:02-1:12 (last visited Oct. 17, 2025)

The below photo from the Chicago Sun Times shows a federal agent lobbing tear gas towards the crowd:



Defendants' agents violated nearly every provision of the Court's Temporary Restraining Order during these interactions:

- Violation of TRO Clause 1(a) – agents dispersed and used force against journalists through their use of tear gas, and they prepared to use the gas, as evidenced by their donning of gas masks, without giving the journalists reasonable time to comply and observe.
- Violation of TRO Clause 1(d) – agents used rubber bullets or other similar munitions and tear gas on protesters who did not pose an immediate safety threat;
- Violation of TRO Clause 1(e) – agents used tear gas and rubber bullets when it was reasonably foreseeable doing so would injure the press and protesters, and doing so was not necessary to stop an immediate and serious threat of physical harm to a person;
- Violation of TRO Clause 1(f) – agents used CS gas canisters above the head of the crowd and used less-lethal munitions to strike people, even though there were not circumstances that would have authorized the use of deadly force;

---

[15] Available at https://chicago.suntimes.com/immigration/2025/10/14/crash-involving-immigration-agents-in-east-side-leads-to-tear-gas-detentions (last visited Oct. 17, 2025)

- Violation of TRO Clause 1(i) – agents used CS gas and rubber bullets without giving two separate and audible warnings;
- Violation of TRO Clause 2 – agents failed to wear visible identification affixed to their uniforms or helmets and prominently displayed.

### III.    Widespread Failures to Display Prominent Identification

This Court entered its temporary restraining order on October 9, 2025, and Defendants were instructed to provide the guidance to all law enforcement personnel, officers, and agents deployed in the Northern District of Illinois, and all of their supervisors in every step of the chain of command, across the Northern District of Illinois, no later than 11:59 pm on October 10, 2025. That order included a command that all agents, except those who are engaged in undercover operations or otherwise wear no uniform or other distinguishing clothing or equipment, must "have visible identification . . . affixed to their uniforms or helmets and prominently displayed." Dkt. 42 (Temporary Restraining Order) ¶ 2. The Court made the spirit and intent of this requirement clear during the October 8 hearing on the TRO motion, stating: "I'm okay with excepting those assigned by a superior officer to undercover duties. That covers kind of the exception here that's in the statute. But otherwise, everybody else needs to be wearing something that identifies them numerically and by agency." Dkt. 44 at 62.

That order has simply not been followed, as shown by the following images from reporting on ICE and CBP encounters since the Court's order went into effect:

**October 16 Interaction in Evanston, Illinois:** A video of ICE and/or Border Patrol agents in Evanston, including an agent wearing a prominent "U.S. Border Patrol" vest (see the 0:17 – 0:21 mark), but no badge number, name, or other identifier. The video shows an agent holding pepper spray in has hand, pointing it a protester, and taunting as he rides away: "you want some? you want some? let's go." At least two agents, despite wearing vests identifying

them as federal law enforcement, had no visible unique identification of any kind, including the agent pictured below:



[16]

**October 14 Protest at 105th St and Ave N, Chicago:** Further photos of this incident, described in more detail above, confirm that agents widely failed to prominently display unique identifying information: [17]



---

[16] Available at https://www.reddit.com/r/illinois/comments/1o8cyra/get_off_my_lawn_evanston_residents_heckle_out_of/ (last visited Oct. 17, 2025)
[17] Available at https://chicago.suntimes.com/immigration/2025/10/14/crash-involving-immigration-agents-in-east-side-leads-to-tear-gas-detentions (last visited Oct. 17, 2025)



[18]

**October 12 Protest in Albany Park, Chicago:** These photographs further demonstrate that

federal immigration agents failed to display prominent unique identification:



[19]

---

**REQUEST FOR RELIEF**

Plaintiffs respectfully request that the Court exercise its discretion and modify its

Temporary Restraining Order:

- Requiring Defendants to provide information to Plaintiffs within twelve hours of the use of any riot control weapons within the Northern District of Illinois, including a declaration from an individual within DHS under penalty of perjury describing: the weapons used, the time and place of their use, the justification for their use, and why their use complied (or failed to comply) with the Court's order), as well as any documents or incident reports related to the use of riot control weapons;

- Requiring Defendants to take additional, specific steps to ensure any on-duty federal agent subject to this order who is not operating in an undercover capacity can be easily identified by a unique identifier that will ensure accountability for their actions; and,

- Satisfying any additional requirements the Court deems necessary to ensure compliance with its order.


Respectfully submitted,
/s/Theresa Kleinhaus
Attorney for Plaintiffs


Jon Loevy

Heather Lewis Donnell

Locke Bowman

Steve Art

Theresa Kleinhaus

Matt Topic

Lindsay Hagy

Jordan Poole

Dominique Gilbert

Justin Hill

Aaron Tucek

Scott Rauscher

Craig B. Futterman

**MANDEL LEGAL AID CLINIC**

University of Chicago Law School

6020 S. University

Chicago, IL 60637

(773) 702-9611

futterman@uchicago.edu

Hayden Johnson*

Katie Schwartzmann*

Conor Gaffney*

**PROTECT DEMOCRACY PROJECT**

11

**LOEVY + LOEVY**
311 N. Aberdeen Street
Chicago, Illinois 60647
(312) 243-5900
steve@loevy.com

Elizabeth Wang
Isaac Green
**LOEVY + LOEVY**
2060 Broadway, Ste. 460
Boulder, CO 80302

David B. Owens
**LOEVY + LOEVY**
⁒ Civil Rights and Justice Clinic
University of Washington Law School
William H. Gates Hall, Suite 265
Seattle, WA 98145-1110

Wallace Hilke
**COMMUNITY JUSTICE AND CIVIL RIGHTS CLINIC**
Bluhm Legal Clinic, Northwestern Pritzker School of Law
375 E. Chicago Ave.
Chicago, IL 60611
(312) 503-2224
wally.hilke@law.northwestern.edu

2020 Pennsylvania Ave NW, Ste 601
Washington DC 20006
(202) 579-4582
hayden.johnson@protectdemocracy.org
*\* Application for pro hac vice forthcoming*

Daniel Massoglia
Hannah C. Marion
**FIRST DEFENSE LEGAL AID**
601 S. California Ave.
Chicago, IL 60612
(336) 575-6968
daniel@first-defense.org

Kevin M. Fee, Jr.
Rebecca Glenberg
Hirsh Joshi
**ROGER BALDWIN FOUNDATION OF ACLU, INC.**
150 N. Michigan, Suite 600
Chicago, IL 60601
(312) 201-9740
rglenberg@aclu-il.org

12