**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT COURT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| CHICAGO HEADLINE CLUB, *et al.*, | ) | |
| | ) | No. 25-cv-12173 |
| *Plaintiffs,* | ) | |
| | ) | Hon. Sara L. Ellis, |
| v. | ) | District Judge |
| | ) | |
| | ) | |
| KRISTI NOEM, Secretary, U.S. | ) | |
| Department of Homeland Security, in her | ) | |
| official capacity, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED
DISCOVERY**

Plaintiffs seek to probe "any justification or need for Operation Midway Blitz," despite the

Court in the October 16, 2025, hearing directing them to narrow their discovery requests to the

issued raised in their TRO motion. *See* ECF No. 54-1 at 3. Plaintiffs' request for expedited

discovery is untethered to the issues raised in their TRO motion or to their allegations of

Constitutional and statutory violations. Worse, Plaintiffs provide no legal basis for seeking to

review communications and justifications concerning the decision to initiate Operation Midway

Blitz, nor could they, since that decision is properly within the discretion of President Trump,

Secretary Noem, and other Executive Branch officials. *See* U.S. Const. Art. II, § 1, cl. 1.; 8 U.S.C.

§ 1103(a)(1) ("The Secretary of Homeland Security shall be charged with the administration and

enforcement of this chapter and all other laws relating to the immigration and naturalization of

aliens."). Plaintiffs have not alleged any facts that would call this authority into question let alone

shown how the enforcement of the Immigration and Nationality Act in Chicago somehow amounts

to viewpoint discrimination.

Given Plaintiffs' improper purpose for discovery, the Court should deny Plaintiffs' renewed request for expedited discovery on that score alone. But more so, federal courts set a high bar when departing from the ordinary discovery schedule. Plaintiffs' motion does not clear that bar. First, although a preliminary injunction motion is forthcoming, Plaintiffs want to go on a fishing expedition to seek documents and information largely irrelevant and outside the scope of their legal claims, rather than seek targeted and limited documents relevant to Plaintiffs' claims. Second, Plaintiffs seek broad and burdensome discovery; every discovery request is facially objectionable and likely impossible to produce in the 12 business days remaining until the hearing on November 5, 2025. Plaintiffs' proposed depositions are similarly overbroad and overburdensome, as they are not topic-limited but seem to seek general information not relevant to this case.

In sum, if Plaintiffs' proposed discovery is granted, it will likely involve significant motion practice over the next 12 days: motions for protective orders and motions to compel, which the Court will have to adjudicate in the short period of time remaining before the preliminary injunction hearing. The focus of the next several days will quickly turn into a load of emergency discovery disputes and privilege assertions that will sidetrack the parties and the Court from meaningful preparation for the motion for preliminary injunction. The Court should deny Plaintiffs' request for expedited discovery. Or, at a minimum, the Court should narrowly tailor any discovery it orders solely to readily available, non-privileged information that can be obtained and produced in the few days before the hearing based upon a finding that such information is necessary for adjudicating the alleged First Amendment, Fourth Amendment, and RFRA violations as argued in Plaintiffs' TRO motion.

## FACTUAL BACKGROUND

Plaintiffs recount their version of facts from the premise that Defendants are using illegal force during "peaceful" protests. Pls.' Renewed Mot. for Expedited Disc. ("Mot."), ECF 54. But the full context is that law enforcement officers in Chicago have been, and continue to be, attacked, injured, and impeded from enforcing federal law. *See generally* Declaration of Russell Hott ("Hott Decl."), ECF 35-1; Defs.' Opp'n to Pls. Mot. for TRO, ECF 35.

The following provides just some examples of the assaults on law enforcement:

- Protestors have blocked access to the facility and physically assaulted DHS employees attempting to go to or leave work, requiring that employees be escorted into the building by officers. Hott Decl. ¶ 9–10.

- Vandals have slashed the tires of law enforcement vehicles and in at least one instance poured flour into a gas tank. *Id.*

- Protestors have engaged in coordinated actions to trap law enforcement vehicles between two protestors while others slashed the tires. *Id.*

- During the weekend of September 19-21, 2025, DHS found an improvised explosive device on the scene. *Id.* ¶ 19.

- More than thirty officers have sustained injuries as a result of assaults during these events. *Id.* ¶ 22.

- An officer has been followed to his home and had his personal property broken into and vandalized. *Id.* ¶ 23.

Nonetheless, Plaintiffs claim that Defendants are violating the First Amendment, Fourth Amendment, and the Religious Freedom Restoration Act (RFRA). *See* Compl., ECF 1. On October 6, 2025, Plaintiffs sought a temporary restraining order, arguing that the rights of

protestors, the press, and religious observers under the First Amendment, Fourth Amendment, and RFRA were violated during encounters with law enforcement. ECF 21–22. The Court granted Plaintiffs' TRO motion. ECF 42–43. The Court set a briefing schedule on a forthcoming motion for preliminary injunction and set the preliminary injunction motion for a hearing on November 5, 2025. Ten days after filing their TRO motion, Plaintiffs seek renewed expedited discovery "in advance of the preliminary injunction hearing." Mot. at 1–12. The Court should deny their motion in full.

## LEGAL STANDARD

A party may not seek discovery before a Rule 26(f) conference except when authorized by court order. Fed. R. Civ. P. 26(d)(1). "Expedited discovery is not the norm," as courts have a duty to "protect defendants from unfair expedited discovery." *Hard Drive Prods., Inc. v. Doe*, 283 F.R.D. 409, 410 (N.D. Ill. 2012) (cleaned up). The party seeking expedited discovery must establish good cause for all expedited discovery requests. *Id.* Good cause exists where "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.*

In deciding whether to grant expedited discovery, courts in this circuit usually consider the following "reasonableness" factors: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011) (quotation omitted).

**ARGUMENT**[1]

**I.    The reasonableness factors do not support granting expedited discovery, especially not broad and burdensome discovery.**

      1.    A forthcoming preliminary injunction motion, standing alone, does not justify expedited discovery.

There is no preliminary injunction motion pending, but one is forthcoming according to Plaintiffs' representations.  But "[t]hat alone . . . does not entitle a party to expedited discovery." *Campaignzero, Inc. v. Staywoke Inc.*, No. 20-CV-06765, 2020 WL 7123066, at *2 (N.D. Ill. Dec. 4, 2020); *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009) (same).  This is so because, even when a preliminary injunction motion is pending, the moving party must show that it seeks evidence "to preserve the status quo." *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 7 (D.D.C. 2006).  Indeed, a court should not permit discovery into evidence that "radically transform[s] the status quo, on an expedited basis," as that is "not the purpose of a preliminary injunction, nor of the limited discovery that the courts traditionally permit a plaintiff to have to secure it."  *Id.*; *see also Chicago United Indus., Ltd. v.*

---

[1]  The Court correctly denied Plaintiffs' request to depose Secretary of Homeland Security Kristi Noem and White House Deputy Chief of Staff Stephen Miller, and there is no basis to reconsider that decision.  *See* Mot. at 1–2 n.1. As recognized by virtually every circuit court of appeals, "there is a presumption against deposing high-ranking government officials." *Kelley v. FBI*, No. CV 13-0825 (ABJ), 2015 WL 13648073, at *1 (D.D.C. July 16, 2015) (citing *Peoples v. U.S. Dep't of Agric.*, 427 F.2d 561, 567 (D.C. Cir. 1970)); *In re U.S. Dep't of Educ.*, 25 F.4th 692, 695 (9th Cir. 2022); *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203-04 (2d Cir. 2013); *In re United States (Jackson)*, 624 F.3d 1368, 1372-73, 1376 (11th Cir. 2010); *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993); *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586-87 (D.C. Cir. 1985); *Peoples v. USDA*, 427 F.2d 561, 567 (D.C. Cir. 1970) ("[S]ubjecting a cabinet officer to oral deposition is not normally countenanced."); *Warren Bank v. Camp*, 396 F.2d 52, 56 (6th Cir. 1968).  Indeed, courts of appeals have routinely granted the extraordinary remedy of mandamus to prevent such depositions. *See, e.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th at 692*; In re Clinton*, 973 F.3d 106, 109 (D.C. Cir. 2020); *In re United States* (Vilsack), No. 14-5146, 2014 U.S. App LEXIS 14134, at *1-2 (D.C. Cir. July 24, 2014); *In re United States (Kessler)*, 985 F.2d at 513.  As an application of that presumption, which is sometimes termed the "apex doctrine," "high ranking government officials are generally not subject to depositions unless they have some personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." *Alexander v. FBI*, 186 F.R.D. 1, 4 (D.D.C. 1998) (collecting cases).  Plaintiffs have not come close to meeting that standard here.  Secretary Noem and Mr. Miller's time and the service they provide to the Nation are simply too valuable to be consumed by a deposition in a case where no showing has been made that they have unique information within their personal knowledge that cannot be obtained from alternative sources. *See United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021).

*City of Chicago*, 445 F.3d 940, 945 (7th Cir. 2006) ("It is one thing for a court to preserve its power to grant effectual relief by preventing parties from making unilateral and irremediable changes during the course of litigation, and quite another for a court to force the parties to make significant alterations in their practices before there has been time for a trial on the merits.").

Here, Plaintiffs' proposed expedited discovery seeks evidence to radically change the status quo. It includes requests for the justifications and objectives of Operation Midway Blitz, communications regarding cooperation with local law enforcement, and documents regarding crowd control incidents in Los Angeles. *See* Mot.; ECF 54-1. Plaintiffs seem to be preparing to argue that Operation Midway Blitz is illegal and that this Court should order the Executive Branch to cease the entire operation. Not only would that be improper, but those issues are irrelevant to the claims raised in the operative complaint (ECF 1) and to the issues that this Court told the parties at the October 16, 2025 hearing would be the subject of any preliminary injunction.

     2.  <u>Plaintiffs' proposed discovery is overbroad and overburdensome.</u>

As to factors two and four, expedited discovery that seeks "relatively broad discovery" not "narrowly tailored to reveal information related to the preliminary injunction" should not be authorized. *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014); *see also Orlando v. CFS Bancorp, Inc.*, No. 2:13-CV-261 JD, 2013 WL 12329547, at *3 (N.D. Ind. Oct. 10, 2013); *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 555 (N.D. Ill. 2011); *Attkisson v. Holder*, 113 F. Supp. 3d 156, 166 (D.D.C. 2015). Indeed, courts must consider the timing, burden, and feasibility of production when evaluating requests for expedited discovery, as broad requests sought on a highly compressed timeline should be denied. *See Orlando*, 2013 WL 12329547, at *3 (N.D. Ind. Oct. 10, 2013) (concluding that "plaintiff's requests, if granted, would be too burdensome upon the defendants, given that the plaintiff's requests are overly broad and the turn around time . . . is only

five days"); *Share Corp. v. Momar, Inc.*, No. 10-CV-109, 2010 WL 724321, at *3 (E.D. Wis. Feb. 26, 2010) (denying plaintiff's expedited discovery motion because it was "opened-ended and broad").

Here, Plaintiffs claim that their discovery requests and depositions are "limited" and "narrow." Mot. at 4. Not so. Their discovery requests are anything but narrow or limited. At the hearing, this Court directed Plaintiffs to revise their discovery motion to tailor and focus their requests on the issues raised in the Complaint and TRO motion, namely the alleged First Amendment, Fourth Amendment, and RFRA violations vis-à-vis encounters between law enforcement and protestors. The Court directed Plaintiffs *not* to seek discovery on the reason and purpose for Operation Midway Blitz, which is irrelevant to the issues being adjudicated at this preliminary stage. Plaintiffs did not follow the Court's admonitions and instead seek an open-ended trove of documents and information that would be unduly burdensome to produce even under a normal discovery timeline.

Plaintiffs waited ten days after filing their TRO motion to file their renewed motion for expedited discovery, leaving little time before the preliminary injunction hearing on November 5, 2025. The Court gave Defendants one day to respond to the renewed discovery motion. Now, as of October 20, 2025, there will only be 12 business days before the hearing. Despite the limited time, every proposed request is overbroad, not proportional to the needs of the case, and largely irrelevant to the legal issues before the Court. Plaintiffs' broad, open-ended production requests would require extensive searches for documents across a host of custodians and data repositories. The burdens of collecting the information alone would likely extend well past the preliminary injunction hearing date. Even if the information could be collected, additional time would be required to review the documents for responsiveness and privilege. Indeed, Plaintiffs' requests

likely implicate PII information, law enforcement privileges, attorney-client privileges, and White House communication privileges and likely require protective orders and conferral with equity holders (local law enforcement and other agencies) before production (with redactions as appropriate). In short, it would be practically impossible for Defendants to discover, review, properly redact, and produce documents responsive to Plaintiffs' broad discovery requests in 12 business days. Not to mention these production requests will likely involve motions for protective orders and motions to compel, which the Court will have to adjudicate in that short period of time as well. The focus of the next few weeks will quickly turn into a morass of discovery disputes, rather than preparation for the motion for preliminary injunction.

Specifically, of the "10" proposed requests for production, there are in fact 18 requests for production since production request 4 has eight sub-requests. ECF 54-1. The production requests, including the definitions therein, raise a host of problems. Although Defendants reserve the right to object to the discovery requests and seek a protective order, the below analysis outlines just *some* of the many problems with Plaintiffs' discovery requests and definitions:

**Proposed Production Requests No. 1, 2, 3, & 4:** Plaintiffs seek "all documents or communications" concerning the justifications or need for Operation Midway Blitz, as well as a trove of open-ended information about Operation Midway Blitz generally. These requests are facially objectionable as overbroad, not proportional to the needs of the case, and irrelevant. *See Craigville Tel. Co. v. T-Mobile USA, Inc.*, No. 19 CV 7190, 2022 WL 1499908, at *5 (N.D. Ill. May 12, 2022) ("Plaintiffs are simply not entitled to put [the defendant] to the burden of producing 'all documents' that 'refer or relate to' a broad subject matter," as that kind of request is a "kitchen sink request[] for every piece of paper that might touch a relevant subject matter."). Most of this information sought would also be subject to the deliberative process privilege and law enforcement

privilege (e.g., where and when a law enforcement agency chooses to conduct an operation is privileged). Even putting all that aside, these requests are not narrowly tailored to the question of whether Plaintiffs' rights under the Constitution and RFRA were violated, as argued in their TRO motion. This is exactly the kind of broad request that the Court told Plaintiffs not to include. Worse, these requests would be practically impossible to respond to in the few days left before the preliminary injunction hearing.

**Proposed Production Request 5:** Plaintiffs seek "all documents" and "all communications" "related to" "any" use of force by Federal Agents in the Northern District of Illinois "from September 2, 2005 through the present."[2] This request is overbroad and unduly burdensome. Mining through all documents and communications of hundreds of agents and supervisory officials is not relevant or proportional to the needs of the case. This request is extremely broad and could take weeks perhaps months to track down all responsive documents, review, redact, and produce. Plaintiffs have not tailored the information sought to the narrow issues raised by Plaintiffs in their operative complaint or TRO motion.

**Proposed Production Request 6:** This overly broad and irrelevant request seeks any document that identifies "any Federal Agent" who used force against "any plaintiffs or any declarant disclosed in this case." The specific identity of officers has no discernable relevance to whether a preliminary injunction should be granted or denied. Moreover, it is unclear how Defendants could identify whether a particular document pertains to a specific Plaintiff or declarant short of that person's name being listed in a government document, which is exceedingly unlikely. The Court should not require Defendants to divert their preparations for the preliminary

---

[2] Presumably, the "2005" date in the RFP is a typo and not intended to request 20 years of documents.

injunction hearing by conducting time-consuming and open-ended searches for information that may not exist.

**Proposed Production Request 7:** Plaintiffs seek "all communications with the State of Illinois and municipal government" concerning law enforcement assistance. The relevance of such information is hard to determine, as it does not make a difference for purposes of any of Plaintiffs' claims whether local law enforcement were present or not. And, prior to any production, this request would likely require conferral with local law enforcement agencies that would be an equity holder on such communications. This request is not proportional to the needs of the preliminary injunction motion nor is it likely feasible to produce such information in 12 business days.

**Proposed Production Request 8**: Plaintiffs here seek "all documents" that Defendants rely on to support "any filing" submitted in this case. That request is irrelevant, likely impossible to produce in 12 business days, and likely includes a trove of privileged information (attorney work product, law enforcement privilege, attorney-client privilege, etc.). At a minimum, if the Court grants this request, it should impose the same requirement on all of Plaintiffs' filings and require reciprocal production to Defendants.

**Proposed Production Request 9:** Plaintiffs seek "all documents or reports" concerning incidents in an entirely different case hundreds of miles away in Los Angeles. The relevance of such a request is hard to discern, as it involves a different case in a different jurisdiction. But, again, the request is irrelevant, likely impossible to produce in 12 business days, and could include a trove of privileged information (e.g., law enforcement privilege).

**Proposed Production Request 10:** Plaintiffs seek "all documents" relating to the general acquisition of less-lethal munitions, including training guidelines and manuals. Again, this is an overly broad and irrelevant request relevant for purposes of the preliminary injunction motion and

10

could implicate a large quantity of documents impossible to produce in 12 business days. Additionally, documentation containing information concerning the items/materials and tools essential to ensure the safety of ICE officials (e.g., types of munitions, protective gear) could be used by bad actors to disable/evade/undermine law enforcement's tactics and protective equipment.

**Depositions.** Plaintiffs seek to depose (1) Chief Patrol Agent Gregory Bovino, (2) Field Director Russell Hott, and (3) Deputy Chief Patrol Agent Daniel Parra. Mot. at 4. Plaintiffs claim that the depositions "will be limited in time and scope," but then they broadly claim that the depositions will concern "ICE actions in this district since the inception of Operation Midway Blitz." Mot. at 9. But the issues before the Court are not about "ICE actions" generally but are specifically about whether Plaintiffs' specific encounters with law enforcement during protests violate the First and Fourth Amendment or RFRA. Thus, Plaintiffs seek to depose these witnesses as an expedition into any and every recent "ICE action." That is improper, and the Court should not allow that kind of fishing expedition. If the Court is going to grant depositions, the depositions should be limited to one witness from ICE and one witness from CBP. And the depositions should be time-limited to three-hours and topic-limited to law enforcement encounters with the public, the press, and religious observers in the Chicago area during the recent protests.

In sum, Plaintiffs proposed discovery is more than a fishing expedition—it is an open-ended trawl across an ocean of information. And Plaintiffs ask the Court to order Defendants to produce such broad and burdensome discovery in 12 business days or less. That is improper and likely impossible.

3. Plaintiffs have failed to articulate a specific or legitimate purpose for expedited discovery.

Plaintiffs vaguely state, "the purpose of the expedited [] discovery is for preparation for the preliminary injunction hearing." Mot. at 10. Plaintiffs aver that expedited discovery is especially crucial because they need to "test" the government's declarations by the adversarial process. *Id*. But Plaintiffs' rationale reveals their purpose is to engage in a fishing expedition about the justification or reason behind Operation Midway Blitz—that is far afield from the issue of whether Plaintiffs' rights were violated during encounters with law enforcement.

The tools of discovery are not "intended to be a ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, No. 15 C 10340, 2018 WL 946396, at *3 (N.D. Ill. Feb. 20, 2018). Vague assertions that an opposing party "must possess unspecified additional information [are] not sufficient grounds" to allow for a "boundless fishing expedition." *Todd by Todd v. Merrell Dow Pharms., Inc.*, 942 F.2d 1173, 1178 (7th Cir. 1991), *amended* (Oct. 18, 1991) (citing *United States v. Bob Stofer Oldsmobile–Cadillac, Inc.*, 766 F.2d 1147, 1153 (7th Cir.1985)).

Here, Plaintiffs express their desire to fish for irrelevant facts about the purpose or reason behind Operation Midway Blitz. Plaintiffs attempt to justify their expedition by citing *State of Illinois & Chicago of Chicago v. Trump et al*, No. 25-CV-12174, 2025 WL 2886645, at *5 (N.D. Ill. Oct. 10, 2025), to argue the government's assertions in this case are not reliable. *See* Mot. at 10. But that does not change the fact that Plaintiffs' purpose for expedited discovery is to find imagined wrongs with the President's decision to enforce federal immigration law within the Northern District of Illinois. Plaintiffs are not entitled to task Defendants with the burden of producing all documents that refer or relate to broad subject matters such as coordination with local law enforcement, Operation Midway Blitz, or the use of force procedures. *See Craigville*

12

*Tel. Co. v. T-Mobile USA, Inc.*, No. 19 CV 7190, 2022 WL 1499908, at \*5 (N.D. Ill. May 12, 2022) (explaining discovery should not place the burden of producing all documents which refer or relate to a broad subject matter.). Thus, Plaintiff's purpose for expedited discovery is improper, and this factor weighs against expedited discovery as well.

        4.      <u>Plaintiff's motion comes far in advance of the typical discovery process.</u>

When expedited discovery comes well in advance of typical discovery, that weighs against granting expedited discovery. *See Guttenberg v. Emery*, 26 F. Supp. 3d 88, 99 (D.D.C. 2014) (finding that an important consideration in a court's reasonableness analysis is whether the plaintiffs' request for expedited discovery comes "well in advance of typical discovery").

Here, Plaintiff's request for expedited discovery comes well in advance of the usual discovery process, which weighs against granting expedited discovery. Defendants have not even responded to the operative complaint, which is not due until December at the earliest. No Rule 26(f) conference has been scheduled, nor will one take place until at least 21 days before a scheduling conference, which itself has not yet been set. *See* Fed. R. Civ. P. 26(f)(1). Moreover, the Court previously found the evidence within the parties' filings sufficient to rule on the temporary restraining order. *See* TRO Or., ECF No. 42. And Plaintiffs have not explained why the Court would not be able to rule on their preliminary injunction motion on the same or similar record. Requiring expedited discovery at this early stage with a hearing for a preliminary injunction scheduled 12 business days away is not feasible nor have Plaintiffs shown there is good cause for it.

Because the reasonableness factors weigh against granting expedited discovery, the Court should deny the request for expedited discovery.

13

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Renewed Motion for Expedited Discovery.

Dated: October 17, 2025                 Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW WARDEN
Assistant Director
Federal Programs Branch

SEAN SKEDZIELEWSKI
Counsel to the Assistant
Attorney General

*/s/ Samuel S. Holt*
SAMUEL S. HOLT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 674-9761
Fax: (202) 616-8470
Samuel.Holt2@usdoj.gov

*Counsel for Defendants*