**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHICAGO HEADLINE CLUB *et al.* ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> KRISTI NOEM, Secretary of U.S. ) <br> Department of Homeland Security, in her ) <br> official capacity, *et al.*, ) <br> ) <br> Defendants. ) | Case No. 25-cv-12173 |

**Plaintiffs' Reply In Support of Renewed Motion for
<u>Limited and Expedited Discovery In Advance of Preliminary Injunction Hearing</u>**

**INTRODUCTION**

Plaintiffs seek limited discovery to streamline the preliminary injunction hearing set for November 5, 2025, and to ensure that there is a complete evidentiary record for the Court to be sufficiently informed in order to provide the relief they seek. Plaintiffs' requests align with their claims and the scope of injunctive relief they believe is required to remedy the alleged violations.

Contrary to Defendants' assertions, Plaintiffs are not attempting to obtain discovery for some other reason. To be clear, neither the operative complaint, nor the one to be filed Tuesday, contend that federal government lacks the authority to enforce federal immigration laws. That said, Plaintiffs do contend that the *manner* in which federal officers are behaving during Operation Midway Blitz is unlawful, including because Plaintiffs and those similarly situated are being discriminated against and targeted for their protected conduct.

1

Plaintiffs' requests are neither some sort of "fishing expedition" nor violations of this Court's rulings.[1] Plaintiffs seek to take three depositions and to issue one limited set of document requests after this Court issued a TRO and before an evidentiary hearing. Good cause exists for the requested discovery. Accordingly, Plaintiffs' motion should be granted.

## DISCUSSION

### I. This Court Is Authorized To Order The Requested Discovery

The parties agree this Court has wide discretion to permit discovery and as to the legal standards that govern at this stage. *See* Dkt. 68, at 4 (among other things, citing *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011)). This Court considers, among other things: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Ibarra*, 816 F. Supp. 2d at 554 (internal quotes and citation omitted).

### II. There is Good Cause for Expedited Discovery Ahead of the Preliminary Injunction Hearing and Concerning Defendants' Violations of the TRO

First, there is good cause for Plaintiffs' expedited discovery now, where the Court entered a TRO, Plaintiffs have provide evidence that Defendants violated the TRO, and the motion for a preliminary injunction is forthcoming. Defendants did not address the numerous cases recognizing that issuance of a TRO is relevant to establishing good cause. *See* Dkt. 54 at 8

---

[1] Defendants' overwrought assertions, including that Plaintiffs have failed to follow this Court's "admonishments," Dkt. 68, at 7, or that Plaintiffs have disobeyed what the Court "told Plaintiffs not to include," *id.* at 9, are without merit. As the transcript bears out, at the hearing: (1) this Court denied Plaintiffs' motion to depose Secretary Noem and Chief of Staff Miller at this stage, Transcript 10/16/2025 at 15-17, which Plaintiffs recognized in their motion, Dkt. 54, at 1 n.1; (2) Plaintiffs outlined the limited written discovery they seek, Transcript at 18-19, (3) Defendants argued that specific document requests should be re-filed with a new motion, and so the Court ordered Plaintiffs to file a renewed motion that included the actual document requests, *id.* at 20. Plaintiffs did that. The question of whether those requests are too narrow or overbroad is the issue now before the Court. Plaintiffs did not—and would not—disobey the Court in the manner the government incorrectly suggests Plaintiffs have done.

(citing *Penske Truck Leasing Co., L.P. v. Cent. States, Se. & Sw. Areas Pension Plan*, 2022 WL 1028927, at *3 (N.D. Ill. Apr. 6, 2022), *EASi, LLC v. Gaffar*, 2020 WL 3868394, at *3 (C.D. Ill. July 9, 2020), *Am. Fam. Mut. Ins. Co. v. Roth*, 2005 WL 3700232, at *1 (N.D. Ill. Aug. 5, 2005), and *Nobel Biocare USA, Inc. v. Lynch*, 1999 WL 958501, at *4 (N.D. Ill. Sept. 15, 1999)).

In addition, Plaintiffs contend that there have been violations of this Court's TRO, and those violations show the propriety of additional discovery. The Court raised concerns about noncompliance with the TRO, it ordered the government to provide testimony on recent uses of force and implementation of the TRO, and Plaintiffs have now filed a motion concerning alleged violations of the TRO. Dkt. 57. Discovery is relevant to the preliminary injunction hearing as a continued course of unconstitutional conduct even after issuance of a TRO is evidence that pertains to the equities the Court will weigh in determining whether to issue an injunction.

Separately, discovery is appropriate "so the Court and the parties will have a fuller evidentiary record for" the evidentiary hearing, *Nobel Biocare USA*, 1999 WL 958501, at *4, and to permit Plaintiffs the opportunity to contest Defendants' claims (which Plaintiffs consider to be exaggerated or incredible). *See, e.g.*, Dkt. 54 at 3-4, 10. *Cf.* FED. R. CIV. P. 26(b) (discovery permitted as relevant to "any party's claim *or defense*") (emphasis added)).

The government's response actually confirms good cause exists for discovery. For example, the government contests that Plaintiffs are peaceful protesters or protected journalists by arguing that the "full context" is that "law enforcement officers in Chicago have been, and continue to be, attacked, injured, and impeded from enforcing federal law." Dkt. 68 at 3. The evidence cited in support of this version of events is the declaration of Russell Hott, one of the witnesses Plaintiffs ask to depose. Mr. Hott's contentions in that declaration (which Plaintiffs dispute) provide some of the reasons Plaintiffs have good cause to seek Hott's deposition and

relevant documents underlying the declaration itself. The government cannot be permitted to rely on Hott to proclaim that there is a danger justifying the use of force at issue in this case, but then argue Hott's perspective is irrelevant or refuse to permit discovery into the basis for Hott's contentions. The same is true of Mr. Parra. He has provided a declaration that the government relies upon in opposing Plaintiffs' claims, Dkt. 35-9, and so Plaintiffs have good cause to depose him about that declaration.

In short, Plaintiffs seek discovery to examine the veracity of the disputed claims on which Defendants rely and to ascertain the truth of whether the government's evidence is persuasive and credible or, as Plaintiffs contend, unpersuasive and incredible.

### III. The Breadth and Burden of the Requests Is Limited

The three requested depositions and set of proffered document requests are limited and will not impose an undue burden.

#### A. Deposing All Three Identified Witnesses Is Necessary and Appropriate

As to the depositions, Hott and Parra are the government's own declarants. They have been participating in directing and overseeing the challenged conduct at issue here. Meanwhile, Bovino is commanding Operation Midway Blitz, and the government does not contest that he is the central commanding federal officer directing the operations on the ground. Moreover, Bovino himself is personally using force against civilians on the ground. *See generally* Dkt. 54 at 4-5. There is no question, then, that the testimony of these witnesses will facilitate "a fuller evidentiary record for that hearing," *Nobel Biocare USA, Inc. v. Lynch*, 1999 WL 958501, at *4 (N.D. Ill. Sept. 15, 1999), and assist the Court in fact finding.

From a practical standpoint, Plaintiffs have already offered to limit the length of these depositions, and as expressed in Court, Plaintiffs can get the depositions completed in whatever

timeframe the Court sets. The Government nonetheless argues that there should be at most two deponents, one from ICE and one from CPB, and that the depositions should be "topic-limited to law enforcement encounters with the public, the press, and religious observers in the Chicago area during the recent protests." Dkt. 68 at 11. These restrictions are both artificial and inappropriate. One issue Plaintiffs have been worried about—and remain worried about—is that officers from ICE will not have information about CPB and vice-versa. *E.g.*, Dkt. 59 2, ¶¶5-7.

Because Plaintiffs contend there is a common course of conduct between the several agencies participating in Midway Blitz (which appears undisputed), it is important that the person (or persons) who have been in charge of the operation, who are thus responsible for that common course of conduct, and who have the information relevant to Plaintiffs' claims provide testimony about the operation. That is Bovino, Hott, and Parra. Depositions of witnesses who lack operational knowledge will duplicate the proceedings, not simplify them.

Bovino was the person who with Defendant Noem addressed a collection of federal agents at Broadview, indicated that they would take action against Plaintiffs because of their dissenting activity, and said that there was a "free arrest zone" in Broadview. *See* Dkt. 54 at 5 & n.5. Plaintiff should be permitted to inquire as to Bovino's direction of the forces, not just his particular (and violent) interactions with the public.[2]

### B. Plaintiffs' Document Requests are Limited And Targeted to Issues At the Preliminary Injunction Hearing

Plaintiffs have proffered document requests for a limited timeframe (around Midway Blitz) and focus on information directly tied to Plaintiffs' claims, the government's defenses, and the relief Plaintiffs seek. Plaintiffs contend that Operation Midway Blitz has targeted them and

---

[2] Should disputes arise about the scope of the questioning, the parties can resolve them at that time. If impasse is reached, as a last resort, those issues can be addressed with the Court. However, speculation about potential future disputes does not justify denying discovery now.

others similarly situated with excessive force, false arrest, and other illegal conduct as a response to their engaging in constitutionally protected activities. Defendants' deny these contentions and claim they were justified. Plaintiffs' discovery requests seek to test those justifications, and so Defendants wholesale objections to producing any documents production must be overruled.

1. **Request No. 1 —Concerning Defendants' Evidence for the Need/Justification for Operation Midway Blitz—Seeks Relevant and Discoverable Information**

Request No. 1 asks for information about the justification for Operation Midway Blitz. Defendants' response essentially boils down to a suggestion that because, in their view, this particular request is improper, it provides a basis to bar all of Plaintiffs' other requests. Each of Plaintiffs' requests must be independently assessed.

This request seeks relevant information for the hearing because Plaintiffs claim the federal government has targeted them based upon the content of their speech. Thus, Plaintiffs' contention is that the stated justifications for how Operation Midway Blitz has been implemented—as in the cited Hott declaration—is not supported in the facts and does not justify the manner in which Plaintiffs have been treated. To the extent there is actually no evidence that would support Defendants' contentions, that fact is relevant to Plaintiffs illustrating that federal agents are using unjustified levels of force with the press, protesters, religious practitioners and observers in violation of the law, rather than for some permissible purpose. Plaintiffs should be able to learn whether Defendants have documents that support their contentions.

2. **Request No. 2—Defendants' Communications on Federal Agents' Use of Force Press, Protesters, Clergy and Civilians—Seeks Relevant and Discoverable Information.**

The government has not substantively addressed this request. Request No. 2 seeks documents, if any, reflecting any "*assessment* by Defendants or Federal Agents during Operation Midway Blitz that any Federal Agent's use of force, including use of crowd control weapons,

against demonstrators, journalists, clergy, or other civilians *was justified under the circumstances*." Dkt. 54-1 (emphasis added). Plaintiffs' Fourth Amendment claims allege that the force used against them was not justified under the circumstances and First Amendment claims will demonstrate that such excessive force was retaliatory. This discovery is relevant and proportional to Plaintiffs' claims and relief. Plaintiffs are also entitled to this information, if it exists, to rebut the Defendants' claim that their use of force on Plaintiffs and putative class members was content-neutral and justified. While Plaintiffs also seek any formal use of force reports in Request No. 5, this request seeks any broader assessment by the Defendants as directors of their agencies and as the commanding officers of Midway Blitz.

   **3. Request No. 3—Communications to Federal Agents About Use of Force Tactics—Is Central to Plaintiffs' Claims and Seeks Relevant and Discoverable Information.**

The government has not substantively addressed this request. Request 3 seeks documents, if any, communicated to agents or supervisors about "mission objectives, permissible tactics, or use of force." *Id.* This discovery is relevant to Plaintiffs' First Amendment to determine whether there are additional communications—beyond the public proclamations of people like the President, Stephen Miller, Defendant Noem, and Defendant Bovino—that support Plaintiffs' claim that the *manner* of the operation is excessive due to content-based targeting and/or retaliation. This discovery is also central to Plaintiffs' Fourth Amendment claims, as it relates to what, if anything, officers were told about using force against peaceful protestors.

Communications to agents on the ground, and their supervisors, bears directly on seeking relief for Fourth Amendment violations that have occurred, and have still happened even after the TRO issued. Plaintiffs have alleged federal agents engage in a practice of excessive force.

7

Defendants and supervising officers' communication to federal agents regarding uses of force and tactics, if any exist, are directly relevant.

4. **Request No. 4.—Training Materials on Use of Force and Crowd Control Weapons—Seeks Relevant and Discoverable Information**

The government has not substantively addressed this request. Request No. 4 asks what training, if anything, was communicated to federal agents on the ground concerning the exact topics at issue for the preliminary junction hearing: the use of force permissible in interactions with protestors, people of faith, and journalists. Training of federal agents assigned to the Northrn District of Illinois on the use of force and crowd control measures, or lack thereof, is central to Plaintiffs' claims that federal agents violating their rights. *Cf. United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019) (training can be relevant to showing excessive force).

The government's view of relevance is too narrow; these documents and communications, if they exist, are relevant to how federal agents were trained prior to interacting with Plaintiffs and ultimately whether the conduct at issue was beyond negligent, as required to prove a constitutional violation. *See Daniels v. Williams*, 474 U.S. 327 (1986).

5. **Request No. 5.—Use of Force Reports and Documentation—Seeks Relevant and Discoverable Information.**

Plaintiffs' request for use of force reports and or documentation from the last six weeks is narrow and proportional. Plaintiffs have further targeted their requests by identifying specific reporting systems (E-Star and the Significant Event Notification System) and specifically limited their request to those reports or instances on groups of three or more people. If such evidence exists, there is good cause for Plaintiffs to access it and enable them to fully test and cross-examine witnesses at the preliminary injunction hearing regarding Defendants' witnesses'

expected testimony that federal agents' use of force was justified. Use of force reports and documentation are common practice for law enforcement agencies.

In addition, Plaintiffs do not know—and cannot know—all of the times that Defendants have used riot control munitions in this District, though Plaintiffs have spent significant efforts trying to identify these incidents. Simply put, Plaintiffs want to know whether Defendants have a list or documents pertaining to other incidents in this District that should have been reported, as one would expect incidents with tear gas on residential streets, arrests of journalists or protestors, the pepper spraying of clergy in the face would be subject to reporting and documentation. If there are simply too many violent acts to even count, the government should disclose that and permit the parties to confer about these issues.[3]

> **6. Request No. 6.—Information Sufficient to Identify Federal Agents that Used Force on Plaintiffs and Declarants—Seeks Relevant and Discoverable Information.**

Request No. 6 seeks information sufficient to identify the federal agents who used force on Plaintiffs and declarants. The government admits that documents of this nature "may not exist." If that is true (*i.e.*, because its agents have used force too indiscriminately to even try to figure out who has been shot), the government can just say that in response to the Request. Separately, this Request specifically relates to the preliminary injunction hearing because Plaintiffs are trying to determine who the government might call as witnesses about specific incidents alleged in the complaint and that, theoretically, might testify about interactions with the Plaintiffs themselves.

---

[3] While being mindful to the timeline, one issue with the government's burden arguments that the government has not identified, even preliminarily, how many documents, if any, exist for these requests based upon a declaration or other specific evidence. That said, if a protective order would aid faster production of documents as confidential, rather than as redacted, doing so would reduce potential burden.

The Government has represented that its view of the two incidents raised in Plaintiffs' motion to enforce the Court's temporary restraining order differs from Plaintiffs. Defendants should produce and/or identify the information in their possession that identifies the federal agents that have personal knowledge of interactions with Plaintiffs and declarants.

7. **Request No. 7.—Coordination With Local Law Enforcement—Seeks Relevant and Discoverable Information**.

Request 7 seeks documents pertaining to coordination, if any, with local law enforcement agencies (like the Broadview Police Department, the Chicago Police Department, and the Illinois State Police) during Operation Midway Blitz. The government did not actually respond to Plaintiffs' arguments; *i.e.*, that these requests pertain to the basis for the TRO entered in this case and are relevant to departures from policing practices that support an inference of content-based regulation. Dkt. 54, at 6-7. In addition, Plaintiffs will present evidence that Defendants' violent acts are so indiscriminate that they have frustrated and even tear gassed law enforcement agencies officers in the course of their duties. *See, e.g.*, Newsweek, *Local Police Chief Tears Into ICE For Exposing His Officers to Tear Gas*, NEWSWEEK.COM ((September 30, 2025). This, too, is relevant to a lack of coordination and a showing that the balance of equities favors the Plaintiffs rather than the federal agents whose actions are so egregious they endanger the lives of other law enforcement. *Cf.* Dkt. 43, at 2 (public interest includes impact on non-parties).

8. **Requests No. 8 and 10—Documents that Support Assertions in Defendants' Declarations—Seek Relevant and Discoverable Information.**

Requests 8 and 10 seek to identify what documents or reports the government's declarants have referred to, and any documents to substantiate their allegations. These issues are relevant to the preliminary injunction hearing because the government intends to rely on this evidence and Plaintiffs want to know the basis for the declarations. If there is information that is

10

actually privileged (though "law enforcement privilege" is not a real privilege), the parties can confer about it. It is not a basis to deny the discovery.

This also includes information about the munitions the government has expended or may be preparing to deploy on civilians in Chicago and including statements made by government witness Hott in his declaration, which is the focus of Request No. 10.[4]

9. **Plaintiff's Will Withdraw Request No. 9—Concerning Ongoing Violations in Los Angeles—At This Stage So Long As the Government Agrees Not to Point to Such Evidence**

While Plaintiffs disagree with the government's objections, and believe the documents are relevant, in the interest of preparing for the hearing and moving forward, Plaintiffs will withdraw Request No. 9 at this time (and without prejudice to seeking this information at a later stage in the litigation) so long as the government is not permitted to rely on evidence from Los Angeles to support its actions against Plaintiffs. Part of the reason Plaintiffs issued this request, again, pertains to the government's defense—it pointed to demonstrations and policing responses in Los Angeles to justify their actions here. *See, e.g.*, Dkt. 35-2. 35-4, 35-5, 35-6, 35-7, 35-8, 35-12 (all arising from the facts at issue in the *LA Press Club* matter).

C. **The Purpose and Timing of the Requested Discovery Is Compelling And Warrants Granting Discovery**

Plaintiffs' purpose in issuing these requests right now is to prepare for the preliminary injunction hearing. Full stop. This is not a fishing expedition. Plaintiffs agree that, given the compressed schedule now faced, there is no time for anyone—not the Court, not Plaintiffs' counsel, and not the government—to expend time and effort into collateral issues or engaging in lengthy disputes about issues that are not relevant to the hearing.

---

[4] The government asserts "bad actors" may obtain information; a claim that is both speculative and that can be resolved by marking sensitive items confidential subject to a protective order.

In addition, it is preliminary injunction hearing (set after a TRO has issued) that supplies the timing of the request. The Court has the power, and should exercise that authority, to order discovery within the next ten days. FED. R. CIV. P. 26(d)(1).[5]

## CONCLUSION

Plaintiffs respectfully request this Court grant the renewed motion for expedited discovery as set forth above and in the motion.

                              Respectfully Submitted,

                              /s/ David B. Owens
                              *One of Plaintiffs' Attorneys*

---

[5] So long as disclosures are being made, and the government is working in good faith to produce documents, Plaintiffs would be amenable to productions on a rolling basis.

Jon Loevy
Locke Bowman
Steve Art
Heather Lewis Donnell
Theresa Kleinhaus
Matt Topic
Lindsay Hagy
Jordan Poole
Dominique Gilbert
Justin Hill
Aaron Tucek
Alexandra Wolfson
Scott Rauscher
**LOEVY + LOEVY**
311 N. Aberdeen Street
Chicago, Illinois 60647
(312) 243-5900
steve@loevy.com

Elizabeth Wang
Isaac Green
**LOEVY + LOEVY**
2060 Broadway, Ste. 460
Boulder, CO 80302

David B. Owens
**LOEVY + LOEVY**
℅ Civil Rights and Justice Clinic
University of Washington Law School
William H. Gates Hall, Suite 265
Seattle, WA 98145-1110

Wallace Hilke
**COMMUNITY JUSTICE AND CIVIL RIGHTS CLINIC**
Bluhm Legal Clinic, Northwestern Pritzker School of Law
375 E. Chicago Ave.
Chicago, IL 60611
(312) 503-2224
wally.hilke@law.northwestern.edu

Craig B. Futterman
**MANDEL LEGAL AID CLINIC**
University of Chicago Law School
6020 S. University
Chicago, IL 60637
(773) 702-9611
futterman@uchicago.edu

Hayden Johnson*
Katie Schwartzmann*
Conor Gaffney*
**PROTECT DEMOCRACY PROJECT**
2020 Pennsylvania Ave NW, Ste 601
Washington DC 20006
(202) 579-4582
hayden.johnson@protectdemocracy.org
katie.schwartzmann@protectdemocracy.org
conor.gaffney@protectdemocracy.org
*Application for pro hac vice forthcoming*

Daniel Massoglia
Hannah C. Marion
**FIRST DEFENSE LEGAL AID**
601 S. California Ave.
Chicago, IL 60612
(336) 575-6968
daniel@first-defense.org
hannah@first-defense.org

Kevin M. Fee, Jr.
Rebecca Glenberg
**ROGER BALDWIN FOUNDATION OF ACLU, INC.**
150 N. Michigan, Suite 600
Chicago, IL 60601
(312) 201-9740
kfee@aclu-il.org
rglenberg@aclu-il.org