**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO HEADLINE CLUB *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | **No. 25-cv-12173** |
| | ) | |
| v. | ) | **Hon. Sara L. Ellis** |
| | ) | **District Judge** |
| KRISTI NOEM, Secretary of U.S. | ) | |
| Department of Homeland Security, in her | ) | |
| official capacity, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
## AND APPOINTMENT AS CLASS COUNSEL

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES................................................................................II

INTRODUCTION ...................................................................................... 1

PROPOSED CLASS AND SUBCLASSES ............................................... 1

FACTUAL BACKGROUND ...................................................................... 2

LEGAL STANDARD ................................................................................. 2

ARGUMENT ............................................................................................. 3

I.     The Class and Each Subclass Satisfies the Numerosity Requirement.................................. 3

II.    The Class (and Subclasses) are Ascertainable ................................................. 5

     A.    The Overall Class is Defined Using Objective Criteria............................ 6

     B.    The Subclasses are Ascertainable ..................................................... 6

III.   The Class Satisfies the Commonality Requirement............................................. 7

     A.    Religious Exercise Subclass ..........................................................11

     B.    Press Subclass ............................................................................. 12

IV.   The Class Representatives' Claims are Typical of the Claims of the Class...................... 12

     A.    Plaintiffs Paulson, Villa, and Crespo .............................................. 13

     B.    Plaintiffs Black, Curran, Holcombe, and Johnson .............................. 14

     C.    Plaintiff Stephen Held..................................................................... 15

V.    The Proposed Class Representatives and Class Counsel Will Adequately Represent the Class.................................................................................................... 15

     A.    The Proposed Class Representatives are Adequate ............................... 15

     B.    Proposed Class Counsel is Qualified and Experienced ........................ 17

VI.   Class Certification Is Appropriate under Rule 23(b)(2)........................................ 19

CONCLUSION........................................................................................ 21

i

## TABLE OF AUTHORITIES

**Case** **Page(s)**

*All. to End Repression v. Rochford*, 565 F.2d 975 (7th Cir. 1977) .................................................. 5

*Am. Council of Blind of Metropolitan Chi. v. City of Chi.*,
    589 F. Supp. 3d 904 (N.D. Ill. 2022) ................................................................ 7

*Amchem Prods., Inc. v. Windsor*, 521 U.S 591 (1997) ............................................... 15

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) ............................................. 3

*Anderson v. Cornejo*, 199 F.R.D. 228 (N.D. Ill. 2000) ................................................. 8

*Anderson v. Weinert Enters., Inc.*, 986 F.3d 773 (7th Cir. 2021) ...................................... 4

*Black Lives Matter 5280 v. City & County of Denver*,
    338 F.R.D. 506 (D. Colo. 2021) ............................................................... 17

*Chicago Teachers Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*,
    797 F.3d 426 (7th Cir. 2015) .......................................................... 3, 20, 21

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ............................................................. 3

*Copeland v. Wabash Cnty.*, 338 F.R.D. 595 (N.D. Ind. 2021) ....................................... 4

*G.M. Sign Inc. v. Stealth Sec. Sys., Inc.*,
    No. 14 C 09249, 2017 WL 3581160 (N.D. Ill. Aug. 18, 2017) ................................. 6

*Greene v. Will*,
    No. 3:09CV510–PPS, 2013 WL 11233976 (N.D. Ind. Apr. 16, 2013) ........................... 6

*Haynes v. Dart*, No. 08 C 4834, 2009 WL 2355393 (N.D. Ill. July 29, 2009) .......................... 6

*Holmes v. Godinez*, 311 F.R.D. 177 (N.D. Ill. 2015) .................................................... 8

*Howard v. Cook Cnty. Sheriff's Office*, 989 F.3d 587 (7th Cir. 2021) .............................. 2

*Illinois Migrant Council v. Pilliod*, 540 F.2d 1062 (7th Cir. 1976) ............................... 6

*Illinois Migrant Council v. Pilliod*, 548 F.2d 715 (7th Cir. 1977) ................................ 6

*Int'l Ass'n of Fire Fighters, Loc. 365 v. City of E. Chicago*,
    56 F.4th 437 (7th Cir. 2022) .................................................................. 20

*K.C. v. Individual Members of Medical Licensing Bd. of Ind.*,
    345 F.R.D. 328 (S.D. Ind. 2024) .............................................................. 4

*Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883 (7th Cir. 2011) ............................ 19, 20

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ................................................................... 7

*Korte v. Sebelius*, 735 F.3d 654 (7th Cir. 2013) ................................................................ 20

*Lipper v. Baldwin*, No. 10 C 4603, 2017 WL 1545672 (N.D. Ill. Apr. 28, 2017) ......................... 11

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015) ................................................. 5

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles ("MIWON")*,
   246 F.R.D. 621 (C.D. Cal. 2007) ................................................................................ 11

*Olson v. Brown*, 284 F.R.D. 398 (N.D. Ind. 2012) .............................................................. 4

*Oplchenski v. Parfums Givenchy, Inc.*, 254 F.R.D. 489 (N.D. Ill. 2008) ..................................... 4

*Orr v. Shicker*, 953 F.3d 490 (7th Cir. 2020) .................................................................... 3

*Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006) ..................................................... 13

*Palmer v. Combined Ins. Co. of Am.*, 217 F.R.D. 430 (N.D. Ill. 2003) ...................................... 8

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ................................................................. 11

*Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541 (7th Cir. 2016) .............................................. 11

*Priddy v. Health Care Serv. Corp.*, 870 F.3d 657 (7th Cir. 2017) ........................................... 13

*Rahim v. Sheahan*, 2001 WL 1263493 (N.D. Ill. Oct. 19, 2001) ............................................. 16

*Raymundo v. Winnebago Cnty.*,
   2009 WL 10855867 (N.D. Ill. June 10, 2009) ................................................................ 15

*Smith v. Chicago*, No. 06-cv-6423 (N.D. Ill. May 23, 2012) ................................................ 18

*Smith v. City of Chicago*, 340 F.R.D. 262 (N.D. Ill. 2021) .................................................. 20

*Streeter v. Sheriff of Cook Cnty.*, 256 F.R.D. 609 (N.D. Ill. 2009) ....................................... 3, 6

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) ............................................... 7

*Toney v. Quality Res., Inc.*, 323 F.R.D. 567 (N.D. Ill. 2018) ................................................. 7

*Vita Nuova, Inc. v. Azar*,
   4:19-CV-00532-O, 2020 WL 8271942 (N.D. Tex. Dec. 2, 2020) ........................................ 11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...................................................... 2, 7

iii

*Young v. County of Cook*, No. 06 C 552, 2007 WL 1238920 (N.D. Ill. Apr. 25, 2007)................ 17

**Rules**                                                           **Page**

Fed. R. Civ. P. 23 Advisory Comm. Notes (1966) .......................................................... 6

FED. R. CIV. P. 23(a)(1) ................................................................................................ 3

FED. R. CIV. P. 23(a)(3) ................................................................................................ 12

FED. R. CIV. P. 23(a)(4) ................................................................................................ 15

FED. R. CIV. P. 23(a)-(b) .............................................................................................. 2

FED. R. CIV. P. 23(b)(2) ................................................................................................ 2

## INTRODUCTION

Plaintiffs and the putative class have presented the Court with substantial evidence showing that Defendants are causing widespread constitutional violations in this district. Plaintiffs and the putative class have tried to peacefully exercise their First Amendment rights. Rather than embrace those fundamental rights, Defendants have chilled them. Without the Court's intervention, Defendants will continue to violate rights on a mass scale, keeping ordinary citizens, religious practitioners, and members of the press from praying, protesting, and even just observing Defendants' conduct.

There is no practical way to litigate this case other than as a class action. Defendants' course of conduct is impacting too many people for all of them to sue individually, and requiring hundreds or thousands of separate lawsuits to litigate identical issues would be extremely taxing on the judicial system. The proposed Class and Subclasses are represented by dedicated Plaintiffs whose claims are typical of the other Class Members, and by experienced lawyers who will adequately represent the Class and Subclasses. Plaintiffs seek declaratory and injunctive relief to stop the Defendants from violating their constitutional rights and the rights of hundreds of similarly situated individuals throughout the Northern District of Illinois. The class action mechanism was designed for exactly this type of case and certifying this case as a class action is the only way to ensure finality for both sides. For these reasons and the reasons described below, the Court should certify this case as a class action under Rule 23(b)(2).

## PROPOSED CLASS AND SUBCLASSES

Plaintiffs move to certify this case as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2). The proposed Class is as follows:

1

> All persons who are or will in the future non-violently demonstrate, protest, observe, document, or record at Department of Homeland Security immigration operations in the Northern District of Illinois.

The proposed Subclasses are:

> **Religious Exercise Subclass:** All persons who are or will in the future engage in religious expression in the form of prayer, procession, song, preaching, or proselytizing at Department of Homeland Security immigration operations in the Northern District of Illinois.

> **Press Subclass:** All persons who are or will in the future engage in news gathering or reporting at Department of Homeland Security immigration operations in the Northern District of Illinois.

## FACTUAL BACKGROUND

The facts supporting certification are discussed in further detail in the argument section below. Plaintiffs also incorporate by reference the facts set forth in Plaintiffs' motion for temporary restraining order, dkt. 21, and their motion for preliminary injunction.

## LEGAL STANDARD

For a case to proceed as a class action, Plaintiffs must show that their proposed class satisfies the requirements of Federal Rule of Civil Procedure 23. "[A] proposed class under Rule 23(b) must meet the requirements of Rule 23(a)—numerosity, typicality, commonality, and adequacy of representation—and one of the alternatives listed in Rule 23(b)." *Howard v. Cook Cnty. Sheriff's Office*, 989 F.3d 587, 597 (7th Cir. 2021); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011); FED. R. CIV. P. 23(a)-(b).

Plaintiffs seek certification under Rule 23(b)(2). Under Rule 23(b)(2), a case may be certified as a class action where the "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). "Colloquially, 23(b)(2) is the appropriate rule to enlist when the plaintiffs' primary goal is not

monetary relief, but rather to require the defendant to do or not do something that would benefit the whole class." *Chicago Teachers Union, Loc. No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 441 (7th Cir. 2015).

A district court has broad discretion in determining whether a lawsuit should proceed as a class action. *See*, *e.g.*, *Streeter v. Sheriff of Cook Cnty.*, 256 F.R.D. 609, 611 (N.D. Ill. 2009). Courts making decisions about class certification must do so with the relevant evidence in mind. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466-68 (2013). (discussing the difference between a showing that questions of liability are common to the class, which is required, and a showing that the answer to those questions will be in the class's favor, which is not required). This determination involves some, but limited, consideration of the merits: "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc.*, 568 U.S. at 466.

## ARGUMENT

Class certification is proper because the class and each subclass satisfies the numerosity, commonality, typicality, and adequacy requirements under Rule 23(a) as well as Rule 23(b)(2). The class and each subclass also satisfy the implicit Rule 23 ascertainability requirement.

## I.     The Class and Each Subclass Satisfies the Numerosity Requirement

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). The Seventh Circuit has held that a 40-member class is sufficient to meet the numerosity requirement. *See, e.g.*, *Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020). "The key numerosity inquiry under Rule 23(a)(1) is not the number of class members alone but the practicability of joinder." *Anderson v. Weinert Enters., Inc.*, 986 F.3d

773, 777 (7th Cir. 2021). Where a class includes future members, such as people who may later protest, courts in the Seventh Circuit have regularly found that joinder is impracticable. *See K.C. v. Individual Members of Medical Licensing Bd. of Ind.*, 345 F.R.D. 328, 334 (S.D. Ind. 2024) ("it would be impracticable to join [all future class members] as this suit progresses"); *Olson v. Brown*, 284 F.R.D. 398, 408 (N.D. Ind. 2012) (the transient nature of the class members and the inclusion of future members made joinder impossible, as only a portion of the class would have standing at any given time); *Copeland v. Wabash Cnty.*, 338 F.R.D. 595, 602 (N.D. Ind. 2021) (a constantly changing class of inmates satisfied the numerosity requirement due to its fluid membership and size). Furthermore, "a finding of numerosity can be based on common sense assumptions." *Oplchenski v. Parfums Givenchy, Inc.*, 254 F.R.D. 489, 495 (N.D. Ill. 2008).

Here, the class and both subclasses satisfy the numerosity requirement. Indeed, it is undisputed that hundreds of people have participated in demonstrations and protests, which far exceed the floor for numerosity under Rule 23. *See*, *e.g*., Dkt. 22-1 (Black Decl.) ¶ 4; *see also* Dkt. 22-9 (Breslin Decl.) ¶ 8 (150-200 protesters present on September 26, 2025 alone); Dkt. 22-16 (Thrush Decl.); Dkt. 22-39 (Goyette Supp. Decl.) ¶ 13 (75-100 persons present at protest at 40th & Kedzie on October 4, 2025)).

The subclasses are also sufficiently numerous under Rule 23. With respect to the religious exercise subclass, the record shows that dozens of people are attending prayer vigils near DHS operations, and groups of clergy are expressing their religious views at Department of Homeland Security enforcement operations in the Northern District of Illinois. Dkt. 22-2 (Curran Decl.) ¶ 38 (discussing practice of inviting Catholic students to prayer vigils); Dkt. 22-3 (Johnson Decl.) (discussing practice of group of clergy protesting and ministering at Broadview); Dkt. 73-14 (Holcombe Decl.) ¶ 22 (approximately 17 faith leaders gathered to preside over

communion outside Broadview on October 10, 2025). Moreover, approximately 200 religious practitioners recently signed an open letter indicating that they intend to continue expressing their religious rights at DHS immigration operations within the Northern District of Illinois. *See* "Jesus is Being Tear Gassed at Broadview," *An Open Letter from Chicago Clergy*.[1]

Finally, there are hundreds of members of the press subclass. Indeed, approximately 50 members of the press subclass were present at Broadview on a single day in September 2025. *See*, *e.g.*, Dkt. 22-16 (Thrush Decl.) ¶ 23 (estimating approximately 50 journalists at Broadview the morning of September 26); Dkt. 22-25 (Grimm Decl.) ¶ 2 (CNG Local 34071 represents around 600 employees); Dkt. 22-26 (Arnold Decl.) ¶ 2 (CHC has had as many as 500 member-journalists). And, needless to say, members of the press intend to continue exercising their constitutional rights by covering immigration enforcement operations in the Northern District of Illinois. Thus, numerosity is readily satisfied for the press subclass as well.

## II.     The Class (and Subclasses) are Ascertainable

The Seventh Circuit and other courts recognize "an implicit requirement under Rule 23 that a class must be defined clearly and that membership be defined by objective criteria…." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). This implicit requirement is referred to as ascertainability. The proposed class (and subclasses) are defined by objective criteria—they are defined "in terms of conduct (an objective fact) rather than a state of mind." *Mullins*, 795 F.3d at 660. The fact that a class includes future members who have not yet been injured in the way common to the class does not create an ascertainability problem. *See, e.g., All. to End Repression v. Rochford*, 565 F.2d 975, 978 (7th Cir. 1977) ("[T]his court has made it clear

---

[1] Available online at https://docs.google.com/document/d/1I5QOjMoeS-oxx-1U5vTuu8CPJqV7pLULPCR7pNaIdYA/edit?tab=t.0 (last accessed on Oct. 21, 2025).

that a class that satisfies all of the other requirements of Rule 23 will not be rejected as indefinite when its contours are defined by the defendants' own conduct."); *Illinois Migrant Council v. Pilliod*, 540 F.2d 1062, 1072 (7th Cir. 1976), *on reh'g,* 548 F.2d 715 (7th Cir. 1977). The "ascertainability requirement can be applied more flexibly in situations where individual notice to class members is not required, such as suits for equitable relief." *Haynes v. Dart*, No. 08 C 4834, 2009 WL 2355393, at *4 (N.D. Ill. July 29, 2009); *see also* Fed. R. Civ. P. 23 Advisory Comm. Notes (1966). Moreover, courts "may modify a proposed class definition if modification will render the definition adequate." *Streeter*, 256 F.R.D. at 611.

## A.     The Overall Class is Defined Using Objective Criteria

The overall class definition is ascertainable. It includes anyone who will "non-violently demonstrate, protest, observe, document, or record at Department of Homeland Security immigration operations in the Northern District of Illinois." Class membership depends on the actions that an individual takes rather than on anything subjective such as the state of mind of the individuals involved or their subjective intent. This is exactly what courts within the Seventh Circuit require for ascertainability. *See*, *e.g.*, *G.M. Sign Inc. v. Stealth Sec. Sys., Inc.*, No. 14 C 09249, 2017 WL 3581160, at *2 (N.D. Ill. Aug. 18, 2017) (class definition satisfied ascertainability when "it define[d] the putative class as the group of persons who received during a specific time period fax transmissions from a specific party relating to specific services"); *Greene v. Will*, No. 3:09CV510–PPS, 2013 WL 11233976, at *3 (N.D. Ind. Apr. 16, 2013) (in environmental case, class was ascertainable when it included anyone who owned or lived in residential property within certain geographic area).

## B.     The Subclasses are Ascertainable

Membership in the proposed Religious Exercise Subclass depends on engaging in specific types of religious exercise in the form of prayer, procession, song, preaching, or

6

proselytizing at particular locations—federal immigration operations in the Northern District of Illinois. Just as with the class as a whole, the religious subclass is defined in a way that "clearly identifies the individuals falling within the class and is based on objective criteria." *Am. Council of Blind of Metropolitan Chi. v. City of Chi.*, 589 F. Supp. 3d 904, 907 (N.D. Ill. 2022).

Similarly, the proposed Press Subclass is also defined by objective criteria. This subclass includes all persons who are or will in the future engage in news gathering or reporting at DHS immigration operations in the Northern District of Illinois. This definition is objective and therefore comfortably fits within the Seventh Circuit's ascertainability standard. *See Am. Council of Blind*, 589 F. Supp. 3d at 907; *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 581 (N.D. Ill. 2018) (holding that class definition is ascertainable if it is not "defined too vaguely, defined by subjective criteria, or defined in terms of success on the merits").

## III. The Class Satisfies the Commonality Requirement

Rule 23(a)(2) directs that there must be "questions of law or fact common to the class." "Commonality requires the plaintiff[s] to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc.*, 564 U.S. at 349-50 (cleaned up). Rule 23 does not require that every question be common. Rather, "for purposes of Rule 23(a)(2), even a single common question will do." *Id.* at 359 (cleaned up). The class "claims must depend upon a common contention," and "[t]hat common contention…must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (common questions arise where "the defendants have engaged in standardized conduct towards members of the proposed

class"). And plaintiffs need not show that the common issues are governed by formal policies of the defendants. Instead, a common pattern of unlawful conduct is enough. *See, e.g.*, *Anderson v. Cornejo*, 199 F.R.D. 228, 244 (N.D. Ill. 2000) ("Proving a pattern or practice of [unconstitutional searches] would be a basis for granting injunctive relief" to a Rule 23(b)(2) class); *Palmer v. Combined Ins. Co. of Am.*, 217 F.R.D. 430, 438 (N.D. Ill. 2003) (similar); *Holmes v. Godinez*, 311 F.R.D. 177, 220 (N.D. Ill. 2015) (same).

Here, the putative class's claims all derive from Defendants' common course of conduct in unlawfully dispersing, targeting, and retaliating against people exercising their First Amendment rights to (among other things) vocally dissent from, pray about, report on, and observe their enforcement actions in this District.

The record shows that Defendants' common course of conduct spans neighborhoods throughout the Northern District of Illinois, including in Broadview, throughout the City of Chicago—from the far North side to the Southeast side to the suburbs. Dkt. 22-2 (Curran Decl. - Broadview); Dkt. 73-10 (Beale Decl. - Logan Square); Dkt. 73-11 (Kaplan Decl. - East Side); Dkt. 73-7 (Villa Decl. - Brighton Park); Dkt. 73-16 (Peachy Decl. - Albany Park); Dkt. 73-12 (Barrera Decl. - Hermosa); Dkt. 73-13 (Cortez Decl. - Cicero); Dkt. 73-6 (Crespo Decl. - Loop, Brighton Park, and Hoffman Estates). Defendants' actions are aimed at members of the press, non-violent protesters and observers, and religious practitioners, all of whom have been subjected to the same tactics and practices whether they are at Broadview or protesting an immigration arrest on the street outside their home. Dkt. 22-1 (Black Decl.); Dkt. 73-8 (Garcia Decl.). This conduct or practice is sufficient to satisfy Rule 23's commonality requirement. *See*, *e.g.*, *Suchanek*, 764 F.3d at 756 (commonality satisfied when "same conduct or practice" drives resolution of class member claims).

The Court is being asked to determine whether the Defendants violated class members' First and Fourth Amendment rights and violated their right to religious freedom. Relevant to this motion, Plaintiffs have alleged that Defendants directed, supervised and/or condoned federal agents engaging in a common course of conduct that has subjected them to dispersal orders, excessive force, threat of force, detention, and false arrest due to their expression of speech, religious practices, and reporting. In seeking to resolve whether Defendants' common course of conduct has violated proposed Class Members's constitutional rights and their rights under the Religious Freedom Restoration Act ("RFRA"), the Court will be asked to answer a number of inquiries that are common to the proposed Class:

> (1)     Whether Class Members' newsgathering, religious, protest, observation, and documentation activities are protected under the First Amendment;
>
> (2)      Whether Defendants violated Class Members' rights guaranteed by the Fourth Amendment;
>
> (3)     Whether Defendants have subjected Class members to a common practice of issuing dispersal orders to leave a public space where they have a lawful right to be, and whether that practice violates the rights of Class Members;[2]
>
> (4)     Whether Defendants have subjected Class Members to a common practice of failing to issue dispersal orders before using riot control weapons on Class Members, and whether that practice violates the rights of Class Members;[3]
>
> (5)     Whether Defendants have subjected Class Members to a common practice of deploying riot control weapons in violation of their constitutional rights;[4]

---

[2]     Dkt. 22-6 (Paulson Decl.) ¶¶ 6-8; Dkt 73-3 (Toerpe Decl.) ¶¶ 4, 10-11 (Broadview protesters gassed and arrested despite being down the street with vehicles able to pass through).

[3]     Plaintiffs and declarants throughout the Northern District have attested to federal agents deploying teargas or other riot control weapons without first issuing a dispersal order. *See, e.g.*, Dkt. 22-21 (Goyette Decl.) ¶¶ 8, 15; Dkt. 73-10 (Beale Decl.) ¶¶ 6-9; Dkt. 73-8 (Garcia Decl.) ¶¶ 10-11; Dkt. 22-12 (Reidy-Hammer Decl.) ¶ 6; Dkt. 22-6 (Paulson Decl.) ¶¶ 10-11, 16; Dkt. 22-9 (Breslin Decl.) ¶¶ 12-13; Dkt. 73-1 (Mack Decl.) ¶¶ 9-10 (tear gas deployed in Albany Park without warnings); Dkt. 73-2 (Held Supp. Decl.) ¶¶ 26-31 (tear gas deployed in Brighton Park).

[4]     The same is true for federal agents' use of riot control weapons on identified targets that would foreseeably injure class members. *See, e.g*, Dkt. 22-1 (Black Decl.) ¶¶ 5-6 (hit with chemical weapons, including bullets and chemical spray); Dkt. 22-3 (Johnson Decl.) ¶ 4 & 9-11 (pepper balls shot at peaceful protesters at Broadview); Dkt. 73-8 (Garcia Decl.) ¶ 10 (shot with what felt like rubber bullets in East

(6)    Whether Defendants have subjected Class Members to a common practice of threatening Class Members with detention or arrest and/or detaining and/or arresting Class Members;[5]

(7)    Whether Defendants have subjected Class Members to a common practice of threatening Class Members with physical force and/or using force against Class Members;[6]

(8)    Whether Defendants have engaged in a common practice of failing to identify themselves as federal agents with visible identification;[7]

(9)    Whether Class Members' protected First Amendment activity is a motivating factor for Defendants' above-described common practices;

(10)    Whether Defendants' common practices described above are justified by a compelling government interest and if so, whether those practices are the least restrictive means of advancing that interest; and

---

Side); Dkt. 22-8 (Kunkel Decl.) ¶¶ 10-14 (shot with pepper balls in her face at Broadview); Dkt. 22-12 (Reidy-Hammer Decl.) ¶ 6 (flash bang detonated in close proximity at Broadview); Dkt. 22-6 (Paulson) ¶ 18 (flash bang at Broadview); Dkt. 22-21 (Goyette Decl.) ¶¶ 6-7; Dkt. 22-7 (Sullivan Decl.) ¶¶ 9-10; Dkt. 22-11 (Roche Decl.) ¶¶ 5, 8-10 (former Marine hit with rubber bullets and later CS spray); Dkt. 22-13 (Narvaez Dec.) ¶¶ 7-10 (observed teen at Broadview to drop-off possessions to father detained there, be shot from rooftop by federal agents with rubber bullets); Dkt. 73-25 (Klonsky Decl.) ¶¶ 4-5 (pepper ball attacks on peaceful protesters); Dkt. 73-30 (Broadview Exec. Order) (rubber bullets deployed in Broadview); Dkt. 73-29 (Toobin Decl.) ¶¶ 8-11 (federal agents fired pepper balls and rubber bullets into crowd)l Dkt. 73-20 (Vaughan Decl.) ¶ 12 (agents on Broadview roof shot Ms. Vaughan between the eyes with red ball without warning, then continued to shoot her and sprayed something on her); Dkt. 73-4 (Farina Decl.) ¶¶ 8-9 (indiscriminate shooting of rubber bullets and pepper balls into crowd); Dkt. 73-7 (Villa Decl.) ¶¶ 13-14 (use of pepper balls on protesters in Brighton Park).

[5]    Federal agents have repeatedly arrested non-violent protesters without probable cause that they committed any offense. *See, e.g.*, Dkt. 22-15 (Sakiyama Decl.) ¶ 29 (observed friend protesting be arrested for no reason); Dkt. 22-18 (Held Decl.) ¶ 30.

[6]    Dkt. 22-6 (Paulson Decl.) ¶ 13; Dkt. 22-1 (Black Decl.) ¶¶ 5-6; Dkt. 73-8 (Garcia Decl.) ¶ 9 (choking a protester); Dkt. 73-15 (Pedroza Decl.) ¶¶ 12-13 (pushing, shoving, tackling protesters); Dkt. 22-15 (Sakiyama Decl.) ¶ 18 (pushed and shoved peaceful protesters to the ground); Dkt. 73-16 (Peachey Decl.) ¶ 4 (striking protesters with car): Dkt. 73-5 (Fuentes Decl.) at ¶ 6; Dkt. 73-21 (Sampson Decl.) ¶¶ 6-13 (violently pushed down, cuffed and injured); Dkt. 73-24 (Held Decl.) ¶¶ 9-10 (chased, cuffed, arrested by agents, despite attempting to comply with orders): Dkt. 73-14 (Holcombe Decl.) ¶¶ 18-19 (ICE agent shot projectiles at Holcombe after she began praying audibly for his redemption).

[7]    Dkt. 22-21 (Goyette Decl.) ¶ 12; Dkt. 73-10 (Beale Decl.) ¶ 3; Dkt. 73-1 (Mack Decl.) at ¶¶ 4, 8; Dkt. 73-7 (Villa Decl.) ¶ 21; Dkt. 73-8 (Garcia Decl.) ¶ 8; Dkt. 73-15 (Pedroza Decl.) ¶ 8; Dkt. 73-26 (Onion Decl.) ¶ 9; Dkt. 73-6 (Crespo Decl.) ¶ 28.

(11)   Whether Defendants' common practices described above would deter a person of ordinary firmness from engaging in protected First Amendment activities at Defendants' immigration operations.

Resolving these issues will help drive the resolution of the Class's claims and are similar to other common issues identified by courts when certifying protest cases as class actions. *See, e.g.*, *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles ("MIWON")*, 246 F.R.D. 621, 631 (C.D. Cal. 2007) ("The LAPD's command decisions to declare an unlawful assembly, disperse the crowd, and authorize the use of force constitute the 'common core of salient facts' that support commonality.").

Courts regularly find commonality satisfied where plaintiffs identify policies and practices of the defendants that injure them. *See Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 557 (7th Cir. 2016) ("If plaintiffs can present classwide evidence that a prison is engaging in a policy or practice which rises to the level of a systemic indifference, then we can identify 'conduct common to members of the class' which advances the litigation…"); *see also Parsons v. Ryan*, 754 F.3d 657, 678, 681 (9th Cir. 2014) (common question is whether statewide policies and practices expose putative class to harm; collecting cases); *Lipper v. Baldwin*, No. 10 C 4603, 2017 WL 1545672, at *4 (N.D. Ill. Apr. 28, 2017) ("[t]he question common to all plaintiffs, then, is whether each of defendants' policies and practices do in fact put inmates with serious medical conditions at risk. As other courts have held, such a question satisfies Rule 23's commonality requirement"). Plaintiffs have done so here, and commonality is satisfied.

A.   **Religious Exercise Subclass**

Class certification for cases relating to religious freedom is appropriate when the claims hinge on answers to common questions. *See*, *e.g.*, *Vita Nuova, Inc. v. Azar*, 4:19-CV-00532-O, 2020 WL 8271942, at *5 (N.D. Tex. Dec. 2, 2020) (commonality satisfied when plaintiffs alleged a RFRA claim based on theory that putative class members were forced to choose between

11

receiving federal funding or abiding by their sincere religious beliefs). The claims of the Religious Exercise Subclass will be decided based on the resolution of common issues including: whether Defendants have a policy or practice of targeting Religious Exercise Subclass members with violence or threats of violence because of the content of their speech, as expressed through preaching, prayer, religious singing, and participating in vigils and religious processions; whether the violence and threats of violence alleged in this case substantially burden religious exercise in the form of preaching, praying, religious singing, and participating in vigils and religious processions; whether such violence and threats of violence are justified by a compelling state interest; and if so, whether, such violence and threats of violence are the least restrictive means of advancing that interest.

### B.      Press Subclass

In addition to the common questions for the broader class identified above, a number of common questions bind the Press Subclass. These include: whether Defendants targeted members of the press intending to impede their ability to report on immigration enforcement operations; whether Defendants discriminated against press; whether subclass members were engaged in protected First Amendment activities by news gathering and reporting at DHS immigration operations; whether a person of ordinary firmness would be deterred from reporting or news gathering by Defendants conduct toward members of the press during immigration operations; and whether the Defendants' dispersal of the Press Subclass are allowing them adequate opportunities to continue to report on their enforcement activities and interactions with protesters.

### IV.    The Class Representatives' Claims are Typical of the Claims of the Class

To satisfy the typicality requirement, the claims of the Plaintiffs must be "typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). This is met when a plaintiff's claim

"arises from the same event or practice or course of conduct that gives rise to the claims of other class members and … her claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted). Put differently, commonality and typicality are similar inquiries. Indeed, as the Seventh Circuit has explained, "commonality and typicality tend to merge." *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017) (cleaned up).

### A.    Plaintiffs Paulson, Villa, and Crespo

Plaintiffs William Paulson, Rudy Villa and Jennifer Crespo all meet the typicality requirement to be appointed Class representatives because they have experienced Defendants' common course of conduct of directing, authorizing and/or supervising federal agents to subject peaceful protesters to dispersal and unprovoked violence while expressing their First Amendment rights and present the legal claims the Court will need to decide. On that score, Plaintiffs Paulson, Villa and Crespo will require the Court to determine whether federal agents have deployed tear gas, chemical weapons, and violence on peaceful protesters. Plaintiffs Paulson, Villa and Crespo have all witnessed and been exposed to federal agents deploying tear gas, rubber bullets and other chemical weapons on peaceful protesters in public fora. Dkt. 22-6 (Paulson Decl.) ¶¶9-10, 16-20, 7-8, 13 (engaged in peaceful protest; tear gas and flash bang grenades deployed; observed federal agents tackle peaceful protesters to the ground); Dkt. 73-7 (Villa Decl.) ¶¶ 1-7, 12-22 (federal agents deployed tear gas, pepper balls and violence on peaceful protesters voicing anti-ICE chants at Brighton Park protest); Dkt.73-6 (Crespo Decl.) ¶¶ 1-7, 22-25, 29-33 (federal agents deployed tear gas, chemical weapons on peaceful protesters in Chicago; observed protest in Hoffman Estates; agents arrest of teenager protesting federal agents presence in her community). While Plaintiffs Paulson, Villa and Crespo all fear for their safety, all three intend to continue to return and protest, *id.* ¶ 41; Dkt. 73-7 (Villa Decl.) ¶ 23; Dkt. 2-6

13

(Paulson Decl.) ¶¶ 23-24. Plaintiff Paulson wants to express his view that he does not agree with what the government is doing and the way federal agents are "pull[ing] people off the streets, throw[ing] them in cars, and harm[ing] them," and he wants to "bear witness to the actions of the federal agents" at Broadview. *Id.* ¶ 4. Plaintiff Crespo intends to go to locations where federal immigration agents are confronting the public to express her constitutional rights, despite her fear that she will be harmed due to how federal agents are indiscriminately using force on peaceful protesters and bystanders. Dkt.73-6 (Crespo Decl.) ¶ 18.

### B. Plaintiffs Black, Curran, Holcombe, and Johnson

Plaintiffs Reverend David Black, Father Brendan Curran, Reverend Abby Holcombe, and Reverend Dr. Beth Johnson similarly have claims that are typical with the rest of the Class Members and should be appointed as Class Representatives. These three Plaintiffs bring claims and have engaged in activity that is covered by the Class definition and under the Religious Subclass.

Resolution of Black, Curran, Holcombe, and Johnson's claims will require the Court to determine whether Defendants' course of conduct violated their rights protected by the First Amendment and RFRA. Specifically, the Court must consider whether Defendants directed, authorized, and or condoned federal agents' conduct against religious practitioners who are engaged in prayer and other expressions of their faith. This alleged common course of conduct includes such actions as: deploying without justification or dispersal orders teargas, rubber bullets and other chemical weapons on non-violent individuals engaged in prayer or protest; shoving peaceful protesters; shooting pepper balls and chemical agents at peaceful protesters and religious leaders gathered at Broadview to pray; and invoking fear in religious practitioners in a way that burdens and chills their free exercise of religion. Dkt. 22-1 (Black Decl.) ¶¶ 3-5 (federal agents shot rubber bullets from roof of Broadview while Reverend Black prayed with

14

outstretched arms); Dkt. 22-3 (Johnson Decl.) ¶¶ 5-6, 8-9; Dkt. 22-2 (Curren Decl.) ¶¶ 39-40; Dkt. 73-14 (Holcombe Decl.) ¶¶ 13-20.

### C. Plaintiff Stephen Held

Plaintiff Stephen Held also brings claims that are typical of the Class as a whole, as well as bringing claims that are part of the Press Subclass. Plaintiff Held, just like the rest of the Press Subclass, claims that Defendants are violating his rights under the First Amendment to engage in news gathering and reporting during the federal immigration enforcement operations by using illegal dispersal orders, violence, and threats of violence. Dkt. 22-18 (Held Decl.) ¶¶ 7-21, 29-30; Dkt. 73-2 (Held Supp. Decl.) ¶¶ 15, 17-18, 22-31. Like other members of the Press Subclass, Plaintiff Held wears identifiable press credentials when he is reporting on DHS immigration enforcement, ensures he is not obstructing enforcement activity, obeys federal law enforcement orders to the greatest extent possible, and does not engage in violence or interfere with immigration operations. Dkt. 22-18 (Held Decl.) ¶¶ 4-5.

## V. The Proposed Class Representatives and Class Counsel Will Adequately Represent the Class

"In determining adequacy of class representation, the court considers (1) whether any conflicts of interest exist between the named plaintiffs and the class members, and (2) whether the named plaintiffs' counsel will adequately protect the interests of the class." *Raymundo v. Winnebago Cnty.*, 2009 WL 10855867, at *3 (N.D. Ill. June 10, 2009).

### A. The Proposed Class Representatives are Adequate

Rule 23(a)(4) requires that representative parties must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). A class representative must be part of the class, sharing the same interest and suffering the same injury as the other class members. *Raymundo*, 2009 WL 10855867, at *3 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S 591, 625-26 (1997)).

"To be an adequate representative, a plaintiff must have a sufficient stake in the outcome to ensure zealous advocacy, and must not have antagonistic or conflicting claims with other class members." *Id.* (quoting *Rahim v. Sheahan*, 2001 WL 1263493, at \*15 (N.D. Ill. Oct. 19, 2001)).

As described above when analyzing the typicality of the Class Members' claims, each proposed Class Representative has the exact same type of claims as the other class members. They have each non-violently demonstrated, protested, observed, documented, or recorded at DHS immigration operations in the Northern District of Illinois, and they either plan to do so again or are chilled from engaging in such protected activity in the future.

The proposed Class Representatives are also committed to pursuing the claims of their classes. They have diligently participated in providing information to their attorneys in support of the case and they are prepared to remain informed and involved with the case, and to testify at deposition or trial if needed. They understand and will fulfill their obligation to pursue the best interests of the Class. Moreover, each of them has already participated in the case by signing declarations explaining their particular circumstances and their commitment to exercising their First Amendment rights in the face of government overreach. Dkt. 22-6 (Paulson Decl.); Dkt. 73-6 (Crespo Decl.); Dkt. 73-7 (Villa Decl.); Dkt. 22-1 (Black Decl.); Dkt. 22-2 (Curran Decl.); Dkt. 22-3 (Johnson Decl.); Dkt. 73-14 (Holcombe Decl.); Dkt. 22-18 and 73-2 (Held). Thus, all of the proposed Class Representatives are adequate representatives for the Class as a whole.

Plaintiffs Black, Johnson, Curran, and Holcombe are also adequate representatives for the Religious Exercise Subclass. They are religious leaders who have demonstrated commitment to personally engaging in and leading others in religious exercise while present at immigration enforcement operations. Dkt. 22-1 (Black Decl.); Dkt. 22-2 (Curran Decl.); Dkt. 22-3 (Johnson Decl.); Dkt. 73-14 (Holcombe Decl.). Plaintiff Curran, for his part, has long been part of the

tradition in this District of engaging in religious exercise at the site of immigration enforcement operations, having attended weekly prayer vigils at the Broadview Detention Facility for 19 years. Dkt. 22-2 (Curran Decl.) at ¶¶ 2-5.

Plaintiff Held is an adequate representative for the Press Subclass because he is a journalist who has a direct stake in this outcome of this case. It directly affects his ability to practice his profession, which he has demonstrated a commitment to pursuing. *See generally* Dkt. 22-18 (Held Decl.).

### B. Proposed Class Counsel are Qualified and Experienced

Plaintiffs request that the Court appoint the following as Class Counsel: the Civil Rights and Police Accountability Project of the Edwin F. Mandel Legal Aid Clinic at the University of Chicago Law School; the Community Justice and Civil Rights Clinic at Northwestern University Law School; Loevy + Loevy; the Roger Baldwin Foundation of ACLU, Inc. ("RBF"); and Protect Democracy.

Proposed Class Counsel have significant experience litigating complex federal civil rights cases and class actions. Ex. 1 (L+L Decl.) ¶¶ 5-6; Ex. 2 (C. Futterman Decl.) ¶¶ 3-5; Ex. 3 (W. Hilke Decl.) ¶ 6; Ex. 4 (K. Schwartzmann Decl.) ¶¶ 3-9; Ex. 5 (K. Fee Decl.) ¶ 5.

For example, lawyers from Loevy & Loevy, including lawyers working on this case, have been appointed as class counsel and have successfully litigated a wide variety of civil rights and other class action cases. *See, e.g., Black Lives Matter 5280 v. City & County of Denver*, 338 F.R.D. 506, 512 (D. Colo. 2021) (appointing lawyers from Loevy & Loevy as class counsel in case arising from protests); *Young v. County of Cook*, No. 06 C 552, 2007 WL 1238920, at *6 (N.D. Ill. Apr. 25, 2007) (Loevy & Loevy appointed as class counsel in case alleging that pretrial detainees were illegally strip searched); *see also* Ex. 1 (L+L Decl.) ¶ 6 (recounting additional

class action experience and results). The firm has taken multiple class action cases to trial and has successfully tried many other cases as well. *See id.* ¶¶ 5-6.

The Civil Rights and Police Accountability Project of the Edwin F. Mandel Legal Aid Clinic at the University of Chicago is widely recognized as one of the leading clinics in the country and has similarly devoted significant resources to this case. Ex. 2 (C. Futterman Decl.) ¶¶ 3-8. Craig Futterman, a Clinical Professor of Law who has led the clinic for the past twenty-five years, is a leading civil rights lawyer who has significant experience litigating class actions. *Id*. ¶ 4. Mr. Futterman's work has been recognized by the judiciary as well, with Magistrate Judge Cole noting in one of his class action cases that "[t]he kind of conduct and responsibility displayed by the lawyers in this case make one proud to be in the legal profession." *Smith v. Chicago*, No. 06-cv-6423, Dkt. No. 227 (N.D. Ill. May 23, 2012).

The Community Justice and Civil Rights Clinic is part of the Bluhm Legal Clinic at Northwestern University Law School. Ex. 3 (Hilke Decl.) ¶¶ 5-6. The Community Justice and Civil Rights Clinic was founded in 2020. Since then, it has litigated significant First Amendment cases, seeking (and obtaining) injunctive relief, and it has recovered millions of dollars for plaintiffs in complex civil rights lawsuits, including First Amendment cases. *Id*. ¶ 6.

Protect Democracy similarly has significant experience litigating constitutional claims and class actions and should be appointed as Class Counsel here. Protect Democracy is a non-partisan organization founded in 2017. It works to defend dissent, protect elections, build more resilient democratic institutions, and protect our freedom and liberal democracy. Protect Democracy has previously been appointed class counsel and its counsel has extensive class and First Amendment litigation experience. Ex. 4 (K. Schwartzmann Decl.) ¶¶ 3-9.

18

So too for RBF. RBF is an affiliate of the American Civil Liberties Union, and it "engages in initiatives involving litigation, non-legislative policy advocacy, and communications, and has been a leading protector of constitutional rights in the state since its founding in Illinois." Ex. 5 (K. Fee Decl.) ¶¶ 3-4. Moreover, it "conducts impact litigation on a broad array of subjects, including free speech, religious liberty, LGBTQ+ rights, immigrants' rights, women's and reproductive rights, privacy, police practices, the rights of prisoners, and the rights of other institutionalized persons." *Id.* ¶ 4. It also has significant experience and success litigating class actions. *Id.* ¶ 5.

Proposed Class Counsel have spent hundreds or thousands of hours investigating the facts of this case, conducting extensive factual and legal research, propounding and pursuing expedited discovery; reviewing video footage from the protests as well as other documentary evidence, drafting pleadings and motions, identifying and interviewing potential class members, and obtaining a temporary restraining order. *See*, *e.g.* Ex. 1 (L&L Declaration) ¶¶ 3-4; Ex. 2 (Futterman Decl.) ¶¶ 2, 6-7; Ex. 3 (Hilke Decl.) ¶ 3; Ex. 4 (K. Schwartzmann Decl.) ¶ 14; Ex. 5 (K. Fee Decl.) ¶¶ 3, 18.

Furthermore, there are no known conflicts between proposed Class Counsel and the proposed classes. Accordingly, Rule 23(a)(4) is satisfied, and the Court should appoint the ACLU-Illinois, the Civil Rights and Police Accountability Project, the Community Justice and Civil Rights Clinic, Loevy + Loevy, and Protect Democracy as Class Counsel.

## VI.    Class Certification is Appropriate under Rule 23(b)(2)

A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class," and if the equitable relief sought is both "(1) appropriate respecting the class as a whole and (2) final." *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892 (7th Cir. 2011) (internal quotations omitted). Injunctive relief is

"appropriate" where "(1) the plaintiffs have suffered irreparable harm; (2) monetary damages are inadequate to remedy the injury; (3) an equitable remedy is warranted based on the balance of hardships between the plaintiffs and defendant; and (4) the public interest would be well served by the injunction." *Id.* To be "final," the relief sought cannot "merely lay an evidentiary foundation for subsequent determinations of liability." *Id.* at 893.

Although the Court will decide the merits of Plaintiffs' claims separately from this motion, there is no question that Plaintiffs are seeking injunctive relief that would apply to the Class as a whole and will be final if granted (or denied) rather than merely laying the groundwork for a different substantive claim. As explained in more detail in Plaintiffs' accompanying Motion for Preliminary Injunction, claims alleging that the government has infringed on constitutional rights present the classic case for injunctive relief. *See*, *e.g.*, *Int'l Ass'n of Fire Fighters, Loc. 365 v. City of E. Chicago*, 56 F.4th 437, 450-51 (7th Cir. 2022) ("[I]rreparable harm is presumed in First Amendment cases."); *Smith v. City of Chicago*, 340 F.R.D. 262, 284-85 & 291 (N.D. Ill. 2021) (certifying class and subclass fourth amendment claims for as proper under Rule 23(b)(2) for injunctive relief and rejecting argument that such claims required individualized analysis were based on defendants' common course of conduct); *see also Korte v. Sebelius*, 735 F.3d 654, 666 (7th Cir. 2013) (same for RFRA claim because the RFRA statute "protects First Amendment free-exercise rights").

There is also no doubt that the Class and each Subclass "seek the same declaratory and injunctive relief for everyone," which is exactly the type of case that Rule 23(b)(2) was designed to cover. *Chi. Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 442 (7th Cir. 2015). In *Chicago Teachers Union*, the Seventh Circuit held that class certification was appropriate under Rule 23(b)(2) where the proposed class alleged that the defendants had engaged in

common practices that violated the law and sought an injunction against those practices. *Id*. at 441-42. That is exactly what Plaintiffs have alleged and marshalled evidence in support of in this case. Namely, Plaintiffs have alleged and provided evidence that Defendants have engaged in a common practice of violating Class Members' rights under the First and Fourth Amendments and RFRA, and the proposed Class seeks "prospective injunctive relief including a moratorium on" those practices. *See Id*. at 441.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion for class certification and appointment of class counsel.

DATED: October 24, 2025                     Respectfully submitted,

                                    By:     /s/ Scott Rauscher
                                            *One of Plaintiffs Attorneys*

*Counsel for Plaintiff*

Jon Loevy                          Craig B. Futterman
Locke Bowman                       **MANDEL LEGAL AID CLINIC**
Steve Art                          University of Chicago Law School
Heather Lewis Donnell              6020 S. University
Theresa Kleinhaus                  Chicago, IL 60637
Scott Rauscher                     (773) 702-9611
Matt Topic                         futterman@uchicago.edu
Julia Rickert
Tara Thompson                      Hayden Johnson*
Lindsay Hagy                       Katie Schwartzmann*
Jordan Poole                       Conor Gaffney*
Dominique Gilbert                  **PROTECT DEMOCRACY PROJECT**
Justin Hill                        2020 Pennsylvania Ave NW, Ste 163
Aaron Tucek                        Washington DC 20006
**LOEVY + LOEVY**                  (202) 579-4582
311 N. Aberdeen Street             *\* Admitted pro hac vice*
Chicago, Illinois 60647
(312) 243-5900                     Daniel Massoglia
steve@loevy.com                    Hannah C. Marion
                                   **FIRST DEFENSE LEGAL AID**
Elizabeth Wang                     601 S. California Ave.
Isaac Green                        Chicago, IL 60612
**LOEVY + LOEVY**                  (336) 575-6968

21

2060 Broadway, Ste. 460
Boulder, CO 80302

David B. Owens
**LOEVY + LOEVY**
% Civil Rights and Justice Clinic
University of Washington Law School
William H. Gates Hall, Suite 265
Seattle, WA 98145-1110

Wallace Hilke
**COMMUNITY JUSTICE AND CIVIL
RIGHTS CLINIC**
Bluhm Legal Clinic, Northwestern Pritzker
School of Law
375 E. Chicago Ave.
Chicago, IL 60611
(312) 503-2224
wally.hilke@law.northwestern.edu

daniel@first-defense.org
hannah@first-defense.org

Kevin M. Fee, Jr.
Rebecca Glenberg
Hirsh Joshi
Priyanka Menon
**ROGER BALDWIN FOUNDATION OF
ACLU, INC.**
150 N. Michigan, Suite 600
Chicago, IL 60601
(312) 201-9740
kfee@aclu-il.org
rglenberg@aclu-il.org