IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHICAGO HEADLINE CLUB, et al., | ) |
| *Plaintiffs,* | ) ) ) |
| v. | ) No. 25-cv-12173 ) Hon. Sara L. Ellis ) ) |
| KRISTI NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity, et al. | ) ) ) ) |
| *Defendants* | ) ) |

**PLAINTIFFS' NOTICE OF VIOLATIONS OF THE COURT'S
TEMPORARY RESTRAINING ORDER**

Plaintiffs Chicago Headline Club, et al., by and through their attorneys, respectfully supplement their Notice of Violations, Dkt. 89, and supplement the record with the following additional facts regarding apparent violations of the Court's Temporary Restraining Order (TRO), Dkt. 66, that occurred on October 23, 2025 in the Little Village neighborhood, stating as follows:[1]

1. On Thursday, October 23, 2025, residents gathered to demonstrate and to observe as Defendant Gregory Bovino and a large group of federal agents convened in the Little Village neighborhood. As he did the day before, Dkt. 90, Defendant Bovino appeared to exhibit disregard for the Court's order limiting federal agents' use of force, including crowd control devices.

---

[1] Pursuant to the Court's order that Plaintiffs should confer at least 24 hours before filing a request for relief, Plaintiffs emailed Defendants about this incident on October 23, 2025 and conferred by phone with counsel for Defendants on October 24, 2025. Defendants stated they did not believe the events described in this and Plaintiffs' prior filing regarding this incident reflected any violation of the Court's TRO. Plaintiffs informed the government of their intent to seek discovery relating to the incidents in Little Village on October 22nd and 23rd, pursuant to their Requests for Production Nos. 2 and 5 and the Court's order granting them leave to take discovery. Dkt. 85.

1

2. Defendant Bovino was apparently the first federal agent to throw a tear gas cannister into the crowd. Defendant Bovino did not give any audible warnings before doing so and the crowd was not being violent or committing any crimes at the time he threw the tear gas cannisters. Ex. 82 (Sotelo Decl.) ¶¶ 7,8.

3. While some assembled civilians attempted to speak with Defendant Bovino and his officers and deescalate the situation, the federal officers deployed indiscriminate riot control weapons on the entire group of civilians. Ex. 83 (Bodett Decl.) ¶¶ 7, 9.

4. Declarant Yohanna Sotelo was standing feet away from Defendant Bovino when he threw the teargas up above the crowd of demonstrators behind her. She captured a video of him doing so, from which the below screenshot (previously filed at Dkt. 89) was taken.[2] Sotelo Decl. ¶ 8.



---

[2] The full video is available at https://spaces.hightail.com/space/BDqwV97J8x

5. Shortly after this, Defendant Bovino threw a second tear gas cannister, again without any apparent justification or warning. At the same time, another federal agent shot what appears to be a teargas cannister into the crowd at head level. Bodett Decl. ¶¶ 8-11.

6. Ms. Sotelo was also shoved by federal agents and observed them do the same to others for no apparent reason, including pushing one man off of his bicycle. Sotelo Decl. ¶ 6.

7. The Department of Homeland Security has issued a public statement via its official social media account, purporting to justify the actions described above, titled "LAW AND ORDER WILL TRIUMPH IN CHICAGO," which states in relevant part that, "Rioters . . . shot at agents with commercial artillery shell fireworks. . . . The mob of rioters grew more hostile and violent, advancing toward agents and began throwing rocks and other objects at agents, including one that struck Chief Greg Bovino in the head. Border Patrol agents repeated multiple warnings to back up and that chemical agents would be deployed if warnings were ignored. Riot control measures were deployed, including by Chief Bovino, and arrests were made. Agents properly used their training. The use of chemical munitions was conducted in full accordance with CBP policy and was necessary to ensure the safety of both law enforcement and the public."[3]

8. The statement is a lie. The statement fits two patterns that Plaintiffs have highlighted repeatedly in this case. First, the government is inventing exigencies that do not exist to justify its actions. Second, the government is perpetrating extreme violence against peaceful and innocent American civilians in order to provoke a reaction that the government then uses as an after-the-fact justification for the violence it has already used.

---

[3] @DHSgov, X.com post (Oct. 24, 2025 8:39 a.m.), available at
https://x.com/DHSgov/status/1981717145089098111 (last accessed Oct. 24, 2025 at 4:08 p.m.).

9. In reality, multiple declarants and numerous video clips demonstrate that the crowd in Little Village was peaceful at the moment Defendant Bovino started the conflict by launching cannisters of tear gas into the assembled crowd, and that no warnings or dispersal orders were given before he did so. Sotelo Decl. ¶¶ 7-8; Bodett Decl. ¶ 7.

10. In addition, despite investigation, Plaintiffs are not aware of any evidence that commercial artillery shell fireworks were fired by anyone at the scene.

11. Following the incident, Defendant Bovino was interviewed by a reporter. In that interview, Defendant Bovino appears uninjured. He says in response to questions words to the effect of, "Did Judge Ellis get hit in the head by a rock like I did this morning?" Defendant Bovino continues saying something like, "maybe she needs to see what that's like before she gives an order like that."[4]

12. Again, despite investigation, Plaintiffs are not aware of any evidence that Defendant Bovino was struck with any object during the incident described above. As of this filing Defendants have not produced or pointed to any evidence that Defendant Bovino was, as he claims, hit in the head with a rock.

13. In that same interview discussed above, Defendant Bovino also stated, "I take my orders from the executive branch," suggesting disdain for this Court's authority to enjoin his unlawful conduct.[5]

14. In addition to the violations of the Court's TRO discussed above, other federal agents committed violations of the TRO around the same time on October 23rd in Little Village.

---

[4] Plaintiffs provide these quotes based on their best attempts to hear the underlying English audio, confirmed by translations, the following interview that was broadcast by Telemundo in Spanish: Noticias Telmundo, Conversamos con Gregory Bovino, jefe de la Patrulla Fronteriza en Chicago, available at https://www.youtube.com/watch?v=cTqDklpcu-A (last accessed Oct. 24, 2025 at 4:35 p.m.).
[5] A video of this statement, which was broadcast by NBC News, is available at: https://spaces.hightail.com/space/Amkvop5Eiw

4

One federal officer, who was not wearing a body camera or any obvious visible identification, shot Declarant Enrique Bahena, in the neck from five feet away with a pepper ball. Ex. 84 (Bahena Decl.) ¶¶ 6-9. Below are screenshots of the moment before and after he was fired upon.





15. Mr. Bahena has a large, painful welt on his neck and is now fearful about continuing to show up and protest the conduct of federal officers in his city. *Id.* ¶¶ 7, 16.

16. As agents were driving away, they pointed a pepper ball gun and then a real gun at Declarant Chris Gentry, a combat veteran who was lawfully standing on the side of the road

voicing his opposition as agents were driving by in their vehicles. Ex. 85 (Gentry Decl.) ¶¶ 6-10. The agent who pointed the real gun at Mr. Gentry's face said "bang, bang," and "you're dead liberal." Id. ¶ 10.

17. Plaintiffs also note that photos and videos appear to show several federal agents wearing body-worn cameras. Plaintiffs have requested any footage from the incident, but they have not received any response as of this filing.

18. The actions described above and in Plaintiffs' prior filing violated, at least, the following provisions of the Court's TRO:

1(d) – agents used pepper spray or tear gas on protesters who did not pose an immediate safety threat;

1(e) – agents used pepper spray or tear gas when it was reasonably foreseeable doing so would injure protesters, and doing so was not necessary to stop an immediate and serious threat of physical harm to a person;

1(f) – agents fired CS or CN gas canisters so as to strike any person, including by deploying these weapons above the head of the crowd, in circumstances where the targeted person did not pose an immediate threat of causing serious bodily injury or death to a person in equivalent circumstances to those where the officer is authorized to use deadly force;

1(g) – agent fired Compressed Air Launchers (e.g., PLS and FN303), or Munitions Launchers (e.g., 40mm), or KIPs so as to strike the head, neck, groin, spine, or female breast, or striking any person with a vehicle, in circumstances where the targeted person did not pose an immediate threat of causing serious bodily injury or death to a person in equivalent circumstances to those where the officer is authorized to use deadly force;

1(h) – agents used force, including shoving a person to the ground, tackling, or body slamming an individual who posed no immediate threat of physical harm to others, and the force was not necessary or proportionate to effectuate an apprehension and arrest;

1(i) – agents used riot control weapons without giving two separate audible warnings; and

2 – agents failed to wear visible identification prominently displayed.

19. Plaintiffs provide this submission to improve the evidentiary record. They continue to request that the Court enter any relief that the Court deems just and proper. Tomorrow, Plaintiffs intend to ask the Court for additional relief based on the incidents described in this filing, and based on other incidents occurring throughout the Northern District of Illinois, about which Plaintiffs are conferring with the government at the time of this filing.

RESPECTFULLY SUBMITTED,

By: **Chicago Headline Club, et al.**

/s/ Steve Art

*Counsel for Plaintiffs*

Jon Loevy
Locke Bowman
Steve Art
Heather Lewis Donnell
Theresa Kleinhaus
Scott Rauscher
Matt Topic
Julia Rickert
Tara Thompson
Lindsay Hagy
Jordan Poole
Dominique Gilbert
Justin Hill
Aaron Tucek
**LOEVY + LOEVY**
311 N. Aberdeen Street
Chicago, Illinois 60647
(312) 243-5900
steve@loevy.com

Elizabeth Wang
Isaac Green
**LOEVY + LOEVY**
2060 Broadway, Ste. 460
Boulder, CO 80302

David B. Owens
**LOEVY + LOEVY**
℅ Civil Rights and Justice Clinic
University of Washington Law School
William H. Gates Hall, Suite 265
Seattle, WA 98145-1110

Wallace Hilke
**COMMUNITY JUSTICE AND CIVIL RIGHTS CLINIC**
Bluhm Legal Clinic, Northwestern Pritzker School of Law
375 E. Chicago Ave.
Chicago, IL 60611
(312) 503-2224
wally.hilke@law.northwestern.edu

Craig B. Futterman
**MANDEL LEGAL AID CLINIC**
University of Chicago Law School
6020 S. University
Chicago, IL 60637
(773) 702-9611
futterman@uchicago.edu

Hayden Johnson*
Katie Schwartzmann*
Conor Gaffney*
**PROTECT DEMOCRACY PROJECT**
2020 Pennsylvania Ave NW, Ste 163
Washington DC 20006
(202) 579-4582
* *Admitted pro hac vice*

Daniel Massoglia
Hannah C. Marion
**FIRST DEFENSE LEGAL AID**
601 S. California Ave.
Chicago, IL 60612
(336) 575-6968
daniel@first-defense.org
hannah@first-defense.org

Kevin M. Fee, Jr.
Rebecca Glenberg
Hirsh Joshi
Priyanka Menon
**ROGER BALDWIN FOUNDATION OF ACLU, INC.**
150 N. Michigan, Suite 600
Chicago, IL 60601
(312) 201-9740
kfee@aclu-il.org
rglenberg@aclu-il.org