IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT COURT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO HEADLINE CLUB, *et al.*, ) <br> ) <br> *Plaintiffs*, ) <br> ) <br> v. ) <br> ) <br> ) <br> KRISTI NOEM, Secretary, U.S. ) <br> Department of Homeland Security, in her ) <br> official capacity, *et al.*, ) <br> ) <br> *Defendants*. ) <br> ) | No. 25-cv-12173 <br><br> Hon. Sara L. Ellis, <br> District Judge |

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**INTRODUCTION**

The plaintiffs in this case—a collection of journalists, religious ministers, and other Chicago-area residents—bring an assortment of claims under the First Amendment, Fourth Amendment, and Religious Freedom Restoration Act ("RFRA") against various federal agencies involved in Operation Midway Blitz. That Operation has involved immigration enforcement actions throughout the Chicago area over the past several weeks, many of which have been met with protests, threats, and even acts of violence by those opposed to the federal government's immigration priorities. Plaintiffs broadly allege that Defendants have acted unlawfully in response to such resistance, and they highlight specific incidents where Defendants' use of dispersal orders and other crowd-control measures purportedly chilled protected speech, amounted to unconstitutional retaliation, burdened some Plaintiffs' religious expression, and violated others' Fourth Amendment rights.

Each of Plaintiffs' claims in this case is fact-intensive and incident- and plaintiff-specific: Was a given dispersal order justified by security concerns? Was the use of certain crowd-control measures at a certain time and place warranted by imminent threats to the safety of federal agents? Was a particular arrest of a particular person reasonable under the totality of the circumstances? Not content to seek relief for their specific alleged injuries, however, Plaintiffs now move to certify a sprawling class consisting of "[a]ll persons who . . . non-violently demonstrate, protest, observe, document, or record . . . immigration operations" conducted by the Department of Homeland Security ("DHS") in the Northern District of Illinois, or who will do so "in the future" ("the Class"). ECF No. 81 at 2. And they also seek to represent two subclasses, one consisting of "[a]ll persons who are or will . . . engage in religious expression in the form of prayer, procession, song, preaching, or proselytizing at [DHS] immigration operations," and the other "[a]ll persons who are

1

or will . . . engage in news gathering or reporting" at such operations ("the Subclasses"). *Id.*

Plaintiffs' proposed classes do not come close to meeting the rigorous requirements for class certification. The class definitions Plaintiffs propose are so sweeping and vague that it would be near-impossible to ascertain class membership at any given time. The disparate claims Plaintiffs assert—which implicate a medley of allegedly unlawful conduct by different federal agents from different federal agencies on different occasions on different dates against different people—lack any semblance of commonality and are thus unsuitable for class-wide resolution. The relief Plaintiffs seek is likewise incompatible with both class certification requirements and statute.

## BACKGROUND

The background for this case is provided in Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction.

## LEGAL STANDARD

The requirements for class certification are set forth in Federal Rule of Civil Procedure 23. A plaintiff seeking to certify a class must first satisfy the requirements of Rule 23(a), which are that (1) the proposed class is "so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) the proposed class representatives "will fairly and adequately protect the interests of the class." *Lacy v. Cook Cnty.*, 897 F.3d 847, 864 (7th Cir. 2018) (quoting Fed. R. Civ. P. 23(a)). "Courts and practitioners alike shorthand these basic prerequisites as numerosity, commonality, typicality, and adequacy of representation." *Anderson v. Weinert Enters.*, 986 F.3d 773, 777 (7th Cir. 2021). The plaintiff must also "demonstrate that one of the conditions of Rule 23(b) is met." *Lacy*, 897 F.3d at 864. Here, Plaintiffs seek class certification under Rule 23(b)(2), meaning they must show that Defendants

have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Rule 23 "permits district courts to divide a class into subclasses." *Balderrama-Baca v. Clarence Davids & Co.*, 318 F.R.D. 603, 608 (N.D. Ill. 2017) (citing Fed. R. Civ. P. 23(c)(5)). A subclass may be properly certified, however, only if it is "homogenous, in the sense that every member of the subclass wants the same relief" and "otherwise satisfies the requirements for certifying a class, so that [the subclass] could be the plaintiff class in a separate class action." *Id.*

"The party seeking class certification bears the burden of showing by a preponderance of the evidence that certification is proper." *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather, "[a] party seeking class certification must affirmatively demonstrate [its] compliance with" the Rule's multiple requirements. *Id.*; *see Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) ("On issues affecting class certification, . . . a court may not simply assume the truth of the matters as asserted by the plaintiff."). A court may in turn certify a class "only if, 'after a rigorous analysis,' [it] is satisfied that" those requirements "have been met," which "[f]requently . . . will entail some overlap with the merits of the plaintiff's underlying claim." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 493 (7th Cir. 2012) (quoting *Wal-Mart*, 564 U.S. at 350-51)). And a plaintiff's "[f]ailure to meet any of" Rule 23's requirements "precludes class certification." *Orr*, 953 F.3d at 497.

## ARGUMENT

Plaintiffs' motion for class certification should be denied. The class definitions Plaintiffs propose are not ascertainable. The Classes do not satisfy Rule 23(a)'s commonality and typicality

3

requirements. And the Classes are not maintainable under Rule 23(b)(2).[1]

### I. Plaintiffs' Proposed Classes Are Not Ascertainable

Plaintiffs' motion for class certification fails at the outset because the sweeping Class and Subclasses they propose—which effectively encompass anyone who "demonstrate[s]," "protest[s]," "observe[s]," "document[s]," "record[s]," "gather[s]" news about, or "preach[es]" or "pray[s]" in the vicinity of any DHS "immigration operation[]" that is conducted in the Northern District of Illinois, ECF No. 81 at 2— "lack[] the definiteness required for class certification." *Jamie S.*, 668 F.3d at 495.

The Seventh Circuit has "long recognized an implicit requirement under Rule 23" that a class "be defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657, 659 (7th Cir. 2015). Put simply, "a class must be sufficiently definite" that its members can be "readily ascertain[ed]." *Jamie S.*, 668 F.3d at 495. This ascertainability requirement applies "to all class actions" and ensures, among other things, that a court will be able "to identify who will receive notice, who will share in any recovery, and who will be bound by a judgment." *Mullins*, 795 F.3d at 657, 660; *see Strow v. B&G Foods, Inc.*, 348 F.R.D. 446, 449 (N.D. Ill. 2025) (noting that the ascertainability requirement "ensures that individuals actually harmed by the defendant's conduct will be the recipients of the awarded relief"). A proposed class definition "flunk[s] this requirement" if it is "too vague or subjective," or class membership is "defined in terms of success on the merits." *Mullins*, 795 F.3d at 657, 659.

The class definitions Plaintiffs propose here contravene this ascertainability requirement in

---

[1] For purposes of Plaintiffs' present motion for class certification, Defendants do not challenge whether the proposed classes satisfy the numerosity or adequacy of representation requirements. *See* Fed. R. Civ. P. 23(a)(3)-(4). Nor do Defendants object to the designation of Plaintiffs' counsel as class counsel, in the event the Court were to certify the class.

4

multiple respects. The definitions' scope is vast and imprecise. To avoid being impermissibly vague, a class definition "generally need[s] to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Mullins*, 795 F.3d at 660; *see Sparger-Withers v. Taylor*, 628 F. Supp. 3d 821, 830 (S.D. Ind. 2022) ("The class must not be vague, amorphous, or imprecise."). Yet Plaintiffs' proposed classes are not meaningfully bounded by such parameters. The "particular group[s]" the classes encompass, for instance, are inherently ambiguous. Distinguishing "observe[rs]," "news gather[ers]," and religious practitioners from mere bystanders, or determining when certain acts of "protest" are no longer "non-violent[]," ECF No. 81 at 2, is by no means clear-cut. *See Steimel v. Wernert*, 823 F.3d 902, 917-18 (7th Cir. 2016) (deeming a class definition "too vague" for certification because a court would not "know[] how to sort between those who were and those who were not" covered by the definition); *Rahman v. Chertoff*, 530 F.3d 622, 625 (7th Cir. 2008) (noting "problems with" a class definition's use of the word "detention," which was "undefined and could mean anything from 'stopped for 60 seconds to present a passport' to 'held incommunicado for more than a day'").

Nor do Plaintiffs identify the particular "immigration operations"—DHS officials driving away from a detention facility? CPB officers conversing amongst themselves in a parking lot? Or some non-enforcement activity such as immigration airport screening?—the mere observation or recording of which triggers class inclusion. ECF No. 81 at 2. And membership in Plaintiffs' proposed Class has the potential to be remarkably fluid: A person who is "non-violently" recording an immigration arrest, and thus qualifies in that moment as a class member under Plaintiffs' Class definition, would ostensibly be removed from the Class as soon as he threatens or impedes the arresting officer, but could then be re-included shortly thereafter if the situation de-escalates and the person goes back to acting "non-violently." A class in which inclusion can change on a dime

5

can hardly be deemed "readily" ascertainable. *Jamie S.*, 668 F.3d at 495.

Plaintiffs' class definitions also have a sweeping geographic reach, covering protesters, religious observers, and reporters from Lake Shore Drive to Rockford and Galena. ECF No. 81 at 2 (defining classes to cover all DHS "immigration operations in the Northern District of Illinois"). And the definitions do not include any temporal limits either, meaning that class membership can vary considerably day to day, depending on how many "immigration operations" are taking place at a given time and the number of people who elect to protest, observe, report on, or pray near them. At bottom, practically anyone could become a class member under Plaintiffs' proposed definitions so long as they protest, observe, or document an "immigration operation[]" at some point somewhere in the Northern District of Illinois. It is "not hard to see how" such an expansive class "lacks the definiteness required for class certification." *Jamie S.*, 668 F.3d at 495; *cf. Rahman*, 530 F.3d at 627 (reversing the certification of a class that was "so ambulatory that plaintiffs might as well have proposed a class comprising 'We the People of the United States'").

Plaintiffs likewise fail to show that the "particular group[s]" covered by their proposed classes have been or will be "harmed . . . in a particular way." *Mullins*, 795 F.3d at 660. Indeed, Plaintiffs object to a wide array of conduct ranging from purportedly unwarranted dispersal orders and the use of tear gas, rubber bullets, and other "riot control weapons," to allegedly unlawful "threat[s] of force," uses of "excessive force," and detentions and arrests for non-violent activity. ECF No. 81 at 9-10; *see* ECF No. 80 ¶ 126. The named plaintiffs themselves allege a range of different injuries allegedly stemming from that challenged conduct.[2] And it can be reasonably

---

[2] *See, e.g.*, ECF No. 80 ¶ 21 (alleging that one named plaintiff was "hit . . . in the face" by a pepper ball fired by a federal officer); *id.* ¶ 23 (alleging that another named plaintiff was arrested and detained for "videoing officers arresting a protester"); *id.* ¶¶ 24-25, 27-29 (alleging that certain named plaintiffs were tear gassed); *id.* ¶ 33 (alleging that one named plaintiff "tried to bring communion to folks detained inside" an ICE facility "but was turned away").

inferred that the members of Plaintiffs' proposed classes have been or will be allegedly harmed in equally diverse ways. Plaintiffs' efforts to "lump together thousands of disparate" plaintiffs and class members "with widely varying individual claims" is reason enough to reject their class definitions as too broad and indefinite for certification. *Jamie S.*, 668 F.3d at 493, 496; *see Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) ("[T]he proposed class of plaintiffs is so highly diverse and so difficult to identify that it is not adequately defined or nearly ascertainable.").

In fact, it is likely that many of the putative class members Plaintiffs seek to represent have not been and will not be harmed by Defendants to any extent. Plaintiffs do not allege—let alone show with record evidence—that every protest, religious observance, and news report related to an "immigration operation" in the Chicago area has been met with resistance by federal agents, let alone to a degree that might plausibly implicate constitutional concerns. Simply put, a substantial number of individuals who would otherwise qualify as class members under Plaintiffs' proposed class definitions have presumably been able to exercise their constitutional rights without incident. Those unharmed individuals would thus have no basis to assert the claims Plaintiffs allege on behalf of their proposed classes. *See* Defs.' Opp'n to Mot. for Prelim. Inj., Hott Decl. ¶ 21; Parra Decl. ¶ 36, 75. And the Seventh Circuit has made clear that "a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009). The scores of uninjured members seemingly included in Plaintiffs' proposed classes also raise serious standing concerns that further undermine the propriety of certification. *See Adashunas*, 626 F.2d at 604. "[C]lass action or not," Article III "does not give federal courts the power to order relief to any uninjured plaintiff." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citation omitted).

Finally, Plaintiffs' proposed Subclasses are not sufficiently ascertainable because

membership in each hinges in large part on a "person's state of mind." *Mullins*, 795 F.3d at 660. The "Religious Exercise Subclass," for instance, would encompass "[a]ll persons who are or will in the future engage in religious expression in the form of prayer, procession, song, preaching, or proselytizing." ECF No. 81 at 2. But whether someone singing a song or reciting certain words amounts to "religious expression" depends on whether that person subjectively considers that conduct as such: one person's secular protest song can be another person's religious hymn, one person can invoke the "Golden Rule" as a matter of civility while another can do so as a matter of religious faith. Accordingly, determining whether certain conduct qualifies someone as a member of Plaintiffs' Religious Exercise Subclass would require assessing that person's "state of mind"— *i.e.*, that person's subjective religious beliefs—in a way that defeats ascertainability. *See Mullins*, 795 F.3d at 660 ("[C]lasses that are defined by subjective criteria . . . fail the objectivity requirement [of ascertainability]."); *West v. Carr*, 337 F.R.D. 181, 186-88 (W.D. Wis. 2020) (denying class certification in part because determining membership in the proposed class would require "inquiring into the specific [religious] beliefs of each class member.") Likewise, membership in Plaintiffs' "Press Subclass" would depend on whether a person "observ[ing]," "document[ing]," or "record[ing]" an "immigration operation" was doing so for the purpose of "news gathering or reporting," Class Cert. Mot. at 2—a factual determination that in many cases would necessarily require assessing that person's subjective intentions.[3]

      In sum, Plaintiffs' proposed class definitions are defined too vaguely, sweep too broadly,

---

[3] Defendants acknowledge that the Court has identified "examples of indicia of being a Journalist" to help Defendants identify "Journalists protected under" the Court's Temporary Restraining Order. ECF No. 66 at 4. Crucially, though, Plaintiffs' proposed definition for their "Press Subclass" does not incorporate those indicia. And those indicia are, in any event, merely illustrative and do not amount to readily ascertainable standards by which journalists and reporters could be meaningfully identified.

and depend too heavily on subjective criteria to satisfy Rule 23's ascertainability requirement, *see Mullins*, 530 F.3d at 659-60, which alone warrants denying class certification.

## II. Plaintiffs Cannot Satisfy Rule 23(a)'s Commonality and Typicality Requirements

Even if Plaintiffs' proposed class definitions were sufficiently definite (they are not), class certification should still be denied, because Plaintiffs' proposed classes fail to satisfy Rule 23(a)'s commonality and typicality requirements. Fed. R. Civ. P. 23(a)(2)-(3); *see Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017) ("[C]ommonality and typicality 'tend to merge.'").

"Commonality requires a plaintiff to show that 'there are questions of law or fact common to the class.'" *Orr*, 953 F.3d at 498 (quoting Fed. R. Civ. P. 23(a)(2)). It is not enough to show that a complaint "raises common 'questions,'" or that putative class members "have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 349-50 (citation omitted); *see Jamie S.*, 668 F.3d at 497 ("[S]uperficial common questions . . . are not enough."). Instead, a party seeking class certification must "affirmatively demonstrate" that its claims "depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "What matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (cleaned up) (citation omitted). And "[d]issimilarities within the proposed class" can "impede the generation of common answers." *Id.* (citation omitted); *see McFields v. Dart*, 982 F.3d 511, 517 (7th Cir. 2020) (concluding that commonality was not satisfied where resolution of the class members' claim would "require[] an individualized, plaintiff-specific assessment").

Plaintiffs cannot meet this commonality standard here. As noted above, Plaintiffs do not

9

allege (let alone show) that all or even most of those who have "protest[ed]," "observe[d]," "engage[d] in religious expression" near, or "report[ed]" on "immigration operations" in the Chicago area have been "subjected" to "dispersal orders," "excessive force," "false arrest," or other allegedly unlawful conduct on Defendants' part. ECF No. 81 at 9. The people who take part in such unexceptional events would thus have no basis for alleging any constitutional violations. Yet those same unharmed individuals would nonetheless qualify as class members under the expansive class definitions Plaintiffs propose. Even amongst the putative class members who have had encounters with federal agents while protesting or observing "immigration operations" and speculate that they might have such an encounter again in the future, the factual circumstances and "course of conduct" at issue across those encounters will no doubt vary widely. *See generally* ECF No. 80. And those factual differences will mean in turn that some class members might have plausible First Amendment claims but not Fourth Amendment ones (and vice versa), and that the legal theories underlying such claims will differ too.

In short, Plaintiffs seek to represent "sprawling" classes consisting of protesters, religious observers, and reporters who allegedly will be subjected to different constitutional violations caused by different federal officers from different federal agencies via several different means at different times in different locations, *see, e.g.*, ECF No. 80 ¶¶ 126, 136, 146, as well as a sizable group of individuals who have not been or will not be harmed by Defendants in any way. "It is hard to imagine what all these people have in common." *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1266 (9th Cir. 2024) (vacating the certification of "sprawling classes alleg[ing] a broad range of injuries based on a medley of [police] conduct and policies, some of which occurred during different protests, at different times, and in different places"); *see Wal-Mart*, 564 U.S. at 349-50 ("Commonality requires the plaintiff to demonstrate that the class

10

members 'have suffered the same injury.'"); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the defendant's allegedly injurious conduct differs from plaintiff to plaintiff . . . no common answers are likely to be found.").

Narrowing Plaintiffs' proposed classes to those who have allegedly suffered *a* constitutional violation (versus none at all), or to those who have allegedly suffered the same type of violation (*e.g.*, First Amendment retaliation versus a Fourth Amendment violation) would not fix Plaintiffs' commonality problem. *See Wal-Mart*, 564 U.S. at 350 (explaining that commonality requires more than class members "hav[ing] all suffered a violation of the same provision of law"); *Mullins*, 795 F.3d at 660 ("[C]lasses that are defined in terms of success on the merits—so-called 'fail-safe classes'—also are not properly defined."). Indeed, each of the claims that Plaintiffs seek to bring on behalf of their proposed classes involves the very sort of "individualized, plaintiff-specific assessment" that defeats commonality. *McFields*, 982 F.3d at 517.

Determining, for instance, whether a particular plaintiff was "subjected . . . to excessive force" under the Fourth Amendment, ECF No. 81 at 9, is inextricably "fact-intensive," *Turner v. City of Champaign*, 979 F.3d 563, 567 (7th Cir. 2020), as is deciding whether a given arrest was "unreasonable," ECF No. 80 ¶ 182. *See United States v. Salazar*, 69 F.4th 474, 477 (7th Cir. 2023) ("A Fourth Amendment issue ordinarily calls for a fact-intensive case-by-case analysis . . . ."). Similarly, a RFRA claimant must show that a government policy "substantially burdens *his* sincere religious exercise," *West v. Radtke*, 48 F.4th 836, 844 (7th Cir. 2022) (emphasis added) (addressing an identical statutory standard), which will necessarily vary from plaintiff to plaintiff. *See id.* at 847-48 (explaining that the "compelling-interest test" is "case-specific" and "tailored 'to the person' seeking relief"); *see also West*, 337 F.R.D. at 190 (concluding that a proposed class of religiously observant inmates lacked commonality given "the varying ways in which inmates . . .

11

hold different, sincerely held beliefs"). The "individualized inquiry" required for both sets of claims is simply "not suitable for resolution" on a class-wide basis. *McFields*, 982 F.3d at 516.

Moreover, a successful First Amendment retaliation claim requires a showing that the "First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action," *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)—a decidedly factual question. Here, Plaintiffs allege that Defendants have employed various crowd-control measures in retaliation for Plaintiffs having engaged in certain First Amendment activity. *See, e.g.*, ECF No. 86 at 25-26. Yet the Court has acknowledged that the use of such measures is not categorically unlawful. *See* ECF No. 66 at 2 (indicating that "riot control weapons" can be used if "necessary to stop an immediate and serious threat of physical harm to a person"). Thus, whether a particular use of tear gas was retaliatory (and therefore possibly violative of the First Amendment) or was instead prompted by justifiable safety concerns (and therefore lawful) will necessarily depend on the unique circumstances of a given incident. The same is true when deciding whether an order demanding that protesters "leave a public space where they" ordinarily "have a lawful right to be," Class Cert. Mot. at 9, improperly chills protected speech or instead amounts to a lawful response to "an assembly stok[ing] . . . imminent physical or property damage." *Bell v. Keating*, 697 F.3d 445, 457 (7th Cir. 2012) (rejecting a First Amendment challenge to an ordinance that "authorize[d] dispersal when an assembly creates or is threatened by 'substantial harm'"). Such First Amendment claims "must be answered separately . . . based on individualized questions of fact and law" that are "unique to each" incident at issue—all of which undermines commonality. *Jamie S.*, 668 F.3d at 498 (noting that claims requiring "an inherently particularized inquiry into the circumstance" of each plaintiff's case created a "basic commonality problem").

The lack of commonality amongst the disparate members of Plaintiffs' proposed classes

12

similarly prevents those classes from satisfying Rule 23(a)'s typicality requirement. Typicality focuses on the "congruence between" the class representatives' claims "and that of the unnamed members of the class." *Orr*, 953 F.3d at 500. Again, however, Plaintiffs cannot avoid the fact that many people have been able to protest, observe, and record "immigration operations" in the Chicago area without issue. The class representatives here—all of whom claim that *their* rights have been violated by Defendants' conduct in some manner, *see* ECF No. 81 at 13-15—are thus seeking to bring claims on behalf of putative class members who have not been subjected to any allegedly unlawful conduct at all. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006) (finding no typicality where a named plaintiff's proposed class "included millions who were not deceived" by the marketing practices the plaintiff was challenging).

Conversely, some of those same representatives assert on a class-wide basis certain constitutional claims that they would ostensibly have no grounds to bring themselves. *See, e.g.*, Class Cert. Mot. at 9 (claiming that putative class members have been "subjected to" detention and false arrests); ECF No. 73-6 ¶¶ 17, 30-33 (describing arrests that the putative class representative observed without claiming that the representative herself was seized at any point). Yet typicality demands that a class representative "suffer the same injury as the class members" he wishes to represent. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982); *see Rahman*, 530 F.3d at 626 (deeming improper "across-the-board classes" that are "defined to cover all of the defendants' challenged practices whether or not the nominal representatives ha[ve] been injured by a particular practice"). The class representatives, in short, press claims that are unique to them, which in turn renders them "poor proxies for" the myriad putative class members with wholly different claims (or no claims at all) that "rise or fall" on wholly different legal theories. *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 606 (7th Cir. 2021) ("Typicality is 'meant to ensure that the named

13

representative's claims have the same essential characteristics as the claims of the class at large.'").

## III. Plaintiffs' Proposed Classes Are Not Maintainable Under Rule 23(b)(2)

In addition to their fatal shortcomings under Rule 23(a), Plaintiffs' proposed classes are not maintainable under Rule 23(b)(2). *See Lacy*, 897 F.3d at 864 ("[T]he plaintiffs must demonstrate that one of the conditions of Rule 23(b) is met."). "Rule 23(b)(2) permits [a] court to certify a case for class-action treatment if 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Jamie S.*, 668 F.3d at 498-99 (quoting Fed. R. Civ. P. 23(b)(2)). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S at 360 (citation omitted). Rule 23(b)(2) thus applies "only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.*

The problem for Plaintiffs here is that their proposed classes would encompass (1) putative class members who assert a variety of First and Fourth Amendment injuries caused by a wide array of allegedly unlawful conduct; (2) members who assert only some of those injuries, or who were exposed to only a subset of that allegedly unlawful conduct; and (3) members who were able to protest, observe, record, and report on "immigration operations" without being harmed to any extent. In other words, Plaintiffs "attempt to aggregate a plethora of discrete claims" of constitutional injury "into one super-claim" against Defendants "without demonstrating that the class members have been harmed in essentially the same way." *Ahmad v. City of St. Louis*, 995 F.3d 635, 644 (8th Cir. 2021) (cleaned up) (explaining that such an assorted class is "deficient" under Rule 23(b)(2)). Consequently, because the individual class members within each group were

14

harmed differently (or not at all), each class member "would be entitled to a *different* injunction or declaratory judgment against" Defendants (or no relief whatsoever). *Wal-Mart*, 564 U.S. at 360; *see Ahmad*, 995 F.3d at 644 ("When liability does not apply uniformly to the entire class, the relief sought becomes highly individualized, and the cohesiveness necessary to proceed as a class under Rule 23(b)(2) is lacking."). And the fact that no single, indivisible injunction could properly provide relief to Plaintiffs' proposed classes "as a whole" is enough to preclude certification under Rule 23(b)(2). *Jamie S.*, 668 F.3d at 499.

### IV. Plaintiffs' Proposed Class Fails Because 8 U.S.C. § 1252(f)(1) Bars Classwide Relief

Finally, Plaintiffs' motion should be denied because 8 U.S.C. § 1252(f)(1) prohibits such relief. The Supreme Court has long stated that section 1252(f)(1) "prohibits federal courts from granting classwide injunctive relief against the operation of [8 U.S.C.] §§ 1221–1231." *See Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 481 (1999). The Supreme Court more recently reaffirmed that 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions" and that it does so to prohibit the entry of classwide injunctive relief. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 549-50 (2022). Section 1252(f)(1) therefore bars the Plaintiffs' requested classwide relief enjoining or restraining the government from engaging in measures it deems appropriate to effectuate the apprehension of aliens as authorized by 8 U.S.C. § 1221-1231. *See* Defs' PI Opp., pp. 24-25 (internal pagination).

### CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for class certification.

Dated: October 31, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW WARDEN
Assistant Director
Federal Programs Branch

SEAN SKEDZIELEWSKI
Counsel to the Assistant
Attorney General

*/s/ P. R. Goldstone*
PETER R. ("P. R.") GOLDSTONE
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 598-0912
Fax: (202) 616-8470
Peter.R.Goldstone@usdoj.gov

*Counsel for Defendants*