**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT COURT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO HEADLINE CLUB, et al., | ) | |
| *Plaintiffs,* | ) | **No. 25-cv-12173** |
| | ) | **Hon. Sara L. Ellis** |
| v. | ) | |
| KRISTI NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity, et al. | ) | |
| *Defendants* | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION AND APPOINTMENT AS CLASS COUNSEL**

## INTRODUCTION

Plaintiffs have provided the Court with substantial evidence that Defendants are engaged in a campaign to stamp out dissent while they carry out the federal government's immigration policy in the Northern District of Illinois. Defendants' actions come from the top: Defendant Bovino himself said that people should stop protesting if they don't want to get pepper sprayed.[1] And in an interview that aired just last night on CBS 60 Minutes, when asked about his agents' tactics, such as throwing people to the ground, smashing car windows and using tear gas in residential neighborhoods, President Trump replied, "I think they haven't gone far enough…."[2] This is exactly the type of case that the class action mechanism was designed for: many people's

[1] Available online at https://www.nbcnews.com/politics/politics-news/border-patrols-bovino-called-court-accused-throwing-tear-gas-canister-rcna239609 (last visited on Nov. 3, 2025). ("If someone strays into a pepper ball, then that's on them: Don't protest. And don't trespass," said Bovino.)

[2] Available online at https://www.cbsnews.com/news/read-full-transcript-norah-odonnell-60-minutes-interview-with-president-trump/ (last visited on Nov. 3, 2025).

constitutional rights are being violated pursuant to a policy or uniform practice directed and approved from the top.

Defendants oppose Plaintiffs' request to certify this case as a class action on two primary grounds: that the class and subclass definitions are ill defined; and that the claims at issue are too fact intensive to be addressed on a class-wide basis. Neither argument warrants denying class certification. With slight modifications to the Class and Subclass definitions discussed below, the Court should grant Plaintiffs' motion for class certification.[3]

The proposed Class and Subclass definitions satisfy the Seventh Circuit's implied ascertainability standard because they are defined by objective criteria. Defendants do not really argue otherwise. Instead, they put undue weight on the idea that they will have trouble identifying class members, and particularly members of the press and religious exercise subclasses. Although ascertainability is not about whether *defendants* in a case are able to identify class members, *see Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015) ("this implicit requirement of 'ascertainability,' . . . [is] not focused on whether, given an adequate class definition, it would be difficult to identify particular members of the class"), Plaintiffs do not oppose a modification to the definition of the Press Subclass such that it is defined to cover readily identifiable members of the press in the ways that the Court has already discussed. Because the Religious Exercise subclass is already defined by overt acts those Class Members are taking, no modification is necessary.

In addition, Plaintiffs' motion for class certification identified at least eleven common issues that will help drive the resolution of this litigation. Dkt. 81 at 9-11. Defendants address

[3] The parties agree that the number of people impacted is large enough to address these issues as a class action and that proposed Class Counsel will adequately represent the proposed Classes. Dkt. 170 at 4 n. 1.

only a subset of those issues—and only at a superficial level—to essentially argue that *no* case can be certified as a class action to address First or Fourth Amendment claims. Dk. 170 at 9-13. That is incorrect. Plaintiffs identified a number of cases certifying classes or subclasses similar to the ones they ask the Court to certify here, and identify even more in this brief.

Defendants also briefly argue that the case cannot be certified under Rule 23(b)(2) because putative Class Members are asserting too wide of a variety of claims, but this is just a repackaged summary of their argument against commonality, and it fails as well.

Finally, Defendants argue that 8 U.S.C. § 1252, a statute limiting the scope of judicial review of orders of removal, precludes the court from ordering class-wide relief in this case, but they fail to explain how that statute applies. It is an understatement to say that Defendants' argument on this point is a stretch. Plaintiffs are not asking the Court to review orders of removal, and nothing in the statute purports to allow the government to commit wholesale violations of the constitutional rights of third parties while carrying out immigration operations.

The Court should certify this case as a class action.

## ARGUMENT

Plaintiffs' opening brief established that the proposed Class and Subclasses are ascertainable; that common issues will help drive the resolution of this lawsuit for all class members and the proposed class representatives share the same claims as other class members; and that the case should be certified as a class action under Rule 23(b)(2). Nothing in Defendants' response brief calls those issues into question.

### I. The Class (and Subclasses) Are Ascertainable

Defendants argue that the "proposed class definitions are defined too vaguely, sweep too broadly, and depend too heavily on subjective criteria to satisfy Rule 23's ascertainability requirement." Dkt. 170 at 8-9. Not so. Plaintiffs' proposed Class and Subclasses are defined by

objective criteria and do not require any inquiry in putative Class Member's subjective intent. Dkt. 81 at 6-7.

### A. The proposed Class and Subclass Definitions Are Not Too Vague

"To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Mullins*, 795 F.3d at 657. Plaintiffs established in their opening brief that they met each of these requirements.

Defendants make two arguments as to why the Class and Subclasses are impermissibly vague. First, they assert that class membership is "inherently ambiguous" because it is not easy to distinguish "observers, news gatherers, and religious practitioners from mere bystanders" and it is not easy to know "when certain acts of protest are no longer non-violent." Dkt. 170 at 5 (cleaned up). The Court should reject these arguments.

#### 1. The Class and Subclass Definitions are Objective and Understandable

Defendants' argument that the class definitions are too ambiguous finds no support in *Mullins*. As an initial matter, Defendants' argument fails because each term they claim is vague has a plain language meaning that is easy to understand. For example, the Merriam-Webster dictionary defines "observer" as "one that observes."[4] It defines "bystander" as "one who is present but not taking part in a situation or event: a chance spectator."[5]

Moreover, even accepting as true that some ambiguity exists in the terms that Defendants identify, Defendants' argument does not defeat class certification because Defendants may not violate the First or Fourth Amendment rights of *anyone* who falls into any of the categories they identify. Put differently, Defendants cannot retaliate against non-violent bystanders, non-violent

---

[4] *See https://www.merriam-webster.com/dictionary/observer*.

[5] *See https://www.merriam-webster.com/dictionary/bystander*.

observers, non-violent protesters, non-violent religious observers, or non-violent journalists. Defendants do not argue that the Class definition as a whole is ambiguous. Thus, even accepting Defendants' argument that there is some ambiguity in what conduct fits into what term within the definition, the Class and Subclasses are still ascertainable. *See*, *e.g.*, *Driver v. Marion Cnty. Sheriff*, 859 F.3d 489, 494 (7th Cir. 2017) (in case alleging over-detention as a result of faulty technology, ascertainability was satisfied because "the class is capable of definition both by the timing and the length of the delay in release," *i.e.*, objective criteria). The fact that some Class Members might be able to prove their membership only through their own testimony does not call this conclusion into question. *Mullins*, 795 F.3d at 669 ("a district judge has discretion to allow class members to identify themselves with their own testimony and to establish mechanisms to test those affidavits as needed").

Defendants' argument that the phrase "immigration operations" is too vague also fails. Dkt. 170 at 5-6. Using the examples that Defendants put in their response brief, if non-violent protesters come across CBP officers conversing in a parking lot and express displeasure about immigration operations, those CBP officers may not tear gas the protesters. So too for DHS officials driving away from a detention facility. Defendants provide no explanation as to why their questions about the definition of "immigration operations" undercut ascertainability, and they do not.

That said, Plaintiffs do not object to modifying the Class and Subclass Definitions so that they refer to "immigration enforcement and removal operations" rather than "immigration operations," which should adequately address Defendants' concern that the term "immigration operations" is ill-defined. *See*, *e.g.*, *Vill. of Broadview v. U.S. Dep't of Homeland Sec.*, 25 C 12164, 2025 WL 2896819, at *3 (N.D. Ill. Oct. 9, 2025) ("Just as the increased immigration

enforcement operations at Broadview do not appear to be temporary, neither do the protests nor the fence to control the protestors."); *see also* https://www.ice.gov/about-ice/ero (discussing Department of Homeland Security's Enforcement and Removal Operations).

### 2. Case Law Does Not Support Defendants' Argument That the Class and Subclass Definitions Are Too Vague

Nor do the cases that Defendants rely on support their argument about vagueness. Dkt. 170 at 5. In *Steimel v. Wernert*, the Seventh Circuit rejected a class definition on the ground that it was ambiguous on causation. 823 F.3 902, 917-18 (7th Cir. 2016). Namely, the class was defined as individuals who "require more services" than were available under a certain Medicaid program. As the Seventh Circuit explained, the word "require" in that context could mean many different things, such as medically required or required to meet other statutory Medicaid requirements that were unrelated to medical necessity. *See id*. Defendants identify no similar issues in this case, and none exist.[6]

*Rahman v. Chertoff* similarly does not support Defendants' position that the proposed Class and Subclass definitions are too vague. 530 F.3d 622 (7th Cir. 2022). In that case, the Seventh Circuit criticized certification of a nationwide class of all individuals who were detained at the border because of certain government policies. *Id*. at 625-26. The term "detained" was ambiguous because it could have been interpreted to mean any amount of time regardless of the individual circumstances of the person who was detained. The court found that the classes in *Rahman* were "equivalent to a class of 'all persons in the United States who have been, or ever will be, stopped without probable cause' certified in an effort to take control of how the police

[6] Because *Steimel* involved a putative class seeking certification under Rule 23(b)(3), the Seventh Circuit also addressed two issues not present in an injunctive case such as this one: the necessity of providing notice to class members and of identifying who should share in a recovery.

investigate crime and make arrests." *Id*. at 626. The proposed Class and Subclasses here are nothing like those in *Rahman*. Plaintiffs are not asking the Court to control how the federal government enforces immigration laws. They are simply asking the Court to rule that Defendants may not enact and carry out a policy of violating the constitutional rights of people in the Northern District of Illinois who non-violently document or voice their opposition to Defendants' actions in carrying out their immigration policy. This is perfectly appropriate for a class action. *See*, *e.g.*, *All. to End Repression v. Rochford*, 565 F.2d 975, 978 (7th Cir. 1977) ("[T]his court has made it clear that a class that satisfies all of the other requirements of Rule 23 will not be rejected as indefinite when its contours are defined by the defendants' own conduct.").

**3. The Class and Subclasses Are Not Too "Fluid"**

Finally, Defendants argue that the Class is too vague because someone might be non-violent for a certain period of time but act violently at a different time, which according to Defendants means that the classes are too fluid. Dkt. 170 at 5-6. Essentially, Defendants are saying that the Class is faulty because some class members might violate the law by, for example, attacking federal agents. Defendants provide no support that this novel argument warrants denial of Plaintiffs' motion for certification. The Class is properly defined by objective criteria. If Class Members engage in activity that does not fall within the Class definition, then they have no claims relating to that activity. Moreover, the relief sought by the Class here is injunctive relief to stop Defendants from unjustified force and threats of force such that the Class can maintain the claim for relief even if a particular Class Member's activity no longer fits within the Class definition.

**B. The Class and Subclass Definitions Are Not Too Broad**

Defendants urge the Court to reject Plaintiffs' motion to certify a Class because the proposed Class in their view is too broad. Dkt. 170 at 7. Specifically, Defendants urge the Court

to reject Class Certification because not "every protest, religious observance, and news report related to an 'immigration operation' in the Chicago area has been met with resistance by federal agents, let alone to a degree that might plausibly implicate constitutional concerns." *Id*. That argument is easily dispatched because Plaintiffs have put forth substantial evidence that the federal government has a policy or standard practice of attempting to stifle dissent aimed at immigration enforcement actions and operations in the Northern District of Illinois. Equally important, Plaintiffs have provided substantial evidence that the putative class as a whole has been chilled in expressing First Amendment rights because of Defendants' policy. In any event, Plaintiffs do not need to show that every single putative class member has been harmed for the case to be certified as a class action. *See*, *e.g.*, *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (it "is almost inevitable" that class actions "will often include persons who have not been injured by the defendant's conduct").

**C. The Proposed Definitions for the Religious Subclass and the Press Subclass Are Not Subjective**

Defendants argue that the proposed Religious Subclass and Press Subclass are too subjective. Dkt. 170 at 8. Again, they are wrong.

Membership in the proposed Religious Exercise Subclass depends on engaging in specific, overt types of religious exercise in the form of prayer, procession, religious song, preaching, or proselytizing at federal immigration enforcement actions and operations in the Northern District of Illinois. This "clearly identifies the individuals falling within the class and is based on objective criteria." *Am. Council of Blind of Metropolitan Chi. v. City of Chi.*, 589 F. Supp. 3d 904, 907 (N.D. Ill. 2022). Defendants' claimed inability to recognize religious subclass members as they engage in these overt religious activities cannot be credited.

With respect to the Press Subclass, Defendants acknowledge that the Court has identified criteria by which members of the press could be identified, but they complain that Plaintiffs did not include such criteria in their proposed definition. Dkt. 170 at 8 n. 3. Although Plaintiffs do not believe that the definition needs to be modified to include the criteria that the Court previously identified, they also would not object to such a change being made to the Press Subclass definition.

## II. The Class Satisfies the Commonality Requirement

Defendants challenge that Plaintiffs proposed Class satisfy the commonality requirement of 23(b)(3) by addressing Plaintiffs' claims at a superficial level and ignoring the significant evidence showing that Defendants have engaged in a consistent pattern of behavior aimed at individuals expressing their disagreement with Defendants and journalists reporting on Defendants' response to the protests. Dkt. 170 at 9-13.

In short, Defendants cite cases for the general proposition that excessive force claims under the Fourth Amendment often require individual inquiries, that First Amendment claims involve a "decidedly factual question" of whether defendants retaliated at least in part because of protected speech, and that whether individuals are chilled by certain action also requires an individualized inquiry. Dkt. 170 at 11-13.

It's true enough that in many cases, answering those questions would involve individualized inquiries. But that general proposition does not show that commonality is lacking in this case, and it does not undercut Plaintiffs' request for class certification. Plaintiffs' motion for class certification cites declaration after declaration showing that Defendants are engaged in a consistent practice of attempting to stifle dissent. Dkt. 81 at 8-11. Thus, Defendants' reliance on *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1266 (9th Cir. 2024), for the proposition that a protest case should not be certified because "[i]t is hard to imagine what

all" the class members "have in common" is unavailing. Dkt. 170 at 10. The record that Plaintiffs have amassed in this case was missing in *Black Lives Matter* when the Ninth Circuit remanded for consideration of whether plaintiffs in that case could satisfy Rule 23.

Defendants ignore the significant factual record even though this type of record is exactly what's required to show commonality in this type of case. *See, e.g.*, *Ross v. Gossett*, 33 F.4th 433, 438 (7th Cir. 2022) (commonality satisfied in case alleging unconstitutional searches at three separate prisons in Illinois because the record showed "that the alleged discriminatory actions were undertaken pursuant to a uniform policy"); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."); *Smith v. City of Chicago*, 340 F.R.D. 262, 291 (N.D. Ill. 2021) (certifying injunctive class seeking relief from defendant's stop and frisk policies to enjoining its "compliance with the Fourth Amendment"); *Vita Nuova, Inc. v. Azar*, 4:19-CV-00532-O, 2020 WL 8271942, at *5 (N.D. Tex. Dec. 2, 2020) ("A potential plaintiff's sincerity in religious belief is relevant only in assessing whether that individual or entity belongs to the class, not whether the class itself is entitled to certification based on a common question of law or fact under Rule 23."), *id. at* *7 ("The sincerity inquiry under the RFRA is generally not an exacting one" and "any fact-specific inquiries regarding the sincerity of religious belief do not prevent certification of the class itself."); *Scott v. California Forensic Med. Group*, 216CV03084DSFRAOX, 2020 WL 10501243, at *5 (C.D. Cal. Sept. 30, 2020) ("Courts in this Circuit and elsewhere have routinely certified both injunctive relief and damages classes where there was a common practice, which obviously will vary more than a single policy."); *Gutierrez v. City of E. Chicago,* 2016 WL 5819818, at *14 (N.D. Ind. Sept. 6, 2016) ("The common question is not whether each individual

class member experienced an unconstitutional search but rather whether Defendants maintain a policy and practice of warrantless searches and inspections of tenant apartments that goes beyond the clearly delineated exceptions for voluntary consent and exigent circumstances."), *report and recommendation adopted*, 2016 WL 5816804 (N.D. Ind. Oct. 5, 2016).[7]

Defendants also repeat an argument they make about ascertainability by saying that commonality is lacking because Plaintiffs' Class definition is too broad because it includes individuals who have been at what Defendants term "unexceptional" enforcement actions and therefore are "unharmed." Dkt. 170 at 11. This argument misses the mark for at least two reasons. First, Plaintiffs have alleged and provided significant evidence that Defendants' pervasive violation of the Classes' First Amendment rights have chilled Class Members and improperly stifled dissent even if there has been or will be some immigration enforcement activity that is "uneventful." *See*, *e.g.*, Dkt. 22-1, Dkt. 22-2, Dkt. 22-3. Second, even accepting Defendants' argument that some class members may not be harmed, that does not defeat commonality because as noted above, it "is almost inevitable" that class actions "will often include persons who have not been injured by the defendant's conduct." *Kohen*, 571 F.3d at 677; *see also Rogers v. Sheriff of Cook Cnty.*, 2024 WL 1376134, at *3 (N.D. Ill. Mar. 30, 2024) ("At the time of the application of the policy, all of the class members could have been harmed. The commonality requirement remains satisfied"), *reconsideration denied*, 2025 WL 885849 (N.D. Ill. Mar. 21, 2025).

[7] Moreover, when religious leaders bring claims that a group's religious practice is being burdened, their sincerity is attributed to the members of the broader community. *See Church of Lukumi Babalu Aye, Inc. v. City of Hialeah.*, 508 U.S. 520, 531, 113 S. Ct. 2217, 2226, 124 L. Ed. 2d 472 (1993) (entire religious community's freedom protected when the sincerity of the church itself and its president was not challenged).

Commonality is satisfied. Indeed, Defendants' response to Plaintiffs' motion for preliminary injunction appears to implicitly acknowledge the existence of common issues, such as whether Plaintiffs are engaging in "First-Amendment-protected-activity" (Dkt. 173 at 26), whether Defendants' practices concerning dispersal orders violate the rights of the Press Subclass (Dkt. 173 at 32-3), whether Defendants only used dispersal orders on violent crowds (their position) or whether they improperly ordered non-violent individuals such as religious observers to disperse to stifle dissent (Dkt. 173 at 41-45), and whether Defendants are engaged in a practice that discriminates against Plaintiffs and retaliates against them based on the content of their speech *(Id*. at 36-37).

## III. The Class Representatives' Claims are Typical of the Claims of the Class

Defendants briefly argue that the proposed class representatives have claims that are unique to them rather than representative of the Class. Dkt. 170 at 13. Defendants appear to be arguing that typicality is not satisfied because some of the putative class representatives have not be subjected to some of the specific wrongful acts in the record, and specifically that Plaintiffs cite to a declaration "describing arrests that the putative class representative observed without claiming that the representative herself was seized at any point." Dkt. 170 at 13. It is wrong factually because although that particular proposed representative may not have discussed being arrested, Plaintiff Stephen Held does discuss his arrest. Dkt. 22-18 ¶¶ 28-33. It is wrong on the law because typicality is a flexible standard that does not require each class representative to allege the exact same facts as every class member. Here, the class representatives all allege that they were retaliated against for expressing dissent or for reporting on Defendants' actions. Dkt. 81 at 12-15. This is more than enough. "Typical does not mean identical, and the typicality requirement is liberally construed." *Dennis v. Greatland Home Health Services, Inc.*, 591 F. Supp. 3d 320, 328 (N.D. Ill. 2022) (internal quotation omitted).

**IV. Class Certification Is Appropriate under Rule 23(b)(2)**

Relying primarily on the Eight Circuit case *Ahmad v. City of St. Louis*, 995 F.3d 635 (8th Cir. 2021), Defendants argue that this case cannot be certified under Rule 23(b)(2) because there are too many discrete claims and not all class members have been harmed in the same way.

As an initial matter, *Ahmad* appears to be out of step with Seventh Circuit law. As Plaintiffs explained in their motion for class certification, Rule 23(b)(2) certification is appropriate when a proposed class alleges that the defendants have engaged in common practices that violated the law. Dkt. 81 at 20-21 (citing *Chi. Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 442 (7th Cir. 2015)).

*Ahmad* is also distinguishable, including because the record in that case showed that the claims would involve individualized inquiries and because there was no "showing a class-wide injunction will be needed to ensure compliance by the [defendant] with any permanent injunction granted the named plaintiffs." *Ahmad*, 995 F.3d at 645. Here, by contrast, Plaintiffs have amassed substantial evidence showing that individual inquiries are not a prominent issue given the common issue of Defendants' consistent and pervasive practice of retaliating against individuals who are exercising their constitutional rights. Dkt. 81 at 14-16 & fn. 2-6. Similarly, substantial evidence exists that a class-wide injunction *is* needed, as evidenced by the fact that the constitutional violations continued unabated after the Court issued a temporary restraining order. *See* Dkt. 88, 90, 94, 118, 140, 143, 171.

"Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of cases that fall under Rule 23(b)(2). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). This is such a case, and the Court should certify it as a class action.

## V. Statutory limitations on judicial review of removal orders are irrelevant

Plaintiffs are not asking the Court to review any removal orders, let alone asking the Court to do so for a class of individuals. Thus, Defendants' assertion that the Court may not certify this case as a class action based on 12 U.S.C. § 1252(f)(1), a statute that limits judicial review of removal orders, is off base. Dkt. 170 at 15. Indeed, Defendants do not really make an argument about how that statute applies in this case or why it precludes class certification here. Instead, they merely cite general case law saying that courts may not grant a class-wide injunction that conflicts with the specific statutory provisions regarding removal. *Id*. Plaintiffs, however, are not asking the Court to issue *any* orders relating to removal, so that case law is irrelevant. Put simply, 12 U.S.C. § 1252(f)(1) has nothing to do with this case. *See Am. Ass'n of Univ. Professors v. Rubio*, 780 F. Supp. 3d 350, 374 (D. Mass. 2025) ("Section 1252(g)'s jurisdictional bar applies narrowly to claims by aliens or brought on their behalf in relation to the deportation decisions enumerated in the statute, but the Supreme Court has left the door ajar to an even narrower exception even as to those claims.").

## CONCLUSION

Plaintiffs respectfully request that the Court grant this motion for class certification.

DATED: November 3, 2025

Respectfully submitted,

/s/Scott Rauscher
*Counsel for Plaintiff*

Jon Loevy
Locke Bowman
Steve Art
Heather Lewis Donnell
Theresa Kleinhaus
Scott Rauscher
Matt Topic
Julia Rickert
Tara Thompson

Craig B. Futterman
**MANDEL LEGAL AID CLINIC**
University of Chicago Law School
6020 S. University
Chicago, IL 60637
(773) 702-9611
futterman@uchicago.edu

Hayden Johnson*

Lindsay Hagy
Jordan Poole
Alyssa Martinez
Dominique Gilbert
Justin Hill
Aaron Tucek
**LOEVY + LOEVY**
311 N. Aberdeen Street
Chicago, Illinois 60647
(312) 243-5900
steve@loevy.com

Elizabeth Wang
Isaac Green
**LOEVY + LOEVY**
2060 Broadway, Ste. 460
Boulder, CO 80302

David B. Owens
**LOEVY + LOEVY**
℅ Civil Rights and Justice Clinic
University of Washington Law School
William H. Gates Hall, Suite 265
Seattle, WA 98145-1110

Wallace Hilke
**COMMUNITY JUSTICE AND CIVIL RIGHTS CLINIC**
Bluhm Legal Clinic, Northwestern Pritzker School of Law
375 E. Chicago Ave.
Chicago, IL 60611
(312) 503-2224
wally.hilke@law.northwestern.edu

Katie Schwartzmann*
Conor Gaffney*
**PROTECT DEMOCRACY PROJECT**
2020 Pennsylvania Ave NW, Ste 163
Washington DC 20006
(202) 579-4582
* *Admitted pro hac vice*

Daniel Massoglia
Hannah C. Marion
**FIRST DEFENSE LEGAL AID**
601 S. California Ave.
Chicago, IL 60612
(336) 575-6968
daniel@first-defense.org
hannah@first-defense.org

Kevin M. Fee, Jr.
Rebecca Glenberg
Hirsh Joshi
Priyanka Menon
**ROGER BALDWIN FOUNDATION OF ACLU, INC.**
150 N. Michigan, Suite 600
Chicago, IL 60601
(312) 201-9740
kfee@aclu-il.org
rglenberg@aclu-il.org