```
 1              UNCERTIFIED ROUGH DRAFT TRANSCRIPT
 2              VIDEO DEPOSITION OF RUSSELL GABRIEL
 3                   TUESDAY, AUGUST 4, 2020
 4       This transcript is a rough draft only, not
 5   certified in any way and cannot be used for reading
 6   and signing by a witness or filed with any court.
 7   All parties receiving this it agree that it will not
 8   be shared, given, copied, scanned, faxed, e-mailed,
 9   sold or in any way distributed in any form by any
10   party to anyone except their own experts,
11   co-counsel, or staff, and agree to destroy this
12   rough draft in any form and replace it with the
13   final certified transcript, if ordered.
14           There will be discrepancies as to page and
15   line numbers when comparing the rough-draft
16   transcript and the final transcript, and that the
17   rough-draft transcript may contain untranslated
18   steno, incorrect punctuation, an occasional
19   reporter's note, and/or nonsensical English word
20   combinations.  All such entries will be corrected on
21   the final transcript.  The rough draft transcript
22   will not include title pages, appearance pages,
23   examination or exhibit indexes, or a certificate.
24   Exhibits will not be included.  This document has
25   not been proofread.
```

**EXHIBIT 141**

Case 3:20-cv-01035-SI    Document 124-2    Filed 08/05/20    Page 3 of 42
Case: 1:25-cv-12173 Document #: 190-11 Filed: 11/03/25 Page 2 of 9 PageID #:4079
Rough Draft - Gabriel Russell - 08-04-2020                2

1           TUESDAY, AUGUST 4, 2020; AUBURN, WASHINGTON
2                 THE VIDEOGRAPHER:  We are now on the
3    record.  Here begins the Zoom videotaped deposition
4    of Gabriel Russell in the matter of Index Newspapers
5    LLC versus City of Portland, in the U.S. District
6    Court, District of Oregon, Portland Division, case
7    number 3:20-cv-01035-SI.
8                 Today is August 4th, 2020.  The time is
9    11:13.  This deposition is being taken over Zoom at
10   the request of BraunHagey & Borden LLP.  The
11   videographer is Emily Walter of Magna Legal
12   Services, and the court reporter is Marilynn Hoover
13   of Magna Legal Services.
14                All counsel will be noted on the steno
15   graphic record.
16                Will the court reporter please swear in
17   the witness.
18                THE REPORTER:  The attorneys participating
19   in this deposition acknowledge that I am not
20   physically present in the deposition room and that I
21   will be swearing in the witness and reporting this
22   deposition remotely.  The parties and their counsel
23   consent to this arrangement and waive any objections
24   to this manner of reporting.
25                Please indicate your agreement by stating

Case 3:20-cv-01035-SI    Document 124-2    Filed 08/05/20    Page 4 of 42
Case: 1:25-cv-12173 Document #: 190-11 Filed: 11/03/25 Page 3 of 9 PageID #:4080
Rough Draft - Gabriel Russell - 08-04-2020                    9

1  facilities across the United States.
2      Q.   So what are your sort of duties, more
3  specifically, in your current position, normally?
4      A.   I am responsible for overseeing and
5  managing, hiring, evaluation, supervision of all the
6  personnel in Region 10; oversight of contracts,
7  assigning work, evaluating subordinate performance,
8  things of that nature.
9      Q.   Anything else that comes to mind?
10     A.   (No audible response.)
11     Q.   And what are your --
12          (Reporter request.)
13          (Record read.)
14          THE WITNESS:  It's a -- It's a management
15 -- it's an executive level position that has a lot
16 of responsibilities.
17     Q.   BY MR. ACHARYA:  Okay.  And what are your
18 duties with respect to these protests?
19     A.   With regards to protection of federal
20 facilities, I might not --
21     Q.   With regard to -- With regard to the
22 protests in downtown generally, whatever the mission
23 may be there.
24     A.   My job is to protect federal facilities
25 from being taken over, from being significantly

Case 3:20-cv-01035-SI    Document 124-2    Filed 08/05/20    Page 5 of 42
Case: 1:25-cv-12173 Document #: 190-11 Filed: 11/03/25 Page 4 of 9 PageID #:4081
Rough Draft - Gabriel Russell - 08-04-2020                16

```
 1        Q.   BY MR. ACHARYA:  I believe that's a term
 2   that's used within FPS for private contracting
 3   forces.  Is that -- Am I mistaken?
 4        A.   We -- We have PSOs that are -- that are in
 5   Portland as part of their normal duties.  They
 6   continued to perform their normal duties.  They did
 7   not have additional, you know, duties that were
 8   related to operation Diligent Valor.
 9        Q.   Understood.  And to be clear:  PSOs are
10   privately contracted security officers?
11        A.   Yes.
12        Q.   What companies in Portland?
13        A.   I believe the contract in Portland,
14   Oregon, is by a company named Maxent.
15        Q.   M-A-X-E-N-T?
16        A.   I'm not sure of the exact spelling.
17        Q.   And you command all of the forces sent
18   here as part of Diligent Valor?
19        A.   I have tactical control of all of the DHS
20   forces that are -- that are part of operation
21   Diligent Valor.
22        Q.   And when you say "tactical control," what
23   do you mean by that?
24        A.   That means that I am responsible for just,
25   you know, kind of strategy and tactics for those
```

Case 3:20-cv-01035-SI    Document 124-2    Filed 08/05/20    Page 6 of 42
Case: 1:25-cv-12173 Document #: 190-11 Filed: 11/03/25 Page 5 of 9 PageID #:4082
Rough Draft - Gabriel Russell - 08-04-2020                    17

```
 1   forces; but I am not responsible for their
 2   administrative control, so I don't -- I do not write
 3   their evaluations or do discipline for forces that
 4   are outside of FPS.  I do not, you know, process
 5   their paperwork.  I'm not responsible for review of
 6   their paperwork.
 7        Q.   So you don't do their discipline?
 8        A.   Correct.
 9        Q.   I see.  Who does their discipline?
10        A.   Each individual component is responsible
11   for their own disciplinary processes.
12        Q.   Okay.  So you have tactical control over
13   the CBP forces in Diligent Valor?
14        A.   Yes.
15        Q.   You have tactical control over the ICE
16   forces in Diligent Valor?
17        A.   Yes.
18        Q.   And you have tactical -- tactictal control
19   over the new FPS forces in Diligent Valor?
20        A.   Yes.
21        Q.   And just to be clear:  Do you discipline
22   the new FPS forces in Diligent Valor?
23             MR. GARDNER:  Objection, vague.  Also
24   objection, lack of foundation.
25        Q.   BY MR. ACHARYA:  There are new FPS forces
```

Case 3:20-cv-01035-SI    Document 124-2    Filed 08/05/20    Page 7 of 42
Case: 1:25-cv-12173 Document #: 190-11 Filed: 11/03/25 Page 6 of 9 PageID #:4083
Rough Draft - Gabriel Russell - 08-04-2020                    27

```
 1       Q.   BY MR. ACHARYA:  Well, yeah, answer the
 2  question.
 3            You said you have situation -- seen
 4  situations where...
 5       A.   Where deploying additional forces resulted
 6  in enhanced protection, which was the goal of the
 7  operation.
 8       Q.   I see.  Is Diligent Valor over?
 9       A.   It is not.
10       Q.   So the extra CBP forces are still here?
11            MR. GARDNER:  Objection.  To the extent
12  that you can answer counsel's question without
13  divulging information that is subject to the law
14  enforcement privilege, you may do so.  To the extent
15  you cannot answer his question without divulging
16  such information, I instruct you not to answer.
17            THE WITNESS:  I'm not going to answer that
18  question.
19       Q.   BY MR. ACHARYA:  Are the extra ICE forces
20  still here?
21            MR. GARDNER:  Same objection and same
22  instruction.
23            THE WITNESS:  Same answer.
24       Q.   BY MR. ACHARYA:  When will the extra
25  forces leave?
```

Case 3:20-cv-01035-SI    Document 124-2    Filed 08/05/20    Page 8 of 42
Case: 1:25-cv-12173 Document #: 190-11 Filed: 11/03/25 Page 7 of 9 PageID #:4084
Rough Draft - Gabriel Russell - 08-04-2020                    45

1  presence is not leaving Portland until local police
2  complete cleanup of anarchists and agitators?
3       A.   Give me a second to -- That's -- That's a
4  hypothetical and I don't...
5       Q.   That's not a hypothetical.  That's a
6  question about what -- what Homeland Security is
7  going to do.
8            Are they -- Is DHS's enhanced presence
9  leaving Portland -- is not leaving Portland until
10 local police complete cleanup of anarchists and
11 agitators?  Is that true?
12      A.   I don't know the answer to that.
13      Q.   So you don't know when Homeland Security's
14 enhanced presence will leave?
15      A.   That's correct.
16           MS. TONELLI:  Objection.  Law enforcement
17 privilege.  We're -- We're going into -- it's the
18 same idea of when our officers may withdraw.
19           MR. ACHARYA:  Yeah, I think this tweet
20 waives that privilege.
21           MS. TONELLI:  No, because you're asking
22 for more detail.
23           MR. GARDNER:  Yeah, it does not waive any
24 privilege about the details of the law enforcement
25 efforts in Portland.

Case 3:20-cv-01035-SI    Document 124-2    Filed 08/05/20    Page 9 of 42
Case: 1:25-cv-12173 Document #: 190-11 Filed: 11/03/25 Page 8 of 9 PageID #:4085
Rough Draft - Gabriel Russell - 08-04-2020                              59

1    Q.    BY MR. ACHARYA:    Under what circumstances
2    would FPS have power to enforce an unlawful assembly
3    order on Fourth Street?
4    A.    The FPS jurisdiction has authority allows
5    FPS law enforcement officers to taken forcement
6    action on and around federal property for the
7    protection of federal property and people on it.    So
8    if there was for example someone was off a federal
9    property and they were committing assaults against
10   federal officers using projectiles or something of
11   that nature federal officers could taken forcement
12   action.
13   Q.    Understood.    But I'm asking about
14   dispersal orders, which are dispersal orders to
15   unlawful assembly; so we're not talking about any
16   actions against federal officers.
17           Does FPS have authority to enforce a
18   dispersal order against an unlawful assembly on
19   Southwest Fourth Street?
20   A.    On Southwest Fourth Street?
21   Q.    That's one street west of the federal
22   courthouse.
23   A.    Generally, no.
24   Q.    So you've policed protests, many protests?
25   A.    Yes.

Case 3:20-cv-01035-SI    Document 124-2    Filed 08/05/20    Page 10 of 42
Case: 1:25-cv-12173 Document #: 190-11 Filed: 11/03/25 Page 9 of 9 PageID #:4086
Rough Draft - Gabriel Russell - 08-04-2020                    72

```
 1         Q.    Sure.  Understood.
 2               So you're a supervisor.  Are you
 3    responsible for making sure that people that you
 4    tactically command don't use excessive force?
 5         A.    Yes.
 6         Q.    Okay.  Do you see what -- what federal
 7    agents did to the guy wearing the Navy shirt
 8    Christopher David?
 9         A.    Yes.
10         Q.    Did you think that was excessive force?
11         A.    Counsel, should I answer this.
12               MR. GARDNER:  I mean if you can do so
13    without disclosing information that is subject to
14    the law enforcement privilege or other privileges
15    you may if you need to consult we can also do that.
16               THE WITNESS:  Can we consult briefly.
17               MR. GARDNER:  Absolutely you know what
18    we've been going for a while anyway why don't we
19    take like a five minute break.
20               MR. ACHARYA:  Okay so it's 1245 by my
21    clock so we'll be on 1250.
22               MR. GARDNER:  Assuming we get through our
23    consultation sure.
24               MR. ACHARYA:  Okay thanks.
25               THE VIDEOGRAPHER:  Off the record at
```