IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT COURT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO HEADLINE CLUB, et al., ) | |
| ) | |
| *Plaintiffs*, ) | No. 25-cv-12173 |
| ) | **Hon. Sara L. Ellis** |
| v. ) | |
| ) | |
| KRISTI NOEM, Secretary, U.S. ) | |
| Department of Homeland Security, in her ) | |
| official capacity, et al., ) | |
| ) | |
| *Defendants*, ) | |

**<u>Preliminary Injunction Order</u>**

Plaintiffs filed a Motion for a Preliminary Injunction Order [82, 86] against Defendants. Having held a hearing on November 5 and 6, 2025, the Court finds that Plaintiffs have met their burden to support the issuance of a Preliminary Injunction. The Court orally issued its ruling, containing findings of facts, conclusions of law, and stated reasons why the Court issued the injunction pursuant to Federal Rules of Civil Procedure 52(a)(2) and 65(d), on November 6, 2025, and indicated that a written opinion will follow further explaining the Court's ruling and providing supporting evidentiary and case citations within 14 days of the issuance of this Order. Accordingly, the Court grants the motion and orders as follows:

1. It is hereby ORDERED that Defendants, their officers, agents, assigns, and all persons acting in concert with them (hereafter referred to as "Federal Agents"), are ENJOINED in this judicial district from:

   a. <u>Interactions with Journalists:</u> Dispersing, arresting, threatening to arrest, threatening or using physical force against any person whom they know or reasonably

1

should know is a Journalist, unless Federal Agents have probable cause to believe that the individual has committed a crime unrelated to failing to obey a dispersal order lawfully issued to non-Journalists. Federal Agents may order a Journalist to change location to avoid disrupting law enforcement, as long as the Journalist has an objectively reasonable amount of time to comply and an objectively reasonable opportunity to report and observe;

  b. <u>Dispersal of Others:</u> Issuing a crowd dispersal order, meaning a lawful command given by an authorized Federal Agent for all persons to leave a designated area, that requires any Class member to leave a public place that they lawfully have a right to be, unless dispersal is justified by exigent circumstances such that immediate action is objectively necessary in order to preserve life or prevent catastrophic outcomes as defined by Department of Homeland Security Use of Force Policy (updated Feb. 6, 2023), Section XII.E;

  c. Using riot control weapons—including kinetic impact projectiles (KIPs), Compressed Air Launchers (e.g., PLS and FN303), Oleoresin Capsicum (OC) Spray, CS gas, CN gas, or other chemical irritants, 40 mm Munitions Launchers, less-lethal shotguns, Less-Lethal Specialty Impact-Chemical Munitions (LLSI-CM), Controlled Noise and Light Distraction Devices (CNLDDs), Electronic Control Weapons (ECWs)—on any Class member, unless such force is objectively necessary to stop the person from causing an immediate threat of physical harm to another person;

  d. Using riot control weapons (including those described above) at identified targets if it is reasonably foreseeable that doing so could result in injury to any Class member, unless such force is objectively necessary to stop the person from causing an immediate threat of physical harm to another person;

e. Deploying CS or CN gas canisters, OC spray, or other chemical irritants into a group of people or in residential or commercial areas in a manner that poses a reasonably foreseeable risk of injuring any Class member who is not causing an immediate threat of physical harm to another person;

f. Deploying CS or CN gas canisters, Controlled Noise and Light Distraction Devices (CNLDD), or Less-Lethal Specialty Impact and Chemical Munitions (LLSI-CM) so as to strike any Class member, unless such force is objectively necessary to stop an immediate threat of the person causing serious bodily injury or death to another person;

g. Deploying CS or CN gas canisters, Controlled Noise and Light Distraction Devices (CNLDD), or Less-Lethal Specialty Impact and Chemical Munitions (LLSI-CM) above the head of any Class member, unless such force is objectively necessary to stop an immediate threat of the person causing serious bodily injury or death to another person;

h. Firing Compressed Air Launchers (e.g., PLS and FN303), or Munitions Launchers (e.g., 40mm), or KIPs so as to strike the head, neck, groin, spine, or female breast of any Class member, unless such force is objectively necessary to stop an immediate threat of the person causing serious bodily injury or death to another person;

i. Striking any Class member with a vehicle, unless such force is objectively necessary to stop an immediate threat of the person causing serious bodily injury or death to another person;

j. Using hands-on physical force such as pulling or shoving to the ground, tackling, or body slamming any Class member who is not causing an immediate threat of physical harm to others, unless objectively necessary and proportional to effectuate an apprehension and arrest;

      k.      Using chokeholds, carotid restraints, neck restraints, or any other restraint technique that applies prolonged pressure to the neck that may restrict blood flow or air passage against any Class member, unless such force is objectively necessary to stop an immediate threat of the person causing serious bodily injury or death to another person;

      l.      Using any riot control weapon, including those listed in this Order, against any Class member, without first giving at least two separate warnings at a sound level where the targeted individual(s) can reasonably hear it, unless justified by exigent circumstances when immediate action is necessary in order to preserve life or prevent catastrophic outcomes, as defined by Department of Homeland Security Use of Force Policy (updated Feb. 6, 2023), Section XII.E. Such warnings shall explain that Federal Agents may employ riot control weapons or force, give the targeted individual(s) reasonable time to avoid the use of force, and provide a reasonable opportunity to comply;

      m.      Seizing or arresting any Class member who is not resisting a lawful and authorized crowd dispersal order (as defined in 1.b. above), unless there is specific probable cause to believe that the person has committed a crime for which a custodial arrest is warranted and for which the Federal Agent has lawful authority to make an arrest; and

      n.      Defendants shall not be liable for violating this injunction if any Class member is incidentally exposed to riot control devices after such a device was deployed in a manner that complies with this injunction.

2.      To facilitate the Defendants' identification of Journalists protected under this Order, the following are examples of indicia of being a Journalist: visual identification as a member of the press, such as by displaying a professional press pass, badge, or credentials; wearing distinctive clothing or patches that identify the wearer as a member of the press; or carrying

4

professional gear such as professional photographic or videography equipment. Other indicia of being a Journalist under this Order include that the person is standing off to the side of a protest, not engaging in chanting, sign holding, or shouting slogans, and is instead documenting protest activities, although these are not requirements. These indicia are illustrative, and a person need not exhibit every indicium to be considered a Journalist under this Order. Defendants shall not be liable for incidental violations of this Order if Defendants establish that the affected individual lacked any of the illustrative indicia of a Journalist described in this provision.

3. It is further ORDERED that all Federal Agents, excepting those who do not wear a uniform or other distinguishing clothing or equipment in the regular performance of their official duties or are engaged in undercover operations in the regular performance of their official duties, must have visible identification of a unique, personally assigned, and recognizable alphanumeric identifier sequence affixed to their uniforms and conspicuously displayed in two separate places. The same unique and personally assigned identifier sequence must remain conspicuously displayed in two separate places despite changes to a Federal Agent's uniform or tactical gear.

4. It is further ORDERED that all Federal Agents, excepting those who do not wear a uniform or other distinguishing clothing or equipment in the regular performance of their official duties or are engaged in undercover operations in the regular performance of their official duties, that are, have been, or will be equipped and trained with body-worn cameras ("BWCs") shall activate them when engaged in enforcement activity unless expressly exempted by CBP, ICE, or DHS policy.

    a. The definitions of "body worn cameras" shall be as defined in DHS Policy Statement 045-07 Section VIII and CBP Directive 4320-020B Section 6.2: Audio/video/digital recording equipment combined into a single unit and typically worn

on clothing or otherwise secured to a person, e.g., affixed to the outside of the carrier/tactical vest facing forward.

    b.    For the purposes of this Order, the definition of "enforcement activity" shall be as defined in ICE Directive 19010.3 Section (3.6)(8) and CBP Directive 4320-020B Section 6.4. Such activities include but are not limited to:

        i.    Protecting Federal Government facilities;

        ii.    Responding to public disturbances;

        iii.    Interacting with members of the public while conducting Title 8 enforcement activities in the field; and

        iv.    When responding to emergencies.

    c.    Enforcement activities where BWCs are not required to be worn or activated for the purposes of this Order are:

        i.    Where agents are conducting undercover activity or confidential informants will or may be present;

        ii.    Information-gathering surveillance activities where and when an enforcement activity is not planned;

        iii.    Onboard commercial flights;

        iv.    Controlled deliveries; and

        v.    Custodial interviews conducted inside jails, prisons, detention centers, or DHS owned or leased facilities.

    d.    This provision requiring BWCs shall not apply to Federal Agents operating at any port of entry into the United States including but not limited to Chicago O'Hare International Airport and Chicago Midway International Airport.

   e. Federal Agents shall not be liable for violating this provision (i) for failure to record due to equipment failure beyond the control of Federal Agents, or (ii) in the event that cloud storage for storing recordings made by BWCs should become unavailable, through no fault of Federal Agents, either due to (a) the lapse in appropriations, or (b) license or contract expiration.

5. It is further ORDERED that Defendants widely disseminate notice of this Order. Specifically, Defendants are ORDERED to provide copies of this Order, in either electronic or paper form, no later than 10 p.m. Central Time on November 6, 2025, to all those described below:

   a. all law enforcement personnel, officers, and agents of the Federal Agents currently or subsequently deployed in the Northern District of Illinois, including but not limited to all personnel operating within this District who are part of Operation Midway Blitz or any equivalent operation by a different name; and

   b. all employees, officers, and agents of Federal Agents with supervisory or management authority over any law enforcement officers or agents currently or subsequently deployed in the Northern District of Illinois, up the chain of command to and including the Secretary of Homeland Security and other named Defendants.

6. It is further ORDERED that Defendants shall issue guidance to officers and agents to implement this Order. Defendants shall file with this Court such guidance and any directives, policies, or regulations implementing the guidance within 5 business days of issuance of the Order, with a continuing obligation to immediately file with this Court any subsequent changes or revisions to that guidance or implementing directives, policies, or regulations through the period of this Order.

7. It is further ORDERED that in the event that Plaintiffs seek relief for an alleged violation of this Order, Plaintiffs should make good faith attempts to meet and confer with Defendants at least 24 hours before filing a request for relief and Defendants must respond to the motion for relief as ordered by the Court.

8. It is further ORDERED that in the interest of justice, the Court orders Plaintiffs to provide $0 in security, and the Court rules that any other requirements under Rule 65(c) of the Federal Rules of Civil Procedure are satisfied.

9. The parties shall meet and confer and provide a joint status report within 7 days setting forth proposals for ensuring that Federal Agents present in the Northern District of Illinois while this action is pending remain informed of the limitations imposed by this Order.

10. This Preliminary Injunction Order is entered at 11:48 a.m. Central Time on this 6th day of November 2025 and shall remain in effect pending further proceedings before this Court.

Date: November 6, 2025

Sara L. Ellis
U.S. District Judge