UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO HEADLINE CLUB, et al., | ) |
| | ) |
| *Plaintiffs*, | ) No. 25-cv-12173 |
| | ) Hon. Sara L. Ellis |
| v. | ) |
| | ) |
| KRISTI NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity, et al., | ) |
| | ) |
| *Defendants*, | ) |

**OPINION AND ORDER**

This case arises from protests throughout the Chicagoland area associated with the federal government's immigration enforcement and removal operations and deployment of federal agents, which have increased over the past several months. Plaintiffs[1] allege that federal agents have targeted peaceful individuals, religious practitioners, and members of the media participating in or reporting on these protests with excessive force, threats, and/or detention. Among other things, these federal agents have allegedly fired rubber bullets and pepper balls, launched flashbang grenades, and indiscriminately sprayed tear gas at protesters, religious practitioners, and journalists without legal justification or adequate warning.

Plaintiffs filed this suit against Defendants Kristi Noem, the Secretary of U.S. Department of Homeland Security ("DHS"); Todd Lyons, the Acting Director of ICE; Marcos

---

[1] Plaintiffs divide themselves into three groups. The Journalist Plaintiffs consist of Chicago Headline Club, Block Club Chicago, the Chicago Newspaper Guild Local 34071 (CNG), NABET-CWA Local 54041, Raven Geary, Charles Thrush, and Stephen Held. The Demonstrator Plaintiffs consist of William Paulson, Autumn Reidy-Hamer, Leigh Kunkel, Rudy Villa, and Jennifer Crespo. The Religious Practitioner Plaintiffs consist of Reverend David Black, Father Brendan Curran, Reverend Dr. Beth Johnson, and Reverend Abby Holcombe.

Charles, the Acting Executive Associate Director of Enforcement and Removal Operations at ICE; Russell Hott, the former Chicago Field Office Director of ICE; Rodney S. Scott, the Commissioner of U.S. Customs and Border Protection ("CBP"); Gregory Bovino, the Chief Border Patrol Agent of CBP's El Centro Sector; Daniel Driscoll, the Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"); William K. Marshall III, the Director of the Federal Bureau of Prisons ("BOP"); Pamela Bondi, the Attorney General of the United States; DHS; U.S. DOJ; Unidentified Federal Agencies; Unidentified Federal Officers; and Donald J. Trump, the President of the United States (collectively, "Defendants"). In an amended complaint filed on October 21, 2025, Plaintiffs added as Defendants Sam Olson, the interim Chicago Field Office Director of ICE; Shawn Byers, the Chicago Deputy Field Office Director of ICE; Kyle Harvick, the Deputy Incident Commander for CBP; Kash Patel, the Director of the Federal Bureau of Investigation ("FBI"); Faron Paramore, the Director of the Federal Protective Service ("FPS"); and Stephen Miller, the White House Deputy Chief of Staff and U.S. Homeland Security Adviser. Plaintiffs bring claims against Defendants for (1) violations of their First Amendment rights, including First Amendment retaliation; (2) violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1; (3) excessive force and unreasonable seizure in violation of the Fourth Amendment; (4) violations of the Administrative Procedures Act; and (5) conspiracy to violate Plaintiffs' constitutional rights.

     Plaintiffs now seek to certify a class of "all persons who are or will in the future non-violently protest, observe, document, or record Department of Homeland Security immigration operations in the Northern District of Illinois." Doc. 80 ¶ 125. They also seek to proceed with two subclasses. The first is a religious exercise subclass for their RFRA claim of "persons who are or will in the future engage in religious expression in the form of prayer, procession, song,

preaching, or proselytizing at Department of Homeland Security immigration operations in the Northern District of Illinois." *Id.* The second is a press subclass of "all persons who are or will in the future engage in news gathering or reporting at Department of Homeland Security immigration operations in the Northern District of Illinois." *Id.* Plaintiffs move to certify these classes under Federal Rule of Civil Procedure 23(b)(2).

The Court finds that Plaintiffs have carried their burden under Rules 23(a) and 23(b)(2) to show that certification is appropriate and certifies the following class:

> All persons who are or will in the future non-violently demonstrate, protest, observe, document, or record at Department of Homeland Security immigration enforcement and removal operations in the Northern District of Illinois.

The Court also certifies the following subclasses:

> **Religious Exercise Subclass:** All persons who are or will in the future engage in religious expression in the form of prayer, procession, song, preaching, or proselytizing at Department of Homeland Security immigration enforcement and removal operations in the Northern District of Illinois.
>
> **Press Subclass:** All persons who are or will in the future engage in news gathering or reporting at Department of Homeland Security immigration enforcement and removal operations in the Northern District of Illinois.

## BACKGROUND

The Court will set forth the full factual background and summary of the evidence relied upon in the forthcoming written opinion on Plaintiffs' motion for a preliminary injunction. The Court additionally relies on the factual findings stated during the November 6, 2025 hearing.

## LEGAL STANDARD

Class certification is appropriate where a plaintiff can meet the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P.

3

23(a). Additionally, a plaintiff must also satisfy one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Here, Plaintiffs seek certification under Rule 23(b)(2), which requires a finding that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Finally, although not an explicit requirement of Rule 23, the party seeking certification must demonstrate that the class members are identifiable. *Oshana*, 472 F.3d at 513.

The Court has broad discretion in determining whether to certify a proposed class. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). The party seeking certification bears the burden of demonstrating that certification is proper by a preponderance of the evidence. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The Court must engage in a "rigorous analysis," resolving material factual disputes where necessary. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). But "[i]n conducting [the Rule 23] analysis, the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811; *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (court should consider merits questions only to the extent relevant to determining if a plaintiff has met Rule 23's prerequisites).

## ANALYSIS

### I. Ascertainability

Defendants raise various challenges to the ascertainability of Plaintiffs' proposed classes. The Seventh Circuit has confirmed that ascertainability is an "implicit requirement" of Rule 23,

4

focused on the "adequacy of the class definition itself." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). Classes must be "defined clearly and based on objective criteria." *Id.*

### A. Vague and/or Ambiguous Terms

To start, Defendants argue that the proposed class definitions are "inherently ambiguous" and "too vague" for certification. In particular, they contend that determining whether an individual is an observer, news gatherer, religious practitioner, or bystander is not "clear-cut." Doc. 170 at 7. Similarly, they contend that it is difficult to determine when protesters are non-violent. Defendants do not explain why these terms are vague or ambiguous or cite to any case law finding that similar terms are vague or ambiguous, and the Court finds that this argument strains credulity. As Plaintiffs point out in reply, these terms all have well-known, objective meanings. Doc. 189 at 4 (providing dictionary definitions of "observer" and "bystander"); *see also Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 246 F.R.D. 621, 630 (C.D. Cal. 2007) ("Although class definitions should avoid criteria that are subjective, the words 'peaceful' and 'demonstration' are objectively determinable descriptors of class members' behavior."). The Court therefore finds that these terms are sufficiently defined and objective.

Defendants also argue that the term "immigration operations" is unidentified and could include anything from "DHS officials driving away from a detention facility" to "non-enforcement activity such as immigration airport screening." Doc. 170 at 5. In reply, Plaintiffs propose replacing this term in the proposed class definitions with "immigration enforcement and removal operations." Doc. 189 at 5. Given that Defendants themselves use this modified term when describing the relevant operations,[2] the Court agrees that this modification should remedy Defendants' concerns. The Court therefore modifies the proposed class definitions accordingly.

---

[2] *See Enforcement and Removal Operations*, U.S. Immigration and Customs Enforcement, https://www.ice.gov/about-ice/ero ("ERO manages all aspects of the immigration enforcement process,

B.     **Uninjured Class Members**

Defendants next argue that Plaintiffs do not allege or provide evidence to show that Defendants have acted unlawfully towards all or most of the putative class members. They contend that "a substantial number of" putative class members "have presumably been able to exercise their constitutional rights without incident" and that the "scores of uninjured members seemingly included in Plaintiffs' proposed class also raise serious standing concerns that further undermine the propriety of certification." Doc. 170 at 7.

The Seventh Circuit has explained that courts should deny certification if it is apparent that the proposed class definition "contains a great many persons who have suffered no injury." *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009). That said, it is "almost inevitable" that "a class will often include persons who have not been injured by the defendant's conduct . . . because at the outset of the case many of the members of the class may be unknown, or if they are known still the facts bearing on their claims may be unknown." *Id.* "Such a possibility or indeed inevitability does not preclude class certification." *Id.* There is no "precise tipping point at which a class includes too many people who have not been harmed," and this determination is a "matter of degree" that "will turn on the facts as they appear from case to case." *Lacy v. Cook Cnty.*, 897 F.3d 847, 864 (7th Cir. 2018) (citing *Messner*, 669 F.3d at 825).

At this stage, the Court cannot say that the proposed class definitions include a great number of uninjured individuals. Defendants do not provide the Court with any evidence or support for the contention that "it is likely" that many putative class members have "presumably" been able to exercise their constitutional rights without incident. Doc. 170 at 7. Plaintiffs, on the other hand, have submitted extensive evidence showing that no-violent civilians and members of

---

including the identification, arrest, detention and removal of aliens who are subject to removal or are unlawfully present in the U.S.").

6

the press have been frequently and consistently subjected to unlawful dispersal orders and excessive force. *See, e.g.*, Docs. 22-1–22-34, 22-41–22-45, 57-1, 73-1–73-30, 77-1, 77-2, 94-1–94-4, 118-1–118-3, 140-1, 140-2, 188-1–188-3, 190-3, 190-4, 190-8, 190-9, 190-15. This evidence further shows that Defendants' actions have had a clear chilling effect on the class members. In light of this, the Court finds that "the balance tips in favor of certification." *Lacy*, 897 F.3d at 864 ("The defendants have not suggested how many of these individuals could not have been injured under the ADA, let alone shown 'a great many' who evaded harm.").

### C. State of Mind

Defendants further argue that the proposed classes are not sufficiently ascertainable because they would require inquiring into class members' subjective states of mind. For example, they believe that determining whether an individual was praying or news gathering requires a state of mind inquiry. The Court disagrees. Seventh Circuit case law makes clear that "Plaintiffs can generally avoid the subjectivity problem by defining the class in terms of conduct (an objective fact) rather than a state of mind." *Mullins*, 795 F.3d at 660. That is precisely what Plaintiffs have done here—the class definitions refer to conduct, not subjective states of mind.

### D. Temporal and Geographic Scope

Finally, Defendants argue that Plaintiffs' proposed class definitions lack definiteness due to their lack of an appropriate temporal and geographic scope. The Court again finds this argument unpersuasive.

Defendants' arguments regarding the temporal scope of the class seemingly focus on the fact that the class is open to future members. They argue that this is concerning, because "class membership can vary considerably day to day." Doc. 170 at 6. Defendants cite to no authority supporting this argument. This is unsurprising, as courts "routinely" certify classes that are

7

"open to future members." *Sparger-Withers v. Taylor*, 628 F. Supp. 3d 821, 830–31 (S.D. Ind. 2022)*; see also Plaintiffs #1-21 v. Cnty. of Suffolk*, No. 15 CV 2431, 2021 WL 1255011, at *16 (E.D.N.Y. Mar. 12, 2021) (rejecting argument that proposed class "without temporal limitation" was not ascertainable because "classes for injunctive relief can include future members"), *report and recommendation adopted*, No. 15CV2431, 2021 WL 1254408 (E.D.N.Y. Apr. 5, 2021); *Crissen v. Gupta*, No. 2:12-CV-00355, 2014 WL 4129586, at *14 (S.D. Ind. Aug. 19, 2014) (holding that "the lack of a temporal limitation is not problematic for purposes of ascertainability").

Next, Defendants argue that the proposed class definitions have a "sweeping geographic reach, covering protesters, religious observers, and reporters from Lake Shore Drive to Rockford and Galena." Doc. 170 at 6. Yet they again cite to no authority supporting the proposition that this geographic scope is so expansive to defeat certification. Nor can they, as courts routinely certify classes with much broader geographic scopes than proposed here. *See, e.g.*, *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, No. 23-CV-0818, 2024 WL 4333709, at *2 (N.D. Ill. Sept. 27, 2024) (finding nationwide consumer class sufficiently ascertainable); *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 252, 260 (S.D. Ill. 2015) (proposed class of individuals who purchased defendants' products "in Alabama, California, Illinois, New Jersey, New York, North Carolina, South Carolina, and Tennessee" was ascertainable); *Foley v. Student Assistance Corp.*, 336 F.R.D. 445 (E.D. Wis. 2020) (certifying class of "[a]ll persons in the States of Wisconsin, Illinois, and Indiana"). The Court therefore finds that the class is sufficiently ascertainable and turns to the requirements under Rule 23(a).

## II. Rule 23(a) Requirements

### A. Numerosity

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, numerosity exists where the proposed class includes at least forty members. *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969); *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). At the time they filed their amended complaint, Plaintiffs represented that the global class was composed of thousands of members. Plaintiffs further contend that the subclasses are sufficiently numerous under Rule 23, with the religious exercise and press subclasses comprising hundreds of members each. Defendants do not contest that Plaintiffs meet the numerosity requirement in this case, and the number of members here more than meets the minimum number necessary for class certification. Thus, the Court concludes that Plaintiffs have met the numerosity requirement.

### B. Commonality

Commonality requires Plaintiffs to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Their claims must depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Even a single common question of law or fact will do. *Id.* at 359. "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014); *Rahim v. Sheahan*, No. 99 C 0395, 2001 WL 1263493, at *13 (N.D. Ill. Oct. 19, 2001) ("Perhaps more importantly here, when a 'question of law refers to

9

standardized conduct by defendants toward members of the class, a common nucleus of operative facts is typically presented, and the commonality requirement is usually met.'") (citation omitted); *Anderson v. Cornejo*, 199 F.R.D. 228, 239 (N.D. Ill. 2000) ("[A] common question of fact will exist as to whether the practices and policies alleged actually existed").

Plaintiffs argue that commonality is satisfied in this case because "the putative class's claims all derive from Defendants' common course of conduct in unlawfully dispersing, targeting, and retaliating against people exercising their First Amendment rights" in the Northern District of Illinois. Doc. 81 at 8. The Court agrees. Plaintiffs have presented significant evidence that, throughout the course of Operation Midway Blitz, Defendants have regularly and systemically targeted non-violent civilians and members of the press while they are exercising their First Amendment rights. *See, e.g.*, Docs. 22-1–22-34, 22-41-22-45, 57-1, 73-1–73-30, 77-1, 77-2, 94-1–94-4, 118-1–118-3, 140-1, 140-2, 188-1–188-3, 190-3, 190-4, 190-8, 190-9, 190-15. Defendants and their agents have used force indiscriminately, without making individualized assessments as to threat. And while Defendants argue that federal agents have only used force when objectively reasonable and in response to violent mobs and rioters, the government's own evidence in this case belies that assertion. *See* Doc. 232. Further, as the Court explained in its oral ruling on the preliminary injunction, Defendants' accounts of these protests and uses of force are simply not credible.

Plaintiffs have also presented evidence that makes clear that senior officials have encouraged and endorsed federal agents' targeting of non-violent individuals exercising their First Amendment rights. For example, Defendant Noem has instructed federal agents to "go hard" and "hammer" individuals for "the way they are talking, speaking, who they're affiliated with." Doc. 21 n.15. Defendant Bovino followed this up by informing federal agents that a

10

"free speech zone" outside of the Broadview Detention Center is "now going to be a 'free arrest zone.'" *Id*. He later stated in an interview: "If someone strays into a pepper ball, then that's on them. Don't protest, and don't trespass." Doc. 190-5 at 4:4–6. And during his deposition, he confirmed that he believed federal agents' uses of force throughout Operation Midway Blitz were "more than exemplary." Doc. 238 at 59:9–15.

The Court is not persuaded by Defendants' arguments against a finding of commonality. First, Defendants argue that Plaintiffs do not allege (let alone show) that Defendants' allegedly unlawful conduct has injured all or most of the putative class members. From a factual perspective, however, Plaintiffs *have* provided sufficient evidence to show that Defendants have indiscriminately used force and retaliated against non-violent demonstrators, religious practitioners, and members of the press. Further, the law does not require Plaintiffs to prove that every member of the proposed class has been injured at this stage. *See Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 380 (7th Cir. 2015) ("Plaintiffs need not prove that every member of the proposed class has been harmed before the class can be certified."). As explained above, Defendants have not presented any evidence to show that a great number of class members are uninjured or could not have been injured.

Next, Defendants argue that the classes cannot meet the commonality requirement because the factual circumstances of each putative class members' encounters with federal agents vary, and the legal theories underlying their claims will differ as well. But the fact that individualized inquiries may be necessary for some questions does not defeat commonality. "Neither Rule 23 nor any gloss that decided cases have added to it requires that every question be common." *Suchanek*, 764 F.3d at 756; *see also Lacy*, 897 F.3d at 865 ("Although it is true that the reasonableness of a given accommodation will vary among individuals with differing

11

disabilities, any dissimilarities among the proposed class members will not impede the generation of common answers in this case."); *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 381 (7th Cir. 2015) ("[O]ur cases demonstrate that commonality as to every issue is not required for class certification."); *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988) ("It is insignificant that individual roles and levels of participation among defendants varied or that different degrees of harassment or abuse were inflicted upon individual class members, given the common legal question presented for determination.").

Because the Court finds that Defendants have a common practice that they applied indiscriminately across the classes, there is a "common core of salient facts" in this case which supports a finding of commonality. *See Multi-Ethnic Immigrant Workers Org. Network*, 246 F.R.D. at 630 ("The LAPD's command decisions to declare an unlawful assembly, disperse the crowd, and authorize the use of force constitute the 'common core of salient facts' that support commonality.").

### C. Typicality

To satisfy typicality, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). The typicality requirement is "closely related" to the commonality inquiry, and a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members." *Keele*, 149 F.3d at 595 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Typicality is determined with reference to a defendant's actions, not with respect to specific defenses a defendant may have against certain class members. *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996).

The Court finds that Plaintiffs have satisfied the typicality requirement. Here, the named Plaintiffs' claims arise from the same course of conduct as the claims of the other class members; namely, Defendants' and their agents' indiscriminate use of force against non-violent civilians and members of the press exercising their First Amendment rights. This is sufficient to support a finding of typicality.

Defendants' arguments regarding typicality again fall flat. The fact that "each Plaintiff has unique circumstances . . . does not make his claims atypical or inadequately aligned with those of the class." *Zollicoffer v. Gold Standard Baking, Inc.*, 335 F.R.D. 126 (N.D. Ill. 2020). "The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *De La Fuente*, 713 F.2d at 232; *see also Multi-Ethnic Immigrant Workers Org. Network*, 246 F.R.D. at 632 ("Defendants nevertheless argue that typicality is lacking because the May Day incident gave rise to *different* rights, injuries, and claims, depending on whether one was a participant, legal observer, or bystander, whether one heard the dispersal order, whether one had physical contact with the police, and whether one suffered physical injury. Plaintiffs correctly respond that one's status as participant, observer or bystander does not defeat typicality as to their First Amendment claim, because that claim alleges that *everyone* had a First Amendment right to be in the park. Similarly, one's right to be free from excessive force does not depend on whether one was participating in the protest. Nor do differences in physical contact and injury defeat typicality as to the Fourth Amendment claim, because they are permissible variations within a class."). Thus, the variations that Defendants identify do not defeat typicality here.

### D. Adequacy of Representation

To satisfy the adequacy of representation requirement, the class representative must possess the same interest as the class members and not have claims or interests that are antagonistic or conflicting with those of the class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The adequacy inquiry also involves determining whether the proposed class counsel is adequate. *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). Defendants do not challenge the adequacy of the proposed class representatives or class counsel. Plaintiffs have participated in the litigation by signing declarations regarding their experiences demonstrating, protesting, observing, documenting, and/or recording DHS immigration operations in the Northern District of Illinois, and they contend that they are prepared to remain informed and involved with the case, and to testify at deposition or trial if needed. They further confirm that they understand and will fulfill their obligation to pursue the best interests of the Class. The Court does not perceive any issues with Plaintiffs' ability to represent the proposed class. Similarly, Plaintiffs' counsel has adequately represented Plaintiffs throughout the litigation and has significant experience litigating complex federal civil rights cases and class actions. The Court finds that Plaintiffs have met the adequacy requirements. Having found that Plaintiffs have satisfied Rule 23(a)'s requirements, the Court moves to consideration of Rule 23(b)(2)'s requirements.

## III. Rule 23(b)(2)

A court may certify a class under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory

remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360, (citation omitted) (internal quotation marks omitted). Thus, a court can only certify a Rule 23(b)(2) class if "a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* That relief must also be final regarding the class as a whole. *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 499 (7th Cir. 2012).

Plaintiffs seek injunctive and declarative relief that would not require individualized determinations because Defendants have acted on grounds that apply generally to the class. Thus, certification of a Rule 23(b)(2) class is proper.

### IV.   8 U.S.C. § 1252(f)(1)

Finally, Defendants argue that the Court should deny Plaintiffs' motion because 8 U.S.C. § 1252(f)(1) bars the requested class-wide relief. The Court finds Defendants' argument unavailing, as this issue is more relevant to the merits of Plaintiffs' case than the requirements for class certification. As the Seventh Circuit has explained, "surety of prevailing on the merits is not among" the class certification requirements and "[c]lasses can lose as well as win." *Bennett v. Dart*, 953 F.3d 467, 469 (7th Cir. 2020). Thus, whether § 1252(f)(1) bars the requested injunction would not change the Court's determination as to whether Plaintiffs have met the Rule 23 requirements for class certification. If anything, "[t]he pertinent observation here is that deciding who is correct on these issues will resolve the issues as to the entire class," which only serves to "underscore[e] the appropriateness of class certification." *Kidd v. Mayorkas*, 343 F.R.D. 428, 442 (C.D. Cal. 2023) (analyzing § 1252(f)(1) argument in the context of class certification motion). Regardless, as explained in the Court's oral ruling on Plaintiffs'

motion for preliminary injunction, the Court concludes that the requested injunctive relief does not implicate § 1252(f)(1).

## CONCLUSION

The Court therefore finds that Plaintiffs have met the requirements of Rule 23 and grants Plaintiffs' motion for class certification. The Court certifies the following class:

> All persons who are or will in the future non-violently demonstrate, protest, observe, document, or record at Department of Homeland Security immigration enforcement and removal operations in the Northern District of Illinois.

The Court also certifies the following subclasses:

> **Religious Exercise Subclass:** All persons who are or will in the future engage in religious expression in the form of prayer, procession, song, preaching, or proselytizing at Department of Homeland Security immigration enforcement and removal operations in the Northern District of Illinois.
>
> **Press Subclass:** All persons who are or will in the future engage in news gathering or reporting at Department of Homeland Security immigration enforcement and removal operations in the Northern District of Illinois.

Finally, the Court appoints The Civil Rights and Police Accountability Project of the Edwin F. Mandel Legal Aid Clinic at the University of Chicago Law School; The Community Justice and Civil Rights Clinic at Northwestern University Law School; Loevy + Loevy; The Roger Baldwin Foundation of ACLU, Inc.; and Protect Democracy as class counsel.

Dated: November 6, 2025

_____
SARA L. ELLIS
United States District Judge