LOUISVILLE LEXINGTON LONDON FLORENCE CINCINNATI INDIANAPOLIS ORLANDO JACKSONVILLE TAMPA



# KENTUCKIANA
## — COURT REPORTERS —

## NO. 25-CV-12173

### CHICAGO HEADLINE CLUB, BLOCK CLUB CHICAGO, CHICAGO NEWSPAPER GUILD LOCAL 34071, NABET-CWA LOCAL 54041, RAVEN GEARY, CHARLES THRUSH, STEPHEN HELD, DAVID BLACK, WILLIAM PAULSON, AUTUMN REIDY-HAMER, and LEIGH KUNKEL,

on behalf of themselves and others similarly situated

V.

### KRISTI NOEM, Secretary, ET AL.

### DEPONENT: DANIEL PARRA

### DATE: October 31, 2025


a courtroom
powerhouse

schedule@kentuckianareporters.com

877.808.5856 | 502.589.2273

1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
2            EASTERN DIVISION
HONORABLE SARA L. ELLIS, DISTRICT JUDGE
3              NO. 25-CV-12173

4

5    CHICAGO HEADLINE CLUB, BLOCK CLUB CHICAGO, CHICAGO
NEWSPAPER GUILD LOCAL 34071, NABET-CWA LOCAL 54041,
6  RAVEN GEARY, CHARLES THRUSH, STEPHEN HELD, DAVID BLACK,
WILLIAM PAULSON, AUTUMN REIDY-HAMER, and LEIGH KUNKEL,
7   on behalf of themselves and others similarly situated,
Plaintiffs

8                   V.

9

KRISTI NOEM, Secretary, U.S. Department of Homeland
10    Security (DHS); TODD LYONS, Acting Director, U.S.
Immigration and Customs Enforcement (ICE); MARCOS
11     CHARLES, Acting Executive Associate Director,
Enforcement and Removal Operations, ICE; RUSSELL HOTT,
12   Chicago Field Office Director, ICE; RODNEY S. SCOTT,
Commissioner, U.S. Customs and Border Protection (CBP);
13  GREGORY BOVINO, Chief Border Patrol Agent, CBP; DANIEL
DRISCOLL, Director of the Bureau of Alcohol, Tobacco,
14  Firearms and Explosives (ATF); WILLIAM K. MARSHALL III,
Director of the Federal Bureau of Prisons (BOP); PAMELA
15   BONDI, Attorney General of the United States; U.S.
DEPARTMENT OF HOMELAND SECURITY; U.S. DEPARTMENT OF
16    JUSTICE; UNIDENTIFIED FEDERAL OFFICER DEFENDANTS;
UNIDENTIFIED FEDERAL AGENCY DEFENDANTS; and DONALD J.
17      TRUMP, President of the United States,
Defendants

18

19

20

21

22

23  DEPONENT:  DANIEL PARRA

24  DATE:      OCTOBER 31, 2025

25  REPORTER:  MEGAN WEINER

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                    APPEARANCES (CONTINUED)

 2    ON BEHALF OF THE PLAINTIFFS, CHICAGO HEADLINE CLUB,
      BLOCK CLUB CHICAGO, CHICAGO NEWSPAPER GUILD LOCAL 34071,
 3    NABET-CWA LOCAL 54041, ILLINOIS PRESS ASSOCIATION, RAVEN
      GEARY, CHARLES THRUSH, STEPHEN HELD, DAVID BLACK,
 4    WILLIAM PAULSON, AUTUMN REIDY-HAMER, and LEIGH KUNKEL,
      on behalf of themselves and others similarly situated:
 5    Tara Thompson, Esquire
      Theresa Kleinhaus, Esquire
 6    Locke Bowman, Esquire (Appeared via videoconference)
      Dominique Gilbert, Esquire (Appeared via
 7    videoconference)
      Alexandra Wolfson, Esquire (Appeared via
 8    videoconference)
      Lindsey Hagy, Esquire (Appeared via videoconference)
 9    Justin Hill, Esquire (Appeared via videoconference)
      Loevy & Loevy
10    311 North Aberdeen Street
      Chicago, Illinois 60607
11    Telephone No.: (312) 243-5900
      E-mail: tara@loevy.com
12            tess@loevy.com
              locke@loevy.com
13            gilbert@loevy.com
              wolfson@loevy.com
14            lindsay@loevy.com
              hill@loevy.com
15
      AND
16
      Conor Gaffney, Esquire
17    Protect Democracy Project
      2020 Pennsylvania Avenue NW
18    Suite 163
      Washington, D.C. 20006
19    Telephone No.: (202) 579-4582
      E-mail: conor.gaffney@protectdemocracy.org
20
      AND
21
      Wallace Hilke, Esquire
22    Community Justice and Civil Rights Clinic
      375 East Chicago Avenue
23    Chicago, Illinois 60611
      Telephone No.: (213) 503-2224
24    E-mail: wally.hilke@law.northwestern.edu

25
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                  APPEARANCES (CONTINUED)

 2

 3   ON BEHALF OF THE DEFENDANTS, KRISTI NOEM, Secretary,
     U.S. Department of Homeland Security (DHS); TODD LYONS,
 4   Acting Director, U.S. Immigration and Customs
     Enforcement (ICE); MARCOS CHARLES, Acting Executive
 5   Associate Director, Enforcement and Removal Operations,
     ICE; RUSSELL HOTT, Chicago Field Office Director, ICE;
 6   RODNEY S. SCOTT, Commissioner, U.S. Customs and Border
     Protection (CBP); GREGORY BOVINO, Chief Border Patrol
 7   Agent, CBP; DANIEL DRISCOLL, Director of the Bureau of
     Alcohol, Tobacco, Firearms and Explosives (ATF); WILLIAM
 8   K. MARSHALL III, Director of the Federal Bureau of
     Prisons (BOP); PAMELA BONDI, Attorney General of the
 9   United States; U.S. DEPARTMENT OF HOMELAND SECURITY;
     U.S. DEPARTMENT OF JUSTICE; UNIDENTIFIED FEDERAL OFFICER
10   DEFENDANTS; UNIDENTIFIED FEDERAL AGENCY DEFENDANTS; and
     DONALD J. TRUMP, President of the United States:
11   Elizabeth Hedges, Esquire
     U.S. Department of Justice
12

13

14

15   AND

16   Brooke Danielle Jenkins, Esquire
     Office of the General Counsel
17   U.S. Department of Homeland Security

18   (Appeared via videoconference)

19   ON BEHALF OF THE DEFENDANT, CUSTOMS AND BORDER
     PROTECTION:
20   Nicole Kalupa, Esquire
     U.S. Customs and Border Protection
21

22

23

24   Also Present: Sydney Little, Videographer, Stephany
     Janssen, Loevy & Loevy Paralegal; Sarah F. Terman
25
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1                            INDEX

2                                              Page

3   PROCEEDINGS                                  6

4   DIRECT EXAMINATION BY MS. THOMPSON           7

5

6                          EXHIBITS

7   Exhibit                                     Page

8   1 - Use of Force Policy                      46

9   2 - Homeland Security Policy Statement       46

10  3 - Daniel Parra's Declaration               52

11  4 - David Black's Declaration                64

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

Kentuckiana
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1                                 STIPULATION

2

3   The VIDEO deposition of DANIEL PARRA was taken at the

4   ████████████████████████████████████████████████

5   ██████████████████████████████ CHICAGO, ILLINOIS

6   60604 on FRIDAY the 31ST day of OCTOBER, 2025 at

7   approximately 10:03 a.m. (CT); said VIDEO deposition was

8   taken pursuant to the FEDERAL Rules of Civil Procedure.

9

10   It is agreed that MEGAN WEINER, being a Notary Public

11   and Digital Reporter for the State of ILLINOIS, may

12   swear the witness.

13

14

15

16

17

18

19

20

21

22

23

24

25

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


Kentuckiana
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                        PROCEEDINGS

 2

 3         THE VIDEOGRAPHER:  We are now on the record.

 4         My name is Sydney Little.  I'm the

 5    videographer today, and Megan Weiner is the court

 6    reporter.  Today is the 31st day of October, 2025,

 7    and the time is 10:03 a.m. Central.  We are at

 8    ████████████████████████████████████████████████

 9    ██████████████████████   Chicago, Illinois to take the

10    deposition of Daniel Parra in the matter of Chicago

11    Headline Club, et al. v. Kristi Noem, et al., Case

12    number 25-CV-12173, pending in the United States

13    District Court for the Northern District of

14    Illinois, Eastern Division.  Will the counsel

15    please identify themselves for the record?

16         MS. THOMPSON:  Good morning, sir.

17         MR. PARRA:  Good morning.

18         MS. THOMPSON:  My name is Tara Thompson.

19    I'm one of the attorneys for the plaintiffs.

20         MR. HILKE:  Good morning.  Wally Hilke for the

21    plaintiffs.

22         MS. KLEINHAUS:  Theresa Kleinhaus for the

23    plaintiffs.

24         MR. GAFFNEY:  Conor Gaffney for the

25    plaintiffs.
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**KENTUCKIANA**
COURT REPORTERS

**502.589.2273 Phone**
**502.584.0119 Fax**
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1          MS. HEDGES:  Elizabeth Hedges for the

2     defendants.

3          MS. KALUPA:  Nicole Kalupa, Agency Counsel.

4          THE VIDEOGRAPHER:  And Counsel on Zoom?

5          MS. JENKINS:  Brooke Jenkins for Defendants.

6          MR. HILL:  Justin Hill for the plaintiffs.

7          MS. WOLFSON:  Alexandra Wolfson for the

8     plaintiffs.

9          MS. GILBERT:  Dominique Gilbert for the

10    plaintiffs.

11         MR. BOWMAN:  Locke Bowman for Plaintiffs.

12         MS. HAGY:  Lindsay Hagy for Plaintiffs.

13         THE VIDEOGRAPHER:  Okay.  Mr. Parra, can you

14    please raise your right hand for the court reporter

15    to swear you in?

16         THE REPORTER:  Do you solemnly swear or affirm

17    that the testimony you're about to give will be the

18    truth, the whole truth, and nothing but the truth?

19         THE WITNESS:  I do.

20         THE REPORTER:  Counsel, you may begin.

21         MS. THOMPSON:  Thank you.

22              DIRECT EXAMINATION

23    BY MS. THOMPSON:

24    Q.    Sir, before we begin, I want to make sure that

25    I'm using the right professional title to address you in

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    this deposition this morning.  So what is the

 2    professional title I should use to refer to you, sir?

 3         A.    The incident commander.

 4         Q.    Incident Commander Parra?

 5         A.    Yes, ma'am.

 6         Q.    All right.  Thank you, sir.

 7              MS. THOMPSON:  One thing I should have done

 8         before we began, but maybe it's best to just do it

 9         now. I think there was some discussion yesterday

10         about the fact that we have a paralegal here with

11         us, Stephanie Janssen, who may have to, just for

12         technical purposes, access some videos that are

13         marked as attorneys' eyes only.  And I think there

14         was agreement yesterday it was fine for a paralegal

15         to do that, but I want to make sure that's fine for

16         today.

17              MS. HEDGES:  Yes.  So she works for your law

18         firm?

19              MS. THOMPSON:  Yes.  Ms. Janssen's a paralegal

20         with Loevy & Loevy.

21              MS. HEDGES:  Right.  So I'm fine with that.

22         Just to confirm everyone else in the room is

23         Counsel of record; is that right?

24              MS. THOMPSON:  That's correct.  And from the

25         folks that identified themselves on Zoom, I think I
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        only heard attorneys of record identify themselves.
 2              MS. HEDGES:  Okay.  Then I'm fine.  Thank you.
 3              MS. THOMPSON:  Right.
 4              MS. HEDGES:  Thank you.
 5              MS. THOMPSON:  Confirming.
 6   BY MS. THOMPSON:
 7        Q.   Incident Commander Parra, have you been
 8   deposed before, sir?
 9        A.   Yes, ma'am.
10        Q.   All right.  Let me just give you a couple of
11   instructions to try to move through this more quickly
12   this morning.  They may be things that you've heard
13   before, sir.  The first thing is that if you need to
14   take any breaks this morning, that's fine.  We're going
15   to try to move through things as quickly as we can.  But
16   if at any point you need to take a break, that's fine.
17   I would just ask that if there's a question that I've
18   asked that's pending, that you answer it before we
19   break, all right?
20        A.   Yes.
21        Q.   I'm going to try to make sure that I speak up
22   and speak clearly, but if there's anything that I ask
23   you that you don't hear or anything that I ask you that
24   you don't understand, please just let me know, all
25   right, sir?
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.    Yes.   That's fine.
 2        Q.    I think you and I are going to be able to do
 3   this without talking over one another.  I'm going to try
 4   as best I can to make sure that I wait until you're
 5   finished talking before I ask you a question, but I'd
 6   ask the same: that even if you feel like you know where
 7   I'm going, that you wait until I've finished asking the
 8   question before you answer, all right, sir?
 9        A.    Yes, ma'am.
10        Q.    I'm going to show you some documents during
11   this deposition and they may be documents that you're
12   familiar with.  If at any point you need to look at the
13   document that I've shown you before you answer the
14   question, just let me know.  I'm happy to give you time
15   to review the materials before answering a question,
16   okay?
17        A.    Okay.
18        Q.    Did you do anything to prepare for this
19   deposition?
20        A.    Yes.
21        Q.    Did you review any documents to prepare for
22   this deposition?
23        A.    Yes.
24        Q.    What did you review?
25        A.    I reviewed our CBP Use of Force Policy.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    I reviewed the judge's temporary restraining order.

2    I think those were the two main documents I reviewed in

3    preparation for this -- for this -- for today's

4    appointment.

5        Q.   Did you complete a declaration in this case?

6        A.   I did.

7        Q.   Is that a declaration that you signed

8    yesterday?

9        A.   I did, yes.

10       Q.   All right.  And did you look at that

11   declaration to prepare for this deposition?

12       A.   Yes, I did.

13       Q.   Anything else -- any other documents that you

14   looked at to prepare for this deposition?

15       A.   Nothing that comes to mind at the moment.

16       Q.   All right.  Now you told me that your title is

17   incident commander, sir.  Are you part of Customs and

18   Border Protection, also known by the acronym CBP?

19       A.   Yes.

20       Q.   CBP is part of the Division [sic] of Homeland

21   Security; is that correct?

22       A.   Yes.

23       Q.   And the Immigration and Customs Enforcement

24   are ICE.  That's also part of the Division of Homeland

25   Security, correct?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.    Yes.
 2        Q.    Your career with CBP has primarily been on the
 3    United States border; is that right?
 4            MS. HEDGES:  I object to the form of the
 5        question.  You can answer.
 6            THE WITNESS:  Yes.
 7    BY MS. THOMPSON:
 8        Q.    Most of your career has been in the El Centro
 9    Sector?
10        A.    Yes.
11        Q.    And the El Centro Sector is principally desert
12    with some mountain ranges and agricultural areas; is
13    that right?
14            MS. HEDGES:  Object to the form.  You can
15        answer.
16            THE WITNESS:  Yes.
17    BY MS. THOMPSON:
18        Q.    Customs and Border Protection officers
19    typically do not work in dense urban areas; is that
20    right?
21            MS. HEDGES:  I object to the form of the
22        question.
23    BY MS. THOMPSON:
24        Q.    You can answer.
25        A.    Yes.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

Kentuckiana
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1              THE REPORTER:  Sorry to interrupt.  Could you
 2        just speak a little bit louder?
 3              THE WITNESS:  Sorry.  Okay.  Yes.
 4   BY MS. THOMPSON:
 5        Q.    Yeah?  And customs and Border Protection
 6   officers typically do not operate in situations where
 7   they are encountering protesters; is that right?
 8              MS. HEDGES:  Object to form.
 9              THE WITNESS:  Can you repeat that question
10        again, please?
11   BY MS. THOMPSON:
12        Q.    Sure.  Customs and Border Protection officers
13   typically do not work in situations where they encounter
14   protesters?
15              MS. HEDGES:  Same objection.
16              THE WITNESS:  I typically do not.
17   BY MS. THOMPSON:
18        Q.    That's been true in your career, sir; is that
19   right?
20        A.    Correct.
21        Q.    Customs and Border Protection officers have
22   been assigned to Operation Midway Blitz, correct?
23              MS. HEDGES:  Object to foundation.  Lack of
24        foundation.  You can answer.
25              THE WITNESS:  Yes.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   BY MS. THOMPSON:

 2        Q.   And the Customs and Border Protection officers

 3   that have been working as part of Operation Midway Blitz

 4   are encountering situations that are different from what

 5   they typically encounter in their work?

 6             MS. HEDGES:  Object to form and foundation.

 7        You can answer.

 8             THE WITNESS:  Yes.

 9   BY MS. THOMPSON:

10        Q.   And that's true for you, too, sir?

11        A.   Yes.

12        Q.   You are the incident commander for Operation

13   Midway Blitz; is that correct?

14             MS. HEDGES:  Object to foundation.  You can

15        answer.

16             THE WITNESS:  Yes.

17   BY MS. THOMPSON:

18        Q.   As part of your responsibilities as incident

19   commander, you have operational oversight, right?

20             MS. HEDGES:  Object to form and foundation.

21             THE WITNESS:  Yes.

22   BY MS. THOMPSON:

23        Q.   Can you tell me what it means that you have

24   operational oversight for Operation Midway Blitz?

25             MS. HEDGES:  Object to form.
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1          THE WITNESS:  So what that means is there's

2    different levels of an operation, how it's divided.

3    You have a strategic level, an operational level,

4    and a tactical level.  My role as an incident

5    commander is to ensure operational oversight at

6    the operational level, ensure that the tactical

7    objectives match the overall strategic objective.

8  BY MS. THOMPSON:

9    Q.  So am I correct that you're not responsible

10  for the strategy?

11        MS. HEDGES:  Object to form.

12        THE WITNESS:  That is correct.

13  BY MS. THOMPSON:

14    Q.  You're responsible for carrying out the

15  operation?

16        MS. HEDGES:  Object to form.

17        THE WITNESS:  Correct.

18  BY MS. THOMPSON:

19    Q.  You are responsible for all U.S. Border Patrol

20  assets and operations in the Chicago area as part of

21  Operation Midway Blitz?

22        MS. HEDGES:  Object to form.

23        THE WITNESS:  Yes.

24  BY MS. THOMPSON:

25    Q.  Are you responsible for all CBP personnel that

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

16

```
1    are assigned to Operation Midway Blitz?
2         A.   Yes, operationally, but there are different
3    elements remain -- maintain tactical control over those
4    specific agencies.
5         Q.   Can you explain what you mean by that?
6         A.   So I oversee the entire operation, so I have
7    operational oversight over Operation Midway Blitz.
8    However, we do have elements within CBP that support
9    this operation.  So those specific elements have their
10   own specific chain of command.  And so those tactical
11   decisions are reserved for that leadership.
12        Q.   You are responsible for making sure that CBP
13   personnel that are assigned to Operation Midway Blitz
14   have the necessary training to operate as part of that
15   operation, correct?
16             MS. HEDGES:  Object to form.
17             THE WITNESS:  Yes.
18   BY MS. THOMPSON:
19        Q.   You also oversee logistics; is that right?
20             MS. HEDGES:  Same objection.
21             THE WITNESS:  Yes.
22   BY MS. THOMPSON:
23        Q.   Can you tell me what that means?
24        A.   Sure.  So part of our organizational structure
25   mirrors a loose incident command system where I have
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    various section chiefs that are responsible for -- for
 2    specific responsibilities.  In one case, logistics
 3    encompasses ensuring that I -- that the folks underneath
 4    my command have the necessary supplies and equipment to
 5    conduct their operations.
 6         Q.   Is there a section chief underneath you that
 7    works on logistics as part of this operation?
 8         A.   Yes.
 9         Q.   Your responsibilities also include overseeing
10    use of force events; is that right?
11              MS. HEDGES:  Object to form.
12              THE WITNESS:  Yes.
13    BY MS. THOMPSON:
14         Q.   And can you tell me what that means?
15         A.   Much like our logistics is, we have a use of
16    force branch that has -- that oversees -- ensures that
17    policies and procedures are followed per our Use of
18    Force Policy to ensure that any -- any use of force is
19    recorded in our use of force system and ensure that,
20    more primarily, that everything falls within our CBP Use
21    of Force Policy.
22         Q.   Does your oversight over use of force events
23    for Operation Midway Blitz include responsibility for
24    initiating appropriate investigations into use of force?
25              MS. HEDGES:  Object to form and foundation.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1       THE WITNESS:  The answer is no.

2   BY MS. THOMPSON:

3       Q.    **Whose responsibility, if anyone's, is that for**

4   **Operation Midway Blitz?**

5           MS. HEDGES:  Object to form and foundation.

6           THE WITNESS:  So part of Operation Midway

7       Blitz, kind of, like I mentioned, we have

8       supporting agencies.  In this operation we have the

9       Office of Professional Responsibility, also

10      commonly known in most police departments as

11      internal affairs.  So internal affairs, in this

12      case Office of Professional Responsibility, OPR, is

13      attached to this mission and they are the ones that

14      are responsible for investigating any reports of

15      misconduct.  U.S. Border Patrol does not have an

16      investigative authority to investigate our own.

17  BY MS. THOMPSON:

18      Q.    **As part of your operational oversight -- let**

19  **me start that question again.  Does your oversight over**

20  **CBP personnel for Operation Midway Blitz include any**

21  **responsibility for authorizing uses of force in advance?**

22          MS. HEDGES:  I object to the form of the

23      question.

24          THE WITNESS:  Can you repeat the question?

25  BY MS. THOMPSON:



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q.   Sure.  Let me ask that question in a different

2  way.  Do your responsibilities with Operation Midway

3  Blitz include any responsibility for authorizing uses of

4  force?

5         MS. HEDGES:  Same objection.

6         THE WITNESS:  No, that is that is delegated

7     down to the agent's or officer's immediate

8     supervisor.

9  BY MS. THOMPSON:

10      Q.   During Operation Midway Blitz, have immediate

11  supervisors gone up the chain of command to seek

12  authorization for uses of force?

13         MS. HEDGES:  Object to the form of the

14     question and foundation.

15         THE WITNESS:  Not that I recall.

16  BY MS. THOMPSON:

17      Q.   You talked about internal affairs having

18  responsibility for investigations.  Does your oversight

19  authority for Operation Midway Blitz include any

20  responsibility for discipline if there is some

21  determination by internal affairs that a use of force

22  was improper?

23         MS. HEDGES:  Object to form and

24     characterization of his testimony.  You can answer.

25         THE WITNESS:  No.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   BY MS. THOMPSON:

2       Q.   Is that responsibility for discipline also

3   with internal affairs?

4            MS. HEDGES:  Object to form and foundation.

5            THE WITNESS:  It doesn't fall on the --

6       on -- on the Office of Professional Responsibility.

7       No, it does not.

8   BY MS. THOMPSON:

9       Q.   Where does that responsibility fall for

10  this --

11           MS. HEDGES:  Object --

12           MS. THOMPSON:  -- for Operation Midway Blitz?

13           MS. HEDGES:  Objection to form and foundation.

14           THE WITNESS:  If there is any -- if there is

15      any misconduct that is to be found, that falls back

16      on the respective agency or home office for

17      that -- for that particular employee or employees.

18  BY MS. THOMPSON:

19      Q.   For Customs and Border Protection officers

20  that are assigned to Operation Midway Blitz, does that

21  home office refer to the sector for Customs and Border

22  Protection to which those officers are assigned?

23           MS. HEDGES:  Object to the form.

24           THE WITNESS:  Yes.  It would be the U.S.

25           virtual sectors.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

CONFIDENTIAL - Pervez H. Chowdhury, M.D.

```
 1   BY MS. THOMPSON:
 2        Q.   As part of your responsibilities with
 3   Operation Midway Blitz, do you oversee intelligence?
 4             MS. HEDGES:  Object to form.
 5             THE WITNESS:  Yes, through my intelligence
 6        section chief.
 7   BY MS. THOMPSON:
 8        Q.   All right.  And I'm not asking you questions
 9   about any specific intelligence that you've received,
10   but just generally, what does it mean that you
11   have -- that you oversee intelligence?
12             MS. HEDGES:  Object to form.
13             THE WITNESS:  In general terms, I have
14        oversight of over any intelligence briefings,
15        or threats, or warnings that are brought to our
16        attention.
17   BY MS. THOMPSON:
18        Q.   Do you have any other professional
19   responsibilities as part of Operation Midway Blitz that
20   we haven't discussed so far in this deposition?
21        A.   Other than the safety and security of my men
22   and women under my command.
23        Q.   Is the safety and security of the men and
24   women under your command always your responsibility in
25   any of your duties with Customs and Border Protection?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      A.    Yes.

2      Q.    **How do your responsibilities over Operation**

3 **Midway Blitz differ from Gregory Bovino's?**

4          MS. HEDGES:  Object to form and foundation.

5          THE WITNESS:  So like I mentioned, Chief

6         Bovino, he has strategic oversight of the -- over

7         the operation.  I have operational oversight of the

8         operation.

9 BY MS. THOMPSON:

10     Q.    **How are those two things different?**

11     A.    Best way I can describe it right is you --

12 you do have strategic objectives, set the end state,

13 paint -- paint the -- kind of, basically, dictate what

14 the vision is, deliver what the end state is when you're

15 looking at strategy.  Strategy development is -- is much

16 broader and broader objectives.  Operational piece is

17 actually the execution of those strategic objectives.

18     Q.    **Am I correct, then, that Chief Bovino sets the**

19 **strategy for how objectives are going to be accomplished**

20 **as part of Operation Midway Blitz?**

21         MS. HEDGES:  I'm going to object to form and

22        foundation.  And to the extent that your answer

23        might include anything that's law enforcement

24        privileged or classified, I would instruct you not

25        to answer to that extent.  But if you can answer

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    otherwise, you can answer.

2           THE WITNESS:  I'm not -- I'm not aware

3    if -- if it's Chief Bovino that sets those

4    strategic objectives.  I'm not privy to those

5    conversations.

6  BY MS. THOMPSON:

7      Q.    You are not the one setting strategy?

8           MS. HEDGES:  Object to form.

9           THE WITNESS:  I am not.

10 BY MS. THOMPSON:

11     Q.    With your operational authority -- well, let

12 me ask you a different question.  Who supervises you in

13 Operation Midway Blitz?

14          MS. HEDGES:  Object to form and foundation.

15          THE WITNESS:  My immediate supervisor is Chief

16    Bovino.

17 BY MS. THOMPSON:

18     Q.    And who is in the chain of command for

19 Operation Midway Blitz above -- directly above Chief

20 Bovino?

21          MS. HEDGES:  Same objections.

22          THE WITNESS:  Not sure.  I know Chief Michael

23    Banks from the United States Board Patrol is Chief

24    Bovino's reining supervisor.

25 BY MS. THOMPSON:

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.    Who is above that?

2          MS. HEDGES:  Object to form and foundation.

3          THE WITNESS:  It's Commissioner Rodney Scott.

4   BY MS. THOMPSON:

5    Q.    And who is above Commissioner Scott?

6          MS. HEDGES:  Same objections.

7          THE WITNESS:  I believe Commissioner Scott

8          reports directly to Secretary of Homeland Security,

9          Kristi Noem.

10  BY MS. THOMPSON:

11   Q.    In your role with Operation Midway Blitz, have

12  you received any orders or guidance from Secretary Noem,

13  you yourself?

14         MS. HEDGES:  Object to the form.  And, again,

15         if there's anything in an answer that would reveal

16         either executive privilege or law enforcement

17         privilege or classified information, I would

18         instruct you not to answer, but you can answer

19         other than that.

20         THE WITNESS:  And the answer is no.

21  BY MS. THOMPSON:

22   Q.    And is there information in response to that

23  question that you've declined to give me following the

24  advice of your counsel about -- to follow -- to withhold

25  some information on the basis of executive privilege or

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

law enforcement privilege?

        MS. HEDGES:  Object to form.

        THE WITNESS:  No.

BY MS. THOMPSON:

    Q.   In your role with Operation Midway Blitz, have you received any orders or guidance from anyone in the White House?

        MS. HEDGES:  Object to form and foundation. And I would instruct you not to answer with the same qualifications, which is if your answer would reveal anything that's executive privilege, law enforcement privilege, or classified information, exclude that from your answer.  But otherwise, you can answer.

        THE WITNESS:  The answer is no.

BY MS. THOMPSON:

    Q.   Is there any information that you've excluded from your answer following the advice of your Counsel to exclude information that's covered under the privileges that she identified?

    A.   The answer is no.

    Q.   In your role with Operation Midway Blitz, have you been physically present at the Immigration and Customs Enforcement facility in Broadview, Illinois?

        MS. HEDGES:  Object to form.



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                THE WITNESS:  Yes.
 2   BY MS. THOMPSON:
 3        Q.    When have you been at the Broadview ICE
 4   facility as part of Operation Midway Blitz?
 5        A.    I think I was there as recent as this past
 6   Tuesday.  I can't recall the exact date.  I think I've
 7   been there a handful of times.  I can't -- I can't
 8   recall the exact dates.  A couple dates in September.
 9   Maybe a couple times in October at most.
10        Q.    Do you have any records that reflect
11   specifically what dates you've been at Broadview during
12   Operation Midway Blitz?
13                MS. HEDGES:  Object to the form.
14                THE WITNESS:  Yes.
15   BY MS. THOMPSON:
16        Q.    What records are those?
17                MS. HEDGES:  Object to the form.
18                THE WITNESS:  I believe --
19                MS. HEDGES:  And let me just say again, to the
20         extent anything that you would disclose would be
21         involving either law enforcement privileged
22         information or classified information, don't
23         answer.  But otherwise, you can answer.
24                THE WITNESS:  No, I -- I touch on the -- I
25         touch on one of the events that I was there in my
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

Kentuckiana
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    declaration.  And I can't recall if it was

2    September 25th or 27th.

3    BY MS. THOMPSON:

4        Q.    Other than your declaration, are there any

5    records that reflect when exactly you've been at

6    Broadview as part of Operation Midway Blitz?

7            MS. HEDGES:  Same objection.  Same

8        instruction.

9            THE WITNESS:  No.

10   BY MS. THOMPSON:

11       Q.    And when I say -- can we agree for this

12   deposition that when I say "Broadview," I'm talking

13   about the ICE facility in Broadview?

14       A.    Yes.

15       Q.    You understood that's what I meant?

16       A.    Yes, ma'am.

17       Q.    Okay.  Are there any records that you have not

18   identified for me in response to those questions

19   following the advice of your counsel about privileges

20   that she's instructed you to preserve?

21           MS. HEDGES:  Object to form.

22           THE WITNESS:  None that I can think of at the

23       moment.

24   BY MS. THOMPSON:

25       Q.    When you were at Broadview this past Tuesday,

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   how long were you there for?

2         MS. HEDGES:  Object to form.

3         THE WITNESS:  At most, maybe an hour.

4   BY MS. THOMPSON:

5     Q.   The couple dates in September that you were at

6   Broadview, how long were you there for on those dates?

7         MS. HEDGES:  Same objection.

8         THE WITNESS:  I think the -- the time frame

9       that I referenced in my declaration, I think it was

10      September 27th.  If I'm not mistaken, I was there

11      from approximately 8:00 p.m. until 1:00 a.m.

12        MS. HEDGES:  And Counsel, sorry to interrupt,

13      but just if you are going to ask him about his

14      declaration, I would ask that he be allowed to have

15      a copy for reference.  I don't know if that's where

16      you're going.

17        MS. THOMPSON:  Understood.

18  BY MS. THOMPSON:

19    Q.   We'll definitely look at your declaration as

20  part of this deposition.  Do you recall the amount of

21  time you were at Broadview for any other days in

22  September?

23        MS. HEDGES:  Object to foundation.

24        THE WITNESS:  Not the exact time, no.

25  BY MS. THOMPSON:

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  Q.  For any other days you were there in

2  September, were you there during the day?

3        MS. HEDGES:  Same objection.

4        THE WITNESS:  I believe so.

5  BY MS. THOMPSON:

6  Q.  Do you remember what parts of the day?

7        MS. HEDGES:  Same objection.

8        THE WITNESS:  I do not recall, no.

9  BY MS. THOMPSON:

10  Q.  Were you there at night any other dates in

11  September other than the date you already told us about?

12        MS. HEDGES:  Same objection.  Foundation.

13        THE WITNESS:  Not that I can recall.

14  BY MS. THOMPSON:

15  Q.  For any dates that you were at Broadview in

16  October, how long were you there for?

17        MS. HEDGES:  Same objection.

18        THE WITNESS:  I would estimate, again,

19      probably about an hour to two hours.

20  BY MS. THOMPSON:

21  Q.  And for any dates you were at Broadview in

22  October, was that hour or two hours during the day or at

23  night?

24  A.  Both, day and nighttime.

25  Q.  As part of Operation Midway Blitz, have you

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  been present in the field with Customs and Border

2  Protection personnel, undertaking immigration

3  enforcement activities?

4          MS. HEDGES:  Object to form and foundation.

5          THE WITNESS:  Yes.

6  BY MS. THOMPSON:

7      Q.    How many times during Operation Midway Blitz

8  have you been out in the field with Customs and Border

9  Protection personnel?

10     A.    Maybe about a handful of times, four to five.

11     Q.    And where specifically were you in the field

12 those four to five times?

13         MS. HEDGES:  Object to form.

14         THE WITNESS:  Not too familiar with the City

15     of Chicago, but we're out operating in -- I can't

16     recall the exact location.  I'm sorry.

17 BY MS. THOMPSON:

18     Q.    Were these locations all within the City of

19 Chicago?

20         MS. HEDGES:  Object to foundation.

21         THE WITNESS:  In -- in the greater area of

22     Chicago, yes.  Again, I said I'm not familiar with

23     the City of Chicago.

24 BY MS. THOMPSON:

25     Q.    Do you have records that reflect when you've

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   been, meaning specifically what days you have been in

2   the field with Customs and Border Protection personnel

3   as part of Operation Midway Blitz?

4           MS. HEDGES:  Object to form.  Vague as to

5       "records."

6           THE WITNESS:  None that comes to mind.

7   BY MS. THOMPSON:

8       Q.   Are there any reports that document

9   specifically what enforcement activities you've been in

10  the field with Customs and Border Protection personnel

11  for?

12          MS. HEDGES:  Same objection and foundation.

13          THE WITNESS:  I don't believe so.

14  BY MS. THOMPSON:

15      Q.   Can you tell me -- well, let me ask you this:

16  For the four to five times that you've been in the field

17  with Customs and Border Protection officers as part of

18  Operation Midway Blitz, were any of those days in

19  September?

20      A.   I believe at least in one occasion, yes.

21      Q.   And so the rest were in October?

22          MS. HEDGES:  Object to form.

23          THE WITNESS:  I -- I can't recall, ma'am.

24      My -- my days get blurred, I can't give you a

25      definitive if -- if they were all in October.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        I -- I just can't recall.
 2   BY MS. THOMPSON:
 3        Q.    When was the last time that you were in the
 4   field with Customs and Border Protection personnel as
 5   part of this operation?
 6             MS. HEDGES:  Same objection.
 7             THE WITNESS:  This Tuesday.
 8   BY MS. THOMPSON:
 9        Q.    How long were you out in the field with
10   Customs and Border Protection personnel this past
11   Tuesday?
12             MS. HEDGES:  Object to form.  Asked and
13        answered.
14             THE WITNESS:  Approximately eight hours.
15   BY MS. THOMPSON:
16        Q.    I know you said you're not too familiar with
17   the city, but do you know -- do you have any description
18   of where exactly you were with them for those eight
19   hours?
20        A.    I believe we were -- I think the one city that
21   comes to mind is the City of Cicero.  And I -- I can't
22   recall any -- there's no specific landmarks that come to
23   mind.
24        Q.    Were you in Cicero the entire time, or did you
25   go somewhere else?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1              MS. HEDGES:  Object to form and foundation.
 2              THE WITNESS:  No, ma'am.  We -- we traveled
 3         quite a bit, but I cannot recall where other
 4         locations we -- we were -- we were out that day.
 5    BY MS. THOMPSON:
 6         Q.   For -- in your responsibilities for Operation
 7    Midway Blitz, do you have any supervisory
 8    responsibilities for any of the personnel that are
 9    assigned to Operation Midway Blitz who are not part of
10    Customs and Border Protection?
11              MS. HEDGES:  Objection.  Foundation.
12              THE WITNESS:  Can you repeat the question?
13    BY MS. THOMPSON:
14         Q.   Sure.  In your role with Operation Midway
15    Blitz, do you have any supervisory responsibility for
16    any of the personnel assigned to Operation Midway Blitz
17    who are not part of Customs and Border Protection?
18              MS. HEDGES:  Same objection.
19              THE WITNESS:  None that I can think of.
20    BY MS. THOMPSON:
21         Q.   Is it true that your responsibilities for
22    Operation Midway Blitz are solely over officers with
23    Customs and Border Protection?
24              MS. HEDGES:  Object to form.
25              THE WITNESS:  Yes.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   BY MS. THOMPSON:

 2        Q.   I want to talk to you a little bit about

 3   training now.  What are your responsibilities with

 4   respect to the training of Customs and Border Protection

 5   personnel that are assigned to Operation Midway Blitz?

 6             MS. HEDGES:  Object to form and foundation.

 7        You can answer.

 8             THE WITNESS:  The first -- the first piece

 9        that I'm responsible for, and I'm sure that

10        we -- we provide this training to anybody that

11        comes on mission, is First and Fourth Amendment

12        legal refreshers, that is provided by our Office of

13        Chief Counsel.

14             MS. HEDGES:  And I'm just sorry.  I need to

15        pause you.

16             THE WITNESS:  Sorry.

17             MS. HEDGES:  Not to interrupt, but to the

18        extent your answer would reveal any communications

19        with Counsel, the -- that's attorney-client

20        privilege, and I'm instructing you not to include

21        communications with them.  If you exclude that, you

22        can answer.

23             THE WITNESS:  Understood.

24   BY MS. THOMPSON:

25        Q.   Are you -- I think you said that the first
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    thing that you're responsible for is training about the

2    First and Fourth -- First and Fourth Amendment; is that

3    right?

4        A.    Correct.

5        Q.    What other training responsibilities do you

6    have for personnel that are assigned to Operation Midway

7    Blitz?

8            MS. HEDGES:  Object to form.

9            THE WITNESS:  The other piece of training that

10       we conduct is use of force refresher training.

11   BY MS. THOMPSON:

12       Q.    All right.  Any other training besides First

13   and Force -- First and Fourth Amendment and use of force

14   refresher?

15       A.    I believe we've also done report writing

16   refreshers.  And the other training that we did, which

17   also falls within use of force, is mobile field force

18   refreshers.

19       Q.    Any other training that's in your

20   responsibilities as part of Operation Midway Blitz?

21           MS. HEDGES:  Object to form.

22           THE WITNESS:  None that come to mind at the

23       moment.

24   BY MS. THOMPSON:

25       Q.    The training that you just described, the

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

```
 1    First and Fourth Amendment, use of force refresher,
 2    report writing refresher, mobile field refresher, is
 3    that training that CBP personnel assigned to Operation
 4    Midway Blitz have received since Operation Midway Blitz
 5    began?
 6              MS. HEDGES:  Object to form.
 7              THE WITNESS:  Yes.
 8    BY MS. THOMPSON:
 9        Q.    When was the First and Fourth Amendment
10    training given to CBP personnel assigned to Operation
11    Midway Blitz?
12              MS. HEDGES:  Object to form.
13              THE WITNESS:  So that has been a reoccurring
14         training, but the first time it was delivered was -
15         - I can't recall.  It was that first week in
16         September when we got here.  It was the week, I'm
17         assuming, of September 8th.  Whatever that Monday
18         was, that week is when we conducted our first
19         refresher training.  I can't recall the exact date
20         that -- that actually you all conducted.
21    BY MS. THOMPSON:
22        Q.    Did that refresher training cover all of the
23    topics that you just described?  The constitutional law,
24    use of force, report writing, and the mobile field
25    refresher?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1              MS. HEDGES:  Object to form.

 2              THE WITNESS:  Those are -- those are separate

 3         instructions or refreshers.

 4    BY MS. THOMPSON:

 5         Q.    So the training you're describing that

 6    happened in the first week, was that just about the

 7    First and Fourth Amendment?

 8         A.    No.  We conducted those various trainings -- I

 9    -- I misunderstood your question.  I thought you were

10    asking if that one training encompassed all that.

11    What I was trying to explain is, we had a series of

12    trainings throughout that week, to include First and

13    Fourth Amendment training.

14         Q.    Did that -- did those trainings over that

15    first week include the other topics that you listed? The

16    use of force, report writing, and the mobile field

17    refresher?

18              MS. HEDGES:  Object to form.

19              THE WITNESS:  I don't recall the report

20         writing was in that first week, but the use of

21         force, mobile field force, legal refreshers were

22         included in that first week.

23    BY MS. THOMPSON:

24         Q.    When was the report writing refresher?

25         A.    I can't recall exactly when we incorporated
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   that into our training cycle.
 2       Q.   Was that in September?
 3            MS. HEDGES:  Object to form.  Asked and
 4       answered.
 5            THE WITNESS:  I can't recall.
 6   BY MS. THOMPSON:
 7       Q.   And when you say incorporated into your
 8   training cycle, what do you mean?
 9       A.   So every time we have new recruits, or
10   not -- sorry, not new recruits.  Anytime we have new
11   agents coming onto mission, they get -- we set a -- we
12   set a date apart for them to get various in-briefings,
13   to include a series of trainings.  So that is when we
14   include that part of the training portion.
15       Q.   Have any of the training that officers have
16   had since Operation Midway Blitz started included
17   training on crowd control?
18            MS. HEDGES:  Object to form and foundation.
19            THE WITNESS:  Yes.
20   BY MS. THOMPSON:
21       Q.   What training, since Operation Midway Blitz
22   began, have CBP personnel assigned to Operation Midway
23   Blitz had on crowd control?
24            MS. HEDGES:  Same objections.
25            THE WITNESS:  That was covered under our
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1           mobile field force training.

2    BY MS. THOMPSON:

3           Q.    How long is the mobile field force training

4    refresher that CBP personnel have had since Operation

5    Midway Blitz started?

6           A.    If not mistaken, it was a two-day -- two-day

7    training course, refresher training course that we

8    conducted.

9           Q.    What was covered over those two days?

10          MS. HEDGES:  And just because I don't know

11          exactly what you're going to say, to the extent

12          anything might touch on law enforcement privileged

13          information, or classified information, exclude

14          that from your answer, but you can answer.

15          THE WITNESS:  Okay.  So I did not attend that

16          training myself, but from my -- from what I'm aware

17          of that training, you cover -- it also includes,

18          there's a legal refresher portion in that training.

19          There is tactics in that training, and then it

20          covers deployments of less lethal munition in that

21          training.

22   BY MS. THOMPSON:

23          Q.    Any other topics that were covered over those

24   two days?

25          A.    I -- I can't.  I -- again, I -- I did not

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**KENTUCKIANA**
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   attend that training, so I can't -- I'd be speculating

2   as to what other topics were covered, but those are the

3   basis of the -- of the training.

4       **Q.   Did you have any role in deciding what topics**

5   **would be covered at that training?**

6           MS. HEDGES:  Object to form.

7           THE WITNESS:  No, ma'am.  That is -- that

8       mobile field force is -- is a prescribed set of

9       training by CBP.

10  BY MS. THOMPSON:

11      **Q.   Mobile field force is a separate training that**

12  **Customs and Border Protection officers take as part of**

13  **their work assigned in other areas in the United States,**

14  **correct?**

15          MS. HEDGES:  Object to form and foundation.

16          THE WITNESS:  Can you clarify?

17  BY MS. THOMPSON:

18      **Q.   Sure.  I mean, even for CBP officers that are**

19  **not assigned to Operation Midway Blitz, mobile field**

20  **force training is a training that CBP officers otherwise**

21  **take as part of their work, right?**

22          MS. HEDGES:  Same objections.

23          THE WITNESS:  I -- I don't think I'm

24      quite -- quite understanding the point that you're

25      trying to get to.  I'm sorry.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. THOMPSON:

Q.   Sure.  I mean, separate and apart from
Operation Midway Blitz --

A.   Okay.

Q.   -- a training course that CBP officers can
take is this mobile field training, correct?

        MS. HEDGES:  Same objections.

        THE WITNESS:  Yes.

BY MS. THOMPSON:

Q.   And that's actually divided into two courses;
is that right?  There's Mobile Field Force and Mobile
Field Force II?

        MS. HEDGES:  Object to form and foundation.

        THE WITNESS:  Yes.

BY MS. THOMPSON:

Q.   Did the training that you described a minute
ago, that happened as part of Operation Midway Blitz,
did that cover the topics in both of those courses?

        MS. HEDGES:  Same objection.  Form.
    Foundation.

        THE WITNESS:  My understanding is it did.
    Again, I was not present in that training.

BY MS. THOMPSON:

Q.   Did officers attending that training get the
mobile field force certification --

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1           MS. HEDGES:  Objection to form.

2           MS. THOMPSON:  that CBP offers as part of that

3      course?

4           MS. HEDGES:  Sorry, Counsel.  He did say

5      several times he wasn't there, and I think he's

6      answered to the best of his ability with the

7      qualification that he wasn't there.  And so I'm

8      not sure that new questions be -- are being asked

9      on this.

10 BY MS. THOMPSON:

11      Q.   **You can answer the question.**

12      A.   Can you repeat that question again, please?

13           MS. THOMPSON:  Can you read it back, please?

14               (The requested question was read back.)

15           THE WITNESS:  I'm not aware of any

16      certifications being issued, how the completion of

17      that training go.

18 BY MS. THOMPSON:

19      Q.   **Since Operation Midway Blitz started, have CBP**

20 **officers assigned to Operation Midway Blitz gotten any**

21 **other training on less lethal weapons other than**

22 **whatever they got during that two-day refresher course?**

23           MS. HEDGES:  Object to form and foundation,

24      including to the extent that he said he wasn't at

25      the training.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    THE WITNESS:  Not that I -- not that I can

2    think of at the moment, no.

3  BY MS. THOMPSON:

4    Q.   And as your counsel just said, am I right that

5  you don't know exactly what was covered at that

6  training?

7    MS. HEDGES:  Object to form.

8    THE WITNESS:  I wasn't present at that

9    training, so I can't -- I can't speak to exactly

10    what was delivered or not delivered.

11  BY MS. THOMPSON:

12    Q.   Have you yourself taken the Mobile Field Force

13  I or Mobile Field Force II courses with CBP?

14    A.   I have taken Mobile Field Force I

15  certification, not II.

16    Q.   As part of CBP policy for less lethal

17  musician -- less lethal munitions, excuse me, there are

18  different courses offered to certify CBP personnel on

19  different types of munitions; is that right?

20    MS. HEDGES:  Object to form and foundation.

21    THE WITNESS:  I'm not a -- that's not my

22    expertise, ma'am, but I'm sorry.  Can you repeat

23    the question one more time?  I just want to make

24    sure I answer it correctly.

25  BY MS. THOMPSON:

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

 1      Q.    Sure.  And let me break this down a little

 2  bit.  There are different kinds of less lethal munitions

 3  that CBP personnel can use; is that right?

 4           MS. HEDGES:  Object to form and foundation.

 5           THE WITNESS:  Correct.

 6  BY MS. THOMPSON:

 7      Q.    And there are different certification courses

 8  for different less lethal munitions that CBP offers; is

 9  that right?

10           MS. HEDGES:  Same objections.

11           THE WITNESS:  I don't know if there's

12       different courses for the different types of

13       munitions, no.

14  BY MS. THOMPSON:

15      Q.    People have to be certified on a specific type

16  of less lethal munition in order to use it as part of

17  their work with CBP; is that right?

18           MS. HEDGES:  Objection to form.  Objection to

19       foundation.

20           THE WITNESS:  Correct.

21  BY MS. THOMPSON:

22      Q.    Like, I can be -- a CBP officer can be

23  certified on a PepperBall launcher, but not certified to

24  use CS gas canisters or something like that, correct?

25           MS. HEDGES:  Same objections.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1             THE WITNESS:  Correct.
 2   BY MS. THOMPSON:
 3        Q.   Are you yourself certified to use any less
 4   lethal munitions?
 5        A.   Yes.
 6             MS. HEDGES:  Objection to form and foundation.
 7        If you could just --
 8             THE WITNESS:  Sorry.
 9             MS. HEDGES:  -- give me a chance to -- thank
10        you.
11   BY MS. THOMPSON:
12        Q.   What less lethal munitions are you yourself
13   certified to use as part of CBP?
14             MS. HEDGES:  Same objections.
15             THE WITNESS:  So I am certified to use our OC
16        spray, which is also known as pepper spray.  I'm
17        also certified in the use of our PepperBall
18        launching system, PR -- PLS.
19   BY MS. THOMPSON:
20        Q.   Anything else?
21        A.   Not that I can think of at the moment, no.
22             MS. THOMPSON:  I think this is a good time for
23        a brief break.  Can you --
24             MS. HEDGES:  Okay.  Are you sure?  I think
25        we've been going for 42 minutes.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1          MS. THOMPSON:  I'm aware.

2          MS. HEDGES:  Okay.  We can take a break.

3          THE VIDEOGRAPHER:  All right.  With that,

4     we'll go off the record, and the time is 10:45.

5               (A recess was taken.)

6          THE VIDEOGRAPHER:  We're back on the record.

7     The time is 10:59.

8  BY MS. THOMPSON:

9     Q.   Sir, I had one question to follow up on

10 something I asked you earlier, and then I want to move

11 on to something else.  We talked at the beginning about

12 documents that you reviewed to prepare for your

13 deposition.  Did you watch any videos or listen to any

14 audio to prepare for this deposition?

15         MS. HEDGES:  Object to form.  Compound.

16         THE WITNESS:  Not that I can remember.

17         MS. THOMPSON:  I want to show you some

18    documents that we're going to mark as exhibits

19    right now.  So this will be one.  This will be two.

20              (Exhibit 1 was marked for

21              identification.)

22              (Exhibit 2 was marked for

23              identification.)

24         THE REPORTER:  Okay.

25         MS. THOMPSON:  Thank you.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1              THE REPORTER:  Do you have another copy?
2              MS. THOMPSON:  Yeah.  There's some here for
3       you folks.
4              THE REPORTER:  Thank you.  Do you want me to
5       put this?  Yeah.  Do you or -- have you been
6       marking them or do you want me to do it?
7              MS. THOMPSON:  I can do it.  Sorry.  I didn't
8       know who did it.
9              THE REPORTER:  Okay.  So this is one?
10             MS. THOMPSON:  Yeah.  Are you ready?  Are you
11      good?
12             THE REPORTER:  Yeah.  Yeah.
13  BY MS. THOMPSON:
14      Q.   Okay.  Sir, one of the -- one of the topics
15  about which Customs and Border Protection has policies
16  is the topic of use of force; is that right?
17             MS. HEDGES:  Object to form.
18             THE WITNESS:  Yes.
19  BY MS. THOMPSON:
20      Q.   Understanding in what circumstances officers
21  can use what types of force is an important topic for
22  CBP personnel assigned to operation Midway Blitz to
23  understand; is that right?
24             MS. HEDGES:  Same objection.
25             THE WITNESS:  Yes.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. THOMPSON:

    Q.   I'm going to show you what has been marked as Exhibit 1 for this deposition.  This is a document that is Bates stamped CBP 482 through CBP 545.  And it looks like it is 63 pages.  There are 63 numeric pages and then a couple of Roman Numeral pages at the beginning. I'm going to show you Exhibit 1, sir.  And my question for you -- and if you need to look at this document to answer this question, you can, is, is Exhibit 1 a true and accurate copy of Customs and Border Protections Use of Force Policy as it exists today?

       MS. HEDGES:  Object to form.  And you can answer to the extent you're able to ascertain based on your review today.

       THE WITNESS:  Sure.  I'm sorry.  And the question was?

BY MS. THOMPSON:

    Q.   Is Exhibit 1 a true and accurate copy of Custom and Border Protections Use of Force Policy that is in effect today?

       MS. HEDGES:  Object to form.

       THE WITNESS:  It appears to be the same.

BY MS. THOMPSON:

    Q.   Are you familiar with this written policy, sir?



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      A.    I have a working knowledge of this policy.

2      Q.    **Are you familiar with it?**

3            MS. HEDGES:  Objection to form.  Asked and

4      answered.  You can answer.

5            THE WITNESS:  Again, I -- I do have a working

6      knowledge of this policy.

7   BY MS. THOMPSON:

8      Q.    **Is Exhibit 1 the Use of Force Policy that**

9   **applies for Customs and Border Protection personnel that**

10  **are working as part of Operation Midway Blitz?**

11           MS. HEDGES:  Object to form.

12           THE WITNESS:  Yes.

13  BY MS. THOMPSON:

14     Q.    **I'm also going to show you what's been marked**

15  **as Exhibit 2.  This is a document that is Bates stamped**

16  **CBP 469 through CBP 481.  And this document is 13 pages.**

17  **I am going to ask you -- and if you need to look at the**

18  **document to answer this question, please do, whether you**

19  **have seen Exhibit 2 before today?**

20     A.    And the question was, again, ma'am?

21     Q.    **Sure.  My question is whether you've seen**

22  **Exhibit 2 before today?**

23     A.    I believe I have.

24     Q.    **Does Exhibit 2 contain additional aspects of**

25  **the Department of Homeland Security's Use of Force**

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    policies that govern Customs and Border Protection?

 2              MS. HEDGES:  Object to form and foundation.

 3              THE WITNESS:  Can you please repeat that?

 4    BY MS. THOMPSON:

 5         Q.   Sure.  Does Exhibit 2 contain additional

 6    Department of Homeland Security policies on the use of

 7    force that apply to Customs and Border Protection

 8    personnel?

 9              MS. HEDGES:  Same objections.

10              THE WITNESS:  I can't recall if it -- if it

11         contains additional, no.

12    BY MS. THOMPSON:

13         Q.   Is it your understanding that Exhibit 2

14    contains information that's already covered by Exhibit

15    1?

16              MS. HEDGES:  Objection to form.  Vague.

17              THE WITNESS:  Can you repeat that question

18         again?

19    BY MS. THOMPSON:

20         Q.   Well, let me ask you a -- maybe a better

21    question.  Is there anything about Exhibit 2 that

22    changes the policies on use of force that are outlined

23    in Exhibit 1?

24              MS. HEDGES:  Objection to form.

25              THE WITNESS:  Not that I'm aware of.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   BY MS. THOMPSON:
 2        Q.   Are there -- other than Exhibit 1 and Exhibit
 3   2, given the testimony you've given about it, are there
 4   any other written documents that provide any other
 5   aspects of the Customs and Border Protection Use of
 6   Force Policy that applies to Customs and Border
 7   Protection officers working as part of Operation Midway
 8   Blitz?
 9             MS. HEDGES:  Object to form and foundation.
10             THE WITNESS:  Not that I can recall.
11   BY MS. THOMPSON:
12        Q.   So am I right that Exhibit 1 is the policy in
13   effect that governs Customs and Border Protection Use of
14   Force for Operation Midway Blitz?
15             MS. HEDGES:  Same objection and asked and
16        answered.
17             THE WITNESS:  Yes.
18   BY MS. THOMPSON:
19        Q.   Are there any other documents or oral
20   instructions to Customs and Border Protection officers
21   that provide any other direction about use of force
22   policy for Operation Midway Blitz?
23             MS. HEDGES:  Objection to form.  Compound,
24        vague.  You can answer.
25             THE WITNESS:  Not that I recall.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

MONICA SIMON, taken on 06/06/2025

BY MS. THOMPSON:

    Q.   Okay.  Thank you.  I'm done with those exhibits, so I'll take those back from you.  Thank you. We talked earlier about a declaration that you signed yesterday, and I want to ask you some questions about that.

          MS. THOMPSON:  Do you guys need copies?

          MS. HEDGES:  Yes, please.

          THE REPORTER:  Another, yeah.

          MS. HEDGES:  Thank you very much.

          THE REPORTER:  Exhibit 3?

BY MS. THOMPSON:

    Q.   Thank you.  Sir, I've shown you a copy of what's been marked as Exhibit 3.  This document does not have page numbers and it does not have Bates numbers, but is Exhibit 3 a true and accurate copy of a declaration that you have submitted as part of this litigation?

          (Exhibit 3 was marked for

          identification.)

    A.   Yes, ma'am.  It appears to be accurate.

BY MS. THOMPSON:

    Q.   What was your purpose in preparing this declaration?

          MS. HEDGES:  Object to the form.  And given



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        that this is a document produced, prepared during
 2        the litigation, I would just instruct you not to
 3        say anything about any communications you've had
 4        with Counsel in this case.  But excluding any
 5        communications with Counsel, any legally privileged
 6        information, you can answer the question.
 7             THE WITNESS:  It's my belief its purpose for
 8        this declaration is to prepare for a upcoming
 9        preliminary injunction.
10   BY MS. THOMPSON:
11        Q.   Was your purpose in preparing this declaration
12   to give the Court information that -- well, let me ask
13   this question a better way.  Was your purpose in
14   preparing this declaration to give the Court information
15   that you thought was relevant to whether the Court
16   should enter a preliminary injunction in this case?
17             MS. HEDGES:  Objection to form.  Asked and
18        answered.  Calls for a legal conclusion.
19             THE WITNESS:  So I believe that, in my
20        opinion, this doc -- declaration provides some
21        color to the situation that my agents are
22        encountering here in the field.
23   BY MS. THOMPSON:
24        Q.   And when you say it "provides some color,"
25   what do you mean?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

     1        A.    It provides some background as to some of the

     2   experiences that my men and women are encountering here

     3   in Chicago in its relation to the temporary restraining

     4   order.

     5        Q.    **You also completed a declaration that was**

     6   **submitted in the litigation involving the State of**

     7   **Illinois v. Donald Trump; is that right?**

     8             MS. HEDGES:  Objection to form and foundation.

     9        And I would just ask if you're going to ask him

    10        questions about that document, that he be provided

    11        a copy, but you can answer the question.

    12             THE WITNESS:  Ma'am, I -- I've provided

    13        several declarations since I've been here, so I

    14        can't recall exactly the title for the declaration

    15        that I provided, but this is not the only

    16        declaration I provided since I've been here.

    17   BY MS. THOMPSON:

    18        Q.    **And that was going to be my next question,**

    19   **which is: Other than Exhibit 3 in front of you, have you**

    20   **completed any other declarations describing any other**

    21   **aspect of Operation Midway Blitz?**

    22             MS. HEDGES:  Object to form.

    23             THE WITNESS:  I believe I provided at least

    24        one additional declaration.

    25   BY MS. THOMPSON:

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.    You said you'd completed several while you
2    were here.  Has it been more than one other?
3              MS. HEDGES:  Object to form.
4              THE WITNESS:  At least one additional -- one
5         additional declaration, at least.  I can't recall
6         exactly how many I've -- I've provided.
7    BY MS. THOMPSON:
8    Q.    Other than the at least one other declaration
9    that you just testified about, have you completed any
10   other declarations in 2025 about Customs and Border
11   Protection deployments away from the United States
12   border?
13             MS. HEDGES:  Objection to form.
14             THE WITNESS:  Yes.
15   BY MS. THOMPSON:
16   Q.    What other declarations on that topic have you
17   done this year?
18   A.    I can't recall, ma'am.  There's been several
19   declarations I've had to provide this year so --
20   Q.    Did you complete a declaration about
21   operations in Portland, Oregon?
22             MS. HEDGES:  Object to form.  Also, vague.
23             THE WITNESS:  I -- I don't recall ever
24        providing a declaration specifically for Portland,
25        if that was your question.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1    BY MS. THOMPSON:

2         Q.    Did you complete a declaration about

3    operations in Los Angeles?

4              MS. HEDGES:  Object to form.  Vague.

5              MS. HEDGES:  Yes.

6    BY MS. THOMPSON:

7         Q.    Are there any other declarations that you can

8    remember submitting other than one in LA and the two

9    we've talked about with respect to Operation Midway

10   Blitz?

11             MS. HEDGES:  Object to form.  Asked and

12        answered.

13             THE WITNESS:  I -- I don't recall if I've

14        submitted any other declarations for LA or for

15        Operation Midway Blitz.

16   BY MS. THOMPSON:

17        Q.    I have some questions about the declaration

18   that's in front of you.  I'm going to try to keep us

19   moving through this.  But as I said, if there's portions

20   of this you need to read to answer my questions, then

21   just let me know.  I want to start by directing you to

22   Paragraph 13.  Let me, actually, before we get to

23   Paragraph 13, direct you to Paragraph 9.  So let me know

24   when you're there.  In Paragraph 9, you say that, "The

25   statements contained in this declaration are based upon
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  my personal knowledge and information made available to

2  me in the course of my official duties."  What portions

3  of this declaration are based on your personal

4  knowledge?

5        MS. HEDGES:  Object to form.

6        THE WITNESS:  I believe there's one event that

7     I was specifically involved in, and if you could

8     give me a second, I can -- I was specifically

9     involved in the event that starts in Paragraph 25.

10 BY MS. THOMPSON:

11    Q.   We'll get to that in a minute.  But it's your

12 testimony that you were personally involved in events on

13 September 27th, 2025 that you've described in Paragraph

14 25 as "starting at approximately 8:30 p.m."?

15       MS. HEDGES:  Object to form.  The document

16    speaks for itself.

17       THE WITNESS:  Yes.

18 BY MS. THOMPSON:

19    Q.   You agree with me that there's other incidents

20 that are described in your declaration, correct?

21    A.   Yes.

22    Q.   Were you personally present for any of the

23 other incidents that are described in your declaration?

24       MS. HEDGES:  And just to interject, if you

25    need to review to answer, feel free to do so.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    THE WITNESS:  No, ma'am.  I believe the only
2    event that I was personally involved in physically
3    there was the event that I referenced in Paragraph
4    25.
5  BY MS. THOMPSON:
6    Q.   All right.  And so to go back to Paragraph 9,
7  am I correct that for these other incidents, other than
8  the one you just identified, to prepare this
9  declaration, you relied on information that was made
10  available to you in the course of your official duties?
11    MS. HEDGES:  Object to form.
12    THE WITNESS:  Yes.
13  BY MS. THOMPSON:
14    Q.   How was that information made available to you
15  in the course of your official duties to be able to
16  complete this declaration?
17    MS. HEDGES:  Object to form.  And exclude from
18    your answer any communications you had with lawyers
19    in this case.
20    THE WITNESS:  Some of the -- some of the
21    information I contain in this document that I
22    referenced, were communicated to me, at times,
23    verbally or I observed through our aerial footage
24    that we received from our air support.
25  BY MS. THOMPSON:

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        Q.   Any other sources of information you relied on

 2   for this declaration other than your personal knowledge,

 3   information you got verbally, and information you

 4   observed through aerial footage?

 5             MS. HEDGES:  Same instruction.

 6             THE WITNESS:  Yes, I was --

 7             MS. HEDGES:  Same objection.  Go ahead.

 8             THE WITNESS:  -- was -- also reviewed several

 9        reports associated with the use of force described

10        in these events.

11   BY MS. THOMPSON:

12        Q.   Any other sources of information?

13             MS. HEDGES:  Same objection.  Same

14        instruction.

15             THE WITNESS:  Not that I can recall at the

16        moment.

17   BY MS. THOMPSON:

18        Q.   When you're talking about information you

19   observed through aerial footage, is this footage that

20   was recorded from a helicopter that's had a view of some

21   events that have occurred in the Northern District of

22   Illinois during Operation Midway Blitz?

23             MS. HEDGES:  Object to form and foundation.

24             THE WITNESS:  Yes.

25   BY MS. THOMPSON:
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q.   Okay.  Let's go to Paragraph 13, then.  The

2  second sentence of Paragraph 13 says, in part, that,

3  "Demonstrations outside the BSSA and other facilities

4  have devolved into violent riots."  Do you see that?

5      A.   Sorry.  Which line are you referring to now?

6      Q.   Sure.  It's Paragraph 13, Line 2.

7      A.   Okay.

8      Q.   You see that line?

9      A.   Yes.

10     Q.   Explain to me what you mean by the term

11  "violent riots" in that line of Paragraph 13.

12     A.   Sure.  So what I mean by that is during these

13  demonstrations, when there's been large groups in these

14  events, my agents are attacked through various

15  projectiles that are thrown in their direction.  There

16  has also have been made attempts to damage government

17  property.

18     Q.   What qualifies as a violent riot to you?  Is

19  it the behavior that you've just described and answered

20  to that previous question?

21        MS. HEDGES:  Object to form.  Asked and

22     answered.

23        THE WITNESS:  I think that what I just spelled

24     out, ma'am, is when there is force or a threat of

25     force being made towards my agents, I would

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1        classify that as a violent riot.

2  BY MS. THOMPSON:

3      Q.   How many people need to be engaged in a force

4  or a threat of force towards your officers for that to

5  constitute a violent riot?

6         MS. HEDGES:  Object to the form.

7         THE WITNESS:  If not mistaken, I believe two

8     or more individuals engaged in.

9  BY MS. THOMPSON:

10     Q.   So in your definition of violent riot, that

11  could be anywhere from two people to 100 people or more?

12     A.   It could be.

13     Q.   In this sentence, you also say that you are

14  referring to demonstrations outside the BSSA and other

15  facilities.  What other facilities are you talking about

16  in Paragraph 13?

17     A.   Can you point me to the line again?

18     Q.   Sure.  It's Line 2.

19     A.   I can't think of the other facilities that

20  come to mind at the moment.

21     Q.   If you think of those facilities during this

22  deposition, will you tell me?

23     A.   Yes.

24     Q.   I'm going to turn you to Paragraph 14, which

25  is the next page there.  The first sentence there of



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1    Paragraph 14 says, "In my personal observations of the
2    crowds at the BSSA, it is not easy to distinguish
3    between religious observers and the rest of the crowd."
4    Do you see that sentence?
5         A.   Yes.
6         Q.   And I think you told us earlier that you'd
7    been at -- well, let me stop for a second.  When you're
8    talking about BSSA in this declaration, that's the
9    Broadview facility we've been talking about in this
10   deposition, correct?
11        A.   Correct.
12        Q.   Okay.  In the times that you have been at
13   Broadview, the time -- the number of times, as we talked
14   about earlier in this deposition, have you seen anyone
15   in the crowd outside Broadview that you have identified
16   as clergy?
17             MS. HEDGES:  Object to form.
18             THE WITNESS:  I have not.
19   BY MS. THOMPSON:
20        Q.   Have you seen anyone in the times that you
21   were at Broadview praying?
22             MS. HEDGES:  Object to form --
23             THE WITNESS:  I have --
24             MS. HEDGES:  -- and foundation.
25             THE WITNESS:  I don't think I have seen
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

 1        anybody praying.  No.

 2   BY MS. THOMPSON:

 3        Q.    Have you seen anyone outside of Broadview that

 4   has been holding prayer beads?

 5             MS. HEDGES:  Object to form.

 6             THE WITNESS:  I do not recall seeing anybody

 7        holding prayer beads.

 8   BY MS. THOMPSON:

 9        Q.    Have you seen anyone wearing a white clergy

10   collar?

11             MS. HEDGES:  Same objection.

12             THE WITNESS:  I do not recall seeing anybody

13        wearing a clergy collar.

14   BY MS. THOMPSON:

15        Q.    And I don't mean -- I don't mean this to be an

16   offensive question.  I genuinely am trying to

17   understand.  Do you know what a clergy collar is?

18        A.    Yes.

19        Q.    Okay.  Have you seen anyone wearing what's

20   called a clergy stole, S-T-O-L-E?

21             MS. HEDGES:  Object to form.

22             THE WITNESS:  I don't know what that is.  No.

23   BY MS. THOMPSON:

24        Q.    Have you -- are you familiar with an item of

25   clothing that the clergy sometimes wear that is a piece

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    of material that hangs over their neck that sometimes

 2    has religious symbols on it?

 3             MS. HEDGES:  Object to form.  Object to

 4         foundation.  You can answer.

 5             THE WITNESS:  Yeah, I've seen -- I've seen

 6         that garment before.  Yes.

 7    BY MS. THOMPSON:

 8         Q.   Have you seen anyone outside of Broadview

 9    during protests wearing that garment?

10             MS. HEDGES:  Object to form.

11             THE WITNESS:  No.  I have not.

12    BY MS. THOMPSON:

13         Q.   In the times that you were at Broadview during

14    Operation Midway Blitz, did you hear any people calling

15    on officers to repent?

16         A.   I do not recall hearing that.

17         Q.   In Paragraph 14 -- well, let me show you what

18    we're going to mark as Exhibit 4.

19                  (Exhibit 4 was marked for

20                  identification.)

21             MS. HEDGES:  Thank you.  Sorry.

22             THE WITNESS:  Thank you.

23    BY MS. THOMPSON:

24         Q.   I'm showing you what's been marked as Exhibit

25    4.  This is a five-page document that's titled
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Declaration of David Black.  Have you seen this document
2    before, sir?
3         A.    I believe I have.
4         Q.    I'm going to turn you to Page 3.
5         A.    Okay.
6         Q.    There's a person that's depicted in a
7    photograph on Page 3; is that right?
8         A.    Yes.
9         Q.    This person is dressed like a member of the
10   clergy?
11            MS. HEDGES:  Object to form.  And the
12        photograph speaks for itself.
13            THE WITNESS:  Yes.
14   BY MS. THOMPSON:
15        Q.    Had -- did you see this person that's dressed
16   like a member of the clergy, in the photograph on
17   Paragraph 3, at any of the times that you were at
18   Broadview?
19            MS. HEDGES:  Same objections.
20            THE WITNESS:  I do not recall seeing this
21        individual, no.
22   BY MS. THOMPSON:
23        Q.    Did you see any people dressed like the person
24   in the photograph on Page 3 is dressed any of the times
25   you were at Broadview?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      A.    I do not recall seeing anybody addressed in

2  the same fashion.

3      Q.    **Thank you.  I'm done with that exhibit, sir.**

4  **To go back, then, to Paragraph 14.**

5          MS. HEDGES:  I'm sorry.  Which document?

6          MS. THOMPSON:  Sure.  We're talking about your

7      declaration, so that's Exhibit 3, correct?

8  BY MS. THOMPSON:

9      Q.    **So going back to Exhibit 3, Paragraph 14, the**

10  **third sentence there says, "I have not seen any**

11  **reporting, which would lead -- cause me to believe that**

12  **CBP personnel have directly targeted religious observers**

13  **for enforcement actions."  When you're talk - - when**

14  **you're using the term "reporting" in Paragraph 14, are**

15  **you talking about the use of force reports that you**

16  **reviewed in order to complete this declaration?**

17          MS. HEDGES:  Object to form.

18          THE WITNESS:  Yes.

19  BY MS. THOMPSON:

20     Q.    **Is there any other reporting that you**

21  **review -- that you relied on to complete this**

22  **declaration?**

23          MS. HEDGES:  Object to form.

24          THE WITNESS:  I'm trying to think of what

25      other reports.  We do have an event.  There's a

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**KENTUCKIANA**
COURT REPORTERS

**502.589.2273 Phone**
**502.584.0119 Fax**
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    significant event that is also reporting, but I

2    don't recall if that was -- if I used that for this

3    specific report as well.

4  BY MS. THOMPSON:

5      Q.   Any other reporting that you were relying on

6  to complete this declaration?

7          MS. HEDGES:  Object to form.  Asked and

8      answered.

9          THE WITNESS:  I don't -- I don't recall.

10 BY MS. THOMPSON:

11     Q.   So when you're saying in Paragraph 14 that you

12 haven't seen any reporting, "Which would cause me to

13 believe that CBP personnel have directly targeted

14 religious observers for enforcement actions," are you

15 saying that when you looked at the use of force reports

16 and the significant event reports that -- the

17 significant event reports you may have looked at, that

18 those reports didn't cause you to believe that CBP

19 personnel have directly targeted religious observers for

20 enforcement actions?

21         MS. HEDGES:  Object to form.  The document

22     speaks for itself.

23         THE WITNESS:  Correct.

24 BY MS. THOMPSON:

25     Q.   Have you seen any reports that document CBP

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1    personnel interacting with religious observers at all at
2    Broadview?
3              MS. HEDGES:  Object to form.
4              THE WITNESS:  Not that I can recall.
5    BY MS. THOMPSON:
6         Q.   Have you seen any reports that document
7    religious observers being detained at Broadview?
8              MS. HEDGES:  Same objection.
9              THE WITNESS:  Not that I can recall.
10   BY MS. THOMPSON:
11        Q.   Have you seen any reports that document
12   religious observers being shot with PepperBall guns
13   anywhere in the Northern District of Illinois as part of
14   Operation Midway Blitz?
15             MS. HEDGES:  Object to form and foundation.
16             THE WITNESS:  Can you repeat the question?
17   BY MS. THOMPSON:
18        Q.   Sure.  Have you -- I'm going to try to repeat
19   it, but I might restate it.  Have you seen any reports
20   that document religious observers being shot with
21   PepperBall launchers anywhere in the Northern District
22   of Illinois as part of Operation Midway Blitz?
23             MS. HEDGES:  Same objections.
24             THE WITNESS:  I -- I don't recall seeing any
25        official CBP reports indicating that.  No.
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. THOMPSON:

Q.    Have you any unofficial reports?

A.    The only -- the only report that I can think of is that one declaration that just showed me, where it shows a number of clergy.

Q.    Have you seen any reports that document religious observers being shot with rubber bullets as part of Operation Midway Blitz?

        MS. HEDGES:  Same objections.  Form and foundation.

        THE WITNESS:  I do not recall.

BY MS. THOMPSON:

Q.    Have you seen any reports that document religious observers being subjected to CS gas?

        MS. HEDGES:  Same --

        THE WITNESS:  Can you repeat the question? Sorry.

BY MS. THOMPSON:

Q.    Sure.  Have you seen any reports that document religious observers being subjected to CS gas as part of Operation Midway Blitz?

        MS. HEDGES:  Same objections.

        THE WITNESS:  Not that I recall, no.

BY MS. THOMPSON:

Q.    I want to direct your attention to Paragraph

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  15 of Exhibit 3.  Let me have you read Paragraph 15 and

2  just let me know when you've read it.

3      A.    Okay.

4      Q.    So in Paragraph 15 when you say, in part, that

5  you haven't seen any reporting that would cause you to

6  believe that CBP personnel have directly targeted

7  journalists or members of the press, are you again

8  referring to the use of force reports and the

9  significant event reports that you testified about a

10  moment ago?

11          MS. HEDGES:  Same objection.  Form.

12          THE WITNESS:  Correct.

13  BY MS. THOMPSON:

14      Q.    Are you referring to any other report --

15  reporting that you relied on to prepare this declaration

16  other than those two things in Paragraph

17  15?

18          MS. HEDGES:  Object to form.  Asked and

19     answered.

20          THE WITNESS:  Not that I can recall.

21  BY MS. THOMPSON:

22      Q.    In the times that you've been at Broadview and

23  out in the field in the Northern District of Illinois as

24  part of Operation Midway Blitz, have you seen anyone

25  that you identify as a member of the press?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1          MS. HEDGES:  Object to form.
 2          THE WITNESS:  I believe I have seen some
 3       individuals that were probably members of the
 4       press.
 5  BY MS. THOMPSON:
 6       Q.   Where?  Where did you see them?
 7       A.   I'm sorry.  Can you --
 8       Q.   Sure.  I think it's your testimony that you
 9  have seen members of the press as part of your work,
10  either at Broadview or in the field as part of Operation
11  Midway Blitz; is that right?
12          MS. HEDGES:  Object to characterization of his
13       testimony.
14          THE WITNESS:  So I have seen members of the
15       press at the Broadview facility.
16  BY MS. THOMPSON:
17       Q.   Have you seen members of the press the four to
18  five times that you were out in the field in the
19  Northern District of Illinois as part of Operation
20  Midway Blitz?
21          MS. HEDGES:  Object to form.
22          THE WITNESS:  Not that I can recall.
23  BY MS. THOMPSON:
24       Q.   When have you seen members of the press at
25  Broadview?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.   As recently as this Tuesday.
 2        Q.   What about before this Tuesday?
 3        A.   I believe I remember seeing members of the
 4   press on -- give me a second.  On September 27th.
 5        Q.   And when you saw them on September 27th, how
 6   did you identify them as members of the press?
 7        A.   If I can recall, I think what was
 8   distinguishing them was the commercial-grade cameras
 9   that you would attempt to see whenever you see media
10   out -- out in the field.  I don't recall if they had any
11   identifiers, but it was just based on the equipment that
12   they carried, led me to believe that they were members
13   of the press.
14        Q.   The situation that you're describing, were you
15   inside the Broadview facility looking out at protesters
16   outside?
17             MS. HEDGES:  Object to form and foundation.
18             THE WITNESS:  No, ma'am.  I was out in the
19        field.
20   BY MS. THOMPSON:
21        Q.   You were -- were you outside Broadview?
22        A.   Yes.
23        Q.   Like, out in the -- were you out in front of a
24   crowd of people that were there?
25        A.   Yes.
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        Q.   And standing there, you were able to see
 2   people with commercial-grade cameras that you identified
 3   as members of the press?
 4            MS. HEDGES:  Object to form.
 5            THE WITNESS:  At different times, yes.
 6   BY MS. THOMPSON:
 7        Q.   Any of the times that you've been at
 8   Broadview, have you seen people wearing helmets with the
 9   word, press, on them?
10        A.   I don't recall.
11        Q.   Have you seen any reporting that documents
12   members of the press being arrested as part of Operation
13   Midway Blitz?
14            MS. HEDGES:  Object to form.
15            THE WITNESS:  None that come to mind, no.
16   BY MS. THOMPSON:
17        Q.   Have you seen any reportings that document
18   members of the press being subjected to CS gas as part
19   of Operation Midway Blitz?
20            MS. HEDGES:  Same objection and to foundation.
21            THE WITNESS:  Can you repeat the question?
22   BY MS. THOMPSON:
23        Q.   Sure.  Have you seen any reports that document
24   members of the press being subjected to CS gas as part
25   of Operation Midway Blitz?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1            MS. HEDGES:  Same objections.

 2            THE WITNESS:  I don't recall.

 3   BY MS. THOMPSON:

 4       Q.   Have you seen any reports that document

 5   members of the press having tear gas canisters thrown at

 6   them as part of Operation Midway Blitz?

 7            MS. HEDGES:  Same objections.

 8            THE WITNESS:  I don't recall.

 9   BY MS. THOMPSON:

10       Q.   All right.  I want to direct you to Paragraph

11   16 of your declaration.  I have some questions about 16,

12   so if you want to read this Paragraph and let me know

13   when you're done, I'll follow up with you about it.

14       A.   Okay.

15       Q.   Paragraph 16 describes some events that your

16   declaration is indicating occurred on September 12th of

17   2025, at Broadview; is that right?

18       A.   To the best of my knowledge, yes.

19       Q.   Were you personally at Broadview to witness

20   the events that you described in Paragraph 16?

21       A.   No.

22       Q.   Do you have any personal knowledge of the

23   events that you're describing in Paragraph 16?

24            MS. HEDGES:  Object to form.

25            THE WITNESS:  Can you please define personal
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        knowledge?
 2   BY MS. THOMPSON:
 3        Q.    Well, that's a good question.  And let me ask
 4   you this: Have you reviewed any reports about events
 5   that occurred at Broadview on September 12th of 2025?
 6              MS. HEDGES:  Same objection.
 7              THE WITNESS:  Yes.
 8   BY MS. THOMPSON:
 9        Q.    What reports have you reviewed?
10        A.    I think for this specific event, I reviewed a
11   use of force -- use of force event -- event report.
12        Q.    Any other reports that you reviewed that
13   document any events at Broadview on September 12th of
14   2025?
15              MS. HEDGES:  Object to form.
16              THE WITNESS:  I don't recall if there were any
17        other reports.
18   BY MS. THOMPSON:
19        Q.    Have you reviewed any video, or photographs,
20   or audio about anything that happened at Broadview on
21   September 12th of 2025?
22              MS. HEDGES:  Object to form.  Compound.
23              THE WITNESS:  I don't recall specifically. No.
24   BY MS. THOMPSON:
25        Q.    Paragraph 16 is describing a PepperBall
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1   launching system being deployed in the direction of the

2   driveway at Broadview on September 12th, 2025, correct?

3           MS. HEDGES:  Objection, because the document

4       speaks for itself.

5           THE WITNESS:  Correct.

6   BY MS. THOMPSON:

7       Q.   And is it your opinion that the use of force

8   that's described in Paragraph 16 was justified?

9           MS. HEDGES:  Object to form.

10          THE WITNESS:  Yes.

11  BY MS. THOMPSON:

12      Q.   Do you have any information about why this use

13  of force was justified other than what you've set out in

14  Paragraph 16?

15          MS. HEDGES:  Object to form.  Vague.

16          THE WITNESS:  Yeah.  Can you repeat that

17      question?

18  BY MS. THOMPSON:

19      Q.   Sure.  Do you have any information that

20  justifies the use of force that's described in Paragraph

21  16, other than what you've set out in Paragraph 16?

22          MS. HEDGES:  Same objection.

23          THE WITNESS:  Other than the use of force

24      report that I reviewed to compile this, is that the

25      -- is that what you're asking?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. THOMPSON:

1   Q.   Well, and I appreciate that clarification.

2   So is it your testimony that your opinion that the use

3   of force that you've described in Paragraph 16 was

4   justified, is based in part on the report you looked at?

5         MS. HEDGES:  Object to form.

6         THE WITNESS:  Yes.

7   BY MS. THOMPSON:

8   Q.   Is it based on anything else?

9   A.   Not that I can recall.

10  Q.   And is it your opinion that the use of force

11  you're describing in Paragraph 16 was justified under

12  Customs and Border Protection policies?

13        MS. HEDGES:  Object to form.

14        THE WITNESS:  I have not received any reports

15        indicating that it was not.

16  BY MS. THOMPSON:

17  Q.   In Paragraph 16, you state in part that SRT

18  operators verbally instructed the crowd to clear the

19  vehicle path for safety.  That is about Line 9.  Do you

20  see that?

21        MS. HEDGES:  Object to form, because it says

22        officer safety.  I just wanted to clarify.

23        MS. THOMPSON:  I appreciate that

24        clarification.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1              THE WITNESS:  Yes --
 2              MS. THOMPSON:  -- that's correct.
 3              THE WITNESS:  I do see that line.
 4  BY MS. THOMPSON:
 5       Q.    Okay.  It says after the line that we just
 6  looked at, that several individuals refused to comply.
 7  Do you see that?
 8       A.    Yes.
 9       Q.    How many people is several?
10       A.    More than one.
11       Q.    After that line, you have a line here that
12  says that a PLS is not a precision tool and it cannot be
13  meaningfully used to target an individual's person. Do
14  you see that?
15       A.    Yes.
16       Q.    What does it mean?  That it cannot be
17  meaningfully used to target an individual's person?
18       A.    The PLS does not have the same nomenclature as
19  a firearm, where the precise marksmanship, it's not --
20  it's not a one for one comparison.  So that was my
21  explanation of it.  It's not -- it's not a precise tool,
22  like a firearm would be.
23       Q.    Does that mean that if I am trying to shoot
24  someone with a firearm, I can aim at them, but a
25  PepperBall launcher is not as precise?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1              MS. HEDGES:  Objective to form.  Compound.
 2              THE WITNESS:  That's not on -- what I'm
 3        referring to, ma'am.  So firearms have a rifling in
 4        the -- in the barrel that help -- that help with
 5        the direction of a bullet.  My understanding that a
 6        PLS does not have the same rifle -- rifling because
 7        a PLS - - a PLS device is actually plastic with no
 8        grooves that -- that -- when it gets expended.
 9  BY MS. THOMPSON:
10        Q.    Right.  And so the rifling in a firearm that
11  you just described is so that you can accurately aim the
12  firearm at the target, correct?
13              MS. HEDGES:  Object to form.
14              THE WITNESS:  Correct.
15  BY MS. THOMPSON:
16        Q.    But as you say in Paragraph 16, a PepperBall
17  launching system cannot be meaningfully used to target a
18  person, correct?
19        A.    Correct.
20        Q.    So if someone is trying to use a PepperBall
21  launching system to disperse people that are at a
22  distance, the PepperBall launching system may not go
23  where the shooter intends, correct?
24              MS. HEDGES:  Objective form and foundation as
25        to what some hypothetical person intends.
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1              THE WITNESS:  That is a possibility.

2    BY MS. THOMPSON:

3         Q.   And is it possible for the person in Paragraph

4    16 who fired the PepperBall launching system,

5    but didn't -- did not observe any kinetic impact, that

6    they did not observe kinetic impact because they didn't

7    know where the PepperBalls had gone?

8              MS. HEDGES:  Object to form.  Object to

9         foundation.

10             THE WITNESS:  I would be speculating at that

11        point, ma'am.  Or can you -- can you repeat the

12        question?  I don't want to speculate on --

13   BY MS. THOMPSON:

14        Q.   Well, let me ask you this question.  Did -- do

15   you know why the person who shot the PepperBall

16   launching system in Paragraph 16 did not observe any

17   kinetic impact on members of the crowd from the

18   deployment?

19             MS. HEDGES:  Object to lack of foundation.

20             THE WITNESS:  Yeah.  I -- I can't speak to

21        that.  No.

22   BY MS. THOMPSON:

23        Q.   Are you saying you -- you don't know?

24        A.   No.  I -- I -- I -- I don't know why --

25   I -- I can't speak for that individual operator that

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   deployed the PLS.
 2        Q.   For the events that you're describing in
 3   Paragraph 16, would you be notified if the Office of
 4   Professional Responsibility were investigating this
 5   incident?
 6             MS. HEDGES:  Object to form.
 7             THE WITNESS:  Not necessarily.
 8   BY MS. THOMPSON:
 9        Q.   Have you been notified whether the Office of
10   Professional Responsibility is investigating this
11   incident?
12        A.   I have not been made aware.
13        Q.   All right.  I want to direct you to Paragraph
14   17 now.  If you need to read it first, let me know when
15   you've done that.
16        A.   Okay.
17        Q.   Were you at Broadview for the events that you
18   described on September 19th, 2025, in Paragraph 17?
19        A.   No.
20        Q.   And do you have personal knowledge of what
21   happened at Broadview on September 19th of 2025, that
22   you've discussed in Paragraph 17?
23             MS. HEDGES:  Objection to form.
24             THE WITNESS:  Can you please clarify once
25        again on personal knowledge?
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. THOMPSON:

Q.   Well, what information did you rely on to describe the events that you've described in Paragraph 17?

A.   If not mistaken, I believe it was in an evolving event report that I -- that I read.

Q.   Have you seen any video, or audio, or photographs of anything that happened at Broadview on September 19th, 2025?

MS. HEDGES:  Object to form.

THE WITNESS:  I don't remember specifically.

BY MS. THOMPSON:

Q.   Have you talked directly to any CBP personnel who were present for the events that you've described in Paragraph 17?

A.   I personally have not.

Q.   In Paragraph 17, you describe Border Patrol agents discharging less lethal munitions. That's a -- or -- Line 6 and 7.  Do you see that?

A.   Yes.

Q.   What less lethal munitions did they discharge?

MS. HEDGES:  Object to form and foundations. You can answer if you know.

THE WITNESS:  Yeah -- no, I -- I don't recall exactly which -- which type of less lethal

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1            munitions were deployed.
 2   BY MS. THOMPSON:
 3       Q.    Where did they deploy them?
 4            MS. HEDGES:  Again object to foundation.
 5       You can answer if you know.
 6            THE WITNESS:  I -- I don't recall.
 7   BY MS. THOMPSON:
 8       Q.    Do you know how they were deployed?
 9       A.    I don't recall the various methods that
10   the -- that were used to deploy the less lethal, no.
11       Q.    Was the use of force that is described in
12   Paragraph 17 justified?
13            MS. HEDGES:  Object to form.  Object to
14       foundation.
15            THE WITNESS:  I believe so.  Yes.
16   BY MS. THOMPSON:
17       Q.    And what factors justify the use of force
18   that's described in Paragraph 17?
19            MS. HEDGES:  Same objections.
20            THE WITNESS:  So for example in this one
21       particular case, I think it's on the third line
22       says, "Several individuals obstructed the vehicle's
23       movement and began hitting and pushing the
24       vehicle."
25   BY MS. THOMPSON:
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q.   Are -- do you have any justification for the

2  use of force that's described in Paragraph 17 other than

3  what you laid out in Paragraph 17?

4          MS. HEDGES:  Object to form.

5          THE WITNESS:  Not that I can recall, no.

6  BY MS. THOMPSON:

7      Q.   Do you know whether the use of force that

8  you've described in Paragraph 17 was justified under

9  Customs and Border Protection Policies?

10         MS. HEDGES:  Object to form.  Object to

11    foundation.

12         THE WITNESS:  I have been not -- I have not

13    been informed that it hasn't.

14  BY MS. THOMPSON:

15      Q.   And have you received any information that the

16  Office of Professional Responsibility is investigating

17  the events that are described in Paragraph 17?

18         MS. HEDGES:  I'm sorry, I apologize.  Would

19    you mind reading that back?

20         THE REPORTER:  Oh, yeah.

21           (The requested question was read back.)

22         MS. HEDGES:  Thank you.  You can answer.

23         THE WITNESS:  I have not.

24  BY MS. THOMPSON:

25      Q.   Okay.  Let's go to Paragraph 18.  Let me know

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

DANIEL BROWN, taken on 08/28/2025

1     when you've read that Paragraph.

2          A.    Okay.

3          Q.    Paragraph 18 describes, again, less lethal

4     munitions being deployed; is that right?

5          A.    Correct.

6          Q.    What less lethal munitions were deployed?

7                MS. HEDGES:  Object to form and foundation.

8                THE WITNESS:  I -- I don't recall exactly

9          which less lethal munitions were deployed.

10    BY MS. THOMPSON:

11         Q.    Do you know how they were deployed?

12               MS. HEDGES:  Same objections.

13               THE WITNESS:  I do not.

14    BY MS. THOMPSON:

15         Q.    Do you know where they were deployed?

16         A.    I do not recall.

17         Q.    What information are you relying on to

18    describe the events that you laid out in Paragraph 18?

19         A.    Not mistaken for Paragraph 18, it was a use of

20    force report that I relied on for this specific section.

21         Q.    Is there any other information you're relying

22    on besides that use of force report?

23         A.    I cannot recall.  Sorry.

24         Q.    Do you know whether the use of force that's

25    described in Paragraph 18 was justified?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1              MS. HEDGES:  Object to form and foundation.
 2              THE WITNESS:  I have not received any
 3        indication that it was not.
 4   BY MS. THOMPSON:
 5        Q.   I'm going to ask you about Paragraphs 19
 6   through 21.  If you need to read those first, do that,
 7   and let me know when you're done?
 8              MS. THOMPSON:  And while you're doing that,
 9        can you let me know where we are in time?
10              THE REPORTER:  One hour, 32 minutes, 15
11        seconds.
12              MS. THOMPSON:  Thanks.
13              THE WITNESS:  Okay.
14   BY MS. THOMPSON:
15        Q.   Did you personally witness any of the events
16   that you described in Paragraphs 19 through 21?
17        A.   Can you please clarify on personally witness?
18        Q.   Yeah.  Were you there for anything that you
19   described in Paragraphs 19 through 21?
20              MS. HEDGES:  Objection.  Vague as to "there."
21              THE WITNESS:  No.
22   BY MS. THOMPSON:
23        Q.   What information are you relying on for the
24   information you've given in those Paragraphs?
25        A.   For these Paragraphs, if I can -- if I
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    remember correctly, it was a use of force event report.

2        Q.   **Have you seen any audio or -- let me ask that**

3    **again.  Have you seen any video or photographs that**

4    **depict anything that happened at Broadview at any point**

5    **on September 19th, 2025?**

6            MS. HEDGES:  Objection to form.  Compound.

7            THE WITNESS:  I don't recall if the videos

8        that I've seen is specifically for September 19th.

9    BY MS. THOMPSON:

10       Q.   **Do you think it's possible you've seen**

11   **helicopter video footage that was filmed on September**

12   **19th of 2025?**

13           MS. HEDGES:  Objection to form.

14           THE WITNESS:  I don't recall if it was --

15       I -- I don't recall.

16   BY MS. THOMPSON:

17       Q.   **Have you seen any other video depicting events**

18   **that have occurred anywhere in Operation Midway Blitz**

19   **other than video that's from the overhead helicopter?**

20           MS. HEDGES:  Objection to form.  Objection to

21       lack of foundation.

22           THE WITNESS:  So -- so I have -- yes, I have

23       seen video.  I just can't recall if it's

24       specifically to this event on September 19th at

25       that specific time.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    BY MS. THOMPSON:

2         Q.   What's the source of the video that you have

3    seen about Operation Midway Blitz?

4              MS. HEDGES:  Objection to form.  Vague as to

5         "source."

6              THE WITNESS:  And can you repeat that question

7         one more time?

8    BY MS. THOMPSON:

9         Q.   Yeah.  What's -- what kind of video have you

10   seen that depicts anything that's happened with

11   Operation Midway Blitz besides helicopter video?

12             MS. HEDGES:  Object to form.

13             THE WITNESS:  So I have seen some body-worn

14        camera footage and we also have small drones that

15        provide aerial coverage.

16   BY MS. THOMPSON:

17        Q.   As you sit here, do you remember what

18   events -- well, let me ask you this: How many different

19   body-worn camera -- body-worn cameras footage have you

20   seen related to Operation Midway Blitz?

21             MS. HEDGES:  Objection to form.

22             THE WITNESS:  I can't -- I can't recall

23        exactly how many body-worn camera footage I've

24        seen.

25   BY MS. THOMPSON:

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1       Q.    Is it more than one?

2       A.    Yes.

3       Q.    Is it more than ten?

4         MS. HEDGES:  Objection to form.  He said he

5    didn't remember the number.

6         THE WITNESS:  I -- I -- I truly can't recall

7    exactly what that number is.

8 BY MS. THOMPSON:

9       Q.    How many hours of body-worn camera footage

10 have you viewed related to Operation Midway Blitz?

11         MS. HEDGES:  Same objection.

12         THE WITNESS:  I can't recall.  I can't -- I

13    can't put a time to that.  No.

14 BY MS. THOMPSON:

15       Q.    Is it less than five hours?

16         MS. HEDGES:  Same objection.  Asked and

17    answered.

18         THE WITNESS:  I -- I can't put a definitive.

19    I'm sorry.

20 BY MS. THOMPSON:

21       Q.    You have no idea?

22         MS. HEDGES:  Same objection.

23         THE WITNESS:  I -- I can't tell you

24    specifically how long -- how much time I spent on

25    video -- video footage.  No.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. THOMPSON:

    Q.   Can you estimate at all?

        MS. HEDGES:  Asked and answered.

        THE WITNESS:  I can't.

BY MS. THOMPSON:

    Q.   How many hours of small drone footage have you seen related to Operation Midway Blitz?

        MS. HEDGES:  Object to form.  Object to foundation.

        THE WITNESS:  I can't recall the exact amount of footage that I've seen.

BY MS. THOMPSON:

    Q.   Can you give any estimate?

        MS. HEDGES:  Same objection.  Asked and answered.

        THE WITNESS:  I can't.

BY MS. THOMPSON:

    Q.   How many hours of overhead helicopter footage have you watched related to Operation Midway Blitz?

        MS. HEDGES:  Object to form.

        THE WITNESS:  Same, ma'am.  I can't recall exactly how much time I've spent reviewing footage.

BY MS. THOMPSON:

    Q.   And you cannot give me any estimate?

        MS. HEDGES:  Same objection.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1              THE WITNESS:  It -- I -- I can't.
 2   BY MS. THOMPSON:
 3        Q.    Okay.  Going back to these Paragraphs 19
 4   through 21, again, these Paragraphs describe less lethal
 5   munitions being deployed; is that right?
 6        A.    Yes.
 7        Q.    You don't know what munitions these were?
 8        A.    I don't recall.
 9        Q.    You don't know where they were deployed?
10        A.    I don't recall.
11        Q.    You don't know how they were deployed?
12        A.    I don't recall.
13        Q.    And do you know whether the use of force
14   that's described in Paragraphs 19 through 21 was
15   justified?
16             MS. HEDGES:  Objection to form.  I don't know
17        that he's testified that there was a "use of
18        force."
19             THE WITNESS:  I have not received anything
20        indicating otherwise.
21   BY MS. THOMPSON:
22        Q.    Are you relying on any information to make
23   that determination other than the report that you
24   reviewed about these events that you described earlier?
25             MS. HEDGES:  Object to form.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1            THE WITNESS:  I don't remember there was

 2       anything else other than the use of force report,

 3       ma'am.

 4  BY MS. THOMPSON:

 5       Q.   All right.  I'm going to direct you to

 6  Paragraph 22, and I'll have you read Paragraph 23 as

 7  well.

 8       A.   Okay.

 9       Q.   You were not at Broadview on September 26th of

10  2025?

11       A.   That is correct.

12       Q.   You yourself didn't see the events that you

13  describe in Paragraphs 22 and 23?

14       A.   I was not personally there.

15       Q.   What are you -- well, did you watch any video

16  of these events?

17       A.   I don't remember if I watched specific video

18  for this specific event.

19       Q.   Have you seen any reports about these events?

20            MS. HEDGES:  Object to form.

21            THE WITNESS:  I believe I reviewed a use of

22       force event -- report for this event.

23  BY MS. THOMPSON:

24       Q.   Have you reviewed any other reports about

25  these events that are described in Paragraphs 22 and
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    23?

2              MS. HEDGES:  Same objection.

3              THE WITNESS:  I don't recall there was --

4        I -- I don't recall if there was any other

5        reports, no.

6    BY MS. THOMPSON:

7        Q.    **These paragraphs describe Border Patrol**

8    **Tactical Unit or BORTAC officers using less lethal**

9    **munitions; is that right?**

10       A.    Yes.

11       Q.    **What less lethal munitions did they use?**

12             MS. HEDGES:  Object to form.  Object to

13       foundation.

14             THE WITNESS:  I don't recall exactly which

15       specific less lethal munitions they used.

16   BY MS. THOMPSON:

17       Q.    **How did they deploy them?**

18             MS. HEDGES:  Same objections.

19             THE WITNESS:  I do not recall.

20   BY MS. THOMPSON:

21       Q.    **Where were they deployed?**

22             MS. HEDGES:  Same objections.

23             THE WITNESS:  I do not recall.

24   BY MS. THOMPSON:

25       Q.    **Do you know whether the use of force that's**

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    described in Paragraphs 22 and 23 was justified?

2            MS. HEDGES:  Same objections, and I don't

3        think I heard him say he views this as a use of

4        force, so object to lack of foundation.

5            THE WITNESS:  I have not received any reports

6        that indicate otherwise.

7            MS. HEDGES:  Counsel, when you reach a logical

8        spot, we've been going for an hour.

9            MS. THOMPSON:  Thanks.  Let me just finish on

10       this, and then we'll --

11           MS. HEDGES:  Sure.

12           MS. THOMPSON:  -- on this topic,

13       and then -- or this event, and then we'll break.

14           MS. HEDGES:  Sure.

15   BY MS. THOMPSON:

16       Q.   Do you know whether the use of force that you

17   described in Paragraphs 22 and 23 was justified under

18   Customs and Border Protection policies?

19           MS. HEDGES:  Object to form.  Object to

20       foundation.

21           THE WITNESS:  I have not been in informed

22       otherwise, no.

23   BY MS. THOMPSON:

24       Q.   All right.  And do you know how many people in

25   the events you described in Paragraph 22 and 23 were

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    obstructing the intersection of 25th Street and Harvard

2    Street?

3              MS. HEDGES:  Object to form because the

4        document speaks for itself.

5              THE WITNESS:  I -- I don't recall exactly how

6        many specific people were obstructing.

7    BY MS. THOMPSON:

8        Q.    Do you know whether any warnings were given to

9    people to disperse in the events that you described in

10   Paragraph 22 and 23?

11       A.    Can you repeat the question, please?

12       Q.    Sure.  Do you know whether any warnings to

13   disperse were given to any of the people described in

14   Paragraph 22 and 23?

15       A.    From my review of report -- of the report, I

16   believe there was, but I can't say for certain.

17       Q.    Do you know how that warning was given?

18       A.    I cannot recall.

19       Q.    Do you know who gave it?

20       A.    I do not recall.

21       Q.    And for any of the events that we've talked

22   about so far in your deposition that you set out in your

23   declaration, have you discussed any of those events with

24   Chief Bovino?

25       A.    Can you repeat the question?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   Q. Sure. For any of the events described in your

2 declaration that we've talked about so far in this

3 deposition, have you discussed any of those events with

4 Chief Bovino?

5     MS. HEDGES: Object to form.

6     THE WITNESS: I don't remember if we

7   discussed, but I'm more -- more certain than not I

8   informed him of the situation.

9 BY MS. THOMPSON:

10   Q. Which of the situations that we've talked

11 about so far did you inform him about?

12   A. I can't recall.

13   Q. When did you inform him about it?

14     MS. HEDGES: Object to form because he said he

15   didn't recall.

16     THE WITNESS: I can't recall.

17 BY MS. THOMPSON:

18   Q. Did you inform him about it after the fact?

19     MS. HEDGES: Same objection. Asked and

20   answered.

21     THE WITNESS: I can't recall.

22 BY MS. THOMPSON:

23   Q. Did you inform him about it after you read a

24 report about it?

25     MS. HEDGES: Asked and answered. Same

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1          objection.

2               THE WITNESS:  I can't recall.

3     BY MS. THOMPSON:

4          Q.   **Did you discuss any of the events that we've**

5     **talked about so far in this deposition that you describe**

6     **in your declaration with Secretary Noem?**

7               MS. HEDGES:  Object to form.  Asked and

8          answered.  Sorry, not asked and answered.  Object

9          to form.

10              THE WITNESS:  No.

11              MS. THOMPSON:  I think it's a good time for a

12         break, then.

13              THE VIDEOGRAPHER:  Okay.  We're going to go

14         off the record.  The time is 12:01.

15                   (A recess was taken.)

16              THE VIDEOGRAPHER:  We're back on the record

17         and the time is 12:18.

18    BY MS. THOMPSON:

19         Q.   **I want to jump ahead a little bit, sir, in**

20    **your declaration, so I'm going to direct you to**

21    **Paragraph 74.  Let me know when you've turned there.**

22         A.   Okay.

23         Q.   **You indicate in Paragraph 74 your belief that**

24    **the temporary restraining order in this case is**

25    **adversely affecting CBP law enforcement operations.  Is**

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    that your belief?

2         A.    Yes.

3         Q.    What is the basis for your belief that the

4    temporary restraining order is adversely affecting CBP

5    law enforcement operations?

6         A.    Sure.  So in this statement, I believe that

7    the TRO is causing hesitation, hesitation to use, in

8    this particular case, less lethal munitions.

9         Q.    What is the basis for your belief that it's

10   causing hesitation?

11        A.    It's based on -- I can't recall exactly the

12   date that this happened, but there was a recent event

13   where a large crowd overwhelmed my agents, began

14   throwing projectiles at them.  I don't recall if they

15   broke a window, but definitely slashed a tire of one of

16   our vehicles.  And they -- they did not deploy less

17   lethal because they were fearing that they would have

18   been held in contempt.

19        Q.    How do you know that those officers didn't

20   deploy less lethal because they feared they'd be held in

21   contempt?

22             MS. HEDGES:  Object to form.

23             THE WITNESS:  Their supervisor informed me of

24        that.

25   BY MS. THOMPSON:



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

DANIEL O'NEAL, November 14, 2025

```
 1       Q.    Who was that?

 2       A.    I can't recall his -- he's the SRT commander.

 3  I don't recall his name.

 4       Q.    How did he inform you about that?

 5             MS. HEDGES:  Object to form.

 6             THE WITNESS:  After that event, we had a -- a

 7       quick conversation to find out basically, like, a

 8       hot wash, and in that he -- he had shared that

 9       concern with me.

10  BY MS. THOMPSON:

11       Q.    What is a "hot wash"?

12       A.    It's just a quick recap of the event that

13  transpired.

14       Q.    Was this a phone conversation?

15             MS. HEDGES:  Object to form.

16             THE WITNESS:  This was an in-person

17       conversation.

18  BY MS. THOMPSON:

19       Q.    Did the supervisor -- or excuse me, did the

20  SRT commander tell you why he believed that his agents

21  didn't deploy because they were concerned about being

22  held in contempt?

23       A.    Can you repeat that question please?

24       Q.    Sure.  Did the SRT commander tell you why he

25  believed that the officers had -- what the basis was for
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1    his belief that the officers had hesitated because they

2    were worried about contempt?

3                 MS. HEDGES:  Object to form.

4                 THE WITNESS:  What the supervisor shared with

5         me was based on the conversations he had with his

6         operators.

7    BY MS. THOMPSON:

8         Q.    Did the operators tell him that they hesitated

9    because they were worried about being held in contempt?

10                MS. HEDGES:  Object to form.  Object to lack

11        of foundation.

12                THE WITNESS:  That is what the supervisor

13        shared with me.

14   BY MS. THOMPSON:

15        Q.    Your -- well, let me ask you this.  Is your

16   belief that -- that CBP personnel are improperly

17   hesitating based on anything other than the conversation

18   with the SRT commander you just described?

19                MS. HEDGES:  Object to form.

20                THE WITNESS:  No, that has also been a shared

21        concern that has been brought to my attention from

22        other supervisors.

23   BY MS. THOMPSON:

24        Q.    Who else has brought that concern to you?

25        A.    It's been numerous supervisors.  I can't
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   recall exactly who or the names, but it's been numerous

2   supervisors that have shared that concern with me.

3        Q.    When did they share that concern with you?

4        A.    I don't recall exactly when, but it's -- it's

5   been recent conversations since -- since the TRO

6   was -- was issued.

7        Q.    Recent like in the last couple of days?

8        A.    No.  I think further -- further back, if I

9   recall, but I can't give you a specific -- if it

10  was -- I'm trying to think of -- I'm trying to think of

11  that -- that event that transpired.  That would kind of

12  give me a timeline, but I can't recall the exact date

13  that that happened.

14       Q.    When you're talking about the event that would

15  give you the timeline, is that the event you described a

16  minute ago where there were slashed tires and

17  a large -- the officers were overwhelmed?

18            MS. HEDGES:  Object to form.  Mischaracterizes

19        testimony.

20            THE WITNESS:  So I believe that event was --

21        led to several conversations of concerns that our

22        agents had about deploying less lethal munitions.

23  BY MS. THOMPSON:

24       Q.    In any of those conversations, has any

25  supervisor told you about any other specific events

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   where they believe there was improper hesitation?

 2              MS. HEDGES:  Object to form.

 3              THE WITNESS:  If I remember our -- my

 4        conversation correctly, it wasn't -- I don't

 5        believe there was a specific event that was being

 6        shared with me with the exception of this -- of

 7        this event that I was talking about with the

 8        slashed tires.

 9   BY MS. THOMPSON:

10        Q.   In the event -- and I just want to make sure I

11   understand your testimony.  Is it your testimony that

12   you don't recall specifically when or where that event

13   with the slashed tires occurred?

14        A.   So I don't remember the -- the date.  I

15   remember the event.  I don't recall the date that it

16   transpired.

17        Q.   Do you know where that event happened?

18        A.   I don't recall the location of that event.

19        Q.   Were -- well, let me ask you this: I mean, as

20   part of the use of force policy that CBP has, CBP

21   personnel are supposed to make a determination about

22   whether a particular level of force is required, right?

23              MS. HEDGES:  I'm sorry, would you read that

24        back?

25              THE REPORTER:  Yeah.
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1          (The requested question was read back.)

2          MS. HEDGES:  Object to the form, and I'm going

3     to ask if you ask a question about something

4     specific in here that you direct him to the page

5     that you're referring to.  But I will let you

6     answer that question.

7          THE WITNESS:  So the -- the -- yes, the

8     individual officer or agent is responsible for

9     making a determination of the type of force he or

10    she objectively believes is reasonable.

11 BY MS. THOMPSON:

12    Q.    And that policy and the consideration of what

13 force is reasonable does require the officers to think

14 about the situation before they deploy force, correct?

15         MS. HEDGES:  Object to form.

16         THE WITNESS:  That is one factor.

17 BY MS. THOMPSON:

18    Q.    Can you give me any specific examples of any

19 way in which Customs and Border Protection personnel

20 that are working as part of Operation Midway Blitz have

21 altered their mechanism for immigration enforcement as a

22 result of the TRO?

23         MS. HEDGES:  Object to form.

24         THE WITNESS:  Could -- could you please repeat

25    that one more time?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. THOMPSON:

Q.    Sure.  Can you give me any specific examples
of any way in which Custom [sic] and Border Protection
personnel that are working in Operation Midway Blitz
have altered the mechanisms for immigration enforcement
that they use as a result of the Temporary Restraining
Order?

        MS. HEDGES:  Same objection and vague.

        THE WITNESS:  Without -- without getting into
    tactics, we have had to increase our size of
    security at times.

BY MS. THOMPSON:

Q.    Can you give me examples of any times in which
you had to increase size of security?

        MS. HEDGES:  And just before you answer,
    exclude from your answer any information that
    has -- that would reveal law enforcement privileged
    or classified information that you know.

        THE WITNESS:  Can't give you a specific.

BY MS. THOMPSON:

Q.    Can you not give me a specific because you're
following your counsel's advice not to reveal
information protected by the privileges she described?

A.    No.

Q.    Or do you have any other examples of any way



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   in which the Temporary Restraining Order has changed the

2   way Customs and Border Protection enforces immigration

3   law as part of Operation Midway Blitz?

4          MS. HEDGES:  Object to form.  Misstates

5      testimony.

6          THE WITNESS:  Can you repeat the question?

7   BY MS. THOMPSON:

8      Q.    Sure.  Can you give me any other examples of

9   any way in which the Temporary Restraining Order in this

10  case has altered the way that Customs and Border

11  Protection officers enforce immigration law as part of

12  Operation Midway Blitz?

13         MS. HEDGES:  Same objections.

14         THE WITNESS:  No examples that come to mind at

15     the moment.

16  BY MS. THOMPSON:

17     Q.    Have you, yourself, read the Modified

18  Temporary Restraining Order that was entered in this

19  case?

20         MS. HEDGES:  Object to form, because there

21     have been more than one.  If you could, specify.

22  BY MS. THOMPSON:

23     Q.    I'm asking about the Modified Temporary

24  Restraining Order that was entered on October 17th of

25  2025.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

SANDEFORT 11/24/25 Page 107 of 185

```
 1      A.   Yes, I have read that.

 2      Q.   Did you read -- have you read any of the other

 3  temporary restraining orders that were entered by the

 4  judge in this case?

 5      A.   Yes.

 6      Q.   Do you have any other evidence, other than

 7  what you've already told me in this deposition, that the

 8  Temporary Restraining Order in this case is adversely

 9  affecting Customs and Border Protection enforcement

10  operations as part of Operation Midway Blitz?

11          MS. HEDGES:  Object to form and foundation.

12          THE WITNESS:  Can you repeat the question,

13      please?

14  BY MS. THOMPSON:

15      Q.   Sure.  Can you -- other than what you've

16  already told me in this deposition, can you give me any

17  other evidence that the Temporary Restraining Order in

18  this case is adversely affecting Customs and Border

19  Protection enforcement operations as part of Operation

20  Midway Blitz?

21          MS. HEDGES:  Same objections.

22          THE WITNESS:  None that I can think of at the

23      moment.  No.

24  BY MS. THOMPSON:

25      Q.   Isn't it true that Custom and Border
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    Protection's enforcement activities have not been

 2    impacted by this Temporary Restraining Order?

 3              MS. HEDGES:  Object to form.

 4              THE WITNESS:  I don't agree with that

 5         statement.  No.

 6    BY MS. THOMPSON:

 7         Q.   Have you discussed the impact of this

 8    Temporary Restraining Order with Chief Bovino?

 9              MS. HEDGES:  Object to form.  Vague as to

10         "impact."

11              THE WITNESS:  I might have shared.  And I

12         can't recall -- I can't say certain to -- about the

13         hesitation that my agents have with using less

14         lethal.

15    BY MS. THOMPSON:

16         Q.   When did you share that?

17              MS. HEDGES:  Object to form.

18              THE WITNESS:  I can't recall when.

19    BY MS. THOMPSON:

20         Q.   How did you share that?

21              MS. HEDGES:  Same objection.

22              THE WITNESS:  I don't remember.

23    BY MS. THOMPSON:

24         Q.   Have you discussed the impact of this

25    Temporary Restraining Order with Secretary Noem?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1          MS. HEDGES:  Object to form.  Object as to

2     vagueness.  And exclude from your answer any

3     information that would reveal executive privileged

4     information.

5          THE WITNESS:  The answer is no.

6  BY MS. THOMPSON:

7     Q.   I want to go back to -- I want to go back up

8  in your declaration to where we were before.  And I'm

9  going to take you to Paragraph 24.  And let me just ask

10 you: I think you told me earlier that you were at

11 Broadview on September 27th, 2025; is that right?

12    A.   Correct.

13    Q.   Were you present for any of the events that

14 you've described occurring at Broadview on September

15 27th, 2025, in Paragraphs 24 through 27?

16         MS. HEDGES:  Object to form.

17         THE WITNESS:  I don't believe I was present

18    for the events in Paragraph 24.  But from Paragraph

19    25 through 27, yes.

20 BY MS. THOMPSON:

21    Q.   Did you personally witness the things that

22 you've described in Paragraph 25 through 27?

23    A.   Yes.

24    Q.   Where did you get the information that you

25 included in Paragraph 24?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

 1      A.   I don't recall if it was an evolving situation

 2   report or a use of force report.  I don't recall exactly

 3   where I got this specific section.

 4      Q.   **Have you ever seen any video that depicts the**

 5   **events that you've described in Paragraph 24?**

 6           MS. HEDGES:  Object to form.

 7           THE WITNESS:  I believe I was observing aerial

 8       footage provided by our helicopter.

 9   BY MS. THOMPSON:

10      Q.   **In Paragraph 26, you talk about dispersal**

11   **announcements being made over the loudspeaker of a**

12   **BearCat vehicle.  Do you see that?**

13      A.   Yes.

14      Q.   **In general, during its enforcement activities,**

15   **I mean, CBP personnel have the option to give dispersal**

16   **orders using a bullhorn or a loudspeaker where they have**

17   **that equipment, right?**

18           MS. HEDGES:  Object to form and foundation.

19           THE WITNESS:  That -- can you repeat that?

20   BY MS. THOMPSON:

21      Q.   **Sure.  I mean, one of the mechanisms that CBP**

22   **personnel in Operation Midway Blitz can use to**

23   **communicate dispersal orders is using a bullhorn or a**

24   **loudspeaker, right?**

25           MS. HEDGES:  Object to form.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1          THE WITNESS:  It's not always available.  No.

2    BY MS. THOMPSON:

3        Q.    There's nothing stopping CBP personnel from

4    bringing a bullhorn with them in vehicles that they use

5    out in the field, right?

6          MS. HEDGES:  Object to form and foundation.

7          THE WITNESS:  That's assuming we have access

8          to bullhorns.

9    BY MS. THOMPSON:

10       Q.    Bullhorns are an object that can be purchased

11   in the world, right?

12         MS. HEDGES:  Object to form.

13         THE WITNESS:  We're in a government shutdown,

14         ma'am, right now, so it's -- it's tough on the

15         procurement process.

16   BY MS. THOMPSON:

17       Q.    Do any CBP personnel carry bullhorns as part

18   of their work?

19         MS. HEDGES:  Objection.  Lack of foundation.

20         THE WITNESS:  I'm -- I'm not aware.

21   BY MS. THOMPSON:

22       Q.    And in the events that are described in

23   Paragraph 26, there was a loudspeaker that was available

24   to give a dispersal order; is that right?

25       A.    Yes.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        Q.   In -- well, let me ask you this: The use of
 2   force that you described being used while you were at
 3   Broadview on September 27th of 2025, do you have an
 4   opinion on whether that use of force was justified?
 5            MS. HEDGES:  Object to form and foundation.
 6        Misstates testimony.
 7            THE WITNESS:  There was nothing here that
 8        would lead me to believe that it wasn't.
 9   BY MS. THOMPSON:
10        Q.   Are there -- is there any information you're
11   relying on to conclude that the use of force that you
12   described in Paragraph 26 and 27 was justified other
13   than the information that you've provided in the
14   declaration itself?
15            MS. HEDGES:  Same objections.  I don't -- I
16        don't recall hearing him say that it was a use of
17        force.  So object to foundation.  But you can
18        answer.
19            THE WITNESS:  Can -- can you repeat that
20        question?
21   BY MS. THOMPSON:
22        Q.   Sure.  And let me state that in a better way.
23   The use of force that's described in Paragraphs 25
24   through 27 of your declaration, do you have any
25   information you're relying on to conclude that that use
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    of force was justified other than the information that's

2    contained in those Paragraphs themselves?

3           MS. HEDGES:  Same objections.

4           THE WITNESS:  I don't remember if I've read

5      any other additional reports for this -- for these

6      specific paragraphs.

7    BY MS. THOMPSON:

8      Q.  Is it relevant to your determination about

9    whether force was justified in the events you described

10    in Paragraphs 25 to 27, that people in the crowd were

11    saying -- and I'm sorry for using this language, saying,

12    "fuck ICE"?

13           MS. HEDGES:  Same objection.  Lack of

14      foundation.

15           THE WITNESS:  And can you -- can you repeat

16      that question?

17    BY MS. THOMPSON:

18      Q.  Sure.  Is it relevant to your assessment of

19    whether or not the use of force was justified, that's

20    described in Paragraphs 25 to 27, that people in the

21    crowd were saying, "fuck ICE"?

22           MS. HEDGES:  Same objections.

23           THE WITNESS:  So I just want to make sure

24      I'm -- I'm understanding your question, if you're

25      asking me that we deployed less -- we deployed less

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1 lethal because of these words.  Is that -- is that

2 where -- is that the question?  I just want to make

3 sure I'm answering correctly.

4 BY MS. THOMPSON:

5 Q. **Well, I'm asking you if it's relevant to a**

6 **determination whether the use of force was justified or**

7 **not, that people were saying, "fuck ICE"?**

8 MS. HEDGES:  Object to form.

9 THE WITNESS:  It potentially could be

10 relevant.

11 BY MS. THOMPSON:

12 Q. **How?**

13 A. So you have to take the totality of the

14 circumstances at -- at hand.  And so depending on the

15 level of aggression and -- and directed threats to my

16 agents, that would be a factor, maybe not the factor.

17 Q. **Do you consider the term "fuck ICE" to be a**

18 **threatening term?**

19 A. No, ma'am.

20 Q. **Since the Unified Command took over crowd**

21 **control at Broadview, have any federal officers assigned**

22 **to Broadview deployed chemical munitions there?**

23 MS. HEDGES:  Object to form.  Object to

24 foundation as to taking over.

25 THE WITNESS:  To the best -- to the best of my

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1          knowledge, no.
 2     BY MS. THOMPSON:
 3          Q.   Other than the events of September 27th of
 4     2025, that we just talked about that you were personally
 5     present for, are there any other events that occurred at
 6     Broadview that you've described in your declaration that
 7     you were personally present for?
 8               MS. HEDGES:  Object to form.
 9               THE WITNESS:  Can you repeat that question,
10          please?
11     BY MS. THOMPSON:
12          Q.   Sure.  Other than the events of September 27th
13     that we've talked about just a minute ago, are there any
14     other events that occurred at Broadview that you
15     describe in your declaration that you were personally
16     present for?
17               MS. HEDGES:  Object to form.  Asked and
18          answered.
19               THE WITNESS:  I believe I was at Broadview on
20          October 4th.
21     BY MS. THOMPSON:
22          Q.   Are there events on October 4th that occurred
23     at Broadview that you describe in your declaration?
24          A.   I'm sorry.  Can you repeat the question?
25          Q.   You know what?  I'm going to move on.  I'm
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1   going to direct you to Paragraph --
 2           MS. HEDGES:  Sorry.  Just to be clear, you're
 3       withdrawing the question?
 4           MS. THOMPSON:  Yeah, I'll withdraw the
 5       question.  Let's move on.
 6   BY MS. THOMPSON:
 7       Q.    I'm going to direct you to Paragraph 35.
 8           MS. HEDGES:  Which is in here.
 9           MS. THOMPSON:  Where are we at?
10           THE REPORTER:  Two hours, five minutes at
11       least.
12           MS. THOMPSON:  Okay.
13   BY MS. THOMPSON:
14       Q.    Let me know when you're there, sir.
15       A.    Okay.
16           MS. HEDGES:  Hold this one, just so we're
17       separate.  Uh-huh.
18   BY MS. THOMPSON:
19       Q.    Okay.
20       A.    Okay.
21       Q.    This morning, just somewhere separate.  Okay.
22   If you need to look at the affidavit to answer this
23   question, that's fine.  But when did the events occur
24   that you're referencing in Paragraph 35?
25       A.    This date's on October 3rd.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

Kentuckiana
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q.    In Paragraph 35?

2      A.    Sorry, you're asking the -- the date that what

3  I'm -- the date of Paragraph 35?

4      Q.    Yes.    Those events?

5      A.    Yes.

6      Q.    Okay.    That is October 3rd?

7      A.    To the best of my knowledge, yes.

8      Q.    Okay.    In Paragraph 35, you reference an agent

9  deploying two baton strikes on the motorcycle away from

10  the individual.    That's at the third to last and second

11  to last lines in Paragraph 35.    Do you see that?

12      A.    Yes.

13      Q.    What's the basis for your understanding that

14  the agent deployed baton strikes away from the

15  individual?

16      A.    I'm sorry?

17      Q.    Sure.    What's the basis for your understanding

18  that in the events you described in Paragraph 35, the

19  agent deployed motorcycle -- deployed baton strikes away

20  from the individual?

21      A.    I don't remember if it was a use of force

22  report that I read or if it was in a -- an event report.

23      Q.    Are you relying on a report for the

24  information you've included in Paragraph 35?

25            MS. HEDGES:    Object to form.





Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                THE WITNESS:  Yes.
 2    BY MS. THOMPSON:
 3         Q.   I am going to direct your attention to
 4    Paragraph 41.  Paragraph 41 through 42 describe some
 5    events that occurred where, as you describe in this
 6    declaration, there was a collision and then there were
 7    people that converged at three separate locations near
 8    the scene of the shooting.  And I'm paraphrasing what
 9    those Paragraphs say, but that's what those -- in
10    general terms, that's the events that are describing
11    this -- in these two Paragraphs 41 and 42, right?
12              MS. HEDGES:  Object to form.  Document speaks
13         for itself.
14              THE WITNESS:  Yes.
15    BY MS. THOMPSON:
16         Q.   Were you present on the scene for any of the
17    events that are described in Paragraphs 41 and 42?
18         A.   No, I was not present.
19         Q.   Do you know what neighborhood of Chicago or
20    what neighborhood anywhere in the Northern District of
21    Illinois, these events that are described in 41 and 42
22    occurred?
23              MS. HEDGES:  Object to form and foundation.
24              THE WITNESS:  I don't recall.
25    BY MS. THOMPSON:
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.    I mean, your declaration references the

2  Chicago Police Department.  So is it your assumption

3  this happened in Chicago?

4         MS. HEDGES:  Same objections.

5         THE WITNESS:  Yes.

6  BY MS. THOMPSON:

7    Q.    What information are you relying on for the

8  information that you've included in Paragraphs 41 and

9  42?

10    A.    I -- when -- during this event, we actually

11  had an air -- a helicopter providing aerial support. And

12  so I was watching this feed live as it was -- as it was

13  unfolding.

14    Q.    Did the helicopter capture all of the events

15  that are described in Paragraphs 41 and 42?

16         MS. HEDGES:  Object to form and foundation.

17         Lack of foundation.

18         THE WITNESS:  To the best of my knowledge, no.

19  BY MS. THOMPSON:

20    Q.    I mean, when did the -- when in this series of

21  events did the helicopter start providing video?

22         MS. HEDGES:  Same objections.

23         THE WITNESS:  If I remember correctly, it was

24         after the -- the incident.  It's already when we

25         had three separate locations.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. THOMPSON:

    Q.   So this describes a collision and then people converging at these locations.  And it's your testimony that there -- the helicopter got there after people were converging at these three locations?

        MS. HEDGES:  Object to form.  Foundation.

        THE WITNESS:  I'm saying I don't recall

      exactly when the helicopter got there.  I don't

      recall the helicopter capturing.  I don't recall

      exactly at which point or moment in time the

      helicopter got to this -- to this event.

BY MS. THOMPSON:

    Q.   And I didn't mean to cut you off.  I'm sorry. Finish your --

    A.   That -- that's okay.

    Q.   -- answer.  Sorry about that.  The --

        MS. HEDGES:  Did you have anything else to

      say?

        THE WITNESS:  Not at this time.

BY MS. THOMPSON:

    Q.   The collision that's described in Paragraph 41, have you seen any video or heard any audio of any of the events that are described in Paragraph 41?

        MS. HEDGES:  Objection to form.  Compound.

        THE WITNESS:  I have not, because it's under

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

Kentuckiana
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1          investigation.

2    BY MS. THOMPSON:

3          Q.    **Does any audio or video exist to your**

4    **knowledge of those events?**

5               MS. HEDGES:  Same objection.

6               THE WITNESS:  I -- I don't recall exactly what

7          evidence was able to -- what evidence we have

8          specifically for this event.

9    BY MS. THOMPSON:

10         Q.    **So for the information you're providing for**

11   **Paragraph 41, is that coming from reports that you've**

12   **reviewed?**

13              MS. HEDGES:  Object to form.

14              THE WITNESS:  Some initial reporting, yes.

15   BY MS. THOMPSON:

16         Q.    **When you say "initial reporting," what do you**

17   **mean?**

18         A.    The case is still under investigation.  So

19   there is no finalized document.

20         Q.    **So have you looked at draft documents related**

21   **to those events?**

22              MS. HEDGES:  Object to form.

23              THE WITNESS:  I can't recall exactly

24         what -- which documents I reviewed specifically for

25         this event.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  BY MS. THOMPSON:

2      Q.    For Paragraph 42, you say in that first

3  sentence, that 200 rioters converged at three separate

4  locations.  Do you see that?

5      A.    Yes.

6      Q.    How have you determined that 200 --

7  approximately 200 people or rioters converged?

8      A.    Rough estimation based on what I was able to

9  see on the video feed that was provided at the time.

10     Q.    Is that your estimate?

11     A.    Yes.

12     Q.    Are you -- you're relying on your own counting

13 versus someone else's counting?

14     A.    I don't recall if it's just on my observation

15 or if I read anything else that would've informed me of

16 such.  I can't recall.

17     Q.    Is it possible that your counting of 200

18 people includes people that were moving between

19 locations, so they got double counted or triple counted?

20         MS. HEDGES:  Object to form.  Vague.

21         THE WITNESS:  During an involving situation

22     it's difficult to get an exact count, at best we

23     can do is get a general estimate on the size of the

24     crowd that's there.

25 BY MS. THOMPSON:



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1     Q.   You're not able to tell whether you're double

2  or triple counting some people?

3         MS. HEDGES:  Object to form.

4         THE WITNESS:  I -- I don't believe I was

5    double or triple counting people.

6  BY MS. THOMPSON:

7     Q.   I don't want to misstate your earlier

8  testimony, but I think you told me that you would define

9  a violent rioter as someone who is threatening or

10  potentially threatening CBP personnel.  Is that -- have

11  I misstated your testimony or is that right?

12         MS. HEDGES:  Objection to form.

13         THE WITNESS:  Can you repeat that again?

14  BY MS. THOMPSON:

15     Q.   Well, let me just ask you again.  You used the

16  term rioters in the -- in Paragraph 42; is that right?

17     A.   In Paragraph 42, yes.

18     Q.   Yeah.  What leads you to describe the people

19  that converged as rioters?

20     A.   If I remember correctly, there's a couple of

21  things.  The one -- one example that comes to mind is

22  people throwing projectiles at us.  The other example

23  that comes to mind is people attempting to cause damage

24  to our vehicles.

25     Q.   Anything else?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1       A.   The other example of that that comes to mind

2 is people impeding and obstructing.

3       Q.   **Impeding and obstructing what?**

4       A.   Entry and exit of that location.

5       Q.   **And are you talking about entry and exit of**

6 **all three of these locations?**

7       A.   Yes.

8       Q.   **I mean, this -- these events occurred over**

9 **multiple city blocks; is that right?**

10          MS. HEDGES:  Object to form.

11          THE WITNESS:  I don't recall the exact

12     distance, but it did.  It -- it did occur

13     over -- there was distance between each location,

14     correct.

15 BY MS. THOMPSON:

16       Q.   **There's -- is it your testimony that 200**

17 **people were -- well, let me ask you this: Is there any**

18 **other -- anything else that you observed that led you to**

19 **conclude that there was approximately 200 people who**

20 **were rioters, besides throwing projectiles, damaging**

21 **vehicles, and impeding and obstructing?**

22          MS. HEDGES:  Object to form.

23          THE WITNESS:  Not that I can recall at the

24     moment.

25 BY MS. THOMPSON:

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**KENTUCKIANA**
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

 1      Q.   And is it your testimony that from what you

 2   saw, you observed approximately 200 people, each of whom

 3   were either throwing projectiles, damaging vehicles or

 4   impeding and obstructing?

 5           MS. HEDGES:  Object to form.  Misstates

 6       testimony.

 7           THE WITNESS:  To the best of my knowledge.

 8   BY MS. THOMPSON:

 9      Q.   And I just want to make sure we have a clear

10   record.  To the best of your knowledge, your answer is

11   yes?

12      A.   Yes.

13      Q.   Okay.  For the people who were impeding and

14   obstructing, how were they impeding and obstructing?

15      A.    If I remember correctly, like I mentioned,

16   they were blocking our entry and exit from each

17   location.

18      Q.   Meaning were they -- you're saying that there

19   were people who were -- the -- let me ask that question

20   in a better way.  The people that you're describing as

21   impeding and obstructing, were those people who were

22   impeding and obstructing the actual roads in that area?

23           MS. HEDGES:  Object to form.

24           THE WITNESS:  In some cases, yes.

25   BY MS. THOMPSON:

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   Were there other areas that they were impeding

2    and obstructing besides roads?

3    A.   I'm trying to -- I'm trying -- I'm sorry.  I'm

4    trying to recall the events of that day.  I know they

5    were definitely impeding our freedom of movement,

6    whether it was all on roads, I don't recall if it was

7    all specifically on roads.

8    BY MS. THOMPSON:

9    Q.   Were there also people gathered who were not

10   rioters?

11            MS. HEDGES:  Object to form.

12            THE WITNESS:  I can't say for certain.

13   BY MS. THOMPSON:

14   Q.   Were there children?

15   A.   I don't remember seeing any children.

16   Q.   Were there people moving through the area who

17   lived and worked there?

18   A.   I can't say for certain.

19            MS. HEDGES:  Object -- sorry.  Object to form

20       and foundation.

21   BY MS. THOMPSON:

22   Q.   Were there people waiting for the bus?

23            MS. HEDGES:  Same objections.

24            THE WITNESS:  I can't say for certain.

25   BY MS. THOMPSON:

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

Kentuckiana
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1     Q.    Were there people shopping in the area?

2         MS. HEDGES:  Same objections.

3         THE WITNESS:  I can't say for certain.

4  BY MS. THOMPSON:

5     Q.    You described in Paragraph 42, that less

6  lethal munitions were deployed.  What less lethal

7  munitions were deployed?

8     A.    I don't recall the exact -- the -- the

9  different less lethal munitions that were deployed

10  during that time.

11     Q.    Do you know who deployed them?

12     A.    Not that I can recall.  No.

13     Q.    You described there being three separate

14  locations.  Which of these locations were they deployed

15  at?

16     A.    I don't remember.  I believe all three

17  locations, but I can't say for certain.

18     Q.    Did you have any role in authorizing any of

19  those less lethal munitions?

20         MS. HEDGES:  Object to form.  Vague.

21         THE WITNESS:  Those agents and officers don't

22    -- don't need my authorization to deploy less

23    lethal munition.

24  BY MS. THOMPSON:

25     Q.    Well, did they get it?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1            MS. HEDGES:  Object to form.

 2            THE WITNESS:  They don't need it.

 3   BY MS. THOMPSON:

 4       Q.   I understand that they don't need it.  I'm

 5   asking if you gave it?

 6            MS. HEDGES:  Object to form.  Asked and

 7       answered.

 8            THE WITNESS:  I did not give it because it was

 9       not necessary.

10   BY MS. THOMPSON:

11       Q.   Right.  And you said that you were watching

12   some of these events in real time on the speed.  Were

13   you communicating with people at the scene during the

14   events you described in Paragraph 42?

15            MS. HEDGES:  I'm sorry.  Object to form.  You

16       said on the speed.

17   BY MS. THOMPSON:

18       Q.   On the scene.  Sorry.  If that wasn't -- you

19   didn't -- if that wasn't clear.

20       A.   I personally was not communicating with

21   individuals at the scene.

22       Q.   Were you communicating with people about these

23   events who weren't at the scene?

24       A.   Yes.

25       Q.   Who were you talking with?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1            MS. HEDGES:  Object to form.  Just exclude

2     from your answer any information that would reveal

3     a privilege such as law enforcement privilege or

4     classified information.

5            THE WITNESS:  If I remember correctly, I was

6     speaking to my special ops commander and my

7     operations commander.

8  BY MS. THOMPSON:

9     Q.   And are you excluding information from that

10  answer following your attorney's advice about protecting

11  the privileges she described?

12     A.   No.

13     Q.   Did you authorize deadly force at the scene of

14  the events that you're describing in Paragraph 42?

15            MS. HEDGES:  Object to form and foundation.

16            THE WITNESS:  I did not because it's

17     not -- it's not needed.

18  BY MS. THOMPSON:

19     Q.   Did you communicate to anyone during these

20  events that you authorized deadly force in response to

21  what occurred in the events you described in Paragraphs

22  41 and 42?

23            MS. HEDGES:  Object to form.

24            THE WITNESS:  I don't remember having to do

25     that.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

Kentuckiana
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. THOMPSON:

Q.   Do you know whether the uses of force that occurred, as you described in Paragraph 42 of your declaration, were justified under Customs and Border Protection policies?

MS. HEDGES:  Object to form.

THE WITNESS:  I have not been made aware that they're not.

BY MS. THOMPSON:

Q.   And in your opinion, were the munitions that were deployed, as you described in Paragraph 42, a justified use of force?

MS. HEDGES:  Object to form.

THE WITNESS:  Yes.

BY MS. THOMPSON:

Q.   And do you have any information that you're relying on to conclude that that force was justified, other than the information that you've provided in your declaration?

MS. HEDGES:  Object to form.

THE WITNESS:  Not that I can recall, no.

BY MS. THOMPSON:

Q.   In Paragraph 42, you describe items being thrown at agents.  When in the course of the four hours that you describe in Paragraph 42 were items thrown?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      A.   I don't remember exactly when.  What I
2  remember, it seemed it was continuous throughout the
3  duration of those four hours.
4      Q.   **Were traffic cones continuously thrown, over**
5  **that four-hour period?**
6           MS. HEDGES:  Object to form.
7           THE WITNESS:  I don't remember if they were.
8  BY MS. THOMPSON:
9      Q.   **Were agents forcefully pushed continuously,**
10  **over that four-hour period.**
11           MS. HEDGES:  Object to form.
12           THE WITNESS:  I can't say for certain that
13      they were.
14  BY MS. THOMPSON:
15      Q.   **Were items thrown continuously, over those**
16  **four hours, at all three locations?**
17           MS. HEDGES:  Object to form.  Asked and
18      answered.
19           THE WITNESS:  To the best of my knowledge,
20      yes.
21  BY MS. THOMPSON:
22      Q.   **Do you have any information about what objects**
23  **were thrown continuously over those four hours, besides**
24  **glass bottles and traffic cones?**
25           MS. HEDGES:  Object to form.

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                THE WITNESS:  I don't recall.
 2    BY MS. THOMPSON:
 3        Q.    As you were talking with the people you
 4    described speaking with over the course of these events,
 5    did you receive any information that CBP agents at the
 6    scene were taunting the crowd?
 7                MS. HEDGES:  Object to form.  Object to lack
 8         of foundation.
 9                THE WITNESS:  I did not.
10    BY MS. THOMPSON:
11        Q.    Is it ever permissible under Customs and
12    Border Protection policies for Customs and Border
13    Protection personnel to taunt people?
14                MS. HEDGES:  Object to form.  Object to
15         foundation.  And you can answer, but any further
16         questions on that, I think are probably outside the
17         scope.
18                THE WITNESS:  I would say no.
19    BY MS. THOMPSON:
20        Q.    One of the things you said that -- well, let
21    me ask you this: Part of what CBP personnel are trained
22    to do is to engage in deescalation, do you agree, where
23    appropriate?
24                MS. HEDGES:  Object to form.
25    BY MS. THOMPSON:
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**Kentuckiana**
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
1        Q.    Do you agree?

2              MS. HEDGES:  Object to form.

3              THE WITNESS:  Yes.

4   BY MS. THOMPSON:

5        Q.    And do you agree with me that taunting a crowd

6   is not something that deescalates a situation?

7              MS. HEDGES:  Object to form.  Vague, as to

8        "taunting."

9              THE WITNESS:  Can you repeat the question?

10  BY MS. THOMPSON:

11       Q.    Sure.  Do you agree with me that taunting a

12  crowd is not behavior that deescalates a situation?

13             MS. HEDGES:  Object to form.  And I'll add a

14       foundation objection.

15             THE WITNESS:  I agree.

16             MS. THOMPSON:  Where are we at on time?

17             THE REPORTER:  Two hours, 24 minutes.

18             MS. THOMPSON:  Okay.  I think let's take a

19       quick break now.  Is that good?  Just -- we just

20       need a couple of minutes, so --

21             MS. HEDGES:  That's fine.

22             MS. THOMPSON:  -- whatever.  Five minutes or

23       something short?

24             MS. HEDGES:  Okay.  We'll come back in five.

25             MS. THOMPSON:  Perfect.  Okay.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1          (A recess was taken.)

2          THE VIDEOGRAPHER:  Okay.  We're back on the

3     record.  The time is 1:07.

4          MS. THOMPSON:  One second.  Let me --

5          THE VIDEOGRAPHER:  We good to go?

6          MS. THOMPSON:  Oh, yeah.

7          THE VIDEOGRAPHER:  All right.

8  BY MS. THOMPSON:

9     Q.    Sir, I know you told me earlier in the

10  deposition that you had been at Broadview during

11  Operation Midway Blitz a couple of dates in September

12  and a couple of dates in October.  Other than the

13  September 27th incident, which we talked about in this

14  deposition, has anything we've discussed in this

15  deposition refreshed your memory about what specific

16  dates in September or October you were at Broadview for?

17          MS. HEDGES:  Objection to form.  Misstates

18     testimony.

19          THE WITNESS:  I think after our conversation,

20     I think I recall being there -- I think it was

21     October -- the day after the Illinois State Police

22     arrived at Broadview.

23  BY MS. THOMPSON:

24     Q.    That's when the unified command took over?

25     A.    Yeah.  So I think -- I believe, if I remember

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   correctly, I was there the day after, and like I

2   mentioned earlier, I was there on Tuesday.

3       Q.   Of last week?

4       A.   Of this -- of -- of this week.  Like Tuesday,

5   whatever Tuesday was, a couple of days ago, that was the

6   last time I was there.  I can't recall the -- I can't

7   recall of any other time I was at Broadview, since.

8       Q.   And I appreciate that clarification.  Thank

9   you.  Am I correct that other than what you've just

10  described, you were not present at Broadview for any of

11  the other events that are described in your declaration?

12      A.   Correct.  I think to the best of my knowledge,

13  the only event that I'm listing here is on that

14  September 27th date.

15      Q.   For the events that you describe in your

16  declaration that occurred somewhere else in the Northern

17  District of Illinois besides Broadview, were you

18  personally at the scene for any of the events that you

19  describe in your declaration?

20          MS. HEDGES:  Object to form and foundation.

21          THE WITNESS:  I don't -- no, ma'am.  I don't

22      believe so.

23  BY MS. THOMPSON:

24      Q.   Are there any other events that you describe

25  in your declaration where you were doing any kind of

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  live monitoring, like you described with the event we

2  were talking about before we broke, where you were

3  watching a live video feed, or having real time

4  conversations with other CBP personnel about something

5  that was going on in the field?

6      A.   Outside of this declaration, you're -- you're

7  asking?

8      Q.   And I'm -- I appreciate that clarification.

9  I'm asking about for the events that you describe in

10 your declaration --

11     A.   Okay.

12     Q.   -- that did not occur at Broadview, but

13 somewhere else in the Northern District of Illinois. Are

14 there any other events of what you describe in your

15 declaration, where you were doing any real time

16 monitoring of the events as they occurred --

17          MS. HEDGES:  Object to form.

18          MS. THOMPSON:  -- talking about the events

19     that are described in your declaration?

20          MS. HEDGES:  Object to form and foundation.

21          THE WITNESS:  I -- I don't recall.  I -- I'm

22     sorry.  I just want to make sure I'm

23     answering -- you're -- you're asking me that if

24     I've seen video footage outside of what's contained

25     in my declaration?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. THOMPSON:

    Q.   Let me start this question again.  We were talking before the break about events that occurred where, as they were happening, you were watching a live video feed of what was going on.  Do you remember those questions?

    A.   Yes, ma'am.

    Q.   And that is for an event that is described in your declaration, right?

    A.   Correct.

    Q.   For any of the other events that you do describe in your declaration, where you're setting out what occurred, are there any other events where similarly, while the events that you're describing in your declaration happened, you were watching a video feed of what was occurring?

        MS. HEDGES:  Object to form.

        THE WITNESS:  I believe so, if you can give me a minute?

BY MS. THOMPSON:

    Q.   Sure.  Tell me what that was.

    A.   Just give me a second.  Sorry.

    Q.   Take your time.

    A.   So the events I describe on Paragraph 48 that references a red Ford Escape, I remember viewing parts



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    of that.

 2         Q.   We'll come back to that, but tell me anything

 3    else.

 4         A.   If I remember correctly, I -- I believe I was

 5    able to see parts of what happened on Paragraph 58 and

 6    59.

 7         Q.   And those events concern something that

 8    happened on October 22nd of --

 9         A.   2025.

10         Q.   -- 2025?

11         A.   To the best of my knowledge.

12         Q.   Let me just -- let me ask you, since we're on

13    58 and 59.  You're saying that you watched some real

14    time footage of a member of the crowd threatening to

15    kill Chief Bovino and agents?

16              MS. HEDGES:  Object to form.  Document speaks

17         for itself.

18              THE WITNESS:  I remember watching parts of the

19         footage of that event.  I don't recall seeing that

20         specific event transpire.

21    BY MS. THOMPSON:

22         Q.   And the footage you're describing for that

23    event, were you watching that footage in real time?

24         A.   Yes.

25         Q.   Was that footage from a helicopter?
```



**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

1      A.    If I remember correctly.

2      Q.    Okay.  I think you were going through to look

3  for any other incidents described in the declaration

4  where you watched footage in real time.  So I'll let you

5  continue to do that, and tell me anything else you note

6  in that category?

7      A.    There was parts of the footage that I saw that

8  relate to the events described in Paragraph 61.  That

9  also happened, to the best of my knowledge, on October

10  22nd.

11      Q.    Those are events that happened near Home

12  Depot?

13      A.    Yes.  That's the vehicle accident.

14      Q.    And those events in Paragraph 61, or some

15  portion of them, you watched real time footage of?

16      A.    Portions.

17      Q.    Understood.  Okay.  Anything else?

18      A.    And portions of Paragraph 64 through 66.

19      Q.    Anything else?

20      A.    I believe so.  For now, I think those are the

21  ones that just come to mind.

22      Q.    Are there any other of the incidents that are

23  described in your declaration, where you had real time

24  conversations with other Customs and Border Protection

25  personnel about those events as they were occurring?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1                 MS. HEDGES:  Object to the form.
 2                 THE WITNESS:  Can you describe "other" CBP
 3        personnel?
 4   BY MS. THOMPSON:
 5        Q.   Sure.  Well, I think for the one incident we
 6   described before the break, you said that you were
 7   speaking with -- there were Customs and Border
 8   Protection personnel that you were talking to about
 9   those events, with the three different sites where
10   people gathered, as those events were occurring,
11   correct?
12        A.   Correct.
13        Q.   And I'm asking you if there's any other events
14   where -- described in your declaration, where similarly,
15   as those events were occurring, you were discussing
16   those events with other Customs and Border Protection
17   personnel, whatever -- whoever those people may be?
18                 MS. HEDGES:  Object to form.
19                 THE WITNESS:  I can't recall for each specific
20        event.  In general, those are the two -- those two
21        individuals, or those two positions, are the folks
22        that I would -- I would conversate with to get an
23        idea of what's happening as the situation was
24        unfolding.
25   BY MS. THOMPSON:
```



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   And as you say here today, are there any other

2    of the events described in your declaration, where you

3    can remember having conversations with those two folks,

4    as the events were happening, to get an understanding of

5    what was going on?

6              MS. HEDGES:   Object to the form.

7              THE WITNESS:   I can't -- I can't say for --

8        for certain.

9    BY MS. THOMPSON:

10   Q.   All right.   I want to direct your attention to

11   Paragraph 67 to 69 of your declaration.   Where did you

12   get the information about the events that you described

13   in Paragraphs 67 to 69?

14   A.   Can you give me a second?

15   Q.   Of course.   Yeah.   Read.   Let me know when

16   you're able to answer that question.

17   A.   Okay.

18   Q.   Where did you get the information?   Where did

19   you gain your understanding of the information that's in

20   Paragraph 67 to 69?

21   A.   For this specific event, I don't remember it

22   was a combination of a use of force report and/or

23   body-worn camera footage.

24   Q.   Do you believe you've seen body-worn camera

25   footage of the event -- at least some of the events that

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1   are described in 67 through 69?

2          MS. HEDGES:  Object to the form.  Asked and

3      answered.

4          THE WITNESS:  I believe so.

5   BY MS. THOMPSON:

6      Q.   When you say that there were -- the crowd had

7   approximately 50 individuals in it for these events,

8   were the 50 people in this crowd rioters?

9          MS. HEDGES:  Object to the form.

10          THE WITNESS:  I can't say for certain.  No.

11   BY MS. THOMPSON:

12      Q.   In Paragraph 68, when you say that "members of

13   the crowd ignored the warnings to stay back," how many

14   people were ignoring those warnings?

15          MS. HEDGES:  I'm sorry, just for my benefit,

16      where is that?

17          MS. THOMPSON:  Sure.  And I'm looking at

18      Paragraph 69.

19   BY MS. THOMPSON:

20      Q.   When you say in Paragraph 69 that "agents gave

21   repeated orders for the crowd to stay back, but members

22   of the crowd ignored these warnings," how many people

23   ignored those warnings?

24      A.   I can't say for certain.

25      Q.   Of the 50 people in the crowd here, did that

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

KENTUCKIANA
COURT REPORTERS

142

1    crowd include children?

2            MS. HEDGES:  Object to form and foundation.

3            THE WITNESS:  I don't recall seeing any

4    children.

5    BY MS. THOMPSON:

6      Q.  Did that crowd include people walking their

7    dogs?

8            MS. HEDGES:  Same objections.

9            THE WITNESS:  I don't recall seeing that.

10   BY MS. THOMPSON:

11     Q.  Did that crowd include elderly people?

12           MS. HEDGES:  Same objections.

13           THE WITNESS:  I don't recall.

14   BY MS. THOMPSON:

15     Q.  Have you seen body-worn camera footage of the

16   CS gas canisters described in Paragraph 69 being

17   deployed?

18     A.  Sorry.  I'm just trying to go through my

19   memory bank.

20     Q.  Understood.

21     A.  I -- I -- honestly, I don't recall if I

22   remember seeing that or reading that.

23     Q.  Were either of the gas canisters described in

24   Paragraph 69 launched over people's heads?

25           MS. HEDGES:  Object to form and foundation,

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

Kentuckiana
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1         since he said he doesn't remember seeing it.
 2              THE WITNESS:  I -- I -- again, I don't
 3         remember if I saw it or read it.  I can't recall.
 4    BY MS. THOMPSON:
 5         Q.   Do you know whether the CS gas canister
 6    deployments that you describe in Paragraph 69 were a
 7    justified use of force?
 8              MS. HEDGES:  Object to form and foundation.
 9              THE WITNESS:  And can you repeat that
10         question, please?
11    BY MS. THOMPSON:
12         Q.   Sure.  Were the deployment of the gas
13    canisters that are described in Paragraph 69 of your
14    declaration a justified use of force?
15              MS. HEDGES:  Same objections.
16              THE WITNESS:  Yes.  Nothing that -- nothing
17         has been presented that says otherwise.
18    BY MS. THOMPSON:
19         Q.   Were the use of force that's described in
20    Paragraph 69 of your declaration uses of force that are
21    justified under CBP policies?
22              MS. HEDGES:  Objection to form.  Asked and
23         answered.
24              THE WITNESS:  I have not been made aware of
25         anything that was found in violation of CBP policy.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. THOMPSON:

Q.   And were the uses of force that are described in Paragraph 69 justified under this court's temporary restraining order?

        MS. HEDGES:  Object to form.  And, also, I'll

        add foundation because I don't think he said it was

        a use of force in his view, so --

        THE WITNESS:  I have not been informed of any

        of these event -- any things on this event that

        would be in violation of the TRO.

BY MS. THOMPSON:

Q.   One thing you say in Paragraph 69 is that, "A pocket CS gas banister was deployed.  And after this deployment members of the crowd began to throw objects at the vehicle, including a pumpkin, and the expended CS gas canister."  Do you see that in Paragraph 69?

A.   Yes.

Q.   Do you agree with me that deploying gas in this situation did not allow CBP personnel to leave the scene?

        MS. HEDGES:  Object to form.  Vague.

        Foundation.

        THE WITNESS:  I'm sorry.  Can you repeat that?

BY MS. THOMPSON:

Q.   Sure.  Is it your understanding that the CBP

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  personnel in the events described in Paragraph 69

2  deployed this gas canister in an effort to leave the

3  scene?

4          MS. HEDGES:  That's a different question.

5          MS. THOMPSON:  That's the question I'm asking.

6          MS. HEDGES:  Okay.  You're withdrawing the

7      previous?

8          MS. THOMPSON:  I'll withdraw the previous.

9          MS. HEDGES:  Object to form and foundation.

10         THE WITNESS:  To the best of my knowledge,

11     yes.

12 BY MS. THOMPSON:

13     Q.   And do you agree with me that that didn't

14 result in them being able to leave the scene?

15         MS. HEDGES:  Object to form and foundation.

16         THE WITNESS:  To the best of my knowledge,

17     yes.

18 BY MS. THOMPSON:

19     Q.   In fact, this resulted in people at the scene

20 throwing objects at their car, correct?

21         MS. HEDGES:  Same objections.

22         THE WITNESS:  I don't know if it was a result

23     of that, but objects were thrown after the

24     deployment of it.

25 BY MS. THOMPSON:

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    Q.   Do you agree with me that deploying gas in the

2    situation described in Paragraph 69 did not deescalate

3    the situation?

4         MS. HEDGES:  Same objections.  Form and

5    foundation.

6         THE WITNESS:  I -- I don't agree with that

7    statement.

8    BY MS. THOMPSON:

9    Q.   Is it your belief that the first deployment of

10   gas that's described in Paragraph 69 resulted in this

11   situation being deescalated?

12        MS. HEDGES:  Same objections

13        THE WITNESS:  Too many variables to say,

14   ma'am.

15   BY MS. THOMPSON:

16   Q.   You're not able to say either way?

17   A.   Correct.

18        MS. HEDGES:  Same objections.

19   BY MS. THOMPSON:

20   Q.   Do you agree with me that there's evidence

21   that some of the times that gas has been deployed by CBP

22   personnel during Operation Midway Blitz has not resulted

23   in people dispersing?

24        MS. HEDGES:  Object to form and foundation.

25        THE WITNESS:  Can you repeat the question?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. THOMPSON:

    Q.    Sure.  I mean, do you agree with me that there's examples of times during Operation Midway Blitz where CBP personnel deploying gas into crowds has not resulted in people dispersing?

        MS. HEDGES:  Same objections.

        THE WITNESS:  I don't know if I agree with that statement.  No.

BY MS. THOMPSON:

    Q.    Well, this is an example of that, correct?

        MS. HEDGES:  Same objections.  And asked and answered.

        THE WITNESS:  Yeah.  Can you repeat -- can you repeat the last --

BY MS. THOMPSON:

    Q.    The events in Paragraph 69 are an example of a deployment of gas not resulting in people dispersing?

        MS. HEDGES:  Object to form, foundation. Asked and answered.

        THE WITNESS:  So there's different parts in this event where subsequent deployment did clear the way from my agency.  And I would say that it was effective.

BY MS. THOMPSON:

    Q.    Fair enough.  I appreciate that.  Let's move

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    on to Paragraph 70.  I have some questions about

2    Paragraph 70 to 72.

3         A.   Okay.  Okay.

4         Q.   **Where did you get the information that you're**

5    **relying on for -- what you included in Paragraph 70 to**

6    **72?**

7         A.   To the best of my knowledge, it was a use of

8    force report and body-worn camera footage.

9         Q.   **How many different body-worn camera --**

10   **body-worn cameras footage have you seen related to this**

11   **event?**

12        MS. HEDGES:  Object to form and foundation.

13        THE WITNESS:  Can't say for certain, ma'am.

14   BY MS. THOMPSON:

15        Q.   **In Paragraph 72 when you say that "a less**

16   **lethal munition was deployed," what less lethal munition**

17   **was deployed?**

18        A.   If I remember correctly -- and again, it's

19   difficulty sometimes to -- to -- to tell the difference

20   between CS gas or smoke, but it was some type of

21   munition that was deployed from a canister that created

22   a -- a pillowy smoke of -- of dust in the air.

23        Q.   **For the crowd of 20 to 30 individuals that you**

24   **described as gathering for the events in Paragraph 71,**

25   **how many of those 20 to 30 individuals were preventing**

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    the agents from leaving the area?

 2              MS. HEDGES:  Object to form.

 3              THE WITNESS:  Again, from what I -- what I

 4         remember based on my declaration, I believe I state

 5         to approximately 20, 30 individuals preventing -- I

 6         believe, to the best of my knowledge, that it was

 7         20 to -- potentially 20 to 30 individuals

 8         preventing them, but I can't say for certain.

 9    BY MS. THOMPSON:

10         Q.   And it's your testimony that each one of those

11    20 to 30 people was preventing the agents from leaving

12    the area?

13         A.   I said I can't say for certain.

14         Q.   Do you know how many of them were --

15              MS. HEDGES:  Object to --

16    BY MS. THOMPSON:

17         Q.   -- preventing --

18              MS. HEDGES:  -- form.  Hang on.

19              THE WITNESS:  Sorry.

20              MS. HEDGES:  Asked and answered.  Go ahead.

21              THE WITNESS:  I can't say for certain.

22    BY MS. THOMPSON:

23         Q.   Okay.  Did that 20 to 30 people include

24    children?

25         A.   I don't remember seeing children at that
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    scene.
 2         Q.    Did it include elderly people?
 3              MS. HEDGES:  Object to foundation.
 4              THE WITNESS:  I don't remember seeing elderly
 5         people.
 6    BY MS. THOMPSON:
 7         Q.    Did it include anyone who was pregnant?
 8              MS. HEDGES:  Same objection.
 9              THE WITNESS:  I don't remember seeing anybody
10         that was there that was pregnant.
11    BY MS. THOMPSON:
12         Q.    Did it include anyone out walking their dog?
13              MS. HEDGES:  Same objection.
14              THE WITNESS:  I don't recall seeing that.
15    BY MS. THOMPSON:
16         Q.    Did it include anyone in their pajamas?
17              MS. HEDGES:  Same objection.
18              THE WITNESS:  I -- I don't recall.
19    BY MS. THOMPSON:
20         Q.    Did it include a guy in a banana suit?
21              MS. HEDGES:  Same objection.
22              THE WITNESS:  I don't remember seeing that.
23    BY MS. THOMPSON:
24         Q.    Were the CBP personnel on the scene for the
25    events you described in Paragraph 70 to 72 wearing
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1  identification?
 2           MS. HEDGES:  Object.  Foundation.  Lack of
 3       foundation.
 4           THE WITNESS:  I have not received any reports
 5       indicating that they weren't.
 6  BY MS. THOMPSON:
 7       Q.   Let's go to Paragraph 43.
 8           MS. THOMPSON:  Where we at with time?
 9           THE REPORTER:  2:46.
10           MS. THOMPSON:  Okay.  Thanks.
11           THE WITNESS:  You said 43?
12  BY MS. THOMPSON:
13       Q.   Yes.  Thank you.  Paragraph 43.  These events
14  in Paragraph 43 to 47 -- if you need to finish reading
15  to answer this question, that's fine.  But I'll tell you
16  that my first question is that -- is -- where you got
17  the information -- what the basis for your information
18  is that you included in Paragraphs 43 to
19  47?
20       A.   I believe it was through a -- a use of force
21  report.
22       Q.   Was the use of force that's described in these
23  Paragraphs justified?
24           MS. HEDGES:  Object to form.  Object to
25       foundation.
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1          THE WITNESS:  I have not been -- I have not

2     been informed otherwise.

3  BY MS. THOMPSON:

4     Q.    Was the use of force described in Paragraphs

5  43 to 47 justified under this Court's temporary

6  restraining order?

7          MS. HEDGES:  Object to form and foundation.

8     Calls for a legal conclusion.

9          THE WITNESS:  I have not been informed that it

10    has.

11 BY MS. THOMPSON:

12    Q.    Do you know how the handheld CS gas that's

13 described in Paragraph 45 was used, as you say in that

14 Paragraph?

15    A.    If you can give me a second so I --

16    Q.    Sure.

17    A.    -- can read it?

18         MS. HEDGES:  And I'm going to object based on

19    form and foundation.

20         THE WITNESS:  And I'm sorry.  What was the

21    question one more time?

22 BY MS. THOMPSON:

23    Q.    Sure.  My question was, in Paragraph 45, at

24 the end, you say handheld CS gas was used.  And my

25 question is: How was it used?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    A.   I don't recall how it was used.

2    Q.   **Do you know where it was deployed?**

3         MS. HEDGES:  Object to form.

4         THE WITNESS:  I do not recall.

5  BY MS. THOMPSON:

6    Q.   **You say in Paragraph 45 that the crowd ignored**

7  **hand signals directing them to stand aside.  What were**

8  **those hand signals?**

9    A.   I don't recall exactly what those signals

10  were.

11    Q.   **Am I correct that you haven't seen any video**

12  **or photographs of the events that you've described in**

13  **Paragraphs 43 to 47?**

14         MS. HEDGES:  Object to form.  Compound.

15         THE WITNESS:  I'm sorry.  Repeat the question.

16  BY MS. THOMPSON:

17    Q.   **Sure.  Am I correct that you haven't seen any**

18  **video or photographs of the events that you describe in**

19  **Paragraph 43 to 47?**

20         MS. HEDGES:  Same objections.

21         THE WITNESS:  I -- I -- I don't agree with

22         that statement, ma'am.  I'm not -- I don't -- I

23         don't recall if -- I don't recall if I remember

24         reviewing footage for this specific event.

25  BY MS. THOMPSON:

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q.   Understood.  Have you seen any photographs of

2    these events in 43 to 47?

3      A.   I don't recall seeing any photographs.

4      Q.   One of the things that you note in your

5    declaration was that -- and I'm looking at Paragraph 46,

6    that after handheld CS gas was used, which you described

7    in Paragraph 45, in Paragraph 46, someone kicked the CS

8    grenade toward the agents and then picked it up and

9    threw it striking a vehicle.  Do you see that?

10      A.   Yes.

11      Q.   Why was -- why did you note in this

12    declaration that that's something that happened at this

13    event?

14          MS. HEDGES:  Object to the form.

15          THE WITNESS:  And you ask, why did I note it?

16  BY MS. THOMPSON:

17      Q.   Yes.  Why is it included in your declaration?

18      A.   I was trying to best describe the situation as

19    I understood it.

20      Q.   I mean, is it a concern that when -- is it a

21    concern for you that when CS gas was used at these

22    events that someone in the crowd picked up the canister

23    and threw it towards the agents?

24          MS. HEDGES:  Object to form.  Vague as to

25    "concern."

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1          THE WITNESS:  It is worrisome when somebody
2      throws any objects at my agents.
3  BY MS. THOMPSON:
4      Q.   And is it worrying for you that when officers
5  -- when CBP personnel deploy gas canisters, that someone
6  in the crowd could pick up those canisters and throw
7  them somewhere else?
8          MS. HEDGES:  Object to form and foundation.
9          THE WITNESS:  Potentially.
10  BY MS. THOMPSON:
11      Q.   I mean, that is a -- that is a risk with using
12  CS gas, that those canisters could end up impacting
13  people that were not the intended target of the gas,
14  correct?
15          MS. HEDGES:  Same objections.  Calls for
16      speculation.
17          THE WITNESS:  And -- and are you saying that
18      from -- and can you please clarify on that?
19      Because I want to make sure I'm answering your
20      question.  So are you saying that the deployment
21      from an agent or are you -- are you talking about
22      an agitator in the crowd?
23  BY MS. THOMPSON:
24      Q.   I appreciate that clarification.  So I -- I
25  want to make sure my question's clear.  Is it a concern

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    for you that once an agent deploys CS gas, that gas

 2    might end up impacting somebody that was not the

 3    intended target of it?

 4            MS. HEDGES:  Same objections.

 5            THE WITNESS:  That is -- there are

 6        unintentional deployments.  So is it a concern?

 7        Yes.

 8    BY MS. THOMPSON:

 9        Q.    I mean, that is a risk with using CS gas.

10    We agree, right?

11            MS. HEDGES:  Same objections.

12            THE WITNESS:  There's multiple risk involved.

13    BY MS. THOMPSON:

14        Q.    And that's one of them.

15            MS. HEDGES:  Same objections.  Asked and

16        answered.

17            THE WITNESS:  Yes.

18    BY MS. THOMPSON:

19        Q.    I want to go back to Paragraph 58 and 59.  You

20    told me that this was an event where you think at least

21    part of this, you saw some footage in real time; is that

22    right?

23        A.    Just a second.

24        Q.    Sure.

25        A.    58 and 59?
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

Kentuckiana
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1      Q.    Yep.

2      A.    That is correct.

3      Q.    Why were you watching these events in real

4 time?

5          MS. HEDGES:  Objection to form.  And to the

6      extent your answer might include any law

7      enforcement privileged information or classified

8      material, don't answer.  But otherwise, answer.

9          THE WITNESS:  And the question was, why was it

10     important for me to -- to review this?

11 BY MS. THOMPSON:

12     Q.    I appreciate -- what I'm asking is: You told

13 me that you watched at least some of the events that are

14 described in Paragraph 58 and 59 in real time, correct?

15     A.    Correct.

16     Q.    And my question is: At the time you were

17 watching those events, why were you watching them?

18         MS. HEDGES:  Same objection and instruction.

19         THE WITNESS:  It'd be no different than when I

20      watch anything else in any other time, to help me

21      gain a better situation understanding of -- of what

22      my men and women are encountering.

23 BY MS. THOMPSON:

24     Q.    I'm going to direct you to Paragraph 64 to 66.

25 You told me that at least some of these events were also

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1  events that you watched some real time video of; is that

2  right?

3      A.   Correct.

4      Q.   Do you have any other basis of information --

5  basis for the information that you provided in your

6  declaration in Paragraph 64 to 66?

7      A.   I don't recall if it was just video footage

8  and/or if I read any reports.

9      Q.   Do you have any other sources of information

10 for what you included in Paragraph 64 to 66?

11         MS. HEDGES:  Object to form.  Asked and

12     answered.

13         THE WITNESS:  I don't recall.

14 BY MS. THOMPSON:

15     Q.   In the use of force that you described

16 occurring in the events that you described in Paragraph

17 64 to 66, do you know whether that use of force was

18 justified?

19         MS. HEDGES:  Object to form and foundation.

20         THE WITNESS:  I have not been informed

21     otherwise.

22 BY MS. THOMPSON:

23     Q.   In Paragraph 64, this is an incident in which

24 at least the first deployment of gas was initially

25 ineffective, correct?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1              MS. HEDGES:  Object to form.  Asked and
 2         answer -- or I'm sorry.  Object to form and
 3         foundation.
 4              THE WITNESS:  Correct.
 5    BY MS. THOMPSON:
 6         Q.   The less lethal munitions that you describe in
 7    Paragraph 66, what were those less lethal munitions?
 8         A.   I don't recall all the various less lethal
 9    munitions that might have been deployed during that
10    time.
11         Q.   And do you know how they were deployed?
12              MS. HEDGES:  Object to form and foundation.
13              THE WITNESS:  I don't recall.
14    BY MS. THOMPSON:
15         Q.   Do you know who they were deployed toward?
16              MS. HEDGES:  Same objections.
17              THE WITNESS:  I don't recall.
18    BY MS. THOMPSON:
19         Q.   Have you discussed any of the events that
20    occurred that you describe in Paragraph 64 through 66
21    with Chief Bovino?
22         A.   So this is the event that I'm reading as
23    I -- as it refreshed my memory that I shared.  This was
24    the one, the catalyst, that prompted the conversation of
25    hesitation on less lethal munitions.  That is a concern
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

1    of the TRO.  So I believe my conversation with Chief

2    Bovino was under that basis.

3         Q.    How was this event a catalyst for that?

4         A.    It's my belief that -- as I mentioned and what

5    I observed is my agents had plenty of opportunities to

6    use less lethal and they did not, which caused -- not

7    only did it compromise their safety, but it caused

8    damage to government equipment by the puncturing of

9    their tire.

10        Q.    Did anyone specifically tell you for these

11   events that officers didn't deploy less lethal munitions

12   because they were fearful about contempt?

13              MS. HEDGES:  Object to form.

14              THE WITNESS:  Yes.

15   BY MS. THOMPSON:

16        Q.    Who told you that?

17        A.    That was my conversation with the SRT

18   commander.

19        Q.    So this is the one event that you previously

20   described to me earlier where that occurred?

21        A.    Yes, ma'am.

22        Q.    Okay.  Thank you for clarifying that.  I

23   appreciate that.  In this situation, gas was eventually

24   deployed, correct?

25        A.    Yes.

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**KENTUCKIANA**
COURT REPORTERS

1      Q.  And what is the damage to the vehicle that

2  occurred in your view as a result of there being an

3  improper hesitation in this case?

4       MS. HEDGES:  Object to form.  Asked and

5    answered.

6       THE WITNESS:  Definitely a slashing of a tire.

7    If I remember correctly, there was graffiti on our

8    vehicle.  And I don't remember if there was any

9    vehicle dings and/or broken windows.

10      MS. THOMPSON:  What are we at?

11      THE REPORTER:  2:57:50.

12  BY MS. THOMPSON:

13      Q.  Okay.  Just one second.

14      A.  Are we done with that one?

15      Q.  I have one other thing that or --

16      A.  Yeah.  Go ahead.

17      Q.  Okay.  All right.  I know we're very close to

18  finishing here.  Two minutes, I think.  Sir, I think we

19  got two minutes.  So one of the things that you say in

20  your declaration is that -- and I want to just direct

21  you to Paragraph 73, that in your 23 years of service

22  with Border Patrol, you've never witnessed the level of

23  combativeness and level of violence -- sustained level

24  of violence directed at law enforcement personnel.  Do

25  you see that?

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1        A.    Yes.
 2        Q.    The activities that the border patrol has been
 3   conducting as part of Operation Midway Blitz in the
 4   Northern District of Illinois are different are
 5   different kinds of activities than customs and border
 6   protection usually undertakes, correct?
 7              MS. HEDGES:  Object to form and foundation.
 8              THE WITNESS:  I don't know if it's different.
 9        It's not common.
10   BY MS. THOMPSON:
11        Q.    Has any of the activity that you're aware of,
12   of any customs and border protection officer assigned to
13   Operation Midway Blitz violated Customs and Border
14   Protection policies?
15              MS. HEDGES:  Object to form and foundation.
16              THE WITNESS:  Not that I'm aware of.
17   BY MS. THOMPSON:
18        Q.    Do you have any concerns about the conduct of
19   any Customs and Border Protection officer at any point
20   during their involvement in Operation Midway Blitz?
21              MS. HEDGES:  Object to form.  Foundation and
22        outside the scope to the extent it's not about uses
23        of force in the operation.
24              THE WITNESS:  Nothing that has been brought to
25        my attention.
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



KENTUCKIANA
COURT REPORTERS

**502.589.2273 Phone**
**502.584.0119 Fax**
schedule@kentuckianareporters.com
www.kentuckianareporters.com

BY MS. THOMPSON:

Q.   Is it possible that the level of combativeness and violence that, in your words, you've witnessed as part of Operation Midway Blitz is a result of people being upset about the tactics of Customs and Border Protection as part of Operation Midway Blitz?

MS. HEDGES:  Object to form.  Foundation. Calls for speculation.

THE WITNESS:  And the question was again?

MS. THOMPSON:  Can you read it back?

THE REPORTER:  Yeah.  Oh, also it -- it just hit three hours.

BY MS. THOMPSON:

Q.   Okay.  So you can answer this question and then we're done.

A.   Okay.

(The requested question was read back.)

MS. HEDGES:  Same objections.

THE WITNESS:  I have not spoken to any of the individuals that displayed violence against my agents.

MS. THOMPSON:  I really appreciate your time this morning, sir.  Thank you.

THE REPORTER:  Before we go off the record, I know you guys want it rushed as soon as possible,



**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1    correct?  Just wanted to confirm.  And you would
 2    like the video with that?
 3         MS. THOMPSON:  Yes, please.
 4         THE REPORTER:  Would you like a copy of the
 5    transcript from the video?
 6         MS. HEDGES:  Yes, thank you.  As soon as
 7    possible.
 8         THE REPORTER:  E-Tran or hard copy?
 9         MS. HEDGES:  I'm sorry?
10         THE REPORTER:  E-Tran or hard copy?
11         MS. HEDGES:  The electronic copy.
12         THE REPORTER:  Okay.
13         MS. HEDGES:  Thank you.
14         THE REPORTER:  And also to your e-mail?
15         MS. HEDGES:  Yes.  Thank you.
16         MS. THOMPSON:  Mr. Parra, if you can take
17    that.
18         THE VIDEOGRAPHER:  I'll take us off the
19    record.  The time is 1:44.
20              (Deposition concluded at 1:44 p.m. CT)
21
22
23
24
25
```

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

```
 1              CERTIFICATE OF DIGITAL REPORTER

 2                    STATE OF ILLINOIS

 3

 4   I do hereby certify that the witness in the foregoing

 5   transcript was taken on the date, and at the time and

 6   place set out on the Stipulation page hereof, by me

 7   after first being duly sworn to testify the truth, the

 8   whole truth, and nothing but the truth; and that the

 9   said matter was recorded digitally by me and then

10   reduced to typewritten form under my direction, and

11   constitutes a true record of the transcript as taken,

12   all to the best of my skill and ability. I certify that

13   I am not a relative or employee of either counsel and

14   that I am in no way interested financially, directly or

15   indirectly, in this action.

16

17

18                              

19

20   Megan Weiner

21

22   MEGAN WEINER

23   DIGITAL REPORTER/NOTARY

24   MY COMMISSION EXPIRES: 06/27/2029

25   SUBMITTED ON: 11/01/2025
```

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

## Exhibits

**Exhibit 1_**
**Parra** 46:20
48:3,7,9,18
49:8 50:14,15,
23 51:2,12

**Exhibit 2_**
**Parra** 46:22
49:15,19,22,24
50:5,13,21
51:2,3

**Exhibit 3_**
**Parra** 52:11,14,
16,19 54:19
66:7,9 70:1

**Exhibit 4_**
**Parra** 64:18,19,
24,25

---

### 1

**1** 46:20 48:3,7,
9,18 49:8
50:15,23 51:2,
12

**100** 61:11

**10:03** 6:7

**10:45** 46:4

**10:59** 46:7

**12:01** 97:14

**12:18** 97:17

**12th** 74:16
75:5,13,21 76:2

**13** 49:16 56:22,
23 60:1,2,6,11
61:16

**14** 61:24 62:1
64:17 66:4,9,14
67:11

**15** 70:1,4,17
86:10

**16** 74:11,15,20,
23 75:25 76:8,
14,21 77:4,12,
18 79:16 80:4,

**16** 81:3

**17** 81:14,18,22
82:4,15,17
83:12,18 84:2,
3,8,17

**17th** 105:24

**18** 84:25 85:3,
18,19,25

**19** 86:5,16,19
91:3,14

**19th** 81:18,21
82:9 87:5,8,12,
24

**1:00** 28:11

**1:07** 133:3

**1:44** 164:19,20

---

### 2

**2** 46:22 49:15,
19,22,24 50:5,
13,21 51:3 60:6
61:18

**20** 148:23,25
149:5,7,11,23

**200** 121:3,6,7,
17 123:16,19
124:2

**2025** 6:6 55:10
57:13 74:17
75:5,14,21 76:2
81:18,21 82:9
87:5,12 92:10
105:25 108:11,
15 111:3 114:4
137:9,10

**21** 86:6,16,19
91:4,14

**219** 6:8

**22** 92:6,13,25
94:1,17,25
95:10,14

**22nd** 137:8
138:10

**23** 92:6,13 93:1
94:1,17,25
95:10,14

**161:21**

**24** 108:9,15,18,
25 109:5
132:17

**25** 57:9,14 58:4
108:19,22
111:23 112:10,
20

**25-CV-12173**
6:12

**25th** 27:2 95:1

**26** 109:10
110:23 111:12

**26th** 92:9

**27** 108:15,19,22
111:12,24
112:10,20

**27th** 27:2 28:10
57:13 72:4,5
108:11,15
111:3 114:3,12
133:13 134:14

**2:46** 151:9

**2:57:50** 161:11

---

### 3

**3** 52:11,14,16,
19 54:19 65:4,
7,17,24 66:7,9
70:1

**30** 148:23,25
149:5,7,11,23

**31st** 6:6

**32** 86:10

**35** 115:7,24
116:1,3,8,11,
18,24

**3rd** 115:25
116:6

---

### 4

**4** 64:18,19,25

**41** 117:4,11,17,
21 118:8,15

**119:22,23**
120:11 128:22

**42** 45:25 117:4,
11,17,21 118:9,
15 121:2
122:16,17
126:5 127:14
128:14,22
129:3,11,23,25

**43** 151:7,11,13,
14,18 152:5
153:13,19
154:2

**45** 152:13,23
153:6 154:7

**46** 154:5,7

**469** 49:16

**47** 151:14,19
152:5 153:13,
19 154:2

**48** 136:24

**481** 49:16

**482** 48:4

**4th** 114:20,22

---

### 5

**50** 141:7,8,25

**545** 48:4

**58** 137:5,13
156:19,25
157:14

**59** 137:6,13
156:19,25
157:14

---

### 6

**6** 82:19

**61** 138:8,14

**63** 48:5

**64** 138:18
157:24 158:6,
10,17,23
159:20

**66** 138:18
157:24 158:6,
10,17 159:7,20

**67** 140:11,13,20
141:1

**68** 141:12

**69** 140:11,13,20
141:1,18,20
142:16,24
143:6,13,20
144:3,12,16
145:1 146:2,10
147:16

---

### 7

**7** 82:19

**70** 148:1,2,5
150:25

**71** 148:24

**72** 148:2,6,15
150:25

**73** 161:21

**74** 97:21,23

---

### 8

**8:00** 28:11

**8:30** 57:14

**8th** 36:17

---

### 9

**9** 56:23,24 58:6
77:20

---

### A

**a.m.** 6:7 28:11

**ability** 42:6

**access** 8:12
110:7

**accident**
138:13

**accomplished**



**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

22:19

**accurate** 48:10,18 52:16, 21

**accurately** 79:11

**acronym** 11:18

**actions** 66:13 67:14,20

**activities** 30:3 31:9 107:1 109:14 162:2,5

**activity** 162:11

**actual** 124:22

**add** 132:13 144:6

**additional** 49:24 50:5,11 54:24 55:4,5 112:5

**address** 7:25

**addressed** 66:1

**advance** 18:21

**adversely** 97:25 98:4 106:8,18

**advice** 24:24 25:18 27:19 104:22 128:10

**aerial** 58:23 59:4,19 88:15 109:7 118:11

**affairs** 18:11 19:17,21 20:3

**affecting** 97:25 98:4 106:9,18

**affidavit** 115:22

**affirm** 7:16

**agencies** 16:4 18:8

**agency** 7:3 20:16 147:22

**agent** 103:8 116:8,14,19 155:21 156:1

**agent's** 19:7

**agents** 38:11 53:21 60:14,25 82:18 98:13 99:20 101:22 107:13 113:16 126:21 129:24 130:9 131:5 137:15 141:20 149:1,11 154:8, 23 155:2 160:5 163:21

**aggression** 113:15

**agitator** 155:22

**agree** 27:11 57:19 107:4 131:22 132:1,5, 11,15 144:18 145:13 146:1,6, 20 147:2,7 153:21 156:10

**agreement** 8:14

**agricultural** 12:12

**ahead** 59:7 97:19 149:20 161:16

**aim** 78:24 79:11

**air** 58:24 118:11 148:22

**Alexandra** 7:7

**allowed** 28:14

**altered** 103:21 104:5 105:10

**Amendment** 34:11 35:2,13 36:1,9 37:7,13

**amount** 28:20 90:10

**and/or** 140:22 158:8 161:9

**Angeles** 56:3

**announcements** 109:11

**answering** 10:15 113:3 135:23 155:19

**anyone's** 18:3

**Anytime** 38:10

**apologize** 84:18

**appears** 48:22 52:21

**applies** 49:9 51:6

**apply** 50:7

**appointment** 11:4

**approximately** 28:11 32:14 57:14 121:7 123:19 124:2 141:7 149:5

**area** 15:20 30:21 124:22 125:16 126:1 149:1,12

**areas** 12:12,19 40:13 125:1

**arrested** 73:12

**arrived** 133:22

**ascertain** 48:13

**aspect** 54:21

**aspects** 49:24 51:5

**assessment** 112:18

**assets** 15:20

**assigned** 13:22 16:1,13 20:20,22 33:9, 16 34:5 35:6 36:3,10 38:22 40:13,19 42:20 47:22 113:21

162:12

**assuming** 36:17 110:7

**assumption** 118:2

**attached** 18:13

**attacked** 60:14

**attempt** 72:9

**attempting** 122:23

**attempts** 60:16

**attend** 39:15 40:1

**attending** 41:24

**attention** 21:16 69:25 100:21 117:3 140:10 162:25

**attorney's** 128:10

**attorney-client** 34:19

**attorneys** 6:19 9:1

**attorneys'** 8:13

**audio** 46:14 75:20 82:7 87:2 119:22 120:3

**authority** 18:16 19:19 23:11

**authorization** 19:12 126:22

**authorize** 128:13

**authorized** 128:20

**authorizing** 18:21 19:3 126:18

**aware** 23:2 39:16 42:15 46:1 50:25

81:12 110:20 129:7 143:24 162:11,16

---

**B**

**back** 20:15 42:13,14 46:6 52:3 58:6 66:4, 9 84:19,21 91:3 97:16 101:8 102:24 103:1 108:7 132:24 133:2 137:2 141:13,21 156:19 163:10, 17

**background** 54:1

**banana** 150:20

**banister** 144:13

**bank** 142:19

**Banks** 23:23

**barrel** 79:4

**based** 48:13 56:25 57:3 72:11 77:5,9 98:11 100:5,17 121:8 149:4 152:18

**basically** 22:13 99:7

**basis** 24:25 40:3 98:3,9 99:25 116:13, 17 151:17 158:4,5 160:2

**Bates** 48:4 49:15 52:15

**baton** 116:9, 14,19

**beads** 63:4,7

**Bearcat** 109:12

**began** 8:8 36:5 38:22 83:23 98:13 144:14

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606


KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**begin** 7:20,24

**beginning** 46:11 48:6

**behavior** 60:19 132:12

**belief** 53:7 97:23 98:1,3,9 100:1,16 146:9 160:4

**believed** 99:20,25

**believes** 103:10

**benefit** 141:15

**bit** 13:2 33:3 34:2 44:2 97:19

**Black** 65:1

**Blitz** 13:22 14:3,13,24 15:21 16:1,7,13 17:23 18:4,7,20 19:3,10,19 20:12,20 21:3, 19 22:3,20 23:13,19 24:11 25:5,22 26:4,12 27:6 29:25 30:7 31:3,18 33:7,9, 15,16,22 34:5 35:7,20 36:4,11 38:16,21,23 39:5 40:19 41:3,17 42:19, 20 47:22 49:10 51:8,14,22 54:21 56:10,15 59:22 64:14 68:14,22 69:8, 21 70:24 71:11, 20 73:13,19,25 74:6 87:18 88:3,11,20 89:10 90:7,19 103:20 104:4 105:3,12 106:10,20 109:22 133:11 146:22 147:3 162:3,13,20 163:4,6

**blocking** 124:16

**blocks** 123:9

**blurred** 31:24

**Board** 23:23

**body-worn** 88:13,19,23 89:9 140:23,24 142:15 148:8,9, 10

**border** 11:18 12:3,18 13:5, 12,21 14:2 15:19 18:15 20:19,21 21:25 30:1,8 31:2,10, 17 32:4,10 33:10,17,23 34:4 40:12 47:15 48:10,19 49:9 50:1,7 51:5,6,13,20 55:10,12 77:13 82:17 84:9 93:7 94:18 103:19 104:3 105:2,10 106:9,18,25 129:4 131:12 138:24 139:7, 16 161:22 162:2,5,12,13, 19 163:5

**BORTAC** 93:8

**bottles** 130:24

**Bovino** 22:6,18 23:3,16,20 95:24 96:4 107:8 137:15 159:21 160:2

**Bovino's** 22:3 23:24

**Bowman** 7:11

**branch** 17:16

**break** 9:16,19 44:1 45:23 46:2 94:13 97:12 132:19 136:3 139:6

**breaks** 9:14

**briefings** 21:14

**bringing** 110:4

**broader** 22:16

**Broadview** 25:24 26:3,11 27:6,12,13,25 28:6,21 29:15, 21 62:9,13,15, 21 63:3 64:8,13 65:18,25 68:2,7 70:22 71:10,15, 25 72:15,21 73:8 74:17,19 75:5,13,20 76:2 81:17,21 82:8 87:4 92:9 108:11,14 111:3 113:21, 22 114:6,14,19, 23 133:10,16, 22 134:7,10,17 135:12

**broke** 98:15 135:2

**broken** 161:9

**Brooke** 7:5

**brought** 21:15 100:21,24 162:24

**BSSA** 60:3 61:14 62:2,8

**bullet** 79:5

**bullets** 69:7

**bullhorn** 109:16,23 110:4

**bullhorns** 110:8,10,17

**bus** 125:22

**— C —**

**called** 63:20

**calling** 64:14

**Calls** 53:18 152:8 155:15 163:8

**camera** 88:14, 19,23 89:9 140:23,24 142:15 148:8,9

**cameras** 72:8 73:2 88:19 148:10

**canister** 143:5 144:16 145:2 148:21 154:22

**canisters** 44:24 74:5 142:16,23 143:13 155:5,6, 12

**capture** 118:14

**capturing** 119:9

**car** 145:20

**career** 12:2,8 13:18

**carried** 72:12

**carry** 110:17

**carrying** 15:14

**case** 6:11 11:5 17:2 18:12 53:4,16 58:19 83:21 97:24 98:8 105:10,19 106:4,8,18 120:18 161:3

**cases** 124:24

**catalyst** 159:24 160:3

**category** 138:6

**caused** 160:6, 7

**causing** 98:7, 10

**CBP** 10:25 11:18,20 12:2 15:25 16:8,12

17:20 18:20 36:3,10 38:22 39:4 40:9,18,20 41:5 42:2,19 43:13,16,18 44:3,8,17,22 45:13 47:22 48:4 49:16 66:12 67:13,18, 25 68:25 70:6 82:13 97:25 98:4 100:16 102:20 109:15, 21 110:3,17 122:10 131:5, 21 135:4 139:2 143:21,25 144:19,25 146:21 147:4 150:24 155:5

**Central** 6:7

**Centro** 12:8,11

**certification** 41:25 43:15 44:7

**certifications** 42:16

**certified** 44:15, 23 45:3,13,15, 17

**certify** 43:18

**chain** 16:10 19:11 23:18

**chance** 45:9

**changed** 105:1

**characterizati on** 19:24 71:12

**chemical** 113:22

**Chicago** 6:9, 10 15:20 30:15, 19,22,23 54:3 117:19 118:2,3

**chief** 17:6 21:6 22:5,18 23:3, 15,19,22,23 34:13 95:24 96:4 107:8 137:15 159:21



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

160:1

**chiefs** 17:1

**children** 125:14,15 142:1,4 149:24, 25

**Cicero** 32:21, 24

**circumstance s** 47:20 113:14

**city** 30:14,18, 23 32:17,20,21 123:9

**clarification** 77:2,25 134:8 135:8 155:24

**clarify** 40:16 77:23 81:24 86:17 155:18

**clarifying** 160:22

**classified** 22:24 24:17 25:12 26:22 39:13 104:18 128:4 157:7

**classify** 61:1

**clear** 77:19 115:2 124:9 127:19 147:21 155:25

**clergy** 62:16 63:9,13,17,20, 25 65:10,16 69:5

**close** 161:17

**clothing** 63:25

**Club** 6:11

**collar** 63:10, 13,17

**collision** 117:6 119:2,21

**color** 53:21,24

**combativenes s** 161:23 163:2

**combination** 140:22

**command** 16:10,25 17:4 19:11 21:22,24 23:18 113:20 133:24

**commander** 8:3,4 9:7 11:17 14:12,19 15:5 99:2,20,24 100:18 128:6,7 160:18

**commercial-grade** 72:8 73:2

**Commissioner** 24:3,5,7

**common** 162:9

**commonly** 18:10

**communicate** 109:23 128:19

**communicate d** 58:22

**communicatin g** 127:13,20,22

**communicatio ns** 34:18,21 53:3,5 58:18

**comparison** 78:20

**compile** 76:24

**complete** 11:5 55:20 56:2 58:16 66:16,21 67:6

**completed** 54:5,20 55:1,9

**completion** 42:16

**comply** 78:6

**Compound** 46:15 51:23 75:22 79:1 87:6 119:24 153:14

**compromise** 160:7

**concern** 99:9 100:21,24 101:2,3 137:7 154:20,21,25 155:25 156:6 159:25

**concerned** 99:21

**concerns** 101:21 162:18

**conclude** 111:11,25 123:19 129:17

**concluded** 164:20

**conclusion** 53:18 152:8

**conduct** 17:5 35:10 162:18

**conducted** 36:18,20 37:8 39:8

**conducting** 162:3

**cones** 130:4,24

**confirm** 8:22 164:1

**Confirming** 9:5

**Conor** 6:24

**consideration** 103:12

**constitute** 61:5

**constitutional** 36:23

**contained** 56:25 112:2 135:24

**contempt** 98:18,21 99:22 100:2,9 160:12

**continue** 138:5

**continuous** 130:2

**continuously** 130:4,9,15,23

**control** 16:3 38:17,23 113:21

**converged** 117:7 121:3,7 122:19

**converging** 119:3,5

**conversate** 139:22

**conversation** 99:7,14,17 100:17 102:4 133:19 159:24 160:1,17

**conversations** 23:5 100:5 101:5,21,24 135:4 138:24 140:3

**copies** 52:7

**copy** 28:15 47:1 48:10,18 52:13,16 54:11 164:4,8,10,11

**correct** 8:24 11:21,25 13:20, 22 14:13 15:9, 12,17 16:15 22:18 35:4 40:14 41:6 44:5,20,24 45:1 57:20 58:7 62:10,11 66:7 67:23 70:12 76:2,5 78:2 79:12,14,18,19, 23 85:5 92:11 103:14 108:12 123:14 134:9, 12 136:10 139:11,12 145:20 146:17 147:10 153:11, 17 155:14 157:2,14,15

158:3,25 159:4 160:24 162:6 164:1

**correctly** 43:24 87:1 102:4 113:3 118:23 122:20 124:15 128:5 134:1 137:4 138:1 148:18 161:7

**counsel** 6:14 7:3,4,20 8:23 24:24 25:18 27:19 28:12 34:13,19 42:4 43:4 53:4,5 94:7

**counsel's** 104:22

**count** 121:22

**counted** 121:19

**counting** 121:12,13,17 122:2,5

**couple** 9:10 26:8,9 28:5 48:6 101:7 122:20 132:20 133:11,12 134:5

**courses** 41:10, 18 43:13,18 44:7,12

**court** 6:5,13 7:14 53:12,14, 15

**court's** 144:3 152:5

**Courthouse** 6:8

**cover** 36:22 39:17 41:18

**coverage** 88:15

**covered** 25:19 38:25 39:9,23



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

40:2,5 43:5 50:14

**covers** 39:20

**created** 148:21

**crowd** 38:17, 23 62:3,15 72:24 77:19 80:17 98:13 112:10,21 113:20 121:24 131:6 132:5,12 137:14 141:6,8, 13,21,22,25 142:1,6,11 144:14 148:23 153:6 154:22 155:6,22

**crowds** 62:2 147:4

**CS** 44:24 69:14, 20 73:18,24 142:16 143:5 144:13,15 148:20 152:12, 24 154:6,7,21 155:12 156:1,9

**CT** 164:20

**Custom** 48:19 104:3 106:25

**customs** 11:17,23 12:18 13:5,12,21 14:2 20:19,21 21:25 25:24 30:1,8 31:2,10,17 32:4,10 33:10, 17,23 34:4 40:12 47:15 48:10 49:9 50:1,7 51:5,6, 13,20 55:10 77:13 84:9 94:18 103:19 105:2,10 106:9, 18 129:4 131:11,12 138:24 139:7, 16 162:5,12,13, 19 163:5

**cut** 119:13

**cycle** 38:1,8

**D**

**damage** 60:16 122:23 160:8 161:1

**damaging** 123:20 124:3

**Daniel** 6:10

**date** 26:6 29:11 36:19 38:12 98:12 101:12 102:14,15 116:2,3 134:14

**date's** 115:25

**dates** 26:8,11 28:5,6 29:10, 15,21 133:11, 12,16

**David** 65:1

**day** 6:6 29:2,6, 22,24 33:4 125:4 133:21 134:1

**days** 28:21 29:1 31:1,18,24 39:9,24 101:7 134:5

**deadly** 128:13, 20

**Dearborn** 6:9

**deciding** 40:4

**decisions** 16:11

**declaration** 11:5,7,11 27:1, 4 28:9,14,19 52:4,17,24 53:8,11,14,20 54:5,14,16,24 55:5,8,20,24 56:2,17,25 57:3,20,23 58:9,16 59:2 62:8 65:1 66:7, 16,22 67:6 69:4 70:15 74:11,16

95:23 96:2 97:6,20 108:8 111:14,24 114:6,15,23 117:6 118:1 129:4,19 134:11,16,19, 25 135:6,10,15, 19,25 136:9,12, 15 138:3,23 139:14 140:2, 11 143:14,20 149:4 154:5,12, 17 158:6 161:20

**declarations** 54:13,20 55:10, 16,19 56:7,14

**declined** 24:23

**deescalate** 146:2

**deescalated** 146:11

**deescalates** 132:6,12

**deescalation** 131:22

**defendants** 7:2,5

**define** 74:25 122:8

**definition** 61:10

**definitive** 31:25 89:18

**delegated** 19:6

**deliver** 22:14

**delivered** 36:14 43:10

**demonstrations** 60:3,13 61:14

**dense** 12:19

**Department** 49:25 50:6 118:2

**departments** 18:10

**depending** 113:14

**depict** 87:4

**depicted** 65:6

**depicting** 87:17

**depicts** 88:10 109:4

**deploy** 83:3,10 93:17 98:16,20 99:21 103:14 126:22 155:5 160:11

**deployed** 76:1 81:1 83:1,8 85:4,6,9,11,15 91:5,9,11 93:21 112:25 113:22 116:14,19 126:6,7,9,11,14 129:11 142:17 144:13 145:2 146:21 148:16, 17,21 153:2 159:9,11,15 160:24

**deploying** 101:22 116:9 144:18 146:1 147:4

**deployment** 80:18 143:12 144:14 145:24 146:9 147:17, 21 155:20 158:24

**deployments** 39:20 55:11 143:6 156:6

**deploys** 156:1

**deposed** 9:8

**deposition** 6:10 8:1 10:11, 19,22 11:11,14 21:20 27:12 28:20 46:13,14 48:3 61:22 62:10,14 95:22 96:3 97:5

**depending** 106:7,16 133:10,14,15 164:20

**Depot** 138:12

**describe** 22:11 82:3,17 85:18 91:4 92:13 93:7 97:5 114:15,23 117:4,5 122:18 129:23,25 134:15,19,24 135:9,14 136:12,24 139:2 143:6 153:18 154:18 159:6,20

**describes** 74:15 85:3 119:2

**describing** 37:5 54:20 72:14 74:23 75:25 77:12 81:2 117:10 124:20 128:14 136:14 137:22

**description** 32:17

**desert** 12:11

**detained** 68:7

**determination** 19:21 91:23 102:21 103:9 112:8 113:6

**determined** 121:6

**development** 22:15

**device** 79:7

**devolved** 60:4

**dictate** 22:13

**differ** 22:3

**difference** 148:19

**difficult** 121:22

**difficulty** 148:19



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

KENTUCKIANA
COURT REPORTERS

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**dings** 161:9

**direct** 7:22
56:23 69:25
74:10 81:13
92:5 97:20
103:4 115:1,7
117:3 140:10
157:24 161:20

**directed**
113:15 161:24

**directing**
56:21 153:7

**direction**
51:21 60:15
76:1 79:5

**directly** 23:19
24:8 66:12
67:13,19 70:6
82:13

**Dirksen** 6:8

**discharge**
82:21

**discharging**
82:18

**discipline**
19:20 20:2

**disclose** 26:20

**discuss** 97:4

**discussed**
21:20 81:22
95:23 96:3,7
107:7,24
133:14 159:19

**discussing**
139:15

**discussion**
8:9

**dispersal**
109:10,15,23
110:24

**disperse** 79:21
95:9,13

**dispersing**
146:23 147:5,
17

**displayed**

163:20

**distance** 79:22
123:12,13

**distinguish**
62:2

**distinguishing**
72:8

**District** 6:13
59:21 68:13,21
70:23 71:19
117:20 134:17
135:13 162:4

**divided** 15:2
41:10

**Division** 6:14
11:20,24

**doc** 53:20

**document**
10:13 31:8
48:3,8 49:15,
16,18 52:14
53:1 54:10
57:15 58:21
64:25 65:1 66:5
67:21,25 68:6,
11,20 69:6,13,
19 73:17,23
74:4 75:13 76:3
95:4 117:12
120:19 137:16

**documents**
10:10,11,21
11:2,13 46:12,
18 51:4,19
73:11 120:20,
24

**dog** 150:12

**dogs** 142:7

**Dominique** 7:9

**Donald** 54:7

**double** 121:19
122:1,5

**draft** 120:20

**dressed** 65:9,
15,23,24

**driveway** 76:2

**drone** 90:6

**drones** 88:14

**duration** 130:3

**dust** 148:22

**duties** 21:25
57:2 58:10,15

---

**E**

**e-mail** 164:14

**E-TRAN** 164:8,
10

**earlier** 46:10
52:4 62:6,14
91:24 108:10
122:7 133:9
134:2 160:20

**Eastern** 6:14

**easy** 62:2

**effect** 48:20
51:13

**effective**
147:23

**effort** 145:2

**EI** 12:8,11

**elderly** 142:11
150:2,4

**electronic**
164:11

**elements** 16:3,
8,9

**Elizabeth** 7:1

**else's** 121:13

**employee**
20:17

**employees**
20:17

**encompassed**
37:10

**encompasses**
17:3

**encounter**
13:13 14:5

**encountering**
13:7 14:4 53:22
54:2 157:22

**end** 22:12,14
152:24 155:12
156:2

**enforce** 105:11

**enforcement**
11:23 22:23
24:16 25:1,12,
24 26:21 30:3
31:9 39:12
66:13 67:14,20
97:25 98:5
103:21 104:5,
17 106:9,19
107:1 109:14
128:3 157:7
161:24

**enforces**
105:2

**engage** 131:22

**engaged** 61:3,
8

**ensure** 15:5,6
17:18,19

**ensures** 17:16

**ensuring** 17:3

**enter** 53:16

**entered**
105:18,24
106:3

**entire** 16:6
32:24

**entry** 123:4,5
124:16

**equipment**
17:4 72:11
109:17 160:8

**Escape** 136:25

**estimate** 29:18
90:2,13,24
121:10,23

**estimation**
121:8

**et al** 6:11

**event** 57:6,9
58:2,3 66:25
67:1,16,17 70:9
75:10,11 82:6
87:1,24 92:18,
22 94:13 98:12
99:6,12 101:11,
14,15,20 102:5,
7,10,12,15,17,
18 116:22
118:10 119:11
120:8,25
134:13 135:1
136:8 137:19,
20,23 139:20
140:21,25
144:9 147:21
148:11 153:24
154:13 156:20
159:22 160:3,
19

**events** 17:10,
22 26:25 57:12
59:10,21 60:14
74:15,20,23
75:4,13 81:2,17
82:3,14 84:17
85:18 86:15
87:17 88:18
91:24 92:12,16,
19,25 94:25
95:9,21,23
96:1,3 97:4
101:25 108:13,
18 109:5
110:22 112:9
114:3,5,12,14,
22 115:23
116:4,18 117:5,
10,17,21
118:14,21
119:23 120:4,
21 123:8 125:4
127:12,14,23
128:14,20,21
131:4 134:11,
15,18,24 135:9,
14,16,18 136:3,
11,13,14,24
137:7 138:8,11,
14,25 139:9,10,
13,15,16 140:2,
4,12,25 141:7
145:1 147:16
148:24 150:25



**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**KENTUCKIANA**
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

151:13 153:12,
18 154:2,22
157:3,13,17,25
158:1,16
159:19 160:11

**eventually**
160:23

**Everett** 6:8

**evidence**
106:6,17 120:7
146:20

**evolving** 82:6
109:1

**exact** 26:6,8
28:24 30:16
36:19 90:10
101:12 121:22
123:11 126:8

**EXAMINATIO
N** 7:22

**examples**
103:18 104:2,
13,25 105:8,14
147:3

**exception**
102:6

**exclude** 25:13,
19 34:21 39:13
58:17 104:16
108:2 128:1

**excluded**
25:17

**excluding** 53:4
128:9

**excuse** 43:17
99:19

**execution**
22:17

**executive**
24:16,25 25:11
108:3

**exhibit** 46:20,
22 48:3,7,9,18
49:8,15,19,22,
24 50:5,13,14,
21,23 51:2,12
52:11,14,16,19
54:19 64:18,19,

24 66:3,7,9
70:1

**exhibits** 46:18
52:3

**exist** 120:3

**exists** 48:11

**exit** 123:4,5
124:16

**expended** 79:8
144:15

**experiences**
54:2

**expertise**
43:22

**explain** 16:5
37:11 60:10

**explanation**
78:21

**extent** 22:22,
25 26:20 34:18
39:11 42:24
48:13 157:6
162:22

**eyes** 8:13

---

**F**

**facilities** 60:3
61:15,19,21

**facility** 25:24
26:4 27:13 62:9
71:15 72:15

**fact** 8:10 96:18
145:19

**factor** 103:16
113:16

**factors** 83:17

**Fair** 147:25

**fall** 20:5,9

**falls** 17:20
20:15 35:17

**familiar** 10:12
30:14,22 32:16
48:24 49:2
63:24

**fashion** 66:2

**feared** 98:20

**fearful** 160:12

**fearing** 98:17

**federal** 113:21

**feed** 118:12
121:9 135:3
136:5,16

**feel** 10:6 57:25

**field** 30:1,8,11
31:2,10,16
32:4,9 35:17
36:2,24 37:16,
21 39:1,3 40:8,
11,19 41:6,11,
12,25 43:12,13,
14 53:22 70:23
71:10,18 72:10,
19 110:5 135:5

**filmed** 87:11

**finalized**
120:19

**find** 99:7

**fine** 8:14,15,21
9:2,14,16 10:1
115:23 132:21
151:15

**finish** 94:9
119:14 151:14

**finished** 10:5,7

**finishing**
161:18

**firearm** 78:19,
22,24 79:10,12

**firearms** 79:3

**fired** 80:4

**firm** 8:18

**five-page**
64:25

**folks** 8:25 17:3
47:3 139:21
140:3

**follow** 24:24
46:9 74:13

**footage** 58:23
59:4,19 87:11
88:14,19,23
89:9,25 90:6,
11,18,22 109:8
135:24 137:14,
19,22,23,25
138:4,7,15
140:23,25
142:15 148:8,
10 153:24
156:21 158:7

**force** 10:25
17:10,16,18,19,
21,22,24 18:21
19:4,12,21
35:10,13,17
36:1,24 37:16,
21 39:1,3 40:8,
11,20 41:11,12,
25 43:12,13,14
47:16,21 48:11,
19 49:8,25
50:7,22 51:6,
14,21 59:9
60:24,25 61:3,4
66:15 67:15
70:8 75:11
76:7,13,20,23
77:4,11 83:11,
17 84:2,7
85:20,22,24
87:1 91:13,18
92:2,22 93:25
94:4,16 102:20,
22 103:9,13,14
109:2 111:2,4,
11,17,23 112:1,
9,19 113:6
116:21 128:13,
20 129:2,12,17
140:22 143:7,
14,19,20 144:2,
7 148:8 151:20,
22 152:4
158:15,17
162:23

**forcefully**
130:9

**Ford** 136:25

**form** 12:4,14,
21 13:8 14:6,
20,25 15:11,16,
22 16:16 17:11,

25 18:5,22
19:13,23 20:4,
13,23 21:4,12
22:4,21 23:8,14
24:2,14 25:2,8,
25 26:13,17
27:21 28:2
30:4,13 31:4,22
32:12 33:1,24
34:6 35:8,21
36:6,12 37:1,18
38:3,18 40:6,15
41:13,19 42:1,
23 43:7,20
44:4,18 45:6
46:15 47:17
48:12,21 49:3,
11 50:2,16,24
51:9,23 52:25
53:17 54:8,22
55:3,13,22
56:4,11 57:5,15
58:11,17 59:23
60:21 61:6
62:17,22 63:5,
21 64:3,10
65:11 66:17,23
67:7,21 68:3,15
69:9 70:11,18
71:1,21 72:17
73:4,14 74:24
75:15,22 76:9,
15 77:6,14,22
79:1,13,24 80:8
81:6,23 82:10,
22 83:13 84:4,
10 85:7 86:1
87:6,13,20
88:4,12,21 89:4
90:8,20 91:16,
25 92:20 93:12
94:19 95:3
96:5,14 97:7,9
98:22 99:5,15
100:3,10,19
101:18 102:2
103:2,15,23
105:4,20
106:11 107:3,9,
17 108:1,16
109:6,18,25
110:6,12 111:5
113:8,23 114:8,
17 116:25
117:12,23
118:16 119:6,



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

24 120:13,22
121:20 122:3,
12 123:10,22
124:5,23
125:11,19
126:20 127:1,6,
15 128:1,15,23
129:6,13,20
130:6,11,17,25
131:7,14,24
132:2,7,13
133:17 134:20
135:17,20
136:17 137:16
139:1,18 140:6
141:2,9 142:2,
25 143:8,22
144:5,21 145:9,
15 146:4,24
147:18 148:12
149:2,18
151:24 152:7,
19 153:3,14
154:14,24
155:8 157:5
158:11,19
159:1,2,12
160:13 161:4
162:7,15,21
163:7

**found** 20:15
143:25

**foundation**
13:23,24 14:6,
14,20 17:25
18:5 19:14
20:4,13 22:4,22
23:14 24:2 25:8
28:23 29:12
30:4,20 31:12
33:1,11 34:6
38:18 40:15
41:13,20 42:23
43:20 44:4,19
45:6 50:2 51:9
54:8 59:23
62:24 64:4
68:15 69:10
72:17 73:20
79:24 80:9,19
83:4,14 84:11
85:7 86:1 87:21
90:9 93:13
94:4,20 100:11
106:11 109:18

110:6,19 111:5,
17 112:14
113:24 117:23
118:16,17
119:6 125:20
128:15 131:8,
15 132:14
134:20 135:20
142:2,25 143:8
144:6,22 145:9,
15 146:5,24
147:18 148:12
150:3 151:2,3,
25 152:7,19
155:8 158:19
159:3,12 162:7,
15,21 163:7

**foundations**
82:22

**four-hour**
130:5,10

**Fourth** 34:11
35:2,13 36:1,9
37:7,13

**frame** 28:8

**free** 57:25

**freedom** 125:5

**front** 54:19
56:18 72:23

**fuck** 112:12,21
113:7,17

### G

**Gaffney** 6:24

**gain** 140:19
157:21

**garment** 64:6,
9

**gas** 44:24
69:14,20 73:18,
24 74:5 142:16,
23 143:5,12
144:13,16,18
145:2 146:1,10,
21 147:4,17
148:20 152:12,
24 154:6,21
155:5,12,13

156:1,9 158:24
160:23

**gathered**
125:9 139:10

**gathering**
148:24

**gave** 95:19
127:5 141:20

**general** 21:13
109:14 117:10
121:23 139:20

**generally**
21:10

**genuinely**
63:16

**Gilbert** 7:9

**give** 7:17 9:10
10:14 24:23
31:24 45:9
53:12,14 57:8
72:4 90:13,24
101:9,12,15
103:18 104:2,
13,19,21 105:8
106:16 109:15
110:24 127:8
136:18,22
140:14 152:15

**glass** 130:24

**good** 6:16,17,
20 45:22 47:11
75:3 97:11
132:19 133:5

**govern** 50:1

**government**
60:16 110:13
160:8

**governs** 51:13

**graffiti** 161:7

**greater** 30:21

**Gregory** 22:3

**grenade** 154:8

**grooves** 79:8

**groups** 60:13

**guidance**

24:12 25:6

**guns** 68:12

**guy** 150:20

**guys** 52:7
163:25

### H

**Hagy** 7:12

**hand** 7:14
113:14 153:7,8

**handful** 26:7
30:10

**handheld**
152:12,24
154:6

**Hang** 149:18

**hangs** 64:1

**happened**
37:6 41:17
75:20 81:21
82:8 87:4 88:10
98:12 101:13
102:17 118:3
136:15 137:5,8
138:9,11
154:12

**happening**
136:4 139:23
140:4

**happy** 10:14

**hard** 164:8,10

**Harvard** 95:1

**Headline** 6:11

**heads** 142:24

**hear** 9:23 64:14

**heard** 9:1,12
94:3 119:22

**hearing** 64:16
111:16

**Hedges** 7:1
8:17,21 9:2,4
12:4,14,21
13:8,15,23
14:6,14,20,25

15:11,16,22
16:16,20 17:11,
25 18:5,22
19:5,13,23
20:4,11,13,23
21:4,12 22:4,21
23:8,14,21
24:2,6,14 25:2,
8,25 26:13,17,
19 27:7,21
28:2,7,12,23
29:3,7,12,17
30:4,13,20
31:4,12,22
32:6,12 33:1,
11,18,24 34:6,
14,17 35:8,21
36:6,12 37:1,18
38:3,18,24
39:10 40:6,15,
22 41:7,13,19
42:1,4,23 43:7,
20 44:4,10,18,
25 45:6,9,14,24
46:2,15 47:17,
24 48:12,21
49:3,11 50:2,9,
16,24 51:9,15,
23 52:8,10,25
53:17 54:8,22
55:3,13,22
56:4,5,11 57:5,
15,24 58:11,17
59:5,7,13,23
60:21 61:6
62:17,22,24
63:5,11,21
64:3,10,21
65:11,19 66:5,
17,23 67:7,21
68:3,8,15,23
69:9,15,22
70:11,18 71:1,
12,21 72:17
73:4,14,20
74:1,7,24 75:6,
15,22 76:3,9,
15,22 77:6,14,
22 79:1,13,24
80:8,19 81:6,23
82:10,22 83:4,
13,19 84:4,10,
18,22 85:7,12
86:1,20 87:6,
13,20 88:4,12,
21 89:4,11,16,

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

22 90:3,8,14,
20,25 91:16,25
92:20 93:2,12,
18,22 94:2,7,
11,14,19 95:3
96:5,14,19,25
97:7 98:22
99:5,15 100:3,
10,19 101:18
102:2,23 103:2,
15,23 104:8,15
105:4,13,20
106:11,21
107:3,9,17,21
108:1,16 109:6,
18,25 110:6,12,
19 111:5,15
112:3,13,22
113:8,23 114:8,
17 115:2,8,16
116:25 117:12,
23 118:4,16,22
119:6,17,24
120:5,13,22
121:20 122:3,
12 123:10,22
124:5,23
125:11,19,23
126:2,20 127:1,
6,15 128:1,15,
23 129:6,13,20
130:6,11,17,25
131:7,14,24
132:2,7,13,21,
24 133:17
134:20 135:17,
20 136:17
137:16 139:1,
18 140:6 141:2,
9,15 142:2,8,
12,25 143:8,15,
22 144:5,21
145:4,6,9,15,21
146:4,12,18,24
147:6,11,18
148:12 149:2,
15,18,20 150:3,
8,13,17,21
151:2,24 152:7,
18 153:3,14,20
154:14,24
155:8,15 156:4,
11,15 157:5,18
158:11,19
159:1,12,16
160:13 161:4

162:7,15,21
163:7,18 164:6,
9,11,13,15

**held** 98:18,20
99:22 100:9

**helicopter**
59:20 87:11,19
88:11 90:18
109:8 118:11,
14,21 119:4,8,
9,11 137:25

**helmets** 73:8

**hesitated**
100:1,8

**hesitating**
100:17

**hesitation**
98:7,10 102:1
107:13 159:25
161:3

**Hilke** 6:20

**Hill** 7:6

**hit** 163:12

**hitting** 83:23

**Hold** 115:16

**holding** 63:4,7

**home** 20:16,21
138:11

**Homeland**
11:20,24 24:8
49:25 50:6

**honestly**
142:21

**hot** 99:8,11

**hour** 28:3
29:19,22 86:10
94:8

**hours** 29:19,22
32:14,19 89:9,
15 90:6,18
115:10 129:24
130:3,16,23
132:17 163:12

**House** 25:7

**hypothetical**

79:25

**I**

**ICE** 11:24 26:3
27:13 112:12,
21 113:7,17

**idea** 89:21
139:23

**identification**
46:21,23 52:20
64:20 151:1

**identified** 8:25
25:20 27:18
58:8 62:15 73:2

**identifiers**
72:11

**identify** 6:15
9:1 70:25 72:6

**ignoring**
141:14

**II** 41:12 43:13,
15

**Illinois** 6:9,14
25:24 54:7
59:22 68:13,22
70:23 71:19
117:21 133:21
134:17 135:13
162:4

**immigration**
11:23 25:23
30:2 103:21
104:5 105:2,11

**impact** 80:5,6,
17 107:7,10,24

**impacted**
107:2

**impacting**
155:12 156:2

**impeding**
123:2,3,21
124:4,13,14,21,
22 125:1,5

**important**
47:21 157:10

**improper**

19:22 102:1
161:3

**improperly**
100:16

**in-briefings**
38:12

**in-person**
99:16

**incident** 8:3,4
9:7 11:17
14:12,18 15:4
16:25 81:5,11
118:24 133:13
139:5 158:23

**incidents**
57:19,23 58:7
138:3,22

**include** 17:9,
23 18:20 19:3,
19 22:23 34:20
37:12,15 38:13,
14 142:1,6,11
149:23 150:2,7,
12,16,20 157:6

**included** 37:22
38:16 108:25
116:24 118:8
148:5 151:18
154:17 158:10

**includes** 39:17
121:18

**including**
42:24 144:15

**incorporated**
37:25 38:7

**increase**
104:10,14

**indicating**
68:25 74:16
77:16 91:20
151:5

**indication**
86:3

**individual**
65:21 80:25
103:8 116:10,
15,20

**individual's**
78:13,17

**individuals**
61:8 71:3 78:6
83:22 127:21
139:21 141:7
148:23,25
149:5,7 163:20

**ineffective**
158:25

**inform** 96:11,
13,18,23 99:4

**information**
24:17,22,25
25:12,17,19
26:22 39:13
50:14 53:6,12,
14 57:1 58:9,
14,21 59:1,3,
12,18 76:12,19
82:2 84:15
85:17,21 86:23,
24 91:22
104:16,18,23
108:3,4,24
111:10,13,25
112:1 116:24
118:7,8 120:10
128:2,4,9
129:16,18
130:22 131:5
140:12,18,19
148:4 151:17
157:7 158:4,5,9

**informed**
84:13 94:21
96:8 98:23
121:15 144:8
152:2,9 158:20

**initial** 120:14,
16

**initially** 158:24

**initiating** 17:24

**injunction**
53:9,16

**inside** 72:15

**instruct** 22:24
24:18 25:9 53:2

**instructed**

**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

**KENTUCKIANA**
COURT REPORTERS

**502.589.2273 Phone**
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

27:20 77:19

**instructing** 34:20

**instruction** 27:8 59:5,14 157:18

**instructions** 9:11 37:3 51:20

**intelligence** 21:3,5,9,11,14

**intended** 155:13 156:3

**intends** 79:23, 25

**interacting** 68:1

**interject** 57:24

**internal** 18:11 19:17,21 20:3

**interrupt** 13:1 28:12 34:17

**intersection** 95:1

**investigate** 18:16

**investigating** 18:14 81:4,10 84:16

**investigation** 120:1,18

**investigations** 17:24 19:18

**investigative** 18:16

**involved** 57:7, 9,12 58:2 156:12

**involvement** 162:20

**involving** 26:21 54:6 121:21

**issued** 42:16 101:6

**item** 63:24

**items** 129:23, 25 130:15

---

**J**

**Janssen** 8:11

**Janssen's** 8:19

**Jenkins** 7:5

**journalists** 70:7

**judge** 106:4

**judge's** 11:1

**jump** 97:19

**justification** 84:1

**justified** 76:8, 13 77:5,12 83:12 84:8 85:25 91:15 94:1,17 111:4, 12 112:1,9,19 113:6 129:4,12, 17 143:7,14,21 144:3 151:23 152:5 158:18

**justifies** 76:20

**justify** 83:17

**Justin** 7:6

---

**K**

**Kalupa** 7:3

**kicked** 154:7

**kill** 137:15

**kind** 18:7 22:13 88:9 101:11 134:25

**kinds** 44:2 162:5

**kinetic** 80:5,6, 17

**Kleinhaus** 6:22

**knowledge** 49:1,6 57:1,4 59:2 74:18,22 75:1 81:20,25 114:1 116:7 118:18 120:4 124:7,10 130:19 134:12 137:11 138:9 145:10,16 148:7 149:6

**Kristi** 6:11 24:9

---

**L**

**LA** 56:8,14

**lack** 13:23 80:19 87:21 94:4 100:10 110:19 112:13 118:17 131:7 151:2

**laid** 84:3 85:18

**landmarks** 32:22

**language** 112:11

**large** 60:13 98:13 101:17

**launched** 142:24

**launcher** 44:23 78:25

**launchers** 68:21

**launching** 45:18 76:1 79:17,21,22 80:4,16

**law** 8:17 22:23 24:16 25:1,11 26:21 36:23 39:12 97:25 98:5 104:17 105:3,11 128:3 157:6 161:24

**lawyers** 58:18

**lead** 66:11

111:8

**leadership** 16:11

**leads** 122:18

**leave** 144:19 145:2,14

**leaving** 149:1, 11

**led** 72:12 101:21 123:18

**legal** 34:12 37:21 39:18 53:18 152:8

**legally** 53:5

**lethal** 39:20 42:21 43:16,17 44:2,8,16 45:4, 12 82:18,21,25 83:10 85:3,6,9 91:4 93:8,11,15 98:8,17,20 101:22 107:14 113:1 126:6,9, 19,23 148:16 159:6,7,8,25 160:6,11

**level** 15:3,4,6 102:22 113:15 161:22,23 163:2

**levels** 15:2

**Lindsay** 7:12

**lines** 116:11

**listed** 37:15

**listen** 46:13

**listing** 134:13

**litigation** 52:18 53:2 54:6

**live** 118:12 135:1,3 136:4

**lived** 125:17

**location** 30:16 102:18 123:4, 13 124:17

**locations**

30:18 33:4 117:7 118:25 119:3,5 121:4, 19 123:6 126:14,17 130:16

**Locke** 7:11

**Loevy** 8:20

**logical** 94:7

**logistics** 16:19 17:2,7,15

**long** 28:1,6 29:16 32:9 39:3 89:24

**looked** 11:14 67:15,17 77:5 78:6 120:20

**loose** 16:25

**Los** 56:3

**louder** 13:2

**loudspeaker** 109:11,16,24 110:23

---

**M**

**made** 57:1 58:9,14 60:16, 25 81:12 109:11 129:7 143:24

**main** 11:2

**maintain** 16:3

**make** 7:24 8:15 9:21 10:4 43:23 91:22 102:10, 21 112:23 113:2 124:9 135:22 155:19, 25

**making** 16:12 103:9

**mark** 46:18 64:18

**marked** 8:13 46:20,22 48:2 49:14 52:14,19



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

64:19,24

marking 47:6

marksmanship 78:19

match 15:7

material 64:1 157:8

materials 10:15

matter 6:10

Mckinley 6:8

meaning 31:1 124:18

meaningfully 78:13,17 79:17

means 14:23 15:1 16:23 17:14

meant 27:15

mechanism 103:21

mechanisms 104:5 109:21

media 72:9

Megan 6:5

member 65:9, 16 70:25 137:14

members 70:7 71:3,9,14,17,24 72:3,6,12 73:3, 12,18,24 74:5 80:17 141:12, 21 144:14

memory 133:15 142:19 159:23

men 21:21,23 54:2 157:22

mentioned 18:7 22:5 124:15 134:2 160:4

methods 83:9

Michael 23:22

Midway 13:22 14:3,13,24 15:21 16:1,7,13 17:23 18:4,6,20 19:2,10,19 20:12,20 21:3, 19 22:3,20 23:13,19 24:11 25:5,22 26:4,12 27:6 29:25 30:7 31:3,18 33:7,9, 14,16,22 34:5 35:6,20 36:4,11 38:16,21,22 39:5 40:19 41:3,17 42:19, 20 47:22 49:10 51:7,14,22 54:21 56:9,15 59:22 64:14 68:14,22 69:8, 21 70:24 71:11, 20 73:13,19,25 74:6 87:18 88:3,11,20 89:10 90:7,19 103:20 104:4 105:3,12 106:10,20 109:22 133:11 146:22 147:3 162:3,13,20 163:4,6

mind 11:15 31:6 32:21,23 35:22 61:20 73:15 84:19 105:14 122:21, 23 123:1 138:21

minute 41:16 57:11 101:16 114:13 136:19

minutes 45:25 86:10 115:10 132:17,20,22 161:18,19

mirrors 16:25

Mischaracterizes 101:18

misconduct 18:15 20:15

mission 18:13 34:11 38:11

misstate 122:7

misstated 122:11

Misstates 105:4 111:6 124:5 133:17

mistaken 28:10 39:6 61:7 82:5 85:19

misunderstood 37:9

mobile 35:17 36:2,24 37:16, 21 39:1,3 40:8, 11,19 41:6,11, 25 43:12,13,14

Modified 105:17,23

moment 11:15 27:23 35:23 43:2 45:21 59:16 61:20 70:10 105:15 106:23 119:10 123:24

Monday 36:17

monitoring 135:1,16

morning 6:16, 17,20 8:1 9:12, 14 115:21 163:23

motorcycle 116:9,19

mountain 12:12

move 9:11,15 46:10 114:25 115:5 147:25

movement 83:23 125:5

moving 56:19 121:18 125:16

multiple 123:9 156:12

munition 39:20 44:16 126:23 148:16, 21

munitions 43:17,19 44:2, 8,13 45:4,12 82:18,21 83:1 85:4,6,9 91:5,7 93:9,11,15 98:8 101:22 113:22 126:6,7,9,19 129:10 159:6,7, 9,25 160:11

musician 43:17

## N

names 101:1

necessarily 81:7

neck 64:1

needed 128:17

neighborhood 117:19,20

Nicole 7:3

night 29:10,23

nighttime 29:24

Noem 6:11 24:9,12 97:6 107:25

nomenclature 78:18

Northern 6:13 59:21 68:13,21 70:23 71:19 117:20 134:16 135:13 162:4

note 138:5 154:4,11,15

notified 81:3,9

number 6:12 62:13 69:5

89:5,7

numbers 52:15

Numeral 48:6

numeric 48:5

numerous 100:25 101:1

## O

object 12:4,14, 21 13:8,23 14:6,14,20,25 15:11,16,22 16:16 17:11,25 18:5,22 19:13, 23 20:4,11,23 21:4,12 22:4,21 23:8,14 24:2,14 25:2,8,25 26:13,17 27:21 28:2,23 30:4, 13,20 31:4,22 32:12 33:1,24 34:6 35:8,21 36:6,12 37:1,18 38:3,18 40:6,15 41:13 42:23 43:7,20 44:4 46:15 47:17 48:12,21 49:11 50:2 51:9 52:25 54:22 55:3,22 56:4,11 57:5,15 58:11,17 59:23 60:21 61:6 62:17,22 63:5, 21 64:3,10 65:11 66:17,23 67:7,21 68:3,15 70:18 71:1,12, 21 72:17 73:4, 14 74:24 75:15, 22 76:9,15 77:6,14,22 79:13 80:8,19 81:6 82:10,22 83:4,13 84:4,10 85:7 86:1 88:12 90:8,20 91:25 92:20 93:12 94:4,19 95:3 96:5,14 97:7,8



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

98:22 99:5,15
100:3,10,19
101:18 102:2
103:2,15,23
105:4,20
106:11 107:3,9,
17 108:1,16
109:6,18,25
110:6,10,12
111:5,17 113:8,
23 114:8,17
116:25 117:12,
23 118:16
119:6 120:13,
22 121:20
122:3 123:10,
22 124:5,23
125:11,19
126:20 127:1,6,
15 128:1,15,23
129:6,13,20
130:6,11,17,25
131:7,14,24
132:2,7,13
134:20 135:17,
20 136:17
137:16 139:1,
18 140:6 141:2,
9 142:2,25
143:8 144:5,21
145:9,15
146:24 147:18
148:12 149:2,
15 150:3 151:2,
24 152:7,18
153:3,14
154:14,24
155:8 158:11,
19 159:1,2,12
160:13 161:4
162:7,15,21
163:7

**objection**
13:15 16:20
19:5 20:13 27:7
28:7 29:3,7,12,
17 31:12 32:6
33:11,18 41:19
42:1 44:18 45:6
47:24 49:3
50:16,24 51:15,
23 53:17 54:8
55:13 59:7,13
63:11 68:8
70:11 73:20

75:6 76:3,22
81:23 86:20
87:6,13,20
88:4,21 89:4,
11,16,22 90:14,
25 91:16 93:2
96:19 97:1
104:8 107:21
110:19 112:13
119:24 120:5
122:12 132:14
133:17 143:22
150:8,13,17,21
157:5,18

**objections**
23:21 24:6
38:24 40:22
41:7 44:10,25
45:14 50:9
65:19 68:23
69:9,22 74:1,7
83:19 85:12
93:18,22 94:2
105:13 106:21
111:15 112:3,
22 118:4,22
125:23 126:2
142:8,12
143:15 145:21
146:4,12,18
147:6,11
153:20 155:15
156:4,11,15
159:16 163:18

**objective** 15:7
79:1,24

**objectively**
103:10

**objectives**
15:7 22:12,16,
17,19 23:4

**objects** 130:22
144:14 145:20,
23 155:2

**observation**
121:14

**observations**
62:1

**observe** 80:5,
6,16

**observed**

58:23 59:4,19
123:18 124:2
160:5

**observers**
62:3 66:12
67:14,19 68:1,
7,12,20 69:7,
14,20

**observing**
109:7

**obstructed**
83:22

**obstructing**
95:1,6 123:2,3,
21 124:4,14,21,
22 125:2

**OC** 45:15

**occasion**
31:20

**occur** 115:23
123:12 135:12

**occurred**
59:21 74:16
75:5 87:18
102:13 114:5,
14,22 117:5,22
123:8 128:21
129:3 134:16
135:16 136:3,
13 159:20
160:20 161:2

**occurring**
108:14 136:16
138:25 139:10,
15 158:16

**October** 6:6
26:9 29:16,22
31:21,25
105:24 114:20,
22 115:25
116:6 133:12,
16,21 137:8
138:9

**offensive**
63:16

**offered** 43:18

**offers** 42:2
44:8

**office** 18:9,12
20:6,16,21
34:12 81:3,9
84:16

**officer** 44:22
77:23 103:8
162:12,19

**officer's** 19:7

**officers** 12:18
13:6,12,21 14:2
20:19,22 31:17
33:22 38:15
40:12,18,20
41:5,24 42:20
47:20 51:7,20
61:4 64:15 93:8
98:19 99:25
100:1 101:17
103:13 105:11
113:21 126:21
155:4 160:11

**official** 57:2
58:10,15 68:25

**operate** 13:6
16:14

**operating**
30:15

**operation**
13:22 14:3,12,
24 15:2,15,21
16:1,6,7,9,13,
15 17:7,23
18:4,6,8,20
19:2,10,19
20:12,20 21:3,
19 22:2,7,8,20
23:13,19 24:11
25:5,22 26:4,12
27:6 29:25 30:7
31:3,18 32:5
33:6,9,14,16,22
34:5 35:6,20
36:3,4,10
38:16,21,22
39:4 40:19
41:3,17 42:19,
20 47:22 49:10
51:7,14,22
54:21 56:9,15
59:22 64:14
68:14,22 69:8,
21 70:24 71:10,

19 73:12,19,25
74:6 87:18
88:3,11,20
89:10 90:7,19
103:20 104:4
105:3,12
106:10,19
109:22 133:11
146:22 147:3
162:3,13,20,23
163:4,6

**operational**
14:19,24 15:3,
5,6 16:7 18:18
22:7,16 23:11

**operationally**
16:2

**operations**
15:20 17:5
55:21 56:3
97:25 98:5
106:10,19
128:7

**operator** 80:25

**operators**
77:19 100:6,8

**opinion** 53:20
76:7 77:3,11
111:4 129:10

**opportunities**
160:5

**OPR** 18:12

**ops** 128:6

**option** 109:15

**oral** 51:19

**order** 11:1
44:16 54:4
66:16 97:24
98:4 104:7
105:1,9,18,24
106:8,17 107:2,
8,25 110:24
144:4 152:6

**orders** 24:12
25:6 106:3
109:16,23
141:21

**Oregon** 55:21



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**organizational** 16:24

**outlined** 50:22

**overhead** 87:19 90:18

**oversee** 16:6, 19 21:3,11

**overseeing** 17:9

**oversees** 17:16

**oversight** 14:19,24 15:5 16:7 17:22 18:18,19 19:18 21:14 22:6,7

**overwhelmed** 98:13 101:17

**P**

**p.m.** 28:11 57:14 164:20

**pages** 48:5,6 49:16

**paint** 22:13

**pajamas** 150:16

**Paragraph** 56:22,23,24 57:9,13 58:3,6 60:1,2,6,11 61:16,24 62:1 64:17 65:17 66:4,9,14 67:11 69:25 70:1,4,16 74:10,12,15,20, 23 75:25 76:8, 14,20,21 77:4, 12,18 79:16 80:3,16 81:3, 13,18,22 82:3, 15,17 83:12,18 84:2,3,8,17,25 85:1,3,18,19,25 92:6 94:25 95:10,14 97:21, 23 108:9,18,22, 25 109:5,10

**organizational** 110:23 111:12 115:1,7,24 116:1,3,8,11, 18,24 117:4 119:21,23 120:11 121:2 122:16,17 126:5 127:14 128:14 129:3, 11,23,25 136:24 137:5 138:8,14,18 140:11,20 141:12,18,20 142:16,24 143:6,13,20 144:3,12,16 145:1 146:2,10 147:16 148:1,2, 5,15,24 150:25 151:7,13,14 152:13,14,23 153:6,19 154:5, 7 156:19 157:14,24 158:6,10,16,23 159:7,20 161:21

**paragraphs** 86:5,16,19,24, 25 91:3,4,14 92:13,25 93:7 94:1,17 108:15 111:23 112:2,6, 10,20 117:9,11, 17 118:8,15 128:21 140:13 151:18,23 152:4 153:13

**paralegal** 8:10, 14,19

**paraphrasing** 117:8

**Parra** 6:10,17 7:13 8:4 9:7 164:16

**part** 11:17,20, 24 14:3,18 15:20 16:14,24 17:7 18:6,18 21:2,19 22:20 26:4 27:6 28:20 29:25 31:3,17

32:5 33:9,17 35:20 38:14 40:12,21 41:17 42:2 43:16 44:16 45:13 49:10 51:7 52:17 60:2 68:13,22 69:8, 20 70:4,24 71:9,10,19 73:12,18,24 74:6 77:5,18 102:20 103:20 105:3,11 106:10,19 110:17 131:21 156:21 162:3 163:4,6

**parts** 29:6 136:25 137:5, 18 138:7 147:20

**past** 26:5 27:25 32:10

**path** 77:20

**patrol** 15:19 18:15 23:23 82:17 93:7 161:22 162:2

**pause** 34:15

**pending** 6:12 9:18

**people** 44:15 61:3,11 64:14 65:23 72:24 73:2,8 78:9 79:21 94:24 95:6,9,13 112:10,20 113:7 117:7 119:2,4 121:7, 18 122:2,5,18, 22,23 123:2,17, 19 124:2,13,19, 20,21 125:9,16, 22 126:1 127:13,22 131:3,13 139:10,17 141:8,14,22,25 142:6,11 145:19 146:23

**people's** 142:24

**pepper** 45:16

**Pepperball** 44:23 45:17 68:12,21 75:25 78:25 79:16,20, 22 80:4,15

**Pepperballs** 80:7

**Perfect** 132:25

**period** 130:5, 10

**permissible** 131:11

**person** 65:6,9, 15,23 78:13,17 79:18,25 80:3, 15

**personal** 57:1, 3 59:2 62:1 74:22,25 81:20, 25

**personally** 57:12,22 58:2 74:19 82:16 86:15,17 92:14 108:21 114:4,7, 15 127:20 134:18

**personnel** 15:25 16:13 18:20 30:2,9 31:2,10 32:4,10 33:8,16 34:5 35:6 36:3,10 38:22 39:4 43:18 44:3 47:22 49:9 50:8 66:12 67:13,19 68:1 70:6 82:13 100:16 102:21 103:19 104:4 109:15,22 110:3,17 122:10 131:13,

147:5,17 149:11,23 150:2,5 155:13 163:4

**phone** 99:14

**photograph** 65:7,12,16,24

**photographs** 75:19 82:8 87:3 153:12,18 154:1,3

**physically** 25:23 58:2

**pick** 155:6

**picked** 154:8, 22

**piece** 22:16 34:8 35:9 63:25

**pillowy** 148:22

**plaintiffs** 6:19, 21,23,25 7:6,8, 10,11,12

**plastic** 79:7

**plenty** 160:5

**PLS** 45:18 78:12,18 79:6,7 81:1

**pocket** 144:13

**point** 9:16 10:12 40:24 61:17 80:11 87:4 119:10 162:19

**police** 18:10 118:2 133:21

**policies** 17:17 47:15 50:1,6,22 77:13 84:9 94:18 129:5 131:12 143:21 162:14

**policy** 10:25 17:18,21 43:16 48:11,19,24 49:1,6,8 51:6,

21 135:4 138:25 139:3,8, 17 144:19 145:1 146:22 147:4 150:24 155:51 161:24



**Kentuckiana Reporters**
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

12,22 102:20
103:12 143:25

**portion** 38:14
39:18 138:15

**portions** 56:19
57:2 138:16,18

**Portland**
55:21,24

**positions**
139:21

**possibility**
80:1

**potentially**
113:9 122:10
149:7 155:9

**PR** 45:18

**prayer** 63:4,7

**praying** 62:21
63:1

**precise** 78:19,
21,25

**precision**
78:12

**pregnant**
150:7,10

**preliminary**
53:9,16

**preparation**
11:3

**prepare** 10:18,
21 11:11,14
46:12,14 53:8
58:8 70:15

**prepared** 53:1

**preparing**
52:23 53:11,14

**prescribed**
40:8

**present** 25:23
30:1 41:22 43:8
57:22 82:14
108:13,17
114:5,7,16
117:16,18
134:10

**presented**
143:17

**preserve**
27:20

**press** 70:7,25
71:4,9,15,17,24
72:4,6,13 73:3,
9,12,18,24 74:5

**preventing**
148:25 149:5,8,
11,17

**previous**
60:20 145:7,8

**previously**
160:19

**primarily** 12:2
17:20

**principally**
12:11

**privilege**
24:16,17,25
25:1,11,12
34:20 128:3

**privileged**
22:24 26:21
39:12 53:5
104:17 108:3
157:7

**privileges**
25:19 27:19
104:23 128:11

**privy** 23:4

**procedures**
17:17

**PROCEEDING
S** 6:1

**process**
110:15

**procurement**
110:15

**produced** 53:1

**professional**
7:25 8:2 18:9,
12 20:6 21:18
81:4,10 84:16

**projectiles**

60:15 98:14
122:22 123:20
124:3

**prompted**
159:24

**property** 60:17

**protected**
104:23

**protecting**
128:10

**protection**
11:18 12:18
13:5,12,21 14:2
20:19,22 21:25
30:2,9 31:2,10,
17 32:4,10
33:10,17,23
34:4 40:12
47:15 49:9
50:1,7 51:5,7,
13,20 55:11
77:13 84:9
94:18 103:19
104:3 105:2,11
106:9,19 129:5
131:12,13
138:24 139:8,
16 162:6,12,14,
19 163:6

**Protection's**
107:1

**Protections**
48:10,19

**protesters**
13:7,14 72:15

**protests** 64:9

**provide** 34:10
51:4,21 55:19
88:15

**provided**
34:12 54:10,12,
15,16,23 55:6
109:8 111:13
121:9 129:18
158:5

**providing**
55:24 118:11,
21 120:10

**pumpkin**
144:15

**puncturing**
160:8

**purchased**
110:10

**purpose** 52:23
53:7,11,13

**purposes** 8:12

**pushed** 130:9

**pushing** 83:23

**put** 47:5 89:13,
18

---

**Q**

**qualification**
42:7

**qualifications**
25:10

**qualifies** 60:18

**question** 9:17
10:5,8,14,15
12:5,22 13:9
18:19,23,24
19:1,14 23:12
24:23 33:12
37:9 42:11,12,
14 43:23 46:9
48:7,9,16
49:18,20,21
50:17,21 53:6,
13 54:11,18
55:25 60:20
63:16 68:16
69:16 73:21
75:3 76:17
80:12,14 84:21
88:6 95:11,25
99:23 103:1,3,6
105:6 106:12
111:20 112:16,
24 113:2 114:9,
24 115:3,5,23
124:19 132:9
136:2 140:16
143:10 145:4,5
146:25 151:15,
16 152:21,23,
25 153:15

155:20 157:9,
16 163:9,14,17

**question's**
155:25

**questions**
21:8 27:18 42:8
52:5 54:10
56:17,20 74:11
131:16 136:6
148:1

**quick** 99:7,12
132:19

**quickly** 9:11,
15

---

**R**

**raise** 7:14

**ranges** 12:12

**reach** 94:7

**read** 42:13,14
56:20 70:1,2
74:12 81:14
82:6 84:21 85:1
86:6 92:6 96:23
102:23 103:1
105:17 106:1,2
112:4 116:22
121:15 140:15
143:3 152:17
158:8 163:10,
17

**reading** 84:19
142:22 151:14
159:22

**ready** 47:10

**real** 127:12
135:3,15
137:13,23
138:4,15,23
156:21 157:3,
14 158:1

**reasonable**
103:10,13

**recall** 19:15
26:6,8 27:1
28:20 29:8,13
30:16 31:23
32:1,22 33:3

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

36:15,19 37:19,
25 38:5 50:10
51:10,25 54:14
55:5,18,23
56:13 59:15
63:6,12 64:16
65:20 66:1
67:2,9 68:4,9,
24 69:11,23
70:20 71:22
72:7,10 73:10
74:2,8 75:16,23
77:10 82:24
83:6,9 84:5
85:8,16,23
87:7,14,15,23
88:22 89:6,12
90:10,21 91:8,
10,12 93:3,4,
14,19,23 95:5,
18,20 96:12,15,
16,21 97:2
98:11,14 99:2,3
101:1,4,9,12
102:12,15,18
107:12,18
109:1,2 111:16
117:24 119:7,9
120:6,23
121:14,16
123:11,23
125:4,6 126:8,
12 129:21
131:1 133:20
134:6,7 135:21
137:19 139:19
142:3,9,13,21
143:3 150:14,
18 153:1,4,9,23
154:3 158:7,13
159:8,13,17

**recap** 99:12

**receive** 131:5

**received** 21:9
24:12 25:6 36:4
58:24 77:15
84:15 86:2
91:19 94:5
151:4

**recent** 26:5
98:12 101:5,7

**recently** 72:1

**recess** 46:5
97:15 133:1

**record** 6:3,15
8:23 9:1 46:4,6
97:14,16
124:10 133:3
163:24 164:19

**recorded**
17:19 59:20

**records** 26:10,
16 27:5,17
30:25 31:5

**recruits** 38:9,
10

**red** 136:25

**refer** 8:2 20:21

**reference**
28:15 116:8

**referenced**
28:9 58:3,22

**references**
118:1 136:25

**referencing**
115:24

**referring** 60:5
61:14 70:8,14
79:3 103:5

**reflect** 26:10
27:5 30:25

**refreshed**
133:15 159:23

**refresher**
35:10,14 36:1,
2,19,22,25
37:17,24 39:4,
7,18 42:22

**refreshers**
34:12 35:16,18
37:3,21

**refused** 78:6

**reining** 23:24

**relate** 138:8

**related** 88:20
89:10 90:7,19
120:20 148:10

**relation** 54:3

**relevant** 53:15
112:8,18 113:5,
10

**relied** 58:9
59:1 66:21
70:15 85:20

**religious** 62:3
64:2 66:12
67:14,19 68:1,
7,12,20 69:7,
14,20

**rely** 82:2

**relying** 67:5
85:17,21 86:23
91:22 111:11,
25 116:23
118:7 121:12
129:17 148:5

**remain** 16:3

**remember**
29:6 46:16 56:8
72:3 82:11 87:1
88:17 89:5
92:1,17 96:6
102:3,14,15
107:22 112:4
116:21 118:23
122:20 124:15
125:15 126:16
128:5,24 130:1,
2,7 133:25
136:5,25 137:4,
18 138:1 140:3,
21 142:22
143:1,3 148:18
149:4,25 150:4,
9,22 153:23
161:7,8

**reoccurring**
36:13

**repeat** 13:9
18:24 33:12
42:12 43:22
50:3,17 68:16,
18 69:16 73:21
76:16 80:11
88:6 95:11,25
99:23 103:24
105:6 106:12
109:19 111:19

112:15 114:9,
24 122:13
132:9 143:9
144:23 146:25
147:13,14
153:15

**repeated**
141:21

**repent** 64:15

**report** 35:15
36:2,24 37:16,
19,24 67:3 69:3
70:14 75:11
76:24 77:5 82:6
85:20,22 87:1
91:23 92:2,22
95:15 96:24
109:2 116:22,
23 140:22
148:8 151:21

**reporter** 6:6
7:14,16,20 13:1
46:24 47:1,4,9,
12 52:9,11
84:20 86:10
102:25 115:10
132:17 151:9
161:11 163:11,
24 164:4,8,10,
12,14

**reporting**
66:11,14,20
67:1,5,12 70:5,
15 73:11
120:14,16

**reportings**
73:17

**reports** 18:14
24:8 31:8 59:9
66:15,25 67:15,
16,17,18,25
68:6,11,19,25
69:2,6,13,19
70:8,9 73:23
74:4 75:4,9,12,
17 77:15 92:19,
24 93:5 94:5
112:5 120:11
151:4 158:8

**requested**
42:14 84:21
103:1 163:17

**require** 103:13

**required**
102:22

**reserved**
16:11

**respect** 34:4
56:9

**respective**
20:16

**response**
24:22 27:18
128:20

**responsibilitie
s** 14:18 17:2,9
19:2 21:2,19
22:2 33:6,8,21
34:3 35:5,20

**responsibility**
17:23 18:3,9,
12,21 19:3,18,
20 20:2,6,9
21:24 33:15
81:4,10 84:16

**responsible**
15:9,14,19,25
16:12 17:1
18:14 34:9 35:1
103:8

**rest** 31:21 62:3

**restate** 68:19

**restraining**
11:1 54:3 97:24
98:4 104:6
105:1,9,18,24
106:3,8,17
107:2,8,25
144:4 152:6

**result** 103:22
104:6 145:14,
22 161:2 163:4

**resulted**
145:19 146:10,
22 147:5

**resulting**
147:17

**reveal** 24:15
25:11 34:18
104:17,22

Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606



502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**review** 10:15, 21,24 48:14 57:25 66:21 95:15 157:10

**reviewed** 10:25 11:1,2 46:12 59:8 66:16 75:4,9, 10,12,19 76:24 91:24 92:21,24 120:12,24

**reviewing** 90:22 153:24

**rifle** 79:6

**rifling** 79:3,6, 10

**riot** 60:18 61:1, 5,10

**rioter** 122:9

**rioters** 121:3,7 122:16,19 123:20 125:10 141:8

**riots** 60:4,11

**risk** 155:11 156:9,12

**roads** 124:22 125:2,6,7

**Rodney** 24:3

**role** 15:4 24:11 25:5,22 33:14 40:4 126:18

**Roman** 48:6

**room** 8:22

**Rough** 121:8

**rubber** 69:7

**rushed** 163:25

---

**S**

---

**S-T-O-L-E** 63:20

**safety** 21:21,23 77:20,23 160:7

**scene** 117:8,16 127:13,18,21, 23 128:13 131:6 134:18 144:20 145:3, 14,19 150:1,24

**scope** 131:17 162:22

**Scott** 24:3,5,7

**seconds** 86:11

**Secretary** 24:8,12 97:6 107:25

**section** 17:1,6 21:6 85:20 109:3

**sector** 12:9,11 20:21

**sectors** 20:25

**security** 11:21, 25 21:21,23 24:8 50:6 104:11,14

**Security's** 49:25

**seek** 19:11

**sentence** 60:2 61:13,25 62:4 66:10 121:3

**separate** 37:2 40:11 41:2 115:17,21 117:7 118:25 121:3 126:13

**September** 26:8 27:2 28:5, 10,22 29:2,11 31:19 36:16,17 38:2 57:13 72:4,5 74:16 75:5,13,21 76:2 81:18,21 82:9 87:5,8,11,24 92:9 108:11,14 111:3 114:3,12 133:11,13,16 134:14

**series** 37:11

38:13 118:20

**service** 161:21

**set** 22:12 38:11,12 40:8 76:13,21 95:22

**sets** 22:18 23:3

**setting** 23:7 136:12

**share** 101:3 107:16,20

**shared** 99:8 100:4,13,20 101:2 102:6 107:11 159:23

**shoot** 78:23

**shooter** 79:23

**shooting** 117:8

**shopping** 126:1

**short** 132:23

**shot** 68:12,20 69:7 80:15

**show** 10:10 46:17 48:2,7 49:14 64:17

**showed** 69:4

**showing** 64:24

**shown** 10:13 52:13

**shows** 69:5

**shutdown** 110:13

**sic** 11:20 104:3

**signals** 153:7, 8,9

**signed** 11:7 52:4

**significant** 67:1,16,17 70:9

**similarly** 136:14 139:14

**sir** 6:16 7:24

8:2,6 9:8,13,25 10:8 11:17 13:18 14:10 46:9 47:14 48:7,25 52:13 65:2 66:3 97:19 115:14 133:9 161:18 163:23

**sit** 88:17

**sites** 139:9

**situation** 53:21 72:14 96:8 103:14 109:1 121:21 132:6, 12 139:23 144:19 146:2,3, 11 154:18 157:21 160:23

**situations** 13:6,13 14:4 96:10

**size** 104:10,14 121:23

**slashed** 98:15 101:16 102:8, 13

**slashing** 161:6

**small** 88:14 90:6

**smoke** 148:20, 22

**solely** 33:22

**solemnly** 7:16

**source** 88:2,5

**sources** 59:1, 12 158:9

**South** 6:8

**speak** 9:21,22 13:2 43:9 80:20,25

**speaking** 128:6 131:4 139:7

**speaks** 57:16 65:12 67:22 76:4 95:4 117:12 137:16

**special** 128:6

**specific** 16:4, 9,10 17:2 21:9 32:22 44:15 67:3 75:10 85:20 87:25 92:17,18 93:15 95:6 101:9,25 102:5 103:4,18 104:2,19,21 109:3 112:6 133:15 137:20 139:19 140:21 153:24

**specifically** 26:11 30:11 31:1,9 55:24 57:7,8 75:23 82:11 87:8,24 89:24 102:12 120:8,24 125:7 160:10

**speculate** 80:12

**speculating** 40:1 80:10

**speculation** 155:16 163:8

**speed** 127:12, 16

**spelled** 60:23

**spent** 89:24 90:22

**spoken** 163:19

**spot** 94:8

**spray** 45:16

**SRT** 77:18 99:2,20,24 100:18 160:17

**stamped** 48:4 49:15

**stand** 153:7

**standing** 73:1

**start** 18:19 56:21 118:21 136:2



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

**started** 38:16
39:5 42:19

**starting** 57:14

**starts** 57:9

**state** 22:12,14
54:6 77:18
111:22 133:21
149:4

**statement**
98:6 107:5
146:7 147:8
153:22

**statements**
56:25

**States** 6:12
12:3 23:23
40:13 55:11

**stay** 141:13,21

**Stephanie**
8:11

**stole** 63:20

**stop** 62:7

**stopping**
110:3

**strategic** 15:3,
7 22:6,12,17
23:4

**strategy** 15:10
22:15,19 23:7

**Street** 6:9 95:1,
2

**strikes** 116:9,
14,19

**striking** 154:9

**structure**
16:24

**subjected**
69:14,20 73:18,
24

**submitted**
52:17 54:6
56:14

**submitting**
56:8

**subsequent**
147:21

**suit** 150:20

**supervises**
23:12

**supervisor**
19:8 23:15,24
98:23 99:19
100:4,12
101:25

**supervisors**
19:11 100:22,
25 101:2

**supervisory**
33:7,15

**supplies** 17:4

**support** 16:8
58:24 118:11

**supporting**
18:8

**supposed**
102:21

**sustained**
161:23

**swear** 7:15,16

**Sydney** 6:4

**symbols** 64:2

**system** 16:25
17:19 45:18
76:1 79:17,21,
22 80:4,16

—————

**T**

—————

**tactical** 15:4,6
16:3,10 93:8

**tactics** 39:19
104:10 163:5

**taking** 113:24

**talk** 34:2 66:13
109:10

**talked** 19:17
46:11 52:4 56:9
62:13 82:13
95:21 96:2,10
97:5 114:4,13

133:13

**talking** 10:3,5
27:12 59:18
61:15 62:8,9
66:6,15 101:14
102:7 123:5
127:25 131:3
135:2,18 136:3
139:8 155:21

**Tara** 6:18

**target** 78:13,17
79:12,17
155:13 156:3

**targeted** 66:12
67:13,19 70:6

**taunt** 131:13

**taunting** 131:6
132:5,8,11

**tear** 74:5

**technical** 8:12

**temporary**
11:1 54:3 97:24
98:4 104:6
105:1,9,18,23
106:3,8,17
107:2,8,25
144:3 152:5

**ten** 89:3

**term** 60:10
66:14 113:17,
18 122:16

**terms** 21:13
117:10

**testified** 55:9
70:9 91:17

**testimony**
7:17 19:24 51:3
57:12 71:8,13
77:3 101:19
102:11 105:5
111:6 119:3
122:8,11
123:16 124:1,6
133:18 149:10

**Theresa** 6:22

**thing** 8:7 9:13
35:1 144:12

161:15

**things** 9:12,15
22:10 70:16
108:21 122:21
131:20 144:9
154:4 161:19

**Thompson**
6:16,18 7:21,23
8:7,19,24 9:3,5,
6 12:7,17,23
13:4,11,17
14:1,9,17,22
15:8,13,18,24
16:18,22 17:13
18:2,17,25
19:9,16 20:1,8,
12,18 21:1,7,17
22:9 23:6,10,
17,25 24:4,10,
21 25:4,16
26:2,15 27:3,
10,24 28:4,17,
18,25 29:5,9,
14,20 30:6,17,
24 31:7,14
32:2,8,15 33:5,
13,20 34:1,24
35:11,24 36:8,
21 37:4,23
38:6,20 39:2,22
40:10,17 41:1,
9,15,23 42:2,
10,13,18 43:3,
11,25 44:6,14,
21 45:2,11,19,
22 46:1,8,17,25
47:2,7,10,13,19
48:1,17,23
49:7,13 50:4,
12,19 51:1,11,
18 52:1,7,12,22
53:10,23 54:17,
25 55:7,15
56:1,6,16
57:10,18 58:5,
13,25 59:11,17,
25 61:2,9 62:19
63:2,8,14,23
64:7,12,23
65:14,22 66:6,
8,19 67:4,10,24
68:5,10,17
69:1,12,18,24
70:13,21 71:5,
16,23 72:20

73:6,16,22
74:3,9 75:2,8,
18,24 76:6,11,
18 77:1,8,17,24
78:2,4 79:9,15
80:2,13,22 81:8
82:1,12 83:2,7,
16,25 84:6,14,
24 85:10,14
86:4,8,12,14,22
87:9,16 88:1,8,
16,25 89:8,14,
20 90:1,5,12,
17,23 91:2,21
92:4,23 93:6,
16,20,24 94:9,
12,15,23 95:7
96:9,17,22
97:3,11,18
98:25 99:10,18
100:7,14,23
101:23 102:9
103:11,17
104:1,12,20
105:7,16,22
106:14,24
107:6,15,19,23
108:6,20 109:9,
20 110:2,9,16,
21 111:9,21
112:7,17 113:4,
11 114:2,11,21
115:4,6,9,12,
13,18 117:2,15,
25 118:6,19
119:1,12,20
120:2,9,15
121:1,25 122:6,
14 123:15,25
124:8,25 125:8,
13,21,25 126:4,
24 127:3,10,17
128:8,18 129:1,
9,15,22 130:8,
14,21 131:2,10,
19,25 132:4,10,
16,18,22,25
133:4,6,8,23
134:23 135:18
136:1,20
137:21 139:4,
25 140:9 141:5,
11,17,19 142:5,
10,14 143:4,11,
18 144:1,11,24
145:5,8,12,18,



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

25 146:8,15,19
147:1,9,15,24
148:14 149:9,
16,22 150:6,11,
15,19,23 151:6,
8,10,12 152:3,
11,22 153:5,16,
25 154:16
155:3,10,23
156:8,13,18
157:11,23
158:14,22
159:5,14,18
160:15 161:10,
12 162:10,17
163:1,10,13,22
164:3,16

**thought** 37:9
53:15

**threat** 60:24
61:4

**threatening**
113:18 122:9,
10 137:14

**threats** 21:15
113:15

**threw** 154:9,23

**throw** 144:14
155:6

**throwing**
98:14 122:22
123:20 124:3
145:20

**thrown** 60:15
74:5 129:24,25
130:4,15,23
145:23

**throws** 155:2

**time** 6:7 10:14
28:8,21,24
32:3,24 36:14
38:9 43:23
45:22 46:4,7
62:13 86:9
87:25 88:7
89:13,24 90:22
97:11,14,17
103:25 119:10,
19 121:9
126:10 127:12

132:16 133:3
134:6,7 135:3,
15 136:23
137:14,23
138:4,15,23
151:8 152:21
156:21 157:4,
14,16,20 158:1
159:10 163:22
164:19

**timeline**
101:12,15

**times** 26:7,9
30:7,10,12
31:16 42:5
58:22 62:12,13,
20 64:13 65:17,
24 70:22 71:18
73:5,7 104:11,
13 146:21
147:3

**tire** 98:15 160:9
161:6

**tires** 101:16
102:8,13

**title** 7:25 8:2
11:16 54:14

**titled** 64:25

**today** 6:5,6
8:16 48:11,14,
20 49:19,22
140:1

**today's** 11:3

**told** 11:16
29:11 62:6
101:25 106:7,
16 108:10
122:8 133:9
156:20 157:12,
25 160:16

**tool** 78:12,21

**topic** 47:16,21
55:16 94:12

**topics** 36:23
37:15 39:23
40:2,4 41:18
47:14

**totality** 113:13

**touch** 26:24,25
39:12

**tough** 110:14

**traffic** 130:4,24

**trained** 131:21

**training** 16:14
34:3,4,10 35:1,
5,9,10,12,16,
19,25 36:3,10,
14,19,22 37:5,
10,13 38:1,8,
14,15,17,21
39:1,3,7,16,17,
18,19,21 40:1,
3,5,9,11,20
41:5,6,16,22,24
42:17,21,25
43:6,9

**trainings** 37:8,
12,14 38:13

**transcript**
164:5

**transpire**
137:20

**transpired**
99:13 101:11
102:16

**traveled** 33:2

**triple** 121:19
122:2,5

**TRO** 98:7 101:5
103:22 144:10
160:1

**true** 13:18
14:10 33:21
48:9,18 52:16
106:25

**Trump** 54:7

**truth** 7:18

**Tuesday** 26:6
27:25 32:7,11
72:1,2 134:2,4,
5

**turn** 61:24 65:4

**turned** 97:21

**two-day** 39:6

42:22

**type** 44:15
82:25 103:9
148:20

**types** 43:19
44:12 47:21

**typically** 12:19
13:6,13,16 14:5

_____

**U**

**U.S.** 6:8 15:19
18:15 20:24

**Uh-huh** 115:17

**underneath**
17:3,6

**understand**
9:24 47:23
63:17 102:11
127:4

**understanding**
40:24 41:21
47:20 50:13
79:5 112:24
116:13,17
140:4,19
144:25 157:21

**understood**
27:15 28:17
34:23 138:17
142:20 154:1,
19

**undertakes**
162:6

**undertaking**
30:2

**unfolding**
118:13 139:24

**unified** 113:20
133:24

**unintentional**
156:6

**Unit** 93:8

**United** 6:12
12:3 23:23
40:13 55:11

**unofficial** 69:2

**upcoming**
53:8

**upset** 163:5

**urban** 12:19

_____

**V**

**vague** 31:4
50:16 51:24
55:22 56:4
76:15 86:20
88:4 104:8
107:9 121:20
126:20 132:7
144:21 154:24

**vagueness**
108:2

**variables**
146:13

**vehicle** 77:20
83:24 109:12
138:13 144:15
154:9 161:1,8,9

**vehicle's**
83:22

**vehicles** 98:16
110:4 122:24
123:21 124:3

**verbally** 58:23
59:3 77:19

**versus** 121:13

**video** 75:19
82:7 87:3,11,
17,19,23 88:2,
9,11 89:25
92:15,17 109:4
118:21 119:22
120:3 121:9
135:3,24 136:5,
15 153:11,18
158:1,7 164:2,5

**videos** 8:12
46:13 87:7

**view** 59:20
144:7 161:2

**viewed** 89:10



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com

viewing 136:25

views 94:3

violated 162:13

violation 143:25 144:10

violence 161:23,24 163:3,20

violent 60:4, 11,18 61:1,5,10 122:9

virtual 20:25

vision 22:14

**W**

wait 10:4,7

waiting 125:22

walking 142:6 150:12

Wally 6:20

wanted 77:23 164:1

warning 95:17

warnings 21:15 95:8,12 141:13,14,22, 23

wash 99:8,11

watch 46:13 92:15 157:20

watched 90:19 92:17 137:13 138:4,15 157:13 158:1

watching 118:12 127:11 135:3 136:4,15 137:18,23 157:3,17

weapons 42:21

wear 63:25

wearing 63:9, 13,19 64:9 73:8 150:25

week 36:15,16, 18 37:6,12,15, 20,22 134:3,4

Weiner 6:5

white 25:7 63:9

window 98:15

windows 161:9

withdraw 115:4 145:8

withdrawing 115:3 145:6

withhold 24:24

witnessed 161:22 163:3

Wolfson 7:7

women 21:22, 24 54:2 157:22

word 73:9

words 113:1 163:3

work 12:19 13:13 14:5 40:13,21 44:17 71:9 110:18

worked 125:17

working 14:3 49:1,5,10 51:7 103:20 104:4

works 8:17 17:7

world 110:11

worried 100:2, 9

worrisome 155:1

worrying 155:4

would've 121:15

writing 35:15 36:2,24 37:16, 20,24

written 48:24 51:4

**Y**

year 55:17,19

years 161:21

yesterday 8:9, 14 11:8 52:5

**Z**

Zoom 7:4 8:25



Kentuckiana Reporters
30 South Wacker Drive, 22nd Floor
Chicago, Illinois 60606

502.589.2273 Phone
502.584.0119 Fax
schedule@kentuckianareporters.com
www.kentuckianareporters.com