Confidential - Subject to Protective Order

## U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

**ICE Directive 19009. 3:**     **Firearms and Use of Force**

      **Issue Date:**      May 26, 2023
      **Effective Date:**      May 26, 2023
      **Superseded:**      ICE Directive 19009.2, Firearms and Use of Force (Aug. 2, 2021).

1. **Purpose/Background.** This Directive establishes the U.S. Immigration and Customs Enforcement (ICE) Firearms and Use of Force policy. This Directive assigns responsibilities for agency employees and, in conjunction with the ICE Firearms and Use of Force Handbook, establishes procedures and protocols concerning firearms and the use of force, including (but not limited to) training and proficiency, the reporting of use of force incidents, and the proper maintenance, storage, and accounting of firearms and intermediate force weapons.

2. **Policy.** ICE's law enforcement mission brings with it the authority to use force when necessary. To this end, it is the policy of ICE that its Authorized Officers use force only when no reasonably effective, safe, and feasible alternative appears to exist,[1] and may use only the level of force that is objectively reasonable in light of the totality of facts and circumstances confronting the Authorized Officer at the time force is applied. The use of excessive force by ICE employees is strictly prohibited. In the performance of their law enforcement duties, Authorized Officers may only carry firearms and intermediate force weapons that have been approved by ICE and when in compliance with all qualification and/or certification requirements. The accompanying ICE Firearms and Use of Force Handbook serves as the authoritative guidance to ICE employees regarding firearms and use of force-related issues. As such, ICE employees are expected to be familiar with the contents of this Directive and the accompanying Handbook and are required to take appropriate action to comply with its policies and procedures. Violation of the policies and procedures contained in the Directive or Handbook may be grounds for disciplinary action or other appropriate action. Nothing in this Directive or the accompanying Handbook shall be construed as interfering with the right that Authorized Officers may have as private citizens to carry a personally-owned firearm off-duty for personal use. Authorized Officers must comply with all applicable federal, state, and local laws when exercising this right.

3. **Definitions.** See the ICE Firearms and Use of Force Handbook for definitions.

4. **Responsibilities.**

---

[1] The requirement that force be used only when no reasonably effective, safe, and feasible alternative appears to exist does not create a duty to retreat, a requirement to wait for an attack before using force, an obligation to meet force with equal or lesser force, or a continuum or checklist of alternative steps that must be tried before resorting to force. This requirement is only meant to convey the importance of de-escalation, and that such techniques should be employed when reasonable and practical to do so.

4.1. The **Executive Associate Directors for Homeland Security Investigations, Enforcement and Removal Operations,** and **Management and Administration** and the **Associate Director for the Office of Professional Responsibility** are responsible for:

1) Ensuring that all Authorized Officers within their respective Directorates or Program Offices comply with this Directive and the accompanying ICE Firearms and Use of Force Handbook;

2) Determining which of their employees are designated as Authorized Officers;

3) Approving in writing, in consultation with the Assistant Director for the Office of Firearms and Tactical Programs, the firearms, intermediate force weapons, and related use of force equipment that their respective Authorized Officers are permitted to carry;

4) Suspending, revoking, or denying the authorization to carry firearms and approved intermediate force weapons by their Authorized Officers; and

5) Fulfilling all other obligations and responsibilities assigned to them in this Directive and the accompanying ICE Firearms and Use of Force Handbook.

4.2. The **Assistant Director** for the **Office of Firearms and Tactical Programs (OFTP)** is responsible for:

1) Overseeing the development and implementation of ICE firearms and use of force policies and procedures;

2) Directing the technical aspects and evaluation of the ICE firearms and use of force program;

3) Leading the development of the use of force training curriculum;

4) Establishing procedures for the selection, training, and certification of Firearms Instructors, Firearms Coordinators, Defensive Tactics Instructors, Defensive Tactics Coordinators, Field Armorers, and other related trainers;

5) Reporting lessons learned from Firearms and Use of Force Incident Review Committee reviews regarding use of force policies, training, law enforcement administrative matters, and oversight to the DHS Law Enforcement Coordination Council;

6) Approving all firearms, defensive tactics, and use of force training obtained through other agencies or contract sources;

7) Establishing and overseeing the procedures for requesting, processing, and approving personally-owned handguns for use by Authorized Officers in the performance of official duties;

8) Approving firearms, intermediate force weapons, holsters, ammunition, equipment, and accessories for use by Authorized Officers;

9) Acquiring all ICE-owned firearms, ammunition, other ordnance and munitions, and intermediate force weapons for ICE;

10) Overseeing the collection and storage of qualification and certification records for ICE firearms and intermediate force weapons;

11) Maintaining a complete inventory of all ICE firearms and ensuring that all sensitive equipment, including firearms, protective equipment and ammunition, is tracked;

12) Overseeing the control and accountability of all ICE firearms, ammunition, other ordnance and munitions, intermediate force weapons, and use of force equipment;

13) Overseeing the development and implementation of ICE tactical doctrine and directing the development and presentation of training for ICE tactical teams;

14) Operating and overseeing all ICE national, field, and academy armories and directing the maintenance, repair, and alteration of all ICE firearms; and

15) Managing the ICE Board of Survey.

4.3. The **Board of Survey** is responsible for:

1) Meeting quarterly, or as necessary, to review the circumstances that led to the loss, theft, damage, or destruction of an ICE-issued firearm, intermediate force weapon, ammunition, body armor, or other sensitive asset accounted for in the Firearms, Armor, and Credentials Tracking System (as established by the Assistant Director of OFTP); the actions to find or repair the item, the accounting procedures followed and documented; and to determine if the loss, theft, damage, or destruction of the sensitive asset was attributable to the failure of the Authorized Officer to exercise the degree of precaution, attention, and vigilance needed to protect the sensitive asset; and

2) Providing a report of its findings and recommendations.

4.4. The **Firearms and Use of Force Incident Review Committee** is responsible for:

1) Reviewing all reported use of force incidents and enforcement-related officer safety issues as needed; and

2) Examining all reported use of force incidents to determine if tactics, training, and policy were sufficient to address the incidents.

4.5. **Responsible Officials** are responsible for:

Confidential - Subject to Protective Order

1) All aspects of the ICE firearms and use of force program within their area of responsibility;

2) Ensuring that all Authorized Officers within their area of responsibility comply with this Directive and the accompanying ICE Firearms and Use of Force Handbook;

3) Suspending, revoking, or denying their Authorized Officers' permission to carry firearms and approved intermediate force weapons;

4) Ensuring that Authorized Officers within their area of responsibility fulfill the training requirements for firearms, intermediate force and tactical training and exercises;

5) Overseeing the inventory control, maintenance, and security of all ICE use of force equipment within their area of responsibility, including ICE firearms, ammunition, and intermediate force weapons. This includes conducting an annual inventory in accordance with DHS personal property guidelines;

6) Designating, in writing, a Firearms Coordinator and a Defensive Tactics Coordinator for their area of responsibility;

7) Assigning, in writing, Firearms Instructors and Defensive Tactics Instructors to serve for a minimum of five years, either as full-time or collateral duties, assuming that the Authorized Officer remains assigned to that area of responsibility; and

8) Seeking approval from the Assistant Director for OFTP, through their respective Directorate EAD or Program Office Head, before obtaining any firearms, defensive tactics, tactics, or other use of force training through another agency or contract source.

**4.6. Defensive Tactics Coordinators** are responsible for:

1) Providing instruction to Authorized Officers on defensive tactics, de-escalation techniques, and intermediate force weapons through a variety of techniques including integrated scenario-based training, and classroom and training room exercises;

2) Managing the overall field office defensive tactics, de-escalation techniques, intermediate force weapons, and related use of force training programs within their area of responsibility;

3) Scheduling and directing the Defensive Tactics Instructors;

4) Ensuring that all defensive tactics, de-escalation techniques, intermediate force weapons, and related use of force training are accurately recorded in the system of record;

5) Maintaining sufficient quantities of supplies and equipment to conduct the defensive tactics training program; and

6) Coordinating the scheduling of Authorized Officers to participate in the required defensive tactics, de-escalation techniques, intermediate force weapons, and related use of force training.

**4.7.** **Defensive Tactics Instructors** are responsible for:

1) Providing instruction to Authorized Officers on defensive tactics, intermediate force weapons, de-escalation, and other techniques consistent with their certification level;

2) Taking all reasonable steps to ensure the safety and security of all personnel and property involved; and

3) Removing from training any person who refuses to comply with safety instructions or otherwise poses a safety risk.

**4.8.** **Firearms Coordinators** are responsible for:

1) Managing the field office firearms and related use of force training, practice, and qualification programs;

2) Overseeing the shipment, receipt, issuance, and the periodic inventory of firearms, ammunition, other ordnance and munitions, and intermediate force weapons;

3) Overseeing the firearms and related use of force program within their area of responsibility;

4) Scheduling and directing the Firearms Instructors;

5) Ensuring that firearms and other use of force equipment, qualification scores, and use of force training are accurately recorded in the system of record;

6) Maintaining sufficient quantities of supplies to conduct the firearms program; and

7) Coordinating the scheduling of Authorized Officers to participate in the required firearms qualifications and all applicable training, including use of force and tactical exercises.

**4.9.** **Firearms Instructors** are responsible for:

1) Range operations and range safety;

2) Determining proficiency for all participating personnel, including the scoring of targets for official record; and

3) Removing from training any person who refuses to comply with safety instructions or otherwise poses a safety risk.

**4.10.** **Authorized Officers** are responsible for:

Confidential - Subject to Protective Order

1) Reading, understanding, and complying with the policies, procedures, and requirements contained in this Directive and the ICE Firearms and Use of Force Handbook;

2) Maintaining their ICE firearms and other ICE-issued use of force equipment in proper working order through general care and approved levels of maintenance;

3) Safeguarding all firearms and related use of force equipment and protecting them against theft or unauthorized use;

4) Maintaining proficiency in the use of firearms, intermediate force weapons, and other related use of force equipment;

5) Successfully completing all required firearms, use of force and tactical training and exercises;

6) Seeking approval from the Assistant Director for OFTP, through their respective Responsible Official, before obtaining any firearms, defensive tactics, tactics, or other use of force training through another agency or contract source;

7) Ensuring that all of their ICE firearms and intermediate force weapons are recorded in the system of record;

8) Reporting use of force incidents in accordance with the requirements set forth in the ICE Firearms and Use of Force Handbook;

9) Annually reviewing ICE use of force reporting procedures; and

10) Meeting all other requirements and standards set forth in this Directive and the ICE Firearms and Use of Force Handbook.

5. **Procedures/Requirements.** See the ICE Firearms and Use of Force Handbook for detailed procedures and requirements.

5.1. **General Guidelines.**

1) An Authorized Officer may use force only when no reasonably effective, safe, and feasible alternative appears to exist and may use only the level of force that is objectively reasonable in light of the totality of facts and circumstances confronting the officer at the time force is applied.

    a) This standard does not require Authorized Officers to meet force with equal or lesser force.

    b) Authorized Officers do not have a duty to retreat to avoid the reasonable use of force, nor are they required to wait for an attack before using reasonable force to stop a threat.

2) Use of force is necessary when it is reasonably required to carry out the Authorized Officer's law enforcement duties in a given situation, considering the totality of facts and circumstances of a particular situation, and there appears to be no reasonably effective, safe, and feasible alternative to the use of force in carrying out the Authorized Officer's law enforcement duties in a given situation. *See* Chapter 1.B. of the ICE Firearms and Use of Force Handbook for more information.

3) When feasible, Authorized Officers must employ tactics to de-escalate by the use of communication or other techniques during an encounter to stabilize, slow, or reduce the intensity of a potentially violent situation without using physical force, or with a reduction in force. Recognizing that it is not always possible to obtain a subject's voluntary compliance, these tactics should be attempted only when feasible and when a delay is not likely to create a greater threat to the safety of the Authorized Officer or others.

4) Authorized Officers have a duty to intervene to prevent or stop a perceived use of excessive force by another Authorized Officer when it is safe to do so. Authorized Officers shall report any such incident to the Office of Professional Responsibility. Failure to intervene and/or report will be considered misconduct and may result in adverse action.

5) An Authorized Officer may have to rapidly increase or decrease force and employ varying use of force options, depending on the totality of circumstances present and the evolving situation.

6) Based on the totality of facts and circumstances, different Authorized Officers may have different responses to the same situation, any of which may be both reasonable and necessary. The level of force applied must reflect the totality of facts and circumstances surrounding the situation, including the presence of imminent danger to the Authorized Officer or others;

7) The supervisor of any ICE employee involved in a use of force incident must ensure the employee is provided psychological first aid services from the Peer Support Response Team or an ICE Operational Behavioral Health Professional as soon as possible and on scene, if practical;

8) When an Authorized Officer uses deadly force, either on or off duty, the Authorized Officer, following verbal report of the incident, must immediately be placed on administrative leave for three consecutive workdays. This period of absence is not for disciplinary purposes. The Office of Human Capital's Employee and Labor Relations and the Office of the Principal Legal Advisor must be consulted regarding any extensions of administrative leave.

9) Following any use of force incident and when safe to do so, Authorized Officers must seek medical assistance for any person who appears or claims to be injured.

10) Every use of force incident and any discharge of an ICE firearm by an Authorized Officer (other than intentional discharges in a training activity where no injury or property damage occurs) must be properly reported and reviewed in accordance with

the procedures and guidelines set forth in the Chapter 4 of the ICE Firearms and Use of Force Handbook.

11) ICE firearms and authorized intermediate force weapons may only be carried by Authorized Officers who have successfully demonstrated proficiency by qualifying in accordance with the requirements in the Use of Force Handbook. Authorized Officers, their supervisors, and their managers will be provided training and guidance on the issuance, use, safeguarding, and maintenance of ICE firearms, intermediate force weapons, and related use of force equipment.

12) All ICE employees who are not Authorized Officers or who are not otherwise authorized by ICE to transport firearms are prohibited by federal law from carrying any firearm into a government-owned/leased vehicle or a federally-owned, rented, or leased facility.

13) Every Authorized Officer must, at the appropriately designated intervals, demonstrate proficiency with each ICE firearm, intermediate force weapons, and restraining devices they are authorized to carry (e.g., handcuffs, belly chains, and leg irons).

14) Every Authorized Officer must be trained in the ICE Use of Force Policy, at least annually. Training shall include scenario-based learning that simulates operating conditions, such as shooting scenarios and the application of force, including deadly force, and such training must include:

   a) Related legal updates;

   b) Discretion in using deadly force and less lethal force;

   c) De-escalation techniques;

   d) The prohibition on carotid restraints unless the legal standard for deadly force is met;

   e) The affirmative duty to request and/or render medical aid following the use of force; and

   f) The affirmative duty to intervene if an LEO is misusing force or using excessive force.

15) While performing law enforcement duties, Authorized Officers must carry ICE firearms and at least one approved intermediate force weapon unless operational circumstances preclude the carriage of firearms or intermediate force weapon.

### 5.2. Objectively Reasonable and the Totality of Facts and Circumstances

1) The "reasonableness" of a particular use of force will be reviewed based on the totality of the facts and circumstances confronting the Authorized Officer at the time of the use of force. Reasonableness is an objective standard viewed from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight.

2) The totality of the facts and circumstances are all factors existing in each individual case which are used to determine the reasonableness of an Authorized Officer's actions. These factors include, but are not limited to:

   a) The seriousness of the offense at issue;

   b) Whether the subject poses an imminent threat to the safety of the Authorized Officer or others;

   c) Whether the subject is actively resisting or attempting to evade arrest by flight;

   d) Whether circumstances are uncertain and rapidly evolving;

   e) The foreseeable risk of injury to subject(s) involved and others;

   f) The level of training, strength, and size of the Authorized Officer;

   g) The apparent level of training, strength, size, and age of the subject(s);

   h) The weapons involved and/or available;

   i) The presence of other officers, subjects, or bystanders; and

   j) Environmental conditions.

### 5.3. Use of Intermediate Force

1) Intermediate force is physical force that is neither likely nor intended to cause death or serious bodily injury. Authorized Officers may use force, including intermediate force, only when no reasonably effective, safe, and feasible alternative appears to exist and use only the level of force that is objectively reasonable in light of the totality of facts and circumstances confronting the Authorized Officer at the time force is applied. The use of force must be both objectively reasonable and necessary in order to carry out the Authorized Officer's law enforcement duties.

2) Where no reasonably effective, safe, and feasible alternative to the use of force appears to exist, intermediate force weapons may be used in situations where empty-hand techniques are not sufficient to bring a disorderly or violent subject under control, but where deadly force is not deemed justified.

### 5.4. Use of Deadly Force

1) Deadly force is force that is likely to cause death or serious bodily injury.

2) The *DHS Update to the Department Policy on the Use of Force* (Feb. 6, 2023), or as amended or superseded, governs the use of deadly force by all DHS law enforcement officers.

3) Authorized Officers may use deadly force only when the officer has a reasonable belief that the subject of such force poses an imminent danger of serious bodily injury or death to the officer or to another person. Deadly force is not authorized against a person whose actions are only a threat to themselves or property.

4) Deadly force is not authorized solely to prevent the escape of a fleeing suspect. Deadly force against a fleeing subject is only authorized if there is probable cause to believe that the escape of the subject would pose an imminent danger of death or serious bodily injury to the officer or another person.

5) If feasible, and if to do so would not increase the danger to the Authorized Officer or others, a verbal warning to submit to the authority of the Authorized Officer must be given before the use of deadly force.

6) An Authorized Officer is not limited to the use of authorized weapons/devices if the Authorized Officer or others are faced with imminent threat of death or serious bodily injury and if authorized weapons are not readily accessible or inoperable.

7) The use of firearms to discharge chemical munitions or specially designed breaching munitions against structures does not constitute the use of deadly force unless there is reason to believe that the chemical munitions or specially designed breaching munitions are likely to cause the death of a person or serious bodily injury (e.g., may cause a fire).

8) Force, including deadly force, may be used against an animal if the animal poses an immediate danger to the officer or others in close proximity to the animal. These incidents shall be reported in accordance with the requirements set forth in the ICE Firearms and Use of Force Handbook. A firearm may also be used to humanely euthanize an animal that appears to be seriously injured or diseased.

**5.5.   ICE Use of Force Continuum**

1) The ICE Use of Force Continuum describes and categorizes the application of various levels of force an Authorized Officer may use to gain control over a resistant subject.

2) An Authorized Officer may have to rapidly intensify or diminish force and employ varying use of force options through the Continuum depending on the totality of facts and circumstances present.

3) Outlined below are the 5 levels of the Continuum (with associated non-exhaustive examples of each):

a) The first level (Officer Presence):

   i) Professional, courteous demeanor;

   ii) Positive attitude; physical condition;

   iii) Confident posture and body language; and

Confidential - Subject to Protective Order

      iv) Professional attire, or clean, neat attire appropriate to the work being performed.

b) Second level (Verbal Commands):

      i) Professional, firm voice;

      ii) Instructions that are simple, easy to understand, and repeated as necessary; and

      iii) Only one officer issuing verbal commands at any given time.

c) Third level (Soft Techniques):

      i) Empty-hand techniques with a minimal chance of injury;

      ii) Escort position;

      iii) "Come-along" holds, to include the use of impact weapons that involve the application of pressure to move noncompliant subjects;

      iv) Use of touch pressure points; and

      v) Use of chemical agents.

d) Fourth level (Hard Techniques):

      i) Techniques that have a greater possibility of injury to subjects;

      ii) Strikes with a hand, arm, foot, leg, head, or the whole body;

      iii) Throws;

      iv) Take-downs;

      v) Specified electronic control weapons;

      vi) Impact weapons when used for striking; and

      vii) Specialty impact weapons.

e) Fifth level (Deadly Force):

      i) Discharge of firearms against persons or animals;

      ii) Any use of impact weapons to strike the neck or head;

      iii) Any strangulation techniques, including chokeholds or carotid restraints;

      iv) Any strikes to the throat; and

      v) Use of any edged weapons.

6. **Recordkeeping.** All relevant documents produced or provided in accordance with this Directive must be maintained in accordance with an applicable National Archives and Records Administration (NARA) General Records Schedule or a NARA-approved agency-specific records control schedule. If the records are not subject to a records schedule, they must be maintained indefinitely by the agency. In the event the records are subject to a litigation hold, they may not be disposed of under a records schedule until further notification.

7. **Authorities/References.**

7.1. 8 U.S.C. § 1103. *Powers and duties of the Secretary, the Under Secretary, and the Attorney General.*

7.2. 8 U.S.C. § 1357. *Powers of immigration officers and employees.*

7.3. 19 U.S.C. § 1589a. *Enforcement authority of customs officers.*

7.4. 8 C.F.R. § 1.2. *Definitions.*

7.5. 8 C.F.R. § 2.1. *Authority of the Secretary of Homeland Security.*

7.6. 8 C.F.R. Part 287. *Field Officers; Powers and Duties.*

7.7. 49 C.F.R. § 175.10. *Exceptions for passengers, crewmembers, and air operators.*

7.8. 49 C.F.R. § 1540.111. *Carriage of weapons, explosives, and incendiaries by individuals.*

7.9. 49 C.F.R. § 1544.219. *Carriage of accessible weapons.*

7.10. 49 C.F.R. § 1544.221. *Carriage of prisoners under the control of armed law enforcement officers.*

7.11. 49 C.F.R. § 1544.223. *Transportation of Federal Air Marshals.*

7.12. 5 C.F.R. § 339, *et. seq. Medical Qualification Determinations.*

7.13. DHS Policy Statement 044-05 (Revision 01), *Department Policy on the Use of Force* (Feb. 6, 2023), or as amended or superseded.

7.14. DHS Manual 119-03-001-01, *Personal Property Asset Management Program Manual* (Sept. 26, 2013), or as amended or superseded.

7.15. Policy Statement #045-06, Memorandum from Acting Deputy Secretary Russell Deyo, *Required Reporting of Off-Duty Contact with Law Enforcement by DHS Law Enforcement Personnel and the Suspension and/or Revocation of Authority to Carry a Firearm or other*

*Weapon and Perform Law Enforcement Duties* (Jan. 10, 2017), or as amended or superseded.

**7.16.** ICE Directive 19001 (former number: 5-1.0), *ICE Body Armor Policy* (Feb. 4, 2005), or as amended or superseded.

**7.17.** ICE Directive 3002.1, *ICE Badge and Credential Program* (Jan. 12, 2010), or as amended or superseded.

**7.18.** ICE Directive 1044.2, *Response to and Evaluation of Critical Incidents Involving ICE Employees, Non-Employee Status Individuals, and Officers Acting Pursuant to ICE Authority* (March 3, 2023), or as amended or superseded.

**7.19.** ICE Directive 1005.2, *Domestic Violence: Lautenberg Amendment Compliance Policy* (Nov. 23, 2012), or as amended or superseded.

**7.20.** ICE Directive 1040.1, *ICE Premium Pay Guide* (May 7, 2015), or as amended or superseded.

**7.21.** Memorandum from the Associate Director for OPR and the Assistant Director for OFTP, *New Use of Force, Assaults and Discharges Reporting Process* (Oct. 15, 2015), or as amended or superseded.

**7.22.** *ICE Firearms Remedial Training Guidelines* (Feb. 2013), or as amended or superseded.

**7.23.** U.S. Customs and Border Protection Handbook 4400-01B, *Seized Asset Management and Enforcement Procedures Handbook* (July 2011), or as amended or superseded.

**8. Attachments.**

**8.1.** ICE Firearms and Use of Force Handbook (Aug. 2, 2021), or as amended or superseded.

**9. No Private Right.** This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice. These guidelines and priorities are not intended to, do not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of ICE.

_____
Tae D. Johnson
**Deputy Director and Senior Official
Performing the Duties of the Director**

5/26/23
DATE