# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO HEADLINE CLUB, BLOCK CLUB CHICAGO, CHICAGO NEWSPAPER GUILD LOCAL 34071, NABET-CWA LOCAL 54041, ILLINOIS PRESS ASSOCIATION, RAVEN GEARY, CHARLES THRUSH, STEPHEN HELD, DAVID BLACK, WILLIAM PAULSON, AUTUMN REIDY-HAMER, and LEIGH KUNKEL, | ) ) ) ) ) ) ) ) ) ) | Case No. 25 C 12173 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| KRISTI NOEM, Secretary, U.S. Department of Homeland Security (DHS); TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement (ICE); MARCOS CHARLES, Acting Executive Associate Director, Enforcement and Removal Operations, ICE; RUSSELL HOTT, Chicago Field Office Director, ICE; RODNEY S. SCOTT, Commissioner, U.S. Customs and Border Protection (CBP); GREGORY BOVINO, Chief Border Patrol Agent, CBP; DANIEL DRISCOLL, Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF); WILLIAM K. MARSHALL III, Director of the Federal Bureau of Prisons (BOP); PAMELA BONDI, Attorney General of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. DEPARTMENT OF JUSTICE; UNIDENTIFIED FEDERAL OFFICER DEFENDANTS; UNIDENTIFIED FEDERAL AGENCY DEFENDANTS; and DONALD J. TRUMP, President of the United States, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Chicago, Illinois December 4, 2025 |
| Defendants. | ) ) | 1:54 p.m. |

```
 1                TRANSCRIPT OF PROCEEDINGS - MOTION HEARING
                  BEFORE THE HONORABLE SARA L. ELLIS
 2
      APPEARANCES:
 3
      For the Plaintiffs:   LOEVY & LOEVY
 4                          BY:  MR. STEVEN E. ART
                                 MR. LOCKE E. BOWMAN, III
 5                               MS. HEATHER LEWIS DONNELL
                                 MR. SCOTT R. RAUSCHER
 6                               311 N. Aberdeen Street, Third Floor
                            Chicago, Illinois 60607
 7
                            MANDEL LEGAL AID CLINIC
 8                          BY:  MR. CRAIG B. FUTTERMAN
                            6020 South University Avenue
 9                          Chicago, Illinois 60637

10
      For the Defendants:   U.S. DEPARTMENT OF JUSTICE
11                          BY:  MR. ANDREW I. WARDEN
                            1100 L Street NW
12                          Washington, DC 20005

13                          U.S. DEPARTMENT OF JUSTICE
                            BY: MS. ELIZABETH T. HEDGES
14                          950 Pennsylvania Avenue NW
                            Washington, DC 20530
15
      For the Intervenors:  MANDELL P.C.
16                          BY:  MR. STEVEN P. MANDELL
                                 MS. JULIA DACY
17                          1 N. Franklin Street, Suite 900
                            Chicago, Illinois 60606
18

19
      Court Reporter:       KELLY M. FITZGERALD, RPR, RMR, CRR
20                          Official Court Reporter
                            United States District Court
21                          219 S. Dearborn Street, Room 1412
                            Chicago, Illinois 60604
22                          312-818-6626
                            kmftranscripts@gmail.com
23
                            *   *   *   *   *
24
                     PROCEEDINGS REPORTED BY STENOTYPE
25       TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION
```

1     (Proceedings heard in open court:)

2         THE CLERK:  Case 25 CV 12173, Chicago Headline Club,

3     et al. v. Noem.

4         MR. ART:  Good afternoon, Your Honor.  Steve Art for

5     the plaintiffs.

6         MR. RAUSCHER:  Good afternoon.  Scott Rauscher for the

7     plaintiff.

8         MR. FUTTERMAN:  Craig Futterman also for the

9     plaintiffs.  Good afternoon.

10         MR. BOWMAN:  Locke Bowman for plaintiffs.

11         MS. DONNELL:  Heather Lewis Donnell for plaintiffs.

12         THE CLERK:  Okay.

13         Intervenors?

14         MR. MANDELL:  Steve Mandell and Julia Dacy for the

15     intervenors.

16         THE CLERK:  And government counsel?

17         MS. HEDGES:  Elizabeth Hedges for the government,

18     Your Honor.

19         MR. WARDEN:  Andrew Warden for the defendants.

20         THE COURT:  All right.  Good afternoon.

21         So I've got plaintiffs' motion for voluntary

22     dismissal.  Before we get to that, I just want to make sure on

23     the intervenors side that everything that needed to be unsealed

24     was unsealed and uploaded.

25         MR. MANDELL:  Well, I don't -- I don't think that's

1    the case, Your Honor.  I think there was a bucket that

2    contained the materials that were submitted to the Court for

3    consideration in connection with the motion for preliminary

4    injunction.

5        (Audio disruption.)

6            THE COURT:  Hold on.

7            If you are not Mr. Mandell, who is the only person who

8    is speaking right now, you need to put yourself on mute.

9            Okay.  Go ahead.

10           MR. MANDELL:  So I think that -- and the government

11   wanted some time to go through that administratively to make

12   redactions for what they maintain was privileged or if there

13   were Social Security number information.  And my recollection

14   is that Your Honor gave them 30 days and that we're at day 21

15   on that, so that information has not been provided.

16           Then there was also a bucket of materials that related

17   to excessive force reports and body cam footage, and that

18   hasn't been provided either.

19           THE COURT:  Okay.  So Mr. Warden or Ms. Hedges, either

20   of you can pick this up.

21           MR. WARDEN:  Yes.

22           THE COURT:  Do you know of everything that we had

23   talked about, what has been reviewed, what is left to be

24   reviewed, and where we are on that process?

25           MR. WARDEN:  Yes, Judge.  This is Andrew Warden.

5

1          So the first bucket we had talked about, which is all

2     the materials cited in Your Honor's preliminary injunction

3     order, all of that was turned over, uploaded publicly, and as

4     we discussed last time, produced to plaintiffs' counsel that,

5     you know, provide to the -- to the intervenors.

6          Bucket 2, which is the documents, videos that were

7     cited in the parties' exhibit list and at the hearing but were

8     not relied upon by Your Honor, we had relied on Your Honor's

9     prior oral ruling that the government would have until

10    December 19th to produce those materials publicly.  We're on

11    track to do that.

12         And then the third bucket we had reserved for another

13    time.  I think we -- we want to be heard on that at some point

14    down the road as far as both whether we need to do that and

15    also timing.  But we can set that up --

16         THE COURT:  Okay.

17         MR. WARDEN:  -- I think somewhere later.

18         THE COURT:  All right.  And then I guess that last

19    bucket encompasses things that the parties -- well, I guess it

20    would just be the government -- submitted.  So any use of force

21    or body cam footage and surveillance footage that was submitted

22    but that nobody relied on for anything.

23         MR. WARDEN:  This is Andrew Warden again, Your Honor.

24         That's correct.  This was the materials that you had

25    ordered that be filed and produced to you and the other side.

1  No party in the case relied on it for evidence, and Your Honor

2  did not cite it.  And I think our -- our position -- and we

3  didn't get a chance to brief this, and we were kind of looking

4  forward to doing that at some point when we set the schedule --

5  is that those really aren't judicial records.  You know, I'll

6  say that.  But since no one relied upon them, they were not

7  part of the adjudicatory process.  But we can, you know, save

8  that briefing for another day.

9          THE COURT:  Okay.  And what is plaintiffs' position on

10  this third bucket of information, whether it should be publicly

11  unsealed and publicly available, although no party relied on it

12  during any of the -- either the briefing or I didn't rely on

13  it -- and I guess I will say we reviewed everything that was

14  submitted and then cited to certain thing -- you know, certain

15  videos, but we did review everything that was submitted.

16          MR. ART:  Our position stated previously in the case

17  has been that anything that the Court relied on in support of

18  its opinion should be publicly revealed.  Anything that was not

19  relied upon, not cited by the parties, not used by the Court,

20  was not part of the record in the case.  And that -- that is --

21  continues to be the plaintiffs' position.

22          THE COURT:  Okay.  So it sounds like the plaintiffs

23  and the defendants are aligned on that.

24          MR. ART:  If I'm understanding what the government's

25  position is, yes.

7

1          THE COURT:  Okay.

2          MR. MANDELL:  Your Honor, may I?

3          THE COURT:  And, Mr. Mandell, what is your position?

4          MR. MANDELL:  I want to make sure we're talking about

5    the same buckets.

6          There's one bucket that includes the information that

7    the parties submitted to the Court for consideration in

8    connection with the preliminary injunction proceeding.

9          THE COURT:  Correct.

10         MR. MANDELL:  And maybe the Court didn't rely on some

11   of that in the Court's ruling, but our position would be it was

12   submitted to the Court for consideration.  The Court looked at

13   it.  It's a judicial record.

14         THE COURT:  Right.

15         MR. MANDELL:  That's one --

16         THE COURT:  So that -- that would be what's covered in

17   this second bucket that was described by Mr. Warden that they

18   are reviewing it, on track to unseal by December 19th.

19         MR. MANDELL:  Okay.  All right.  Then we're clear on

20   that.  Then we're --

21      (Audio disruption.)

22         MR. MANDELL:  The third bucket --

23      (Audio disruption.)

24         MS. HEDGES:  I'm sorry, Your Honor.  This is Elizabeth

25   Hedges for the government.  I can't hear, and I just wanted to

1    make sure I'm not the only one having that issue.

2           THE COURT:  Ms. Hedges, I think it's we're getting

3    some sort of feedback on our end.

4           MS. HEDGES:  Understood.  Thank you.

5           MR. MANDELL:  Okay.  Just to finish the thought then.

6    As to the body cam footage and the excessive force reports that

7    the Court ordered be submitted and the Court reviewed, we would

8    consider that to be judicial records even though the Court may

9    not have relied on those records in -- specifically relied on

10   those records in issuing the Court's ruling.

11          THE COURT:  Practically speaking, I don't know how

12   much there is that would fall into this last bucket which is

13   what was the defendants submitted but that we didn't rely on or

14   use and that the parties didn't rely on or use to support their

15   motions for preliminary injunction.  I mean, I know that the

16   defendant submitted all of the body-worn camera footage and

17   any -- that related to any use of force reports that were

18   generated over this time period.  But I don't know that -- I'm

19   just not sure what would be kind of left in this third bucket.

20   Does anybody know?

21          MR. ART:  We don't -- the plaintiffs don't know off

22   the top of our heads.  I suppose we could submit a report to

23   the Court that includes an index and we could do the part

24   that's still under seal under seal of what is in bucket 1, what

25   is in bucket 2 and then what remains in bucket 3, if anything.

1    THE COURT:  I think that would be helpful just so that

2    we know what it is that we're actually talking about in this

3    bucket.  It may be that it's nothing or it may be that it's

4    some amount.  But I think, you know, what the public's entitled

5    to know and see for themselves are the things that either the

6    parties looked to to support either their motion or their

7    response and what I relied upon in my opinion.

8    And similar to the discovery that would be exchanged

9    in any case, the public's not entitled to look and see all of

10   the discovery that is generated in a particular case.  They are

11   entitled to and have a right to see anything that I would rely

12   on in coming to my opinion or that the parties would cite to in

13   their motions but --

14   MR. MANDELL:  I --

15   THE COURT:  -- not everything.

16   MR. MANDELL:  I agree with Your Honor on the discovery

17   part of it.  Where it gets gray is when arguments are made,

18   documents are referred to, the Court reviews things.  It's hard

19   to say while you may not have cited to a particular body-worn

20   cam video in your opinion, if you reviewed it, I'm assuming you

21   considered it.  And that's what brings it out of discovery and

22   into potentially at least judicial records.

23   THE COURT:  Potentially, but, you know, there was a

24   lot there, right, and that I reviewed it but didn't consider

25   it, right?  So there could -- there's -- just off the top of my

1   head, you know, there's body-worn camera footage of people

2   sitting in a car.  It didn't do anything so didn't consider it.

3   You know, it just wasn't relevant.

4           So I don't know that -- and especially given the

5   posture that we're in right now with plaintiffs' motion for a

6   voluntary dismissal, I don't know that I want to make the

7   government jump through a bunch of hoops to review things that

8   I did not find relevant or consider and they did not rely upon.

9   So that's kind of where I'm at with that third bucket of

10  things.  But I --

11          MR. MANDELL:  Can I -- can I suggest that we see

12  what -- what we're dealing with --

13          THE COURT:  Yep.

14          MR. MANDELL:  -- and then cross that bridge because it

15  gets almost into a semantic argument in terms of you reviewed

16  it, did you consider it.  I don't want to go there at this

17  point because I don't think we need to.  But I guess I want to

18  reserve the right to -- to make the arguments.

19          THE COURT:  That's fine.

20          When do the parties think that they could index what

21  exists and what's out there?

22          MR. ART:  Probably within two weeks, Judge.

23          THE COURT:  All right.  Does that make sense,

24  Ms. Hedges, Mr. Warden?

25          MR. WARDEN:  Yes, Judge.  I think we can confer with

1    plaintiffs and see if we can come up with a mutually agreeable

2    list.  But I will say I think the third category is somewhat

3    large given I think Your Honor's order covered everything from

4    September to November 19th, and only I think a small, smallish

5    subset of that was relied upon by the Court and the parties.

6    That's just my -- my hunch at this point.

7         THE COURT:  Okay.  So we'll take a look.  But I think

8    the first two categories are the ones that are important for

9    the public to have, and they will have that.

10        All right.  Now we need to deal with the 23(e) aspect

11   of the dismissal.

12        So I'm presuming that there won't be an objection from

13   any members of the class.  However, I think it would make sense

14   to set a date just in early January for a hearing, if any class

15   members wanted to object, that they could then file an

16   objection by December 19th, and we could come back January 8th.

17        I guess the only question I have is how we would get

18   that notice out to class members.  Any thoughts?

19        MR. RAUSCHER:  We have done a lot of thinking about

20   it.  Of course it would have to be published notice.  I think

21   what we could do is very quickly, with those dates, put

22   together a press release.  Given the extensive coverage that

23   this case has gotten, I think we can all be confident that's

24   going to get picked up.  We also have press clients who I think

25   we can work with to make sure they publish that or get that

1    published.  We'll put up the dates on our website in a, you

2    know, easily accessible form.  I think I can say all

3    plaintiffs' counsels' websites can carry those dates.

4         THE COURT:  And what are your thoughts, Mr. Warden and

5    Ms. Hedges?

6         MS. HEDGES:  Your Honor, this is Elizabeth Hedges for

7    the government.

8         So we -- we don't have a position on the logistics of

9    the Rule 23 notice.  We do want to say for the record, as we

10   said in our filing, that we believe this motion should be

11   recognized for the procedural gamesmanship that it is.  We

12   recognize that it's within the Court's power to dismiss the

13   case on the -- on plaintiffs' motion.

14        But we do want to push back against the notion that to

15   the extent there's an implication DHS has left Chicago, as we

16   said in our filing, we're pushing back on that as a factual

17   matter.  And we just want the record to be clear about what's

18   happening here with plaintiffs waiting until after they

19   obtained a PI ruling but before the Seventh Circuit had the

20   opportunity to issue a precedential merits decision.  So I

21   would just say that for the record.  But on the Rule 23 issue,

22   we believe that the plaintiffs can put forth their position on

23   how to go about that.

24        And we would also say, as we said and as the

25   plaintiffs said, I think there's complete agreement that the

1   dismissal would be, if -- if ordered, it would be with
2   prejudice.
3           THE COURT:  Okay.  So just to be clear, Ms. Hedges,
4   are you saying that your client is intending on returning to
5   Chicago imminently to pick up Operation Midway Blitz?  Or if
6   they're going to call it a different name?
7           MS. HEDGES:  Your Honor, as -- as we explained in our
8   written filing, DHS has not left Chicago in the sense that DHS
9   maintains a presence in various cities around the nation.  And
10  so we just want to make sure that, as we said in our written
11  filing, the record is clear we, for reason -- various reasons
12  don't necessarily forecast where agents will be at any given
13  time.  The point we just wanted to make is that we want the
14  Court to understand that we maintain a presence in various
15  cities and we're not committing one way or the other on the
16  future.
17          THE COURT:  Well, so here's -- here's where I guess I
18  am stumbling a little over that or have some trouble with that
19  is this.  There was a lot of hay made over the standing issue
20  of plaintiffs and a lot of ink spilled on standing, both in the
21  district court and the Seventh Circuit.  And I can't certainly
22  speak for plaintiffs, but reading what they filed, it seems to
23  me that they had a question on the fact that the Operation
24  Midway Blitz appears to be no longer operating, that -- in the
25  way that it was in that Mr. Bovino and the majority of the

14

1    Border Patrol agents that were here had moved on to North

2    Carolina, and that move was publicized; that they then have

3    moved on to New Orleans, which move was also publicized; that

4    that went into whatever decision they made to seek a voluntary

5    dismissal here and ask defendants to dismiss their appeal.

6         So while I am fully aware that DHS is operating all

7    across the country, they are here at Broadview still operating

8    that as a detention and processing facility.  They are still

9    enforcing immigration laws all across the country.  I just had

10   a *habeas* petition filed two days ago of a woman who was

11   arrested dropping her kids off at school.  So they are

12   obviously operating but not in the manner that precipitated

13   this lawsuit.

14        So my question to you I think is a more basic one,

15   which is are you saying that Operation Midway Blitz, in the

16   manner that it was operating in September and October and early

17   November of this year, is that going to happen again, or are

18   you saying it's not going to happen again or are you saying you

19   don't know and cannot say?

20        MS. HEDGES:  Your Honor, our position is that oper- --

21   the plaintiffs were -- seemed to be alleging that Operation

22   Midway Blitz, quote-unquote, was over.  And our point was

23   simply that they're wrong to allege that it's over.  We

24   recognize, as Your Honor recognizes, that plaintiffs can look

25   at the news reporting and make what conclusions they want to

1   about what to move for in this court regarding where certain

2   agents are at any given time.  But as I think Your Honor also

3   just recognized, DHS will continue to continue its lawful

4   enforcement operations in Chicago to the extent necessary, and

5   so that's what I -- I have to say on that.

6         You know, as -- as Your Honor is aware, I -- because

7   it's an ongoing operation, immigration enforcement is an

8   ongoing operation across the country, I'm not prepared to -- to

9   stand here and give positions of where any agent might be at

10  any given time.

11        THE COURT:  Mr. Art?

12        MR. ART:  Judge, just briefly from the plaintiffs'

13  perspective, to the extent that counsel for the government is

14  talking about immigration operations writ large or lawful

15  immigration operations, this lawsuit doesn't have anything to

16  do with those things.  Our understanding, based on reporting

17  from our clients and from those situated similarly in the

18  Northern District, is there hasn't been this sort of

19  unconstitutional conduct that was at issue in this lawsuit

20  since November 8th.  We don't see that happening again in the

21  near future.  We're not sure precisely what the nature of the

22  promise or threat or implication in the government's filing is,

23  but our decision is based on the total cessation of activities

24  by Bovino and his command in the Northern District of Illinois.

25        In addition, I just want to comment briefly on the

1    issues of preclusion raised by the government in that response

2    to the motion to dismiss.  We think that the government's

3    position on issue preclusion is completely wrong and

4    inconsistent with the law.  It's obviously not something that

5    this Court decides at this stage of this case.  But so that our

6    position is clear, the cases the defendants are citing about

7    the preclusive --

8              UNIDENTIFIED SPEAKER:  Check, check, check.

9              MR. ART:  About the preclusive effect of a dismissal

10    in this case stand for the proposition that of course this case

11    cannot preclude litigation about future harms that have not yet

12    occurred in the Northern District.  So we want that to be clear

13    for the record as well.

14              THE COURT:  Okay.

15              MS. HEDGES:  Your Honor, if I may briefly.

16              THE COURT:  Go ahead.

17              MS. HEDGES:  So part of the class that Your Honor

18    certified included those who would in the future, quote,

19    nonviolently demonstrate, protest, observe, document, or record

20    at Department of Homeland Security Immigration Enforcement and

21    Removal Operations in the Northern District of Illinois.  So we

22    just want to be clear, a dismissal with prejudice would bind

23    the class that this Court certified, and that includes those

24    who would in the future do those enumerated things.

25              MR. ART:  The government's position is totally

1    inconsistent with the law.  The class definition necessarily

2    applies in this lawsuit for the time that this lawsuit is

3    persisting.  It does not bind unknown people in the future who

4    might do things in the future and be subject to harm by the

5    government.  Clearly that's not the way the class definition

6    works.  It necessarily cannot work that way as a matter of due

7    process, and it's not the way the law of preclusion works

8    either.

9         MS. HEDGES:  Your Honor, I think that plaintiffs as

10   the masters of their complaint were able to formulate their

11   request for class certification.  This Court ruled on it and

12   granted certification, and it included those who would in the

13   future do those activities that I just listed.  And so the

14   record is clear.  The Court's order on certification is on the

15   docket.  And dismissal with prejudice under the Federal Rules

16   of Civil Procedure would bind the class.  And so the class has

17   been defined to include those who in the future do those

18   activities.  So that's -- that's my legal position, and that's

19   what this Court's order certified.

20        THE COURT:  Well, that -- and that may be your legal

21   position, but that may not be what the law actually is.

22        Moreover, there's nothing that stops the plaintiffs

23   from asking me to decertify the class, either, before I dismiss

24   the lawsuit.

25        MR. MANDELL:  Your Honor, just for intervenors'

1    position, if you carry the government's position through its

2    logical extension, the press could no longer record or film or

3    report on the government's activities.  So I think we would be

4    on the same page as the plaintiff on -- on this point.

5           THE COURT:  Right.

6           MS. HEDGES:  And, Your Honor, with -- with respect, I

7    think that the plaintiffs and the intervenors could have

8    thought about some of these issues at the time they were being

9    briefed.  I recognize -- again, I recognize the plaintiffs have

10   the right to make their Rule 41 -- Rule 23 motion to

11   voluntarily dismiss, but the class is the class.  And -- and

12   notice and preclusive effects apply to the class as it's been

13   defined.

14          MR. FUTTERMAN:  I'm just going to say one thing.  I'm

15   sorry.

16          THE COURT:  Go ahead.

17          THE REPORTER:  Can you go by the microphone, please?

18          MR. FUTTERMAN:  Sure.

19          A -- a dismissal of this lawsuit can in no way give

20   the defendants a free hall pass to beat up press, protestors,

21   priests, months, years from now and commit other constitutional

22   violations.  That's just not how the law works.  That's not how

23   *res judicata* works.

24          MS. HEDGES:  And, Your Honor, I mean, of course our

25   position is that we have not violated the law and we have no

1   intention of violating anyone's constitutional rights.  Again,

2   I would rest on what I said and what we said in our filing

3   about the class at issue here.

4          THE COURT:  Well, again, I think with respect,

5   Ms. Hedges, that you are not correct on the law and that the

6   preclusive effect that you would hope to achieve with a

7   dismissal with prejudice is not what you think it is.  And it

8   certainly wouldn't be that, as Mr. Futterman said, that the

9   government has free rein then to violate a protester's

10  constitutional rights or the press's constitutional rights

11  going forward in the future *ad infinitum* based on this

12  dismissal.

13          And while it was --

14          MS. HEDGES:  Your Honor -- sorry.

15          THE COURT:  I'm not done.

16          And while it was the government's position that no

17  agent did anything illegal or unconstitutional, having watched

18  the videos, having read the reports, having listened to the

19  witnesses, I strongly disagree; and obviously did not reach the

20  merits because it was a preliminary injunction hearing and it

21  was not a hearing on the permanent injunction and we didn't get

22  to the merits.  It was just whether the plaintiffs were likely

23  to succeed.  However, I found that they were likely to succeed.

24          So I think while this is an interesting topic, it is

25  one best left for another day.  Hopefully that day will never

1   come.  But I lost my crystal ball a long time ago so I don't

2   know what will happen in the future, but I think hopefully we

3   won't ever have to get there.  So --

4            MR. RAUSCHER:  Judge -- I'm sorry.

5            THE COURT:  Yes.

6            MR. RAUSCHER:  May I addresses two Rule 23 issues

7   briefly?

8            THE COURT:  Yep.

9            MR. RAUSCHER:  One, as I said, all plaintiffs, at

10  least all class counsel would post it on their website.  And

11  I'm not sure if that's actually right so I should retract that

12  and say at least Loevy & Loevy will do it.

13           THE COURT:  Okay.

14           MR. RAUSCHER:  If others can do it, they will also do

15  that.

16           THE COURT:  Okay.

17           MR. RAUSCHER:  The other question is where --

18  hopefully there won't -- we're not anticipating objections

19  either, but we will not know that until the notice goes out.

20  And so I think we need to tell people how they can submit

21  objections.

22           THE COURT:  So I -- my suggestion would be that any

23  objections need to be submitted to Loevy & Loevy postmarked no

24  later than December 19th.

25           MR. RAUSCHER:  Okay.  Should we also have people send

1   a copy to the clerk?

2            THE COURT:  Yes.

3            MR. RAUSCHER:  I think that's typically how we do it.

4            THE COURT:  Yes, that would be good.

5            And then I'm just thinking about the mail.  I would

6   suspect, even if I set this for January 8th, that there

7   would -- we would have gotten any -- I don't expect that there

8   are going to be any objections, but if we're going to get them

9   that we would get them by then.

10           MR. RAUSCHER:  Another thing we've -- I've done at

11  least once, I think maybe twice, in a case, and I don't know

12  this e-mail address still exists, but there was a *pro se*

13  e-mail, *pro se* filing e-mail address through the clerk's

14  office.

15           THE COURT:  That I don't know.

16           MR. RAUSCHER:  It was a COVID thing.  I'm not sure if

17  it's still -- we can look into that.

18           THE COURT:  Yeah.

19           MR. RAUSCHER:  But if you want to just do mail and

20  keep it simple, let's do --

21           THE COURT:  I think let's keep it simple and just do

22  mail.

23           And then we'll set it for the 8th of January at 2:30.

24           MR. MANDELL:  Your Honor, on behalf of the

25  intervenors, could -- could I ask that we be included on the

1  service list?  I'm not suggesting that anything's intentional

2  here, but I've been getting notice of filings on -- through the

3  ECF but not included on the service list.  So I don't know if

4  anybody has an objection about that.

5            MR. ART:  Not from the plaintiffs.

6            MR. MANDELL:  Thank you.

7            THE COURT:  And Mr. Warden, Ms. Hedges, do you have

8  any objection to including the intervenors on the service list?

9            MS. HEDGES:  Your Honor, I think subject to what

10  Mr. Warden thinks, I -- I would defer to him on that just

11  because he's more familiar with the intervenors.

12            MR. WARDEN:  No objection.

13            THE COURT:  Okay.  Thanks, Mr. Warden.

14            All right.  Ms. Johnson, you can take care of that,

15  correct?

16            THE CLERK:  I will look into it.

17            THE COURT:  Okay.  Anything else then we need to take

18  up?

19            MR. ART:  Not from the plaintiffs.  Thank you, Your

20  Honor.

21            THE COURT:  Okay.  How about from the government?

22            MS. HEDGES:  Not from the government, Your Honor.

23            THE COURT:  All right.

24            MR. MANDELL:  Not from the intervenors, Your Honor.

25            THE COURT:  Okay.  All right.  Then we'll see

1    everybody January 8th.

2              MR. ART:  Thank you, Judge.

3              MR. FUTTERMAN:  Thank you, Judge.

4              MS. LEWIS DONNELL:  Thanks, Judge.

5              MS. HEDGES:  Thank you, Your Honor.

6              THE COURT:  Thanks.

7         (Concluded at 2:30 p.m.)

8

9

10                     *   *   *   *   *

11         I certify that the foregoing is a correct transcript

12    from the record of proceedings in the above-entitled matter.

13    */s/ KELLY M. FITZGERALD*              *December 9, 2025*
      KELLY M. FITZGERALD, RPR, RMR, CRR
14    Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25