E-STAR incident ID: **LES** #25670



U.S. Customs and Border Protection

## Enforcement Action Statistical Analysis and Reporting System (E-STAR)
### Incident Report

**Current Status:** ⊗ Completed  ○ Active  ○ Ready for review  ○ Rejected  ○ Deleted

### INCIDENT INFORMATION

**E-STAR incident ID:** **LES** #25670
**Title:** Operation Midway Blitz: Chicago - Patrol Canine Physical Apprehension
**Incident date/time:** 09/30/2025 01:17
**Type:** ☐ Assault against CBP personnel  ☒ Reportable use of force  ☐ FTY/Vehicle pursuit by a CBP employee
  ☐ Unintentional firearm discharge  ☐ Intentional firearm discharge
**Was this a mass encounter incident?** ○ Yes  ⊗ No
**Reporting organization:** U.S. Border Patrol / Detroit Sector
**Created by:** GAMBOA, DANIEL E.  **Creation date/time:** 09/30/2025 09:07
**Last updated by:** HORNER, JOHN E.  **Last updated date/time:** 10/12/2025 16:26
**Reviewer:** HORNER, JOHN E  **Date reviewed:** 10/12/2025

### RELATED SYSTEMS: 4

**Is there IDVRS footage (Evidence Serial Number) associated with this incident?** ⊗ Yes  ○ No

| IDVRS Evidence Serial Numbers: 4 |
|---|
| LES |
| LES |
| LES |
| LES |

| Related system(s): 0 | Related document ID |
|---|---|

### INVOLVED ORGANIZATIONS

| Organization/type | Component/agency |
|---|---|
| Reporting organization: | |
| CBP | USBP |
| Other involved organizations: | |
| CBP | AMO |
| CBP | OFO |
| Other federal agency | FBI |
| Other federal agency | ATF |

**Were other CBP components/external agencies involved?** ⊗ Yes  ○ No

CHC v. Noem CBP 000799

E-STAR incident ID: LES #25670

## LOCATION/ENVIRONMENTAL CONDITIONS

**Incident location/AOR:** U.S. Border Patrol / Detroit Sector
    **Landmark:** DETROIT GENERAL AREA NON SPECIFIC AREA
**Country/international waters:** United States of America
    **Address:**
        **Street:** 7500 S. Shore Drive
        **City:** Chicago     **State:** ILLINOIS     **Zip:** 60649
**Incident coordinates:**
    **Latitude:** 41.76007
    **Longitude:** -87.55733
**Setting:** ☒ Indoors   ○ Outdoors
**Description of the premises/location:** Multi story apartment complex.
**Environmental factors:**
    **Weather:** ☒ Dry ☐ Raining ☐ Snowing ☐ Flooding ☐ Windy ☐ Storm ☐ Haze/blowing dust ☐ Fog ☐ Other
    **Illumination:** ☐ Daylight ☒ Dark ☐ Dawn ☐ Dusk ☐ Good lighting ☒ Poor lighting ☐ Night vision aided ☐ Other
    **Estimated temperature (Fahrenheit):** 60

## NOTIFICATIONS

**CBP personnel notified:**

| Name | Affiliation/job title | Notification manner | Notification date |
|---|---|---|---|
| CASEY HALEY | Assistant Chief / National Canine Program Manager | Phone | 09/30/2025 |
| TIMOTHY DELGADO | SUPVERVISORY BORDER PATROL AGENT (CANINE COORDINATOR) | Phone | 09/30/2025 |
| WIERSUM, AARON D | Supervisory Border Patrol Agent (Canine Instructor) | Phone | 09/30/2025 |

**Other authorities notified (external to CBP):** ☐ Federal   ☐ Tribal   ☐ State   ☐ Local   ☐ Foreign

## EMPLOYEES: 4

**Name:** BERLIN, PADRAIC DANIEL
    **Gender:** Male   **Age:** 34   **Height:** 6'0"   **Weight:** 220 pounds
    **CBP employee series or role:** Officer/Agent
    **Service EOD:** 03/11/2013
    **Duty location or detail/TDY location during the incident:** U.S. Border Patrol / Detroit Sector
    **Duty (or detail/TDY) location EOD:** 09/15/2025
    **Duty status at the time of the incident:** ☒ On duty   ○ Off duty
        **Activity:** Border Patrol Tactical Unit (BORTAC)

    **Armed law enforcement experience:**
        **Total law enforcement experience at the time of the incident:** 12 years 6 months
        **CBP training previously received (not including basic academy training):**

| | | | | |
|---|---|---|---|---|
| ☐ BPAIST | ☐ BORSTAR | ☒ BORTAC | ☐ DITP | ☐ DTI |
| ☐ EDVPTP | ☐ EMT | ☐ FITP | ☒ LLITP (IFITP) | ☒ MFF |
| ☐ MRT | ☐ PITP | ☐ SRT | ☐ TATP | ☐ Other |

    **Wearing body armor?** ☒ Yes   ○ No
    **Attire:** ☒ Uniform   ○ Plain clothes

    **Did BERLIN, PADRAIC DANIEL use reportable force?** ☒ Yes   ○ No
        **Force type:** Other

CHC v. Noem CBP 000800

E-STAR incident ID: LES #25670

**Type of force:** K9 (used as patrol K9)
    **Result of K9 deployment:** Physical apprehension
**Reason(s) for this use of force:**

| | | |
|---|---|---|
| ☒ Protect self | ☒ Protect co-worker | ☐ Protect innocent 3rd party |
| ☒ Protect non-CBP officer/agent | ☒ Effect an arrest or detention | ☒ Prevent escape |
| ☒ Overcome resistance | ☐ Stop vehicle | ☐ Vessel failure to heave to |
| ☐ Animal euthanization | ☐ Other | |

**Was BERLIN, PADRAIC DANIEL injured?** ◯ Yes ⊗ No

**Name:** DUBAR JR, DAVID R.

  **Gender:** Male   **Age:** 53   **Height:** 5'8"   **Weight:** 185 pounds
  **CBP employee series or role:** Officer/Agent
  **Service EOD:** 06/21/2010
  **Duty location or detail/TDY location during the incident:** U.S. Border Patrol / Detroit Sector
  **Duty (or detail/TDY) location EOD:** 09/14/2025
  **Duty status at the time of the incident:** ⊗ On duty ◯ Off duty
    **Activity:** Border Patrol Tactical Unit (BORTAC)

  **Armed law enforcement experience:**
    **Total law enforcement experience at the time of the incident:** 15 years 4 months
    **CBP training previously received (not including basic academy training):**

| | | | | |
|---|---|---|---|---|
| ☐ BPAIST | ☐ BORSTAR | ☒ BORTAC | ☐ DITP | ☐ DTI |
| ☐ EDVPTP | ☐ EMT | ☐ FITP | ☒ LLITP (IFITP) | ☒ MFF |
| ☒ MRT | ☐ PITP | ☐ SRT | ☐ TATP | ☐ Other |

**Wearing body armor?** ⊗ Yes ◯ No
**Attire:** ⊗ Uniform ◯ Plain clothes

**Did DUBAR JR, DAVID R. use reportable force?** ◯ Yes ⊗ No

**Was DUBAR JR, DAVID R. injured?** ◯ Yes ⊗ No

**Name:** DELGADO JR, PAUL

  **Gender:** Male   **Age:** 28   **Height:** 6'1"   **Weight:** 195 pounds
  **CBP employee series or role:** Officer/Agent
  **Service EOD:** 05/04/2020
  **Duty location or detail/TDY location during the incident:** El Paso Sector / Special Operations Detachment
  **Duty (or detail/TDY) location EOD:** 09/05/2025
  **Duty status at the time of the incident:** ⊗ On duty ◯ Off duty
    **Activity:** Border Patrol Tactical Unit (BORTAC)

  **Armed law enforcement experience:**
    **Total law enforcement experience at the time of the incident:** 5 years 5 months
    **CBP training previously received (not including basic academy training):**

| | | | | |
|---|---|---|---|---|
| ☐ BPAIST | ☐ BORSTAR | ☒ BORTAC | ☐ DITP | ☐ DTI |
| ☐ EDVPTP | ☒ EMT | ☐ FITP | ☒ LLITP (IFITP) | ☐ MFF |
| ☐ MRT | ☐ PITP | ☐ SRT | ☐ TATP | ☐ Other |

**Wearing body armor?** ⊗ Yes ◯ No
**Attire:** ⊗ Uniform ◯ Plain clothes

**Did DELGADO JR, PAUL use reportable force?** ◯ Yes ⊗ No

**Was DELGADO JR, PAUL injured?** ◯ Yes ⊗ No

**Name:** WHITE, BRIAN D.

CHC v. Noem CBP 000801

E-STAR incident ID: **LES** #25670

**Gender:** Male   **Age:** 49   **Height:** 6'2"   **Weight:** 205 pounds
**CBP employee series or role:** Officer/Agent
**Service EOD:** 09/04/2006
**Duty location or detail/TDY location during the incident:** U.S. Border Patrol / Detroit Sector
**Duty (or detail/TDY) location EOD:** 09/04/2025
**Duty status at the time of the incident:** ⊗ On duty   ○ Off duty
   **Activity:** Border Patrol Tactical Unit (BORTAC)

**Armed law enforcement experience:**
   **Total law enforcement experience at the time of the incident:** 19 years 1 months
   **CBP training previously received (not including basic academy training):**

| ☐ BPAIST | ☐ BORSTAR | ☐ BORTAC | ☐ DITP | ☐ DTI |
| ☐ EDVPTP | ☒ EMT | ☐ FITP | ☐ LLITP (IFITP) | ☒ MFF |
| ☒ MRT | ☐ PITP | ☐ SRT | ☐ TATP | ☐ Other |

**Wearing body armor?** ⊗ Yes ○ No
**Attire:** ⊗ Uniform   ○ Plain clothes

**Did WHITE, BRIAN D. use reportable force?** ○ Yes   ⊗ No

**Was WHITE, BRIAN D. injured?** ○ Yes   ⊗ No

# SUBJECTS: 1

**Name:** AKINSULIE, TOLULOPE
   **Gender:** Male   **Date of birth:** PII 984   **Height:** 5'6" - 5'11"   **Weight:** 200 lbs or over
   **Attire:** ⊗ Civilian ○ Paramilitary ○ Police ○ Nude ○ Unknown
   **Was the subject wearing body armor?** ○ Yes ⊗ No ○ Unknown
   **Immigration status:** Deportable
   **Country of citizenship:** NIGERIA
   **Was there an apparent or known mental impairment (E.g., mental illness/alcohol/drugs) in the condition of the subject?**
   ○ Yes ⊗ No
   **Subject's activity:**
      ☐ Illegal entry
      ☒ Uncooperative during encounter/inspection
      ☐ Failure to yield/heave to
      ☐ Checkpoint runner
      ☐ Port runner
      ☐ Alien smuggling
      ☐ Narcotics smuggling
      ☐ Scouting
      ☐ Assault (rocks/other projectiles)
      ☐ Assault (all other types)
      ☐ Rioting/civil disturbance
      ☐ Mass coordinated entry
      ☐ No suspected illegal activity
      ☒ Other - Subject involved in multi agency enforcement action.
   **Subject's current location and disposition if known:** Subject is currently located at the Broadview ICE/ERO Detention Facility.

   **Was reportable force used on this subject?** ⊗ Yes   ○ No
      **Was the subject outside the US or its territories when this force was applied?** ○ Yes   ⊗ No
   **Was the subject an occupant of a vehicle?**

CHC v. Noem CBP 000802

E-STAR incident ID: LES #25670

○ Yes ⊗ No

**Was this subject injured or claiming to be injured?** ⊗ Yes  ○ No  ○ Unknown

**Injury information:**

    **Injury type:** Moderate injuries (treated and released by a medical facility or will seek future treatment)

    **Injury Comment:** Puncture / laceration to lower right leg, left and right thigh, left wrist and finger.

    **Refused medical attention?** ○ Yes  ⊗ No

    **Received treatment?** ⊗ Yes  ○ No

    **Region(s) of the body injured:**

| | |
|---|---|
| ☐ Front head | ☐ Rear head |
| ☐ Side head | ☐ Face |
| ☐ Neck/throat | ☐ Front upper torso/chest |
| ☐ Rear upper torso/back | ☐ Front lower torso/abdomen |
| ☐ Rear lower torso/back | ☐ Front below waist/groin area |
| ☐ Rear below waist/buttocks | ☒ Arms/hands |
| ☒ Front legs/feet | ☐ Rear legs |

**Medical treatment information:**

    **Received EMS treatment prior to/in lieu of treatment at a facility?** ⊗ Yes  ○ No

        **Provider:** BORSTAR-Paramedic

    **Facility name:** Loyola Outpatient Center

    **Street address:** 2160 S 1st Avenue

    **City:** Maywood

    **State:** ILLINOIS  **Zip** 60153

    **Phone type:** Work  **Phone:** (708)216-8705  **Phone extension:**

## USES OF FORCE: 1

| Employee | Employee's use of force (UOF) | Subject(s) / UOF information |
|---|---|---|
| BERLIN, PADRAIC DANIEL | K9 - Physical apprehension | **Subject:** AKINSULIE, TOLULOPE<br>**Was this subject injured or claiming to be injured by this use of force?** Yes<br>**Was this use of force effective against what prompted its use?** Yes |

## BYSTANDER INJURY/COLLATERAL DAMAGE: 0

**Did this incident result in collateral property damage?** ○ Yes  ⊗ No

**Did this incident result in collateral injury to a bystander?** ○ Yes  ⊗ No

## WITNESSES: 0

## NARRATIVE

**Narrative of DUBAR JR, DAVID R.**

    On September 30, 2025, I, Border Patrol Agent (BPA) David Dubar was assigned to the Detroit Sector Special Operations Detachment, Border Patrol Tactical Unit, (DTM/SOD BORTAC). During this timeframe I was deployed to Chicago, Illinois for Operation Midway Blitz. BORTAC was contacted by Homeland Security Investigations (HSI) with information related to a large amount of Venezuelan illegal aliens that were associated with the Tren de Aragua (TdA) terrorist organization and were taking over vacant apartments in an apartment building located at 7500 S. South Shore Drive, Chicago, Illinois 60649. This apartment



CHC v. Noem CBP 000803

E-STAR incident ID: **LES** #25670

complex has multiple stories and approximately 130 to 140 units. These subjects have been seen openly patrolling the complex with weapons while harassing and extorting residents who reside in the building. The manager granted BORTAC and multiple Federal Agencies (HSI, OFO/SRT, and FBI) written consent to search vacant apartments for individuals who are amenable to deportation as well as other criminal activity located within the building.

At approximately 0116 while clearing a hallway on the second floor with my teammates, BPA Berlin with his PK9 (Yoda) was shouting verbal commands for people inside the apartments to make themselves known, to come out, and comply with his commands. As we approached one apartment, other Agents, BPA Berlin, and Yoda entered before me. As I followed behind BPA Berlin into a bedroom, I heard screaming and realized his dog was engaging a subject's leg on the floor for a brief moment. BPA Berlin was giving the subject commands, and the subject was not complying. BPA Berlin brought the subject closer to the doorway and then removed Yoda from the subject's leg so I could place handcuffs on him. As I was approaching the subject, he jumped up and I quickly performed an escort hold on his wrist behind his back, issued commands, and he complied. I then placed handcuffs on him without further incident. Once BPA Berlin and his dog exited the room, I extracted the subject from the area and transferred custody to a fellow Agent instructing him that the subject needed medical attention once he was in the holding area which was a designated safe zone on that floor. I then returned to my team and continued searching that floor for additional subjects.

### Narrative of BERLIN, PADRAIC DANIEL

On September 30, 2025, I Border Patrol Agent (BPA) Padraic Berlin and my assigned Patrol Canine (PK9) YODA **LES** were assigned to the Detroit Sector Special Operations Detachment, Border Patrol Tactical Unit (DTM SOD BORTAC). During this timeframe we were deployed to Chicago Illinois for Operation Midway Blitz. BORTAC was contacted by Homeland Security Investigations (HSI) with information related to a large amount of Venezuelan illegal aliens that were taking over vacant apartments in an apartment building located at 7500 S. South Shore Drive, Chicago, Illinois 60649. This apartment complex is 5 stories high and approximately 130 units. Intelligence and Special Operations agents contacted the building manager who confirmed that violent Venezuelan subjects, believed to be part of the Tren de Aragua (TdA) terrorist organization, have seized control of approximately 30 vacant apartments within the building. These subjects have been seen openly patrolling the complex with weapons while harassing and extorting legitimate residents who reside in the building. The manager granted written consent for USBP to search all vacant apartments for individuals who are amenable to deportation as well as other criminal activity located within the complex.

TdA are a Foreign Terrorist Organization (FTO), Specially Designated Global Terrorists (SDGTs), and a transnational organization. TdA originated in Venezuela with cells in Colombia, Peru, and Chile, with further reports of sporadic presence in Ecuador, Bolivia, and Brazil. This brutal criminal group has conducted kidnappings, extorted businesses, bribed public officials, authorized its members to attack and kill U.S. law enforcement, and assassinated a Venezuelan opposition figure. Many of these TdA members illegally live and operate within numerous U.S. cities.



On September 30, 2025, at approximately 0100 hours, my team consisting of myself, my assigned PK9 YODA, BORTAC

CHC v. Noem CBP 000804

E-STAR incident ID: **LES** #25670

Operators, and Mobile Response Team (MRT), arrived at 7500 S. South Shore Drive Chicago, Illinois 60649. My assignment for this operation was primary entry team alongside PK9 YODA. Once we arrived at the target complex, emergency lights on service vehicles were engaged. At approximately 0100 hours, we entered the complex and secured the stairwell. Our entry team's mission was to secure the second floor. Intelligence stated that the second floor has the highest concentration of TdA members along with pistols, rifles, and grenades. Additional intelligence stated there to be a male subject residing in one of the first few rooms on the second floor that has multiple warrants to include firearms offenses. Upon arriving on the second floor, I issued loud verbal K9 warnings into the hallway and rooms "Police speak to me now or I'll send the dog!". Upon hearing no response to the K9 warnings we began to clear and secure rooms. Additional K9 warnings were issued by me and other agents as the search progressed. After clearing the second room a subject appeared multiple doors away further down the hall, additional commands and K9 warnings were issued. The subject heard and complied with our loud verbal commands; he exited his room and walked towards agents where he was placed into handcuffs. As we approached the following door, our team leader, Supervisory Border Patrol Agent (SBPA) Corey Myers observed signs of forced entry, tampering, no knob, and no legitimate locking mechanism on the door. These are all signs of unauthorized entry. At approximately 0116, SBPA Myers breached the door and immediately issued more Police warnings into the room. Due to the proximity of the handcuffed subject from the prior apprehension in the hallway, the breach of the target door, and the entry team entering the room, it was not tactically feasible at the time to issue additional K9 warnings into the room. Also, the subject who was apprehended prior heard our announcements and K9 warnings from many rooms deep down the hallway and complied. All commands and warnings issued to that subject all took place directly outside of the locked targets room. Receiving no response to any of the previous warnings both at the door or during the previous searches, I deployed PK9 YODA into the room alongside his BORTAC team members. Upon entering the target room, PK9 YODA located a subject hiding in the bedroom. At approximately 0117, PK9 YODA was able to physically apprehend the subject by biting him on the lower right leg.

As a PK9 Handler, I am responsible for deciding when a situation warrants the deployment of PK9 YODA for a search or physical apprehension. This decision is always made by weighing the totality of the circumstances, my agency's Patrol Canine Policy and Procedures and the "three-part test" established by the Supreme Court case of Graham vs. Conner which considers; "the severity of the crime, whether the subject was actively resisting arrest and whether the subject poses a reasonably apparent threat of harm to law enforcement personnel or others". It was unknown at the time how far the subject was willing to go to further evade arrest. Furthermore, the subjects lack of actions up to this point led me to reasonably believe that he was likely to resort to violence to evade capture. This subject was actively resisting arrest by failing to comply with commands from multiple different team members to include myself as he continued to remain deep in the room and conceal himself behind closed doors in a position of advantage. These facts left no doubt in my mind that this subject posed a reasonably apparent threat of harm to my teammates, my Patrol Canine, and myself should he be allowed to remain out of our sight and concealed in a position of advantage. Given the totality of the intelligence described prior, the history of violence most specifically in this area within the complex, knowledge of weapons, and failure to respond to countless Police and K9 warnings. Lack of action taken by the subject during this high-risk enforcement operation demonstrated that he posed a significant risk to the surrounding community should he escape. In accordance with the USBP Patrol Canine Policy and Procedures, a Patrol Canine may be used to physically apprehend a subject for the protection of the handler, the Patrol Canine, law enforcement or others where the subject poses a reasonably apparent threat of harm to the safety of law enforcement personnel or others; or when circumstances present a reasonably apparent danger to law enforcement personnel who would otherwise conduct a search or apprehension without a canine; or searches and apprehensions for potentially dangerous and/ or armed subjects.

In this case, an unknown number of subjects with unknown intentions. Located within an extremely hostile environment, in a position of advantage, and clearly not complying with countless commands from law enforcement. Located within a room of unauthorized access and behind a locked door to possibly deploy a weapon against law enforcement personnel. To mitigate these risks while still affecting an arrest, I decided to deploy PK9 YODA.

Upon entering the room, I observed PK9 YODA physically apprehending the subject by biting his lower right leg. They were fighting on the floor just inside the bedroom. I issued commands to the subject to show me his hands. Once I observed his hands were clear I began to pull PK9 YODA back into the safety of the cleared living space. I was able to safely pull the subject out of the unknown space within his position of advantage in the bedroom and into the cleared space the BORTAC team members currently occupied. Once the subject was removed from the bedroom, PK9 YODA was unable to hold his grip of the subject's lower right leg and released from the apprehension. BORTAC team members continued to issue commands to the subject to which he complied and was placed into handcuffs without further incident. The total length of the physical

CHC v. Noem CBP 000805

E-STAR incident ID: **LES** #25670

apprehension was approximately 18 seconds.

As soon as the scene was determined to be safe, I notified Patrol Canine Instructor SBPA Daniel Gamboa of the physical apprehension.

The subject was later identified as AKINSULIE, Tolulope 01/09/1984. AKINSULIE was determined to be a native and citizen of Nigeria. AKINSULIE did not possess the proper documents to enter, remain, or pass through the United States legally. AKINSULIE was determined to be illegally present in the United States. This enforcement operation yielded approximately 37 other arrests of illegal aliens, to include multiple TdA members.

Border Patrol Search Trauma and Rescue (BORSTAR) team members provided initial field treatment to AKINSULIE. After being evaluated by BORSTAR it was determined to transport AKINSULIE to Loyola Outpatient Center 2160 S. 1st Avenue Maywood Illinois 60153. AKINSULIE was treated for minor puncture and laceration wounds to the hip, hand, and leg areas. At approximately 0800, following treatment at the Loyola Outpatient Center AKINSULIE was transferred to the Immigration and Customs Enforcement (ICE) detention facility located at 1930 Beach St. Broadview Illinois 60155 where he is pending removal proceedings.

ESTAR# **LEP** #25670

### Narrative of DELGADO JR, PAUL

On 09/30/2025, I, Border Patrol Agent Paul Delgado Jr, assigned to the El Paso Sector Special Operations Detachment (SOD) Border Patrol Tactical Unit (BORTAC) detailed to Operation Midway Blitz in Chicago, IL, was assigned to execute an enforcement operation at 7500 South Shore Dr., Chicago, IL. 7500 South Shore Dr., Chicago a five-story apartment complex known to house dangerous undocumented individuals from Venezuela who have suspected affiliation with the Tren De Aragua (TDA) gang organization. The Bureau of Alcohol Tobacco Firearms and Explosives (ATF) and the Federal Bureau of Investigations (FBI), and HSI provided intelligence that as of September 2025 known TDA terrorist members resided in this apartment complex. Additional intelligence revealed the possibility of individuals who are in the apartment complex being on a wanted lists for being involved in various drug trafficking, firearms trafficking, human trafficking and other violent crimes. Gathered intelligence also indicated that the TDA members on the second floor are known to be armed with pistols, rifles, and grenades. ATF has conducted numerous undercover operations to purchase illicit firearms in this apartment complex. Additionally, a murder occurred in this apartment complex in June of this year.

At approximately, 1:00 a.m., agents from Bureau of Alcohol, Tobacco, Firearms and Explosive (ATF), Federal Bureau Investigation (FBI), Homeland Security Investigations, Office of Fiel Operations (OFO) Special Response Team (SRT) and Border Patrol BORTAC arrived on scene. All teams made access into their assigned area of the apartment complex and conducted repeated verbal announcements informing occupants of the police presence. I, along with other members of the BORTAC team, announced loudly and repeatedly "Police come out with yours hands up" in both the English and Spanish languages. Once our BORTAC team arrived at the second-floor assignment, a Border Patrol Canine handler, Berlin Padraic, attached to our team, also issued verbal commands warning occupants of the presence of a police patrol canine and advising them to come out with their hands up.

While making our way through floor two, we observed an apartment door that showed signs of being tampered with. This led us to believe that it was illegally occupied and that there was probably illicit activity occurring inside. A BORTAC operator breached the apartment door. As I made entry into the apartment, I noticed movement to my right side. I observed a single male adult. I immediately gave commands to the subject instructing him to show me his hands and get down on the ground. Simultaneously, as I gave commands to the subject, the subject began to move, and the Patrol Canine made contact with the individual and physically apprehended him on the right leg. The subject began incoherently screaming "FBI, FBI" and was not immediately compliant while actively engaging the Patrol Canine. The canine physical apprehension lasted approximately 20 seconds. While other agents physically secured the subject, I maintained cover for them. The subject was then turned over to other agents and provided appropriate medical care in a secure location. I continued clearing the structure and had no further contact with the individual.



CHC v. Noem CBP 000806

E-STAR incident ID **LES** #25670

Axon BWC serial #A1IPJ

**Narrative of WHITE, BRIAN D.**
On Tuesday, September 30, 2025 I interviewed Tolulope Akinsulie at the Immigration and Customs Enforcement (ICE) detention center located at 1930 Beach Street, Broadview IL, 60155.

Mr. Akinsulie had been arrested earlier that day by the United States Border Patrol during a multi-agency law enforcement effort. During that effort and his arrest, Mr. Akinsulie was physically apprehended by a U.S. Border Patrol Canine. This resulted in Mr. Akinsulie receiving bite wounds to his upper and lower extremities. After his arrest, Mr. Akinsulie was evaluated and treated by U.S. Border Patrol medical personnel while on site. As a precaution, the U.S. Border Patrol medical personnel on site transported Mr. Akinsulie to Loyola Outpatient Center for treatment. Once treated, he was transported to the ICE detention center on Beach St.

The nature of the ICE detention center is that it is a brief and temporary stop for arrested subjects. They are quickly processed and then transported to other holding facilities, some of which are long distances away as well as in other states. This detention facility is not designed for long term detainment of subjects, and therefore does not have any accommodations for medical treatment. This presented a dilemma for the Border Patrol agents involved in the apprehension of Mr. Akinsulie. They desired to interview him regarding the apprehension by the patrol canine. However, they were still involved with the ongoing operation and the ICE detention center personnel were strongly requesting Mr. Akinsulie to be transferred as soon as possible in order to be at a facility with proper medical staff to monitor his recovery.
On this day I had been assigned to the ICE detention center. I was contacted by an ICE supervisor regarding their desire to have Mr. Akinsulie transferred as soon as possible. I was also contacted by Supervisory Border Patrol Agent Daniel Gamboa stating that Mr. Akinsulie to be interviewed, but the agents normally tasked to do so were not immediately available. Given all these concerns and our mutual desire to have Mr. Akinsulie interviewed as soon as possible, it was agreed that it was in Mr. Akinsulies best interest for me to interview him since I was already at that location.

I conducted the interview with Mr. Akinsulie in the processing area of the ICE detention center. I recorded the interview with my assigned body worn camera, serial number LEP and evidence number/tag of LEP. The interview lasted approximately 17 minutes. Mr. Akinsulie and I spoke in the English language and at no time did I have any concerns that he was not understanding my questions. I also offered him the opportunity to speak the consulate of his home country (Nigeria), to which he declined.

In summary, Mr. Akinsulie admitted that he knew it was the police at the door. He also stated that he fought the canine once it entered his apartment. He stated that he was offered and received medical treatment.

## FILE ATTACHMENTS

## STATUS HISTORY

| Action | By | Date | Comments |
|---|---|---|---|
| Submitted | GAMBOA, DANIEL E. | 10/03/2025 10:03 | |
| Approved | ARCE, JESSE A. | 10/03/2025 10:32 | |
| Reopened | FICK, SHANNON M. | 10/05/2025 13:14 | **LES** |
| Submitted | BERLIN, PADRAIC DANIEL | 10/09/2025 12:27 | |
| Approved | HORNER, JOHN | 10/12/2025 16:26 | |

CHC v. Noem CBP 000807

E-STAR incident ID: **LES** #25670

| | E. | | |
|---|---|---|---|

CHC v. Noem CBP 000808